A1

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (Bar No. 187736)
2 | shonmorgan@quinnemanuel.com
Jack Baumann (Bar No. 288881)
3 | jackbaumann@quinnemanuel.com
865 South Figueroa Street, 10th Floor
4 | Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
5 | Facsimile:    (213) 443-3100

6 | Attorneys for Plaintiff Epson America, Inc.

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ORANGE

10 | EPSON AMERICA, INC., a California corporation,

11 |         Plaintiff,

12 |         vs.

13

14 | Graesen Arnoff, an individual, Suzanne Bonds, an individual, Matt Bozylinsky, an individual, Bill Bunkers, an individual, Erin Busse, an individual, Cindy Christensen, an individual, Michelle Churchill, an individual, Joshua Cook, an individual, Carolyn Dezutter, an individual, Brandy Dolderer, an individual, Jason Elkins, an individual, Cheryl Fulk, an individual, Denise Harrold, an individual, Rachel Hassett, an individual, Amy Hood, an individual, Kristi Jacobs, an individual, Michelle Jenkins, an individual, Christine Jonas, an individual, Megan Kline, an individual, Sara Koehnke, an individual, Kelly Kunz, an individual, Julie Lee, an individual, Margie Markevicius, an individual, Kevin Nameth, an individual, Adam Newman, an individual, Kelly Nielsen, an individual, Susan Nowinski, an individual, Glaiza O'Malley, an individual, Dino Pezzato Iii, an individual, Natalee Roseboom, an individual, Noreen Shambo, an individual, Jordan Sinwelski, an individual, Sabrina Stroud, an individual, Stella Volkman, an individual, Douglas Wagner, an individual, Marta Zachara, an individual, Richard Polich, an individual, Catherine Walker, an individual, Shelby Cooper, an individual, Evan Weightman, an individual, Shelbi Mcfarland, an individual, Lisa Colp, an individual, John Salidas, an

CASE NO. 30-2023-01315890-CU-MC-CXC

Judge Peter Wilson

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Action Filed:    March 10, 2023
Trial Date:      None Set

individual, Hannah Hood, an individual, Marie Ortega, an individual, Brian Naydol, an individual, Nicole Reynolds, an individual, Ward Roney, an individual, Lisa Borel, an individual, Dawn Ferguson, an individual, Kinh Nguyen, an individual, Connie Fields, an individual, Max Lima, an individual, Debra Coe, an individual, Steven Wear, an individual, Lora Benson, an individual, Nick Martinez, an individual, Craig Lux, an individual, Cedric Nocon, an individual, Richard Steele, an individual, Crystal Gibson, an individual, Charlene Madsen, an individual, Angelica Hernandez, an individual, Hideki Hara, an individual, Jennifer Lecharoen, an individual, William Butler, an individual, Ronald Talley, an individual, Marianina Arredondo, an individual, Charmaine Contreras, an individual, K Poore, an individual, Cathy Steele, an individual, Manique English, an individual, Cynthia Jaramillo, an individual, Jonathan Mok, an individual, Penny Dahlberg, an individual, Demir Bracic, an individual, Vincent Ibanez, an individual, John Lahommedieu, an individual, Princess Hampton, an individual, James Lonergan, an individual, Michael Walton, an individual, Wynn Esclovon, an individual, Thomas Green, an individual, Orlando Malaluan, an individual, Alexandria Vazquez, an individual, Carey Hylton, an individual, Veronica Perkins, an individual, Derek Newman, an individual, Brandon Medow, an individual, Ronald Stout, an individual, Kevin Teichen, an individual, Katie Hart, an individual, Jill Pacho, an individual, Ronald Piner, an individual, Jennifer Culbertson, an individual, Joel Borja, an individual, Blanca Carrasco, an individual, William Kewley, an individual, Rubie Gillon, an individual, Marta Madrid, an individual, Jennifer Ashline, an individual, Vicki Mallard, an individual, Michelle Lavoy, an individual, Mabel Tsi, an individual, Maria Livingston, an individual, Shamarra Frazier, an individual, Tyrone Hazel, an individual, Andres Vitiosus, an individual, Joseph Miranda, an individual, Cielito Leoncio, an individual, Monica Mungary, an individual, Tracy Smith, an individual, Madisyn Hill, an individual, Kara Heuer, an individual, Katherine Simpson, an individual, Allie Beyer, an individual, Johnny Murphy, an individual, Sharon Young, an individual, Kali Massey, an individual, Michael Goldstein, an individual, Jennifer

-1-

Toy, an individual, Kathy James, an individual, Vivian Mooers, an individual, Art Faelnar, an individual, Nidia Montoya, an individual, Daniel Wimberly, an individual, Bessie Brisco, an individual, Lucero Villa, an individual, Maria Brooks, an individual, Krzysztof Zachara, an individual, Shane Campbell, an individual, Freddy Juarez, an individual, William Deacon, an individual, Adrian Saldana, an individual, Nathan Gotten, an individual, Marissa Smith, an individual, Tyler Varela-Rivas, an individual, Manuel Rodriguez, an individual, Sandra Henderson, an individual, Marissa Mangold, an individual, Greg Prodigalidad, an individual, Martin Ackerson, an individual, William Sanchez, an individual, Marcus David, an individual, Cindi Metzger, an individual, John Bohen, an individual, Fernando Hernandez, an individual, Juanita Kennedy, an individual, Alfredo Felix, an individual, Tyler Ridge, an individual, Susan Tran, an individual, David Rayford, an individual, George Love, an individual, Dominique Powell, an individual, Anthony Graham, an individual, Eric Bianco, an individual, Miguel Rodriguez, an individual, Maribeth Harder, an individual, Jessica Calhoun, an individual, Matt Gruenwald, an individual, Sydney Zubeck, an individual, Jjimmie Gibbs, an individual, Rich Cafferkey, an individual, Timothy Weaver, an individual, Joanna Ammons, an individual, Kathie Swibaker, an individual, Paul Aguilar, an individual, Thomas Rees, an individual, Eric Piotrowski, an individual, Mark Messina, an individual, William Midgett, an individual, Anthony Willis, an individual, Murad Abu Hannoun, an individual, Gina Sangricoli, an individual, Ann Wright, an individual, Evangeline Lee, an individual, Bob Berg, an individual, Michelle Mitchell, an individual, Jean Macaluso, an individual, Kalena Bush, an individual, Ryan Hengel, an individual, Jacklyn Walker, an individual, Hale Knox, an individual, Karen Grano, an individual, Rabecca Broschat, an individual, Annette Vodola, an individual, Denise Anderson Mckay, an individual, Victor Varney, an individual, Sean Weerasinghe, an individual, Ray Covert, an individual, Elmer Orpilla, an individual, Carroll Montague, an individual, Delbert Hobson, an individual, Scott Adams, an individual, Linda Calvin, an individual, Shenise Mcknight, an individual, Cathy Abraham, an individual, Nick Loya, an

individual, Steven Polgar, an individual, Isaiah Robinson, an individual, Mike Sizemore, an individual, Tanisha Metcalf, an individual, Miguel Morales, an individual, Mary Hickey, an individual, Vishal Shah, an individual, Robert Hughes, an individual, Paris Gardner, an individual, Dana Lamb, an individual, Russel Savage, an individual, Donna Paul, an individual, Rickie Parks, an individual, Chantelle Adu-Berkoh, an individual, Rosa Casillas, an individual, Lance Groff, an individual, Tim Burman, an individual, Demetra Doss, an individual, Steve Chavez, an individual, Antwain Allen, an individual, Krystol Lamar, an individual, Marko Trajkovikj, an individual, Tina Cox, an individual, Adriana Montiel, an individual, Jorge Guzman, an individual, Larry Murphy, an individual, Connie Brown, an individual, Nicole Gomez, an individual, Kevin Rea, an individual, Patricia Hernandez, an individual, Caroline Garcia, an individual, Toya Kilgore, an individual, Maryjo Lawson, an individual, Kim Hands, an individual, Patrick Foley, an individual, Patricia Angenbroich, an individual, Billy Weeks, an individual, Danielle Davis Tucker, an individual, Ricardo Robledo, an individual, Pedro Rosas, an individual, Tequila Edwards, an individual, Andres Valdes, an individual, Griffin Jane, an individual, Ann Marie Yadegar, an individual, Nicole Diaz, an individual, Sylvia Nabong, an individual, Christina Buenaventura, an individual, Rokicki Brittney, an individual, Theresa Gould, an individual, William Powers, an individual, Dana Holgerson, an individual, Kristen Koerber, an individual, Delores Franks, an individual, Christopher Toney, an individual, Robert Kim, an individual, Jeremy Mccoy, an individual, Cynthia Conlin, an individual, Justin Thomas, an individual, Maurice Andrews, an individual, Marc Lee, an individual, Sydney Sabino, an individual, Sharon Brown, an individual, Elizabeth Luna, an individual, Nicholas Bowron, an individual, Jared Coleman, an individual, Jamul Jones, an individual, Ruchard Krieg, an individual, Nathaniel Joseph, an individual, Timothy Viane, an individual, Richard Goldberg, an individual, Moore Jeanette, an individual, Erma Johnson, an individual, Kimberley Gaul, an individual, Katherine Johnson, an individual, Sara Fiene, an individual, Michael Hirsch, an individual, Richard Schlosser, an individual, Veronica Drantz, an individual,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Merelene Deo Chand, an individual, John
Fremont, an individual, Michael Holcomb, an
individual, Bianca Rizzo Gatto, an individual,
Gretchen Fehling, an individual, Dean
Steinbrenner, an individual, Elia Cervantes, an
individual, Wendy Steinberg, an individual,
Byerley Janna, an individual, Susan Gonzalez,
an individual, Joycelyn Peete, an individual,
Wallace Hudson, an individual, Christine
Borovoy, an individual, Robert Hughes, an
individual, Jacqueline Nitti-Silva, an
individual, Edward Swiebocki, an individual,
Aldena Beisen, an individual, Terry Boyd, an
individual, Daniel Warner, an individual,
Echols Sandra, an individual, Nicole Marte, an
individual, Mary Kalafut, an individual,
Steven Keca, an individual, Jerry Upchurch,
an individual, Gary Klavans, an individual,
Deborah Lindsey, an individual, Marilyn Gant,
an individual, Sheila Chartier, an individual,
Nicole Parrini, an individual, Reginald
Woolston, an individual, Walter Ratajczak, an
individual, Cole Leslie, an individual, Sharon
Carwell, an individual, Penni Russell, an
individual, Alan Dascottr, an individual, Alana
Hannant, an individual, Mitchell Cottrell, an
individual, Tonya Green, an individual,
Teneka Shelton, an individual, Vladislav
Jurenka, an individual, Townes Coates, an
individual, Jeff Johnson, an individual, Tracy
Knight, an individual, Carol Fritzgerald, an
individual, Sharon Burgs, an individual, John
Tenenbaum, an individual, Maria Yaou, an
individual, Towanda Bell, an individual, Julie
Clarke, an individual, Michael Atkinson-Leon,
an individual, David Phorasavong, an
individual, Gloria Miles, an individual, Susan
Brook, an individual, Tiffany
Scharringhausen, an individual, Debra Knight,
an individual, Sandy Selesky, an individual,
Elroy Johnson, an individual, Eric Pate, an
individual, Regina Kelly, an individual, Brian
Factor, an individual, Tanya Ray, an
individual, Angel Collazo, an individual,
Tammy Mcfeely, an individual, Patricia
Medina, an individual, Demerette Kee, an
individual, Marylou Obos, an individual,
Olufunmilayo Ashiru, an individual, Ande
Wegner, an individual, Eboney Bell, an
individual, David Felix, an individual, Elbert
Jordan, an individual, Shelby Peters, an
individual, John Farringer, an individual,
David Cassiere, an individual, Jerry Coonrod,
an individual, Sandra Carcione, an individual,
Dollicia Bell, an individual, Jose Gonzalez, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | |
|---|---|
| 1 | individual, Michael Rose, an individual, Kecia |
| | Gaines, an individual, Tiffany Kilgore, an |
| 2 | individual, Michelle Viruet, an individual, |
| | Deborah Taylor, an individual, Gundars |
| 3 | Simanis, an individual, Frank Hauser, an |
| | individual, Mike Bowen, an individual, Shawn |
| 4 | Passwater, an individual, Kari Meyer, an |
| | individual, Dawn Werner, an individual, |
| 5 | Rachel Brauer, an individual, Rico Camacho, |
| | an individual, Len Faltin, an individual, Mark |
| 6 | Moreno, an individual, Crystal Weatherspoon, |
| | an individual, Lois Dickens, an individual, |
| 7 | Marcy Lucchesi, an individual, Patrick Ramos, |
| | an individual, Rico Adams, an individual, |
| 8 | Pamela Purl, an individual, Eric Willis, an |
| | individual, Melinda Caudillo, an individual, |
| 9 | Holly Grover, an individual, Rachel Galvin, an |
| | individual, Arturo Aragon, an individual, |
| 10 | Jeanclaude Lominy, an individual, Candace |
| | Davis, an individual, Ryan Wasney, an |
| 11 | individual, Yolanda Coler, an individual, |
| | Lasheena Williams, an individual, Amanda |
| 12 | Anderson, an individual, Ann Mitchell, an |
| | individual, Kaavir Ramirez, an individual, |
| 13 | Alan Wolmer, an individual, Kathleen Garcia, |
| | an individual, Jorge Pedroza, an individual, |
| 14 | Glen Hamel, an individual, Dehlia |
| | Williamson, an individual, Mary Abegg |
| 15 | Sanchez, an individual, Debra Kuen, an |
| | individual, Mary Young, an individual, |
| 16 | Deborah Delaney, an individual, Tracy |
| | Hartley, an individual, Randall Licht, an |
| 17 | individual, Donna Cox, an individual, Melissa |
| | Calvano, an individual, Paul Cohen, an |
| 18 | individual, Kathy Mccloud, an individual, |
| | Garret Ambrosio, an individual, William |
| 19 | Macgregor, an individual, Alexandra |
| | Camacho, an individual, Teresa Fajardo, an |
| 20 | individual, Cathy Jackson, an individual, |
| | Jeffrey Chien, an individual, Wendy Waits, an |
| 21 | individual, Stephen Alfon, an individual, |
| | Debbie Wilferling, an individual, Victor |
| 22 | Castillo, an individual, Stephen Dobbins, an |
| | individual, Robert Evans, an individual, |
| 23 | Howard Clark, an individual, Carol Weinberg, |
| | an individual, Alejandra Quiroz, an individual, |
| 24 | Gary Allen, an individual, Paul Meyser, an |
| | individual, Patricia Jackson, an individual, |
| 25 | Scott Gibson, an individual, Dee Kresge, an |
| | individual, Bob Vannini, an individual, |
| 26 | Laurence Faulks, an individual, Janice Cope, |
| | an individual, Max Daniels, an individual, |
| 27 | Debra Hill, an individual, Suzanne Guzman, |
| | an individual, Ninous Beitashour, an |
| 28 | individual, Stephanie Seeley, an individual, |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Linda Haworth, an individual, Lance Dalgart, an individual, Carlos Herrera, an individual, Mark Jones, an individual, Marjorie Heddinger, an individual, Samuel Brown, an individual, Jason Husted, an individual, Diane Richmond, an individual, Kathie Calhoun, an individual, Gisela Saenz, an individual, Denise Reed, an individual, Brian Oltman, an individual, Michael Stadie, an individual, Jovana Lloyd, an individual, Willie Davis, an individual, Stephen Ferri, an individual, Patti Mcdonald, an individual, Chris Higham, an individual, Norman Deorian, an individual, Cheryl Thomas, an individual, Douglas Mercer, an individual, Lydia Micheli, an individual, Lena Campos, an individual, Lisa Bernal, an individual, Sharon Peterson, an individual, Nick Burchett, an individual, Sharon Gonzalez, an individual, Erica Jones, an individual, Michael Callahan, an individual, Christian Melanese, an individual, Jose Del Campo, an individual, Melissa Del Rosario, an individual, Osvaldo Alvarado, an individual, Alana Jelinek, an individual, Suzanne Sule, an individual, Lissa Gates, an individual, Frederick Reckeweg, an individual, Kimberly Sinclair, an individual, Nikki Dohn, an individual, Ursula Zamora, an individual, Angela King, an individual, Susan Galvan, an individual, Dennis Devilbiss, an individual, Robert Larson, an individual, Steven Boehm Boehm, an individual, Amy Hart, an individual, Amanda Yancy, an individual, Sandra Roller, an individual, Chelsea Loke, an individual, Frank Tucci, an individual, Cheryl Norton, an individual, Angelica Shatokin, an individual, Kenneth Sullivan, an individual, J Conavay, an individual, Zeid Nasser, an individual, Susie Abboud, an individual, Christopher Heron, an individual, John Schmidt, an individual, Jane Litman, an individual, Ricky Eck, an individual, Michael Betzag, an individual, Jacquelyn Donahue, an individual, Scott Binder, an individual, Joann Reeves, an individual, Penny Mores, an individual, Diane Phillips, an individual, Jimmie Hale, an individual, Joyce Beasley, an individual, Jill Barnett, an individual, Ellany Lawrence, an individual, Constance Adler Galloway, an individual, Wendy Vasquez, an individual, Brian Alsup, an individual, Ken Goetz, an individual, Cheryl Scaccio, an individual, Amy Stone, an individual, Kim Nunn, an individual, Annemarie Ruitenbach, an individual, Chitika Hemphill, an individual,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  Lisbeth Deforest, an individual, Stephanie
   Smith, an individual, Philip Searby, an
2  individual, Eduardo Moreno, an individual,
   Readus Sago, an individual, Karen Schmidtke,
3  an individual, Brian Favia, an individual, Dana
   Bradford, an individual, Monique Blake, an
4  individual, Curtis Revak, an individual, Gilbert
   Tisdale, an individual, Adam Bitterman, an
5  individual, Roy Rumaner, an individual, Tim
   Smith, an individual, Karen Hight, an
6  individual, Valerie Gordon, an individual, Tim
   Burgess, an individual, Robert Oliver, an
7  individual, Cheryl White, an individual,
   Michael Burns, an individual, Susan Slaughter,
8  an individual, Amanda Quayle, an individual,
   Melissa Poly, an individual, Maria Haro, an
9  individual, Martin Miller, an individual, Jason
   Gadacz, an individual, Eric Hughes, an
10 individual, Jolynne Lewis, an individual,
   Miranda Snyder, an individual, Vaughn
11 Buxton, an individual, Dianaloo Farmer, an
   individual, Toneshia Scales, an individual,
12 Adam Bente, an individual, Sandra Lawrence,
   an individual, Debbie Gasaway, an individual,
13 Harlow Cisco, an individual, Norman Milsner,
   an individual, Hamisi White, an individual,
14 Frank Fales, an individual, Eddie Smith, an
   individual, Julianne Camello, an individual,
15 Takesia Sanford, an individual, John Raya, an
   individual, Mark Netzel, an individual, Diane
16 Cizunas, an individual, Mark Ackerman, an
   individual, Lisa Kaysinger, an individual,
17 Kylie Nyboer, an individual, Danielle Emick,
   an individual, Dan Berry, an individual,
18 Leilena Jones, an individual, James Reddish,
   an individual, Lorraine Rowe, an individual,
19 Catherine Watt, an individual, Stu Oster, an
   individual, Ah Lan Ferrara, an individual,
20 Stacie Pendleton, an individual, Andy Arden,
   an individual, Caroline Pegueros, an
21 individual, Kimberlee Black, an individual,
   Teressa Kohman, an individual, Whui Kim, an
22 individual, Canda Gray, an individual, Justin
   Cooper, an individual, Tammie Knight, an
23 individual, Haller Norma, an individual,
   Patricia Thomas, an individual, Jay Romick,
24 an individual, Michael Smith, an individual,
   Christian West, an individual, Diana Brooks,
25 an individual, Salazar Daniel, an individual,
   Arash Shamsian, an individual, Fran Long, an
26 individual, Suzette Wilder, an individual,
   Warren Lamb, an individual, Brenda
27 Anderson, an individual, Patricia Birdsall, an
   individual, Rachel Nguyen, an individual, Lisa
28 Pena Humes, an individual, Kevin Robinson,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

an individual, Murray Schechter, an individual, Corinne Andreano, an individual, Carol Novak, an individual, John Tarjavaara, an individual, Mercedes Gonzalez, an individual, Allen Wone, an individual, Kelly Manke, an individual, Susan Digianfilippo, an individual, Craig Renner, an individual, John Lund, an individual, Carol Maidlow, an individual, Rodney Sloan, an individual, Lea Sims, an individual, Abu Omar, an individual, Jim Policastro, an individual, Chrystal Caudle, an individual, Tammi Kellenberger, an individual, Aubrey Tanciangco, an individual, Bernadette Bitanga, an individual, Pam Martinez, an individual, Jan Bedell, an individual, Aimee Pavek, an individual, Chaka Theus, an individual, Hijinia Guerrero, an individual, Patrick Musni, an individual, Gilberto Pantoja, an individual, Patty Justiniano, an individual, Jeffrey Green, an individual, Cheri Roe, an individual, Leonard Bednarczyk, an individual, Frances Murray, an individual, Diane Jackson, an individual, Michelle Victory, an individual, Eileen Del Rosario, an individual, Erwin Hildenbrand, an individual, Richard Ernst, an individual, Melinda Jackson, an individual, Michelle Arellano, an individual, Bradley Lavalley, an individual, Julie Stasko, an individual, John Parkhurst, an individual, Rick Slansky, an individual, Romell Eggleston, an individual, Christy Broccardo, an individual, Jose Gonzalez, an individual, William Bell, an individual, Sacha Mercado, an individual, Margaret Grady, an individual, Elvira Castillo, an individual, Frederick Zubrin, an individual, Billy Woody, an individual, Joy Baynes, an individual, John Lewis, an individual, Eric Moreno, an individual, Mike Reyes, an individual, Marcella Pena, an individual, Betty Deconter, an individual, Karen Nash, an individual, Randy Lancaster, an individual, Bradford Patrice, an individual, Alan Swinford, an individual, Carson Tang, an individual, Rachel Rivera, an individual, Bryan Boone, an individual, Tom Harper, an individual, Sarah Kirk, an individual, Rebecca Dutton, an individual, James Domsic, an individual, Anabel Rodriguez, an individual, Daniel Tafolla, an individual, George Masny, an individual, Frank Lescrinier, an individual, Steve Griffith, an individual, Heather Hierl Weimer, an individual, Rebecca Huerta, an individual, Greg Edelson, an individual, Wendy Fosnaugh, an individual, Daniel

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Moore, an individual, John Davis, an
     individual, Frederick Davis, an individual,
2    Erin Mcraith, an individual, Daniela Kreidler,
     an individual, Jimmy Sutton, an individual,
3    Porter Katherine, an individual, Richard
     Wiseman, an individual, Jeanette Hale, an
4    individual, Rene Lundy, an individual, Vonnie
     Dawson, an individual, Lonnie Hiatt, an
5    individual, Jose Hernandez, an individual,
     Robin Chrusniak, an individual, Susan
6    Gallardo, an individual, Linda Siriano, an
     individual, Julie London, an individual, Emily
7    Dupree, an individual, Danny Abbott, an
     individual, David Colbert, an individual,
8    Michael Harvey, an individual, Lynne Schick,
     an individual, Kevin Brown, an individual,
9    Richard Dwyer, an individual, Evelyn
     Blizzard, an individual, Strassalyn Ayuba, an
10   individual, Justin Patt, an individual, Jennifer
     Smith, an individual, Dennis Gross, an
11   individual, Bob Madura, an individual, Scott
     Morgan, an individual, Shawna Hook, an
12   individual, Mike King, an individual, Gloria
     Ana Ramirez, an individual, John Woodruff,
13   an individual, Elliott Eubank, an individual,
     Kathleen Thomas, an individual, Bill
14   Henshaw, an individual, Leeandra Brocker, an
     individual, Donna Ball, an individual, Ariana
15   Clayton, an individual, Leslie Wilson, an
     individual, Fred Orr Jr, an individual, Mary
16   Margaret Hudak, an individual, Victor De
     Grande, an individual, Traci Priest, an
17   individual, Alan Maxwell, an individual,
     Dolores Gay, an individual, Robert Trujillo, an
18   individual, Vivian Fernandez, an individual,
     Sandra Harmon, an individual, Aaron
19   Campbell, an individual, Adly Pozas, an
     individual, Allen Heinen, an individual, Arthur
20   Okeeffe, an individual, Robert Martz, an
     individual, James Wheeler, an individual, Julie
21   Drake, an individual, Michael Mccluskey, an
     individual, Steven Simanonok, an individual,
22   Maureen Goff, an individual, Melissa Flint, an
     individual, Celeste Bemoras, an individual,
23   Robert Miller, an individual, Yolanda Gagne,
     an individual, Angel Arriaga, an individual,
24   Mary Barrow, an individual, Mike Mccallum,
     an individual, Albert Jones, an individual,
25   Esmeralda Cardenas, an individual, Linda
     Thompson, an individual, Donna Brooks, an
26   individual, Nicole Morales, an individual,
     Donna Shore, an individual, Patricia Misso, an
27   individual, Jose Osuna, an individual, Adrian
     Macias, an individual, George Duty, an
28   individual, Joseph Lopez, an individual,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  Chessie Delaney, an individual, Leslie Riggs,
   an individual, David Quimby, an individual,
2  Frank Vigneri, an individual, Alisha
   Alexander, an individual, Sylvia Madden, an
3  individual, John Zwierzko, an individual,
   Kenneth Pulliam, an individual, Davie Cabral,
4  an individual, Kathe Burkhart, an individual,
   Shawn Kulich, an individual, Scott Szydzik,
5  an individual, Siegmund Baklarz, an
   individual, Luis Munoz, an individual, Theresa
6  Drust, an individual, Ernest Nixon, an
   individual, Paul Norman, an individual,
7  Melissa Magallanes, an individual, Judy
   Witasik, an individual, Melody Centonze, an
8  individual, Christie Locascio, an individual,
   Roanne Pallasigui, an individual, Sue
9  Dudowitz, an individual, Kristen Hejnal, an
   individual, Zach Wylie, an individual, Amanda
10 Westrich, an individual, David Felker, an
   individual, Gordon Anderson, an individual,
11 Julia Lamas, an individual, Brooke Bingaman,
   an individual, Deborah Herrera, an individual,
12 John Merrill, an individual, Michael Keblusek,
   an individual, Susan Odaffer, an individual,
13 Miguel Contreras, an individual, Tony
   Armalis, an individual, Zack Carrera, an
14 individual, Katrina Brown, an individual,
   Chadd Creed, an individual, Justin Storer, an
15 individual, Leticia Ramirez Artiaga, an
   individual, Gina Garcia, an individual, Joan
16 Dimaio, an individual, Ryan Stephen, an
   individual, Janet Gibbs, an individual,
17 Veronica Ramirez, an individual, Frank
   Sotelo, an individual, Fabian Marquez, an
18 individual, Kristin Zimmerman, an individual,
   Mike Peters, an individual, Joshua Goldberg,
19 an individual, Anthony Caceres, an individual,
   Alexandria Hill, an individual, Theresa
20 Derfuss, an individual, Perri Davis, an
   individual, Chanell Davis, an individual, Art
21 Wood, an individual, Timothy Mancini, an
   individual, Reginald Mcafee, an individual,
22 Kevin Gwartney, an individual, Nick
   Angilello, an individual, Evert Ortega, an
23 individual, Sharon Barker Tubbs, an
   individual, Jaime Ryan, an individual, Derek
24 Vanwinkle, an individual, Katie Birchfield, an
   individual, Christina Dorato, an individual,
25 David Arnson, an individual, Debra Tapia, an
   individual, Kim Mandichak, an individual,
26 Terry Saberhagen, an individual, Cj Benbrook,
   an individual, Tiffanie Williams, an individual,
27 Lisa Wicker, an individual, Kim Serani, an
   individual, Robert Wing, an individual, Norm
28 Halbert, an individual, Winston Chavoor, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

individual, Gary Peterson, an individual, Barbara Mcdermott, an individual, Ramona Ali, an individual, Paul Cynkar, an individual, Adella Spencer, an individual, Kaitlyn Kelly, an individual, Jerry Hefley, an individual, Bill Griffin, an individual, Amanda Carney, an individual, Caesar Snee, an individual, Donald Forgy, an individual, Ashley Erickson, an individual, Danny Boswell, an individual, Jeremy Neimand, an individual, Janina Bias, an individual, Donna Cerro, an individual, Bob Sharpe, an individual, Evelyn Radcliffe, an individual, John Borders, an individual, David Pires, an individual, Alice Dortch, an individual, Sam Davis, an individual, Brian Powell, an individual, Annette Cady, an individual, Connie Tolefree, an individual, Steven Stecher, an individual, Paul Wasserman, an individual, Kristin Sanchez, an individual, Jessica Jolson, an individual, Michael Schofield, an individual, Robert Hefley, an individual, Dana Garlington, an individual, Andrew Coronado, an individual, Rick Cervarich, an individual, Vance Hallman, an individual, Carollee Rivera, an individual, Michael Lock, an individual, Sandy Adams, an individual, Jasmine Young, an individual, Misty Robles, an individual, Laura Simmons, an individual, Gretchen Trejo, an individual, Michelle Mccalister, an individual, Antoinette Carter, an individual, Herbert Huey, an individual, Gina Garcia, an individual, Reema Khan, an individual, Lonnie Briggs, an individual, Sebastian Romeo, an individual, Timothy Winthers, an individual, Stephen Goldhorn, an individual, Tom Moore, an individual, Glenn Maddock, an individual, Lennea La Hommedieu, an individual, Madeleine Rogow, an individual, Vernon Porter, an individual, Jon Evans, an individual, Terri Welch, an individual, Anthea Smith, an individual, Jason Williamson, an individual, Walter Macie, an individual, Sharon Herrera, an individual, David Williams, an individual, Deborah Morris, an individual, Denese Stthomas, an individual, Esther Torresulloa, an individual, Alissa Joseph, an individual, Alfreda Phillips, an individual, Fernando Garcia, an individual, Joel Dinovo, an individual, John Greggs, an individual, Roger Bubel, an individual, Richard Friedlander, an individual, Fernando Delgadillo, an individual, Charles Jedlicka, an individual, Teena Riley, an individual, George Kresse, an individual, Chuck Shepherd, an individual, Yvette

1   Afflerbaugh, an individual, Jeff Ravenscraft,
    an individual, Mary Bateman, an individual,
2   Robert Oliver, an individual, Warren Bjork, an
    individual, Adriana Martinez, an individual,
3   Laura England, an individual, Somer Lowery,
    an individual, Julie Hart, an individual,
4   Spencer Kayden, an individual, Robert
    Hamilton, an individual, Paul Kopilak, an
5   individual, James Macpherson, an individual,
    Adam Iannazzo, an individual, Natalie
6   Zimmerman, an individual, Michael Williams,
    an individual, Irene Mendoza, an individual,
7   Luis Delgado, an individual, Lauren Anderson,
    an individual, Sonia Williams, an individual,
8   Tara Brown, an individual, Bruce Cohen, an
    individual, Rochelle Hayes, an individual, Luis
9   Correa, an individual, Abbey Austin-Wood, an
    individual, Delores Navarro, an individual,
10  Bill Lewis, an individual, Detra Thompson, an
    individual, Meghan Fisher, an individual,
11  Kevin Bradley, an individual, Lillian Harris,
    an individual, Carolyn Rogers, an individual,
12  Raven Jeffries, an individual, Arthur Fisk, an
    individual, Gretchen Clifford, an individual,
13  Kimmy Mcdaniel, an individual, Mark Fabela,
    an individual, Anna Watrous, an individual,
14  Ignacio Menendez, an individual, Letty
    Guttilla, an individual, Shannon Jeralds, an
15  individual, Stephen Monk, an individual,
    Howard Peter Brody, an individual, Heather
16  Bush, an individual, Michael Portalatin, an
    individual, Diana Cruze, an individual, Ted
17  Coopersmith, an individual, Paul Clem, an
    individual, Sandra Aguilar, an individual,
18  Barbara Dube, an individual, Jacqueline
    Johnson, an individual, Jeffrey Lauritzen, an
19  individual, Richard Moody, an individual,
    Peter Levakis, an individual, Hilary Howard,
20  an individual, Kim Victor, an individual,
    Walter Viteri, an individual, Nicole Branch, an
21  individual, Scott Otsuka, an individual, Renee
    Vetter, an individual, Lisa Herron, an
22  individual, Richard Clark, an individual, Doug
    Alton, an individual, Steven Martin, an
23  individual, Derek Esparza, an individual,
    Rhonda Conley, an individual, Talia Oropeza,
24  an individual, Derrick Posner, an individual,
    Eli Kuo, an individual, Noel Aispuro, an
25  individual, Sandra Abernathy, an individual,
    Gajewski Cynda, an individual, Michael
26  Termine, an individual, Hiram Aguilera, an
    individual, Olivia Pittman, an individual,
27  Jayson Sandoval, an individual, Steven Wise,
    an individual, Lucy Cordero, an individual,
28  Cindy Wong, an individual, Laura Brown, an

-12-
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

individual, Tg Lawson Iii, an individual,
Robert Emerick, an individual, Gary
Washington, an individual, Robert Staup, an
individual, David Pask, an individual, Matt
Mellon, an individual, Erin Pellot, an
individual, Judith Davis, an individual, Faith
Holland, an individual, Alison Erbetta, an
individual, Thomas Miller, an individual,
Jessica Serrano, an individual, Connie Peart,
an individual, Eddie Galloway, an individual,
Maria Lauro, an individual, Stacey Dick, an
individual, Robin Cutler, an individual, Margo
Schullerts, an individual, Alfredo Cunanan, an
individual, Eyvonne Galloway, an individual,
Kathryn Ploss, an individual, John Burke, an
individual, Carl Willat, an individual, Erica
Beveridge, an individual, Todd Mitchell, an
individual, Amber Linnell, an individual,
Wendi Rodney, an individual, Roderick
Billingsley, an individual, Pete Fields, an
individual, Natalie George, an individual,
Marietta Falk, an individual, Ann Wenzell, an
individual, Stanley Vossler, an individual,
John Eccleston, an individual, Grace Reyes, an
individual, Cindy An, an individual, Arthur
Degennaro, an individual, Dina Kimbrough, an
individual, Zach Johnson, an individual,
Richard Sandona, an individual, Angela
Hutcheson, an individual, Lora Duncan, an
individual, Harlan Lawler, an individual,
Edward Padilla, an individual, Janet Litton, an
individual, Kevin Lewis, an individual, Danute
Mazeika, an individual, Tracy Clark, an
individual, Bill Hartman, an individual, Sue
Caico, an individual, Russell Dilillo, an
individual, Mala Dhillon, an individual,
Katherine Drouin-Keith, an individual, Laura
Green, an individual, Michael Bailin, an
individual, James Greenwood, an individual,
Malika Sanders, an individual, Judith
Chapman, an individual, Ronald Matthias, an
individual, Ramona Swift, an individual,
Laurel Debello, an individual, Maria Sandoval,
an individual, Yohan Isaac, an individual,
Charles Sellman, an individual, Kathleen
Maxian, an individual, Lynette Freeman, an
individual, Dennis Sidoti, an individual, Ann
Noel, an individual, Pamela Coleman, an
individual, Michael Lopes, an individual, Kurt
Nicolai, an individual, Timothy Conway, an
individual, Lisa Lakritz, an individual, Alyssa
Sepulveda, an individual, Lita Theodore, an
individual, Jane Pannell, an individual,
Gricelda Chavez, an individual, Wane
Webber, an individual, William Keegan Jr, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  individual, John Cordogan, an individual,
   Krista Robles, an individual, Steven Dewoody,
2  an individual, Eduardo Rico, an individual,
   Anthony Rotella, an individual, Latonia
3  Hoskins, an individual, J K Thomasser, an
   individual, Brittney Mouw, an individual,
4  Suzanne Mccombs, an individual, Myron
   Porter, an individual, Richard Kanatzar, an
5  individual, William Quinn, an individual,
   Jesus Castillo, an individual, Anthony Paiva,
6  an individual, Tara Robertson, an individual,
   Latonia Newton, an individual, Debra
7  Mccormick, an individual, Bee Vongphakdy,
   an individual, William Hegarty, an individual,
8  Nik Lozano, an individual, Robert Reichert, an
   individual, Chrystal Bernasconi, an individual,
9  Phyllis Hong, an individual, Mark Filcich, an
   individual, Kathie Oconnor, an individual,
10 Karry Kleemann, an individual, Angelo
   Logrande, an individual, David Libert, an
11 individual, Christine Poulsen, an individual,
   Edgard Entrala, an individual, Geovanni
12 Alvarado, an individual, Maurice Calderon, an
   individual, Jeff Rodriguez, an individual,
13 Katherine Macalma, an individual, David
   Williams, an individual, Daniel Mayeda, an
14 individual, Joanne Simonson, an individual,
   Jessicz Leka, an individual, Amanda
15 Rodriguez, an individual, Michael Skalon, an
   individual, Greg Williams, an individual, Julie
16 Vad, an individual, Gloria Knight, an
   individual, Philip Olszewski, an individual,
17 Dean Miya, an individual, Deborah Moran-
   Villarreal, an individual, Christine Scadina, an
18 individual, Shawn Blethen, an individual,
   Francis Mateo, an individual, Greg Fung, an
19 individual, Jeffery Lindsay, an individual,
   Farimah Mcharo, an individual, Roman
20 Villapando, an individual, Rex Thornhill, an
   individual, Erica Gonzalez, an individual,
21 William Combs, an individual, Kim Lawson,
   an individual, Jessica Plaut, an individual,
22 Elizabeth Collins, an individual, Jim Shere, an
   individual, Michael Hastings, an individual,
23 Tinnikie Atkins, an individual, Steven Rock,
   an individual, Mark Morales, an individual,
24 Tamera Tanubagijo, an individual, Sean
   Patrick Lewis, an individual, Susan Campbell,
25 an individual, Yvonne Vasquez, an individual,
   Eugenia Chen, an individual, Catharine
26 Naughton, an individual, Delores Gilson, an
   individual, Jose Lopez, an individual, Charles
27 Grey, an individual, Lope Yap Jr, an
   individual, Sue Trueblood, an individual,
28 Connie Jones, an individual, Shana Hager, an

-14-

individual, Lynne Pieroni, an individual, Anthony Brucia, an individual, Steve Pearlman, an individual, Renee Thompson, an individual, Derek Proffitt, an individual, Angela Tomey, an individual, Larissa Rapadas, an individual, Jonathan Cart, an individual, Gary Eisenberg, an individual, Kent Colton, an individual, Ryan Weatherby, an individual, Fran Oglesby, an individual, Joy Voltenburg, an individual, Joan Thomas, an individual, Ray Beldner, an individual, Robin Lane, an individual, Brenda Morales, an individual, Raul Morales, an individual, Gail Levine, an individual, John Burgess, an individual, Daragh Bennett, an individual, Bill Poggensee, an individual, Shelley Shepherd, an individual, Terrie Silva, an individual, Mark Christensen, an individual, James Andriacchi, an individual, Jennifer Boukidis, an individual, Juan Torres, an individual, Lisa Wilkins, an individual, Alicia Rodriguez, an individual, John Miles, an individual, Derek Michaels, an individual, Kelly Mochel, an individual, Kelly Parker, an individual, Silverio Sanchez, an individual, Elena Hedderig, an individual, Lester Stamnas, an individual, Ann Keating, an individual, Trista Powers, an individual, Issa Spencer, an individual, Mauricio Hernandez, an individual, Carolina Valenciano, an individual, Victoria Patryn, an individual, Nicole Wyszynski, an individual, Christina Coughlin, an individual, Maurice Stroud, an individual, David Sommerfeld, an individual, Cuong Nguyen, an individual, Carlos Yanez, an individual, Michelle Adams, an individual, Amy Kendall, an individual, Ryan Malloy, an individual, Doug Williams, an individual, Gary Reitmeier, an individual, Rebecca Garcia, an individual, Annette Barnes, an individual, Eps Shrat, an individual, Szeredy Andrea, an individual, Angela Hughes, an individual, Theresa Scott, an individual, Tony Provancal, an individual, Nancy Reiter, an individual, Hannah Schulman, an individual, Amy Davis, an individual, Donald Adams, an individual, Carlos Gonzalez, an individual, Barbara Kenning, an individual, Lency Montgomery, an individual, Brigitte Robertson, an individual, Marvin Fishman, an individual, Marian Jacob, an individual, Anna Darosa, an individual, Susan Drabing, an individual, Karen Davidson, an individual, David Pinzolo, an individual, Rusty Allen, an individual, Shawna Weyrich, an individual, Cheryl Ames,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

an individual, June Delane, an individual, Bill Hanna, an individual, Michael Smith, an individual, Mehdy Naitaki, an individual, David Pesola, an individual, Jeff Wong, an individual, Bernard Whalen, an individual, Susan Myers, an individual, Jana Sheehan, an individual, Danielle Labarre, an individual, Christine Hendrix, an individual, Brad Reisz, an individual, Becky Bataille, an individual, Theresa Henderson, an individual, Thomas Dooley, an individual, Tyndall Mun, an individual, Gloria Wroten, an individual, Jessica Sticklen, an individual, Stephanie Ochoa, an individual, Ashley Willinger, an individual, Shavasia Golden, an individual, David Pichon, an individual, Linda Novy, an individual, Fred Kinney, an individual, Blair Parker, an individual, Lynn Walker, an individual, Wes Wheadon, an individual, Liz Sampras, an individual, Louis Scaturro, an individual, Michele Finley, an individual, Pat Munson, an individual, William Wallace, an individual, Marc Seligman, an individual, Vanessa Alonzo, an individual, Catherine Manion, an individual, Ruth Mattison, an individual, Frank Zazanis, an individual, Neil Holman, an individual, Nancy Dolan, an individual, Chris Reiman, an individual, Victor Krumdick, an individual, Patrick Schneider, an individual, Dejuan Boyd, an individual, Gretchen Morales, an individual, Bill Fagan, an individual, Ted Pon, an individual, Priscilla Reyes, an individual, Anita Munoz, an individual, Ralph Ferri, an individual, Amanda Traxler, an individual, Rebecca Piper, an individual, Luz Padilla, an individual, Laurel Digangi, an individual, Kye Osti, an individual, Robert Zirgulis, an individual, Erica Stephenson, an individual, Peggy Pugh, an individual, Evelyn Salas, an individual, Shakeel Syed, an individual, Denise Stires, an individual, Gary Bell, an individual, Richard Miller, an individual, R Lee Jewell, an individual, Ayreanne Bordeaux, an individual, Linda Seibert, an individual, Erica Madden, an individual, Wayne Guzak, an individual, Diane Butler, an individual, Jill Frechette, an individual, Melissa Norton, an individual, Bill Nolan, an individual, Genevieve Brammeier, an individual, Jimmy Tran, an individual, Ron Jozaites, an individual, Lindsay Boyster, an individual, Luis Villavelazquez, an individual, Diana Rangel, an individual, Johnathan Stoor, an individual, Keith Hastings, an individual, Nate Bailey, an individual, Joel Holzman, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

individual, Nicole Duzy, an individual, Darlene Prescott, an individual, Kecia Bailey, an individual, Roland Ferrer, an individual, Nanci Oconnell, an individual, Tammy Cabrera, an individual, Allen Denni, an individual, Steven Rochester, an individual, Brian Swanson, an individual, Gregory Wroblewski, an individual, Julie Schrey, an individual, Judy Zeeb, an individual, Christine Jackowski, an individual, Beatriz Avendano, an individual, Orv Neconie, an individual, Katrina Condis, an individual, Simon Chaykler, an individual, Jessica Dambrose, an individual, Jeffrey Plaza, an individual, Daniel Kupper, an individual, Connie Owens, an individual, Judy Nast, an individual, Dennis Canfield, an individual, Christina Burlison, an individual, Alfred Garcia, an individual, Kimberly Schultz, an individual, Nick Jones, an individual, Susana Luna, an individual, Lawrence Kornit, an individual, Michael Austin, an individual, Amy Taiwo, an individual, Scott Beaver, an individual, Floro Munoz, an individual, Shukay Suzan, an individual, Mary Lopez, an individual, Ritesh Seth, an individual, Nopadol Chuaycharoensuk, an individual, Seth Roberts, an individual, Jenevieve Hayes, an individual, Justin Majzel, an individual, Margaret Blake, an individual, Daryl Marcott, an individual, Shelah Spiegel, an individual, Michael Brown, an individual, Diane Talbert, an individual, Craig Johnson, an individual, Scott Janus, an individual, Suzanne Lewis-Gregory, an individual, Nancy Alonzo, an individual, Juanita Bryant, an individual, Diane Mcpherson, an individual, Rudy Cendejas, an individual, Dave Yuen, an individual, Gary Whyte, an individual, Steve Lemire, an individual, Fernando Di Zitti, an individual, Antonio Mariano, an individual, Michael Padden, an individual, Nicole Henry, an individual, Gary Stansbury, an individual, Bruce Pleat, an individual, Erin King, an individual, Gabriel Lopez, an individual, Robert Tannenbaum, an individual, Merlita Felipe, an individual, Rainer Mueller, an individual, Enricque Williamson, an individual, Mike Chambers, an individual, Catherine Winnie, an individual, Jose Rodriguez, an individual, Kerrigan Weber, an individual, Linda Hyman, an individual, Jaycee Mcgee, an individual, Robert Jorgensen, an individual, Victoria Almaraz, an individual, Erick Bieger, an individual, Wylma

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Harmon, an individual, Jay Leavelle, an individual, Emily Welker, an individual, Kristen Lick, an individual, Steven Payne, an individual, John Hipp, an individual, Julie Fair, an individual, Theresa Dolan, an individual, Kimberly Boltz, an individual, Yvonne Invergo, an individual, Darryl Cass, an individual, Jesse Estrada, an individual, Tina Casey, an individual, Matthew Stevens, an individual, Harv Bisla, an individual, Steven Koppany, an individual, Ruth Tyson, an individual, Frank Jang, an individual, John Journeay, an individual, Robert James, an individual, Charlotte Roberson, an individual, Kathy Pruitt, an individual, Garren Saccomano, an individual, Kevin Nguyen, an individual, Cleo Sisco, an individual, Susan Maki, an individual, Peter Rizzo, an individual, Corinne Jacob, an individual, Julie Hammond, an individual, Loni Cooper, an individual, Kimmie Jones, an individual, Robert Kirwan, an individual, Jarryl Anderson, an individual, Kathy Smolansky, an individual, Brian Burch, an individual, Ken Mcgowan, an individual, Gregory Okulove, an individual, Alexander Gonzalez, an individual, Eric Spillman, an individual, Scott Thompson, an individual, James Nelson, an individual, Catherine Bratton, an individual, Mark Jurczeski, an individual, Kristi Lewis, an individual, Michael Vink, an individual, Syledra Hart, an individual, Alexia Wilson, an individual, Judith Stein, an individual, Nicole Fuller, an individual, Tim Jacobson, an individual, Peter Janoff, an individual, Keith Eaddy, an individual, Eileen Cortez, an individual, Roger Williams, an individual, Shayla Rossignol-Smith, an individual, Rosa Cromwell, an individual, Broderick Baldwin, an individual, Stephanie Morris, an individual, Cynthia Vasquez, an individual, Michael Poole, an individual, Brian Altman, an individual, Cindy Wright, an individual, Paula Klein, an individual, Peter Yaya, an individual, Adrianna Trujillo, an individual, Susan Ballou, an individual, Geneva Wisnewski, an individual, Tamara Frazier, an individual, Shanika Starks, an individual, Catalina Duenas, an individual, Karla Tapia, an individual, Joann Pepperdine, an individual, Tena Huson, an individual, Jonathan Mintzer, an individual, Robert Denker, an individual, Maria Armijo, an individual, Lisa Williams, an individual, Kyle Shell, an individual, Barbara Sullivan, an individual, Elizabeth Mack, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

individual, Marvin Foster, an individual, Debbie Potter, an individual, Bob Ehrlich, an individual, Lucille Fincher, an individual, Richard Colorado, an individual, Michele Duggan, an individual, Carrie Spiro, an individual, Jennifer Garner, an individual, William Sussman, an individual, Deondre Bedgood, an individual, Andrew Thompson, an individual, Hecht Lauren, an individual, Thomas Joyce, an individual, Leo Yioupis, an individual, Linda Nguyen, an individual, Angela Morelli, an individual, Jeffrey Van Dam, an individual, Ashley Cohen, an individual, Robert Windham, an individual, Sarah Wilde, an individual, Karen Tolleson, an individual, Roger Jones, an individual, Robert Adams, an individual, Steve Aardappel, an individual, Eric Santillan, an individual, Mark Graves, an individual, Patti Morton, an individual, Dan Greenspan, an individual, Terry Johnson, an individual, Janis Luft, an individual, Karen Austin, an individual, Floyd Fenex, an individual, Cornelius Lewis, an individual, Jeff Ricker, an individual, Fanesha Fabre, an individual, Brad Draper, an individual, Lana Gartin, an individual, Sarah Yi, an individual, Brad Whitacre, an individual, Mary Prete, an individual, Susan Watson, an individual, Rick Quezada, an individual, Clarence Wilson, an individual, Angela Kirkwood, an individual, Maritza Cantu, an individual, Veronica Smith, an individual, Jacob Hancock, an individual, Jamila Banks, an individual, John Pearson, an individual, Maurizio Ursetta, an individual, Russell Lombardo, an individual, Karla Castro, an individual, Kristen Mcnelly, an individual, Benito Rios, an individual, Daniel Wozniak, an individual, David Clark, an individual, Kendra Cato, an individual, Ruth Tekeste, an individual, Manish Gupta, an individual, Jessica Ornelas, an individual, Janice Harris, an individual, Christina Jones, an individual, Mary Pankow, an individual, Jacqueline Boubion, an individual, Lisa Coney, an individual, Jeanette Vogt, an individual, Denisha Hawkins, an individual, Chester Barnhart, an individual, Teresa Stevens, an individual, Susannah Christopher, an individual, Raymond Chin, an individual, Carol Soriano, an individual, Beverly Fleer, an individual, Rosie Gonzales, an individual, Nichelle Weathers, an individual, Samnang Vang, an individual, Emily Citraro, an individual, Darlene Franco, an individual,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Zinnia Esqueda, an individual, Natalie Cole, an individual, John Santillano, an individual,
2    Kim Kibler, an individual, Helen Aguilar, an individual, Roberta Quon, an individual, Tim
3    Rathbone, an individual, Judy Madnick, an individual, Stephanie Smith, an individual,
4    Denise Yarbrough, an individual, Roger Yoh, an individual, Peter Chen, an individual, Ken
5    Coulter, an individual, Magdalena Barrera, an individual, Maria Ballesteros, an individual,
6    John Cummings, an individual, Nancy Mcfadden, an individual, Edward Paul, an
7    individual, Luis Ramirez, an individual, Lorena Pena, an individual, Norma Reyes, an
8    individual, Mona Hodges, an individual, Anthony Alberts, an individual, Patricia
9    Hallissey, an individual, Ruby Beltran, an individual, Kennith Mascheri, an individual,
10    Gerri Entler, an individual, Debra Edwards, an individual, Carlos Lerma, an individual,
11    Alexandria Torres, an individual, Lisa Donahue, an individual, Zeb Maclennan, an
12    individual, Emmanuel Baez, an individual, Jaree Adams, an individual, Rosemp
13    Marousek, an individual, David Ginsburg, an individual, Amanda Reasons, an individual,
14    Scott Omori, an individual, Migdalia Rivera, an individual, Debbie Miller, an individual,
15    Kenneth Smith, an individual, Paige Meyer, an individual, Carlos Perez, an individual,
16    Christina Rescigno, an individual, Lydia Gomez, an individual, Cheryl Smith, an
17    individual, Priscilla Marie Torres, an individual, Ginger Wiley, an individual, Pete
18    Duran, an individual, Chris Huff, an individual, Nancy Cordero, an individual,
19    Sonserae Leese, an individual, Peter Dreyfuss, an individual, Stephen Blackwell, an
20    individual, Jenny Rattaro, an individual, Mark Dennis, an individual, Erin Peterson, an
21    individual, Martha Estrada, an individual, Julio Cabrera, an individual, Karla Rae Barker, an
22    individual, Robert Dumitru, an individual, John Blake, an individual, Sam Ciccosillo, an
23    individual, Jay Dedontney, an individual, Billy Boner, an individual, Barbara Mcdonald, an
24    individual, Jo-Ann Crandall, an individual, Willard Elliott, an individual, Claudia
25    Gonzales, an individual, Doc Phil Meyerson, an individual, James Friedrich, an individual,
26    Robert Sandberg, an individual, Ray Beck, an individual, Jesse Barba, an individual, Michael
27    Basnight, an individual, Rusanna Coyamin, an individual, Sarah Drisko, an individual, Chuck
28    Kiriakos, an individual, Duane Boyer, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  individual, Sona Smith, an individual, Michael
   Osullivan, an individual, Dana Baier, an
2  individual, Aaron Jacobs, an individual,
   Socorro Montoya, an individual, Kim
3  Mcbride, an individual, Robert Maron, an
   individual, Michelle Gardner, an individual,
4  Phil Correale, an individual, Esther Millan, an
   individual, Anissa Singleton, an individual,
5  Debora Garcia, an individual, Kristin Eller, an
   individual, Katherine Sherman, an individual,
6  Lara Boyko, an individual, Ric Nesslage, an
   individual, Luis Salgado, an individual, Lonny
7  Huffar, an individual, Roy Nicholas Boyce, an
   individual, Alberto Caputo, an individual,
8  Elizabeth Sanchez, an individual, Theresa
   Rodriguez, an individual, Carlos Mungarro, an
9  individual, Emily Guzman, an individual,
   Nicole George, an individual, Judy Charlton,
10 an individual, Mary Bonner, an individual,
   Ronnie Snipes, an individual, Jason Portis, an
11 individual, Steven Bernstein, an individual,
   Jeff Marsh, an individual, Dyann Payne, an
12 individual, Renona Weathersby, an individual,
   Ira Brooks, an individual, Sara Kim, an
13 individual, Angela Hackett, an individual,
   Ericka Aguilar, an individual, Nathan
14 Scoggins, an individual, Denise Bradbury, an
   individual, Ronald Matusea, an individual,
15 Ernest Macmillan, an individual, David Fish,
   an individual, Tracy Holmes, an individual,
16 Monica Dyakanoff, an individual, Melanie
   Votaw, an individual, Brian Bon, an
17 individual, Peggie Kennison, an individual,
   Mary Grady, an individual, Charles
18 Grauerholz, an individual, Cristina Duenes, an
   individual, Ron Kolman, an individual, Sharyn
19 Felton, an individual, Timothy Peron, an
   individual, Steve Foster, an individual,
20 Epigmenio Cueva Jr, an individual, Stephanie
   Sojka, an individual, Elizabeth Ohowell, an
21 individual, James Mcmanus, an individual,
   Monica Dunkin, an individual, Calvin Byer, an
22 individual, Arturo Dominguez, an individual,
   Eric Bass, an individual, Barbara Gaskill, an
23 individual, Tony Brzezowski, an individual,
   Faddy Malley, an individual, Pauline Palmer,
24 an individual, Rayna Palomino, an individual,
   Susana Castillo, an individual, Suzanne
25 Zuniga, an individual, Regina Doddington, an
   individual, Tiffany Wade, an individual, Bruce
26 Cameron, an individual, Bessie Karegianes, an
   individual, Stacey Phipps, an individual,
27 Shyma Afredi, an individual, Paula Rivera, an
   individual, Terry Romero, an individual, Lon
28 Adams, an individual, Kim Kasunic, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    individual, Anabell Chavez, an individual, Len
     Kovner, an individual, Maneca Colquitt, an
2    individual, Louis Godoy, an individual, Nicole
     Hoogland, an individual, Verna Agboola, an
3    individual, Kayla Svereika, an individual,
     Rufino Landayan, an individual, Angelica
4    Minjares, an individual, Crystal Mitchell, an
     individual, Felicia Raprager, an individual,
5    Maria Corrales, an individual, Gina Toafa, an
     individual, Jen Duran, an individual, Pablo
6    Flores, an individual, Paula Carl, an
     individual, Francesca Collebrusco, an
7    individual, Angelica Bellavia, an individual,
     Lisa Johnson, an individual, April Rocha, an
8    individual, Doddie Hecht, an individual,
     Joanne Conte, an individual, Tammy Tyler, an
9    individual, Nadia Lopez, an individual, Aris
     Alvarado, an individual, Joy Gallivan, an
10   individual, Emily Zinda, an individual, Debbie
     Kocol, an individual, Marcos Lopez, an
11   individual, Emily Eyth, an individual, Rebecca
     Velazquez, an individual, Hannah Moore, an
12   individual, Keisha Bishop, an individual, Deb
     Janus, an individual, Ruddy Vargas, an
13   individual, Floyd Vergara, an individual,
     Margaret Lyburtus, an individual, Dean Bruce,
14   an individual, Thomas Maloy, an individual,
     Gayle Walls, an individual, Maria Panduro, an
15   individual, Diana Swearingen, an individual,
     Bob Roth, an individual, Dick Winters, an
16   individual, Saul Gonzalez, an individual, Eric
     Kuck, an individual, Robert Brenneman, an
17   individual, Marcos Fuentes, an individual,
     Margaret King, an individual, Kimberly
18   Garcia, an individual, Christopher Kelley, an
     individual, Sylvia Lubera, an individual, Lisa
19   Wardell, an individual, Kelly Madison, an
     individual, Kenneth Stollman, an individual,
20   Michio Nakajima, an individual, Angela
     Devolder, an individual, Elaine Kennedy, an
21   individual, Teresa Desatnick, an individual,
     Sabela Portillo, an individual, Andre
22   Concepcion, an individual, Isaiah Burchett, an
     individual, Randy Sprout, an individual,
23   Carlos Ponce, an individual, Stephen Bonelli,
     an individual, Jennifer Harrell, an individual,
24   Douglas Beaver, an individual, Mariah Landis,
     an individual, Alisa Jones, an individual, Scott
25   Baugh, an individual, Deborah Andrews, an
     individual, Sandra Walsh, an individual, Karen
26   Fiorino, an individual, Barbra Conner, an
     individual, Allan Preckel, an individual, Stacy
27   Frisher, an individual, Kristine Morris, an
     individual, Don Abel, an individual, Pamela
28   Rico, an individual, Susanne Popaeko, an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

individual, Maria Canale, an individual,
Dennis Dixon, an individual, Laurie Kester, an
individual, Brandy Conaway, an individual,
Laura Tabachnick, an individual, Eduardo
Yabut, an individual, Lauri Hanson, an
individual, Regina Mcgrath, an individual,
Kim Brezniak, an individual, Judy Aronson,
an individual, Nicole Conway, an individual,
Erin Delegan, an individual, Jessie Landau, an
individual, Wayne Nash, an individual,
Bryttney Isgar, an individual, Elaine Smith, an
individual, Lesly Mayoral, an individual, Scott
Leeson, an individual, Callie Thurman, an
individual, Rene Quimby, an individual,
Benjamin Pauly, an individual, Evyette
Gaines, an individual, Carol Sevilla, an
individual, Humberto Lozano, an individual,
Diane Sullivan, an individual, Russell Gilliam,
an individual, Michelle Huitron, an individual,
Graham Jones, an individual, Karl Shultis, an
individual, Juanita Hernandez, an individual,
Jeffrey Valfer, an individual, Bill Vanhorn, an
individual, Megan Akright, an individual,
Leonilo De Leon, an individual, Robert
Lawson, an individual, Jessica Boccia, an
individual, Joan Giammarino, an individual,
Linda Silacci-Smith, an individual, Michael
Hoyt, an individual, John Mendez, an
individual, Colleen Gray, an individual, Susan
Berenson, an individual, James Carmany, an
individual, Dimitrios Pardalis, an individual,
Suzanne Whitford, an individual, Alejandra
Zavala, an individual, Arthur Wilderman, an
individual, Deana Nuxoll, an individual, Erin
Riffel, an individual, Shelli Salles, an
individual, Eric Brown, an individual, Ilisa
Goldman, an individual, Kristen Mclaughlin,
an individual, Judie Arriola, an individual,
Tanya Heuges, an individual, Kimberley
Deems, an individual, Katie Swanson, an
individual, Linda Paolano, an individual,
David Martin, an individual, Kevin Burch, an
individual, Charles Bernacchi, an individual,
Lameisha Sherri, an individual, Judy Cronin,
an individual, and DOES 1 through 20,000,
inclusive,

Defendants.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Introduction**

1.      Pursuant to Sections 525, 526 and 1060 *et seq.* of the California Code of Civil Procedure, plaintiff Epson America, Inc. ("Epson") brings this suit for declaratory and injunctive relief against defendants Graesen Arnoff, Suzanne Bonds, Matt Bozylinsky, Bill Bunkers, Erin Busse, Cindy Christensen, Michelle Churchill, Joshua Cook, Carolyn Dezutter, Brandy Dolderer, Jason Elkins, Cheryl Fulk, Denise Harrold, Rachel Hassett, Amy Hood, Kristi Jacobs, Michelle Jenkins, Christine Jonas, Megan Kline, Sara Koehnke, Kelly Kunz, Julie Lee, Margie Markevicius, Kevin Nameth, Adam Newman, Kelly Nielsen, Susan Nowinski, Glaiza O'Malley, Dino Pezzato Iii, Natalee Roseboom, Noreen Shambo, Jordan Sinwelski, Sabrina Stroud, Stella Volkman, Douglas Wagner, Marta Zachara, Richard Polich, Catherine Walker, Shelby Cooper, Evan Weightman, Shelbi Mcfarland, Lisa Colp, John Salidas, Hannah Hood, Marie Ortega, Brian Naydol, Nicole Reynolds, Ward Roney, Lisa Borel, Dawn Ferguson, Kinh Nguyen, Connie Fields, Max Lima, Debra Coe, Steven Wear, Lora Benson, Nick Martinez, Craig Lux, Cedric Nocon, Richard Steele, Crystal Gibson, Charlene Madsen, Angelica Hernandez, Hideki Hara, Jennifer Lecharoen, William Butler, Ronald Talley, Marianina Arredondo, Charmaine Contreras, K Poore, Cathy Steele, Manique English, Cynthia Jaramillo, Jonathan Mok, Penny Dahlberg, Demir Bracic, Vincent Ibanez, John Lahommedieu, Princess Hampton, James Lonergan, Michael Walton, Wynn Esclovon, Thomas Green, Orlando Malaluan, Alexandria Vazquez, Carey Hylton, Veronica Perkins, Derek Newman, Brandon Medow, Ronald Stout, Kevin Teichen, Katie Hart, Jill Pacho, Ronald Piner, Jennifer Culbertson, Joel Borja, Blanca Carrasco, William Kewley, Rubie Gillon, Marta Madrid, Jennifer Ashline, Vicki Mallard, Michelle Lavoy, Mabel Tsi, Maria Livingston, Shamarra Frazier, Tyrone Hazel, Andres Vitiosus, Joseph Miranda, Cielito Leoncio, Monica Mungary, Tracy Smith, Madisyn Hill, Kara Heuer, Katherine Simpson, Allie Beyer, Johnny Murphy, Sharon Young, Kali Massey, Michael Goldstein, Jennifer Toy, Kathy James, Vivian Mooers, Art Faelnar, Nidia Montoya, Daniel Wimberly, Bessie Brisco, Lucero Villa, Maria Brooks, Krzysztof Zachara, Shane Campbell, Freddy Juarez, William Deacon, Adrian Saldana, Nathan Gotten, Marissa Smith, Tyler Varela-Rivas, Manuel Rodriguez, Sandra Henderson, Marissa Mangold, Greg Prodigalidad, Martin Ackerson, William Sanchez, Marcus David, Cindi

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Metzger, John Bohen, Fernando Hernandez, Juanita Kennedy, Alfredo Felix, Tyler Ridge, Susan Tran, David Rayford, George Love, Dominique Powell, Anthony Graham, Eric Bianco, Miguel Rodriguez, Maribeth Harder, Jessica Calhoun, Matt Gruenwald, Sydney Zubeck, Jjimmie Gibbs, Rich Cafferkey, Timothy Weaver, Joanna Ammons, Kathie Swibaker, Paul Aguilar, Thomas Rees, Eric Piotrowski, Mark Messina, William Midgett, Anthony Willis, Murad Abu Hannoun, Gina Sangricoli, Ann Wright, Evangeline Lee, Bob Berg, Michelle Mitchell, Jean Macaluso, Kalena Bush, Ryan Hengel, Jacklyn Walker, Hale Knox, Karen Grano, Rabecca Broschat, Annette Vodola, Denise Anderson Mckay, Victor Varney, Sean Weerasinghe, Ray Covert, Elmer Orpilla, Carroll Montague, Delbert Hobson, Scott Adams, Linda Calvin, Shenise Mcknight, Cathy Abraham, Nick Loya, Steven Polgar, Isaiah Robinson, Mike Sizemore, Tanisha Metcalf, Miguel Morales, Mary Hickey, Vishal Shah, Robert Hughes, Paris Gardner, Dana Lamb, Russel Savage, Donna Paul, Rickie Parks, Chantelle Adu-Berkoh, Rosa Casillas, Lance Groff, Tim Burman, Demetra Doss, Steve Chavez, Antwain Allen, Krystol Lamar, Marko Trajkovikj, Tina Cox, Adriana Montiel, Jorge Guzman, Larry Murphy, Connie Brown, Nicole Gomez, Kevin Rea, Patricia Hernandez, Caroline Garcia, Toya Kilgore, Maryjo Lawson, Kim Hands, Patrick Foley, Patricia Angenbroich, Billy Weeks, Danielle Davis Tucker, Ricardo Robledo, Pedro Rosas, Tequila Edwards, Andres Valdes, Griffin Jane, Ann Marie Yadegar, Nicole Diaz, Sylvia Nabong, Christina Buenaventura, Rokicki Brittney, Theresa Gould, William Powers, Dana Holgerson, Kristen Koerber, Delores Franks, Christopher Toney, Robert Kim, Jeremy Mccoy, Cynthia Conlin, Justin Thomas, Maurice Andrews, Marc Lee, Sydney Sabino, Sharon Brown, Elizabeth Luna, Nicholas Bowron, Jared Coleman, Jamul Jones, Ruchard Krieg, Nathaniel Joseph, Timothy Viane, Richard Goldberg, Moore Jeanette, Erma Johnson, Kimberley Gaul, Katherine Johnson, Sara Fiene, Michael Hirsch, Richard Schlosser, Veronica Drantz, Merelene Deo Chand, John Fremont, Michael Holcomb, Bianca Rizzo Gatto, Gretchen Fehling, Dean Steinbrenner, Elia Cervantes, Wendy Steinberg, Byerley Janna, Susan Gonzalez, Joycelyn Peete, Wallace Hudson, Christine Borovoy, Robert Hughes, Jacqueline Nitti-Silva, Edward Swiebocki, Aldena Beisen, Terry Boyd, Daniel Warner, Echols Sandra, Nicole Marte, Mary Kalafut, Steven Keca, Jerry Upchurch, Gary Klavans, Deborah Lindsey, Marilyn Gant, Sheila Chartier, Nicole Parrini,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Reginald Woolston, Walter Ratajczak, Cole Leslie, Sharon Carwell, Penni Russell, Alan Dascottr, Alana Hannant, Mitchell Cottrell, Tonya Green, Teneka Shelton, Vladislav Jurenka, Townes Coates, Jeff Johnson, Tracy Knight, Carol Fritzgerald, Sharon Burgs, John Tenenbaum, Maria Yaou, Towanda Bell, Julie Clarke, Michael Atkinson-Leon, David Phorasavong, Gloria Miles, Susan Brook, Tiffany Scharringhausen, Debra Knight, Sandy Selesky, Elroy Johnson, Eric Pate, Regina Kelly, Brian Factor, Tanya Ray, Angel Collazo, Tammy Mcfeely, Patricia Medina, Demerette Kee, Marylou Obos, Olufunmilayo Ashiru, Ande Wegner, Eboney Bell, David Felix, Elbert Jordan, Shelby Peters, John Farringer, David Cassiere, Jerry Coonrod, Sandra Carcione, Dollicia Bell, Jose Gonzalez, Michael Rose, Kecia Gaines, Tiffany Kilgore, Michelle Viruet, Deborah Taylor, Gundars Simanis, Frank Hauser, Mike Bowen, Shawn Passwater, Kari Meyer, Dawn Werner, Rachel Brauer, Rico Camacho, Len Faltin, Mark Moreno, Crystal Weatherspoon, Lois Dickens, Marcy Lucchesi, Patrick Ramos, Rico Adams, Pamela Purl, Eric Willis, Melinda Caudillo, Holly Grover, Rachel Galvin, Arturo Aragon, Jeanclaude Lominy, Candace Davis, Ryan Wasney, Yolanda Coler, Lasheena Williams, Amanda Anderson, Ann Mitchell, Kaavir Ramirez, Alan Wolmer, Kathleen Garcia, Jorge Pedroza, Glen Hamel, Dehlia Williamson, Mary Abegg Sanchez, Debra Kuen, Mary Young, Deborah Delaney, Tracy Hartley, Randall Licht, Donna Cox, Melissa Calvano, Paul Cohen, Kathy Mccloud, Garret Ambrosio, William Macgregor, Alexandra Camacho, Teresa Fajardo, Cathy Jackson, Jeffrey Chien, Wendy Waits, Stephen Alfon, Debbie Wilferling, Victor Castillo, Stephen Dobbins, Robert Evans, Howard Clark, Carol Weinberg, Alejandra Quiroz, Gary Allen, Paul Meyser, Patricia Jackson, Scott Gibson, Dee Kresge, Bob Vannini, Laurence Faulks, Janice Cope, Max Daniels, Debra Hill, Suzanne Guzman, Ninous Beitashour, Stephanie Seeley, Linda Haworth, Lance Dalgart, Carlos Herrera, Mark Jones, Marjorie Heddinger, Samuel Brown, Jason Husted, Diane Richmond, Kathie Calhoun, Gisela Saenz, Denise Reed, Brian Oltman, Michael Stadie, Jovana Lloyd, Willie Davis, Stephen Ferri, Patti Mcdonald, Chris Higham, Norman Deorian, Cheryl Thomas, Douglas Mercer, Lydia Micheli, Lena Campos, Lisa Bernal, Sharon Peterson, Nick Burchett, Sharon Gonzalez, Erica Jones, Michael Callahan, Christian Melanese, Jose Del Campo, Melissa Del Rosario, Osvaldo Alvarado, Alana Jelinek, Suzanne Sule, Lissa Gates, Frederick Reckeweg, Kimberly Sinclair,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Nikki Dohn, Ursula Zamora, Angela King, Susan Galvan, Dennis Devilbiss, Robert Larson, Steven Boehm Boehm, Amy Hart, Amanda Yancy, Sandra Roller, Chelsea Loke, Frank Tucci, Cheryl Norton, Angelica Shatokin, Kenneth Sullivan, J Conavay, Zeid Nasser, Susie Abboud, Christopher Heron, John Schmidt, Jane Litman, Ricky Eck, Michael Betzag, Jacquelyn Donahue, Scott Binder, Joann Reeves, Penny Mores, Diane Phillips, Jimmie Hale, Joyce Beasley, Jill Barnett, Ellany Lawrence, Constance Adler Galloway, Wendy Vasquez, Brian Alsup, Ken Goetz, Cheryl Scaccio, Amy Stone, Kim Nunn, Annemarie Ruitenbach, Chitika Hemphill, Lisbeth Deforest, Stephanie Smith, Philip Searby, Eduardo Moreno, Readus Sago, Karen Schmidtke, Brian Favia, Dana Bradford, Monique Blake, Curtis Revak, Gilbert Tisdale, Adam Bitterman, Roy Rumaner, Tim Smith, Karen Hight, Valerie Gordon, Tim Burgess, Robert Oliver, Cheryl White, Michael Burns, Susan Slaughter, Amanda Quayle, Melissa Poly, Maria Haro, Martin Miller, Jason Gadacz, Eric Hughes, Jolynne Lewis, Miranda Snyder, Vaughn Buxton, Dianaloo Farmer, Toneshia Scales, Adam Bente, Sandra Lawrence, Debbie Gasaway, Harlow Cisco, Norman Milsner, Hamisi White, Frank Fales, Eddie Smith, Julianne Camello, Takesia Sanford, John Raya, Mark Netzel, Diane Cizunas, Mark Ackerman, Lisa Kaysinger, Kylie Nyboer, Danielle Emick, Dan Berry, Leilena Jones, James Reddish, Lorraine Rowe, Catherine Watt, Stu Oster, Ah Lan Ferrara, Stacie Pendleton, Andy Arden, Caroline Pegueros, Kimberlee Black, Teressa Kohman, Whui Kim, Canda Gray, Justin Cooper, Tammie Knight, Haller Norma, Patricia Thomas, Jay Romick, Michael Smith, Christian West, Diana Brooks, Salazar Daniel, Arash Shamsian, Fran Long, Suzette Wilder, Warren Lamb, Brenda Anderson, Patricia Birdsall, Rachel Nguyen, Lisa Pena Humes, Kevin Robinson, Murray Schechter, Corinne Andreano, Carol Novak, John Tarjavaara, Mercedes Gonzalez, Allen Wone, Kelly Manke, Susan Digianfilippo, Craig Renner, John Lund, Carol Maidlow, Rodney Sloan, Lea Sims, Abu Omar, Jim Policastro, Chrystal Caudle, Tammi Kellenberger, Aubrey Tanciangco, Bernadette Bitanga, Pam Martinez, Jan Bedell, Aimee Pavek, Chaka Theus, Hijinia Guerrero, Patrick Musni, Gilberto Pantoja, Patty Justiniano, Jeffrey Green, Cheri Roe, Leonard Bednarczyk, Frances Murray, Diane Jackson, Michelle Victory, Eileen Del Rosario, Erwin Hildenbrand, Richard Ernst, Melinda Jackson, Michelle Arellano, Bradley Lavalley, Julie Stasko, John Parkhurst, Rick Slansky, Romell Eggleston, Christy Broccardo, Jose

Gonzalez, William Bell, Sacha Mercado, Margaret Grady, Elvira Castillo, Frederick Zubrin, Billy Woody, Joy Baynes, John Lewis, Eric Moreno, Mike Reyes, Marcella Pena, Betty Deconter, Karen Nash, Randy Lancaster, Bradford Patrice, Alan Swinford, Carson Tang, Rachel Rivera, Bryan Boone, Tom Harper, Sarah Kirk, Rebecca Dutton, James Domsic, Anabel Rodriguez, Daniel Tafolla, George Masny, Frank Lescrinier, Steve Griffith, Heather Hierl Weimer, Rebecca Huerta, Greg Edelson, Wendy Fosnaugh, Daniel Moore, John Davis, Frederick Davis, Erin Mcraith, Daniela Kreidler, Jimmy Sutton, Porter Katherine, Richard Wiseman, Jeanette Hale, Rene Lundy, Vonnie Dawson, Lonnie Hiatt, Jose Hernandez, Robin Chrusniak, Susan Gallardo, Linda Siriano, Julie London, Emily Dupree, Danny Abbott, David Colbert, Michael Harvey, Lynne Schick, Kevin Brown, Richard Dwyer, Evelyn Blizzard, Strassalyn Ayuba, Justin Patt, Jennifer Smith, Dennis Gross, Bob Madura, Scott Morgan, Shawna Hook, Mike King, Gloria Ana Ramirez, John Woodruff, Elliott Eubank, Kathleen Thomas, Bill Henshaw, Leeandra Brocker, Donna Ball, Ariana Clayton, Leslie Wilson, Fred Orr Jr, Mary Margaret Hudak, Victor De Grande, Traci Priest, Alan Maxwell, Dolores Gay, Robert Trujillo, Vivian Fernandez, Sandra Harmon, Aaron Campbell, Adly Pozas, Allen Heinen, Arthur Okeeffe, Robert Martz, James Wheeler, Julie Drake, Michael Mccluskey, Steven Simanonok, Maureen Goff, Melissa Flint, Celeste Bemoras, Robert Miller, Yolanda Gagne, Angel Arriaga, Mary Barrow, Mike Mccallum, Albert Jones, Esmeralda Cardenas, Linda Thompson, Donna Brooks, Nicole Morales, Donna Shore, Patricia Misso, Jose Osuna, Adrian Macias, George Duty, Joseph Lopez, Chessie Delaney, Leslie Riggs, David Quimby, Frank Vigneri, Alisha Alexander, Sylvia Madden, John Zwierzko, Kenneth Pulliam, Davie Cabral, Kathe Burkhart, Shawn Kulich, Scott Szydzik, Siegmund Baklarz, Luis Munoz, Theresa Drust, Ernest Nixon, Paul Norman, Melissa Magallanes, Judy Witasik, Melody Centonze, Christie Locascio, Roanne Pallasigui, Sue Dudowitz, Kristen Hejnal, Zach Wylie, Amanda Westrich, David Felker, Gordon Anderson, Julia Lamas, Brooke Bingaman, Deborah Herrera, John Merrill, Michael Keblusek, Susan Odaffer, Miguel Contreras, Tony Armalis, Zack Carrera, Katrina Brown, Chadd Creed, Justin Storer, Leticia Ramirez Artiaga, Gina Garcia, Joan Dimaio, Ryan Stephen, Janet Gibbs, Veronica Ramirez, Frank Sotelo, Fabian Marquez, Kristin Zimmerman, Mike Peters, Joshua Goldberg, Anthony Caceres, Alexandria Hill,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Theresa Derfuss, Perri Davis, Chanell Davis, Art Wood, Timothy Mancini, Reginald Mcafee, Kevin Gwartney, Nick Angilello, Evert Ortega, Sharon Barker Tubbs, Jaime Ryan, Derek Vanwinkle, Katie Birchfield, Christina Dorato, David Arnson, Debra Tapia, Kim Mandichak, Terry Saberhagen, Cj Benbrook, Tiffanie Williams, Lisa Wicker, Kim Serani, Robert Wing, Norm Halbert, Winston Chavoor, Gary Peterson, Barbara Mcdermott, Ramona Ali, Paul Cynkar, Adella Spencer, Kaitlyn Kelly, Jerry Hefley, Bill Griffin, Amanda Carney, Caesar Snee, Donald Forgy, Ashley Erickson, Danny Boswell, Jeremy Neimand, Janina Bias, Donna Cerro, Bob Sharpe, Evelyn Radcliffe, John Borders, David Pires, Alice Dortch, Sam Davis, Brian Powell, Annette Cady, Connie Tolefree, Steven Stecher, Paul Wasserman, Kristin Sanchez, Jessica Jolson, Michael Schofield, Robert Hefley, Dana Garlington, Andrew Coronado, Rick Cervarich, Vance Hallman, Carollee Rivera, Michael Lock, Sandy Adams, Jasmine Young, Misty Robles, Laura Simmons, Gretchen Trejo, Michelle Mccalister, Antoinette Carter, Herbert Huey, Gina Garcia, Reema Khan, Lonnie Briggs, Sebastian Romeo, Timothy Winthers, Stephen Goldhorn, Tom Moore, Glenn Maddock, Lennea La Hommedieu, Madeleine Rogow, Vernon Porter, Jon Evans, Terri Welch, Anthea Smith, Jason Williamson, Walter Macie, Sharon Herrera, David Williams, Deborah Morris, Denese Stthomas, Esther Torresulloa, Alissa Joseph, Alfreda Phillips, Fernando Garcia, Joel Dinovo, John Greggs, Roger Bubel, Richard Friedlander, Fernando Delgadillo, Charles Jedlicka, Teena Riley, George Kresse, Chuck Shepherd, Yvette Afflerbaugh, Jeff Ravenscraft, Mary Bateman, Robert Oliver, Warren Bjork, Adriana Martinez, Laura England, Somer Lowery, Julie Hart, Spencer Kayden, Robert Hamilton, Paul Kopilak, James Macpherson, Adam Iannazzo, Natalie Zimmerman, Michael Williams, Irene Mendoza, Luis Delgado, Lauren Anderson, Sonia Williams, Tara Brown, Bruce Cohen, Rochelle Hayes, Luis Correa, Abbey Austin-Wood, Delores Navarro, Bill Lewis, Detra Thompson, Meghan Fisher, Kevin Bradley, Lillian Harris, Carolyn Rogers, Raven Jeffries, Arthur Fisk, Gretchen Clifford, Kimmy Mcdaniel, Mark Fabela, Anna Watrous, Ignacio Menendez, Letty Guttilla, Shannon Jeralds, Stephen Monk, Howard Peter Brody, Heather Bush, Michael Portalatin, Diana Cruze, Ted Coopersmith, Paul Clem, Sandra Aguilar, Barbara Dube, Jacqueline Johnson, Jeffrey Lauritzen, Richard Moody, Peter Levakis, Hilary Howard, Kim Victor, Walter Viteri, Nicole Branch, Scott Otsuka, Renee Vetter, Lisa

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Herron, Richard Clark, Doug Alton, Steven Martin, Derek Esparza, Rhonda Conley, Talia Oropeza, Derrick Posner, Eli Kuo, Noel Aispuro, Sandra Abernathy, Gajewski Cynda, Michael Termine, Hiram Aguilera, Olivia Pittman, Jayson Sandoval, Steven Wise, Lucy Cordero, Cindy Wong, Laura Brown, Tg Lawson Iii, Robert Emerick, Gary Washington, Robert Staup, David Pask, Matt Mellon, Erin Pellot, Judith Davis, Faith Holland, Alison Erbetta, Thomas Miller, Jessica Serrano, Connie Peart, Eddie Galloway, Maria Lauro, Stacey Dick, Robin Cutler, Margo Schullerts, Alfredo Cunanan, Eyvonne Galloway, Kathryn Ploss, John Burke, Carl Willat, Erica Beveridge, Todd Mitchell, Amber Linnell, Wendi Rodney, Roderick Billingsley, Pete Fields, Natalie George, Marietta Falk, Ann Wenzell, Stanley Vossler, John Eccleston, Grace Reyes, Cindy An, Arthur Degennaro, Dina Kimbrough, Zach Johnson, Richard Sandona, Angela Hutcheson, Lora Duncan, Harlan Lawler, Edward Padilla, Janet Litton, Kevin Lewis, Danute Mazeika, Tracy Clark, Bill Hartman, Sue Caico, Russell Dilillo, Mala Dhillon, Katherine Drouin-Keith, Laura Green, Michael Bailin, James Greenwood, Malika Sanders, Judith Chapman, Ronald Matthias, Ramona Swift, Laurel Debello, Maria Sandoval, Yohan Isaac, Charles Sellman, Kathleen Maxian, Lynette Freeman, Dennis Sidoti, Ann Noel, Pamela Coleman, Michael Lopes, Kurt Nicolai, Timothy Conway, Lisa Lakritz, Alyssa Sepulveda, Lita Theodore, Jane Pannell, Gricelda Chavez, Wane Webber, William Keegan Jr, John Cordogan, Krista Robles, Steven Dewoody, Eduardo Rico, Anthony Rotella, Latonia Hoskins, J K Thomasser, Brittney Mouw, Suzanne Mccombs, Myron Porter, Richard Kanatzar, William Quinn, Jesus Castillo, Anthony Paiva, Tara Robertson, Latonia Newton, Debra Mccormick, Bee Vongphakdy, William Hegarty, Nik Lozano, Robert Reichert, Chrystal Bernasconi, Phyllis Hong, Mark Filcich, Kathie Oconnor, Karry Kleemann, Angelo Logrande, David Libert, Christine Poulsen, Edgard Entrala, Geovanni Alvarado, Maurice Calderon, Jeff Rodriguez, Katherine Macalma, David Williams, Daniel Mayeda, Joanne Simonson, Jessicz Leka, Amanda Rodriguez, Michael Skalon, Greg Williams, Julie Vad, Gloria Knight, Philip Olszewski, Dean Miya, Deborah Moran-Villarreal, Christine Scadina, Shawn Blethen, Francis Mateo, Greg Fung, Jeffery Lindsay, Farimah Mcharo, Roman Villapando, Rex Thornhill, Erica Gonzalez, William Combs, Kim Lawson, Jessica Plaut, Elizabeth Collins, Jim Shere, Michael Hastings, Tinnikie Atkins, Steven Rock, Mark Morales,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Tamera Tanubagijo, Sean Patrick Lewis, Susan Campbell, Yvonne Vasquez, Eugenia Chen, Catharine Naughton, Delores Gilson, Jose Lopez, Charles Grey, Lope Yap Jr, Sue Trueblood, Connie Jones, Shana Hager, Lynne Pieroni, Anthony Brucia, Steve Pearlman, Renee Thompson, Derek Proffitt, Angela Tomey, Larissa Rapadas, Jonathan Cart, Gary Eisenberg, Kent Colton, Ryan Weatherby, Fran Oglesby, Joy Voltenburg, Joan Thomas, Ray Beldner, Robin Lane, Brenda Morales, Raul Morales, Gail Levine, John Burgess, Daragh Bennett, Bill Poggensee, Shelley Shepherd, Terrie Silva, Mark Christensen, James Andriacchi, Jennifer Boukidis, Juan Torres, Lisa Wilkins, Alicia Rodriguez, John Miles, Derek Michaels, Kelly Mochel, Kelly Parker, Silverio Sanchez, Elena Hedderig, Lester Stamnas, Ann Keating, Trista Powers, Issa Spencer, Mauricio Hernandez, Carolina Valenciano, Victoria Patryn, Nicole Wyszynski, Christina Coughlin, Maurice Stroud, David Sommerfeld, Cuong Nguyen, Carlos Yanez, Michelle Adams, Amy Kendall, Ryan Malloy, Doug Williams, Gary Reitmeier, Rebecca Garcia, Annette Barnes, Eps Shrat, Szeredy Andrea, Angela Hughes, Theresa Scott, Tony Provancal, Nancy Reiter, Hannah Schulman, Amy Davis, Donald Adams, Carlos Gonzalez, Barbara Kenning, Lency Montgomery, Brigitte Robertson, Marvin Fishman, Marian Jacob, Anna Darosa, Susan Drabing, Karen Davidson, David Pinzolo, Rusty Allen, Shawna Weyrich, Cheryl Ames, June Delane, Bill Hanna, Michael Smith, Mehdy Naitaki, David Pesola, Jeff Wong, Bernard Whalen, Susan Myers, Jana Sheehan, Danielle Labarre, Christine Hendrix, Brad Reisz, Becky Bataille, Theresa Henderson, Thomas Dooley, Tyndall Mun, Gloria Wroten, Jessica Sticklen, Stephanie Ochoa, Ashley Willinger, Shavasia Golden, David Pichon, Linda Novy, Fred Kinney, Blair Parker, Lynn Walker, Wes Wheadon, Liz Sampras, Louis Scaturro, Michele Finley, Pat Munson, William Wallace, Marc Seligman, Vanessa Alonzo, Catherine Manion, Ruth Mattison, Frank Zazanis, Neil Holman, Nancy Dolan, Chris Reiman, Victor Krumdick, Patrick Schneider, Dejuan Boyd, Gretchen Morales, Bill Fagan, Ted Pon, Priscilla Reyes, Anita Munoz, Ralph Ferri, Amanda Traxler, Rebecca Piper, Luz Padilla, Laurel Digangi, Kye Osti, Robert Zirgulis, Erica Stephenson, Peggy Pugh, Evelyn Salas, Shakeel Syed, Denise Stires, Gary Bell, Richard Miller, R Lee Jewell, Ayreanne Bordeaux, Linda Seibert, Erica Madden, Wayne Guzak, Diane Butler, Jill Frechette, Melissa Norton, Bill Nolan, Genevieve Brammeier, Jimmy Tran, Ron Jozaites, Lindsay Boyster, Luis Villavelazquez, Diana Rangel,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Johnathan Stoor, Keith Hastings, Nate Bailey, Joel Holzman, Nicole Duzy, Darlene Prescott,

2   Kecia Bailey, Roland Ferrer, Nanci Oconnell, Tammy Cabrera, Allen Denni, Steven Rochester,

3   Brian Swanson, Gregory Wroblewski, Julie Schrey, Judy Zeeb, Christine Jackowski, Beatriz

4   Avendano, Orv Neconie, Katrina Condis, Simon Chaykler, Jessica Dambrose, Jeffrey Plaza,

5   Daniel Kupper, Connie Owens, Judy Nast, Dennis Canfield, Christina Burlison, Alfred Garcia,

6   Kimberly Schultz, Nick Jones, Susana Luna, Lawrence Kornit, Michael Austin, Amy Taiwo, Scott

7   Beaver, Floro Munoz, Shukay Suzan, Mary Lopez, Ritesh Seth, Nopadol Chuaycharoensuk, Seth

8   Roberts, Jenevieve Hayes, Justin Majzel, Margaret Blake, Daryl Marcott, Shelah Spiegel, Michael

9   Brown, Diane Talbert, Craig Johnson, Scott Janus, Suzanne Lewis-Gregory, Nancy Alonzo,

10  Juanita Bryant, Diane Mcpherson, Rudy Cendejas, Dave Yuen, Gary Whyte, Steve Lemire,

11  Fernando Di Zitti, Antonio Mariano, Michael Padden, Nicole Henry, Gary Stansbury, Bruce Pleat,

12  Erin King, Gabriel Lopez, Robert Tannenbaum, Merlita Felipe, Rainer Mueller, Enricque

13  Williamson, Mike Chambers, Catherine Winnie, Jose Rodriguez, Kerrigan Weber, Linda Hyman,

14  Jaycee Mcgee, Robert Jorgensen, Victoria Almaraz, Erick Bieger, Wylma Harmon, Jay Leavelle,

15  Emily Welker, Kristen Lick, Steven Payne, John Hipp, Julie Fair, Theresa Dolan, Kimberly Boltz,

16  Yvonne Invergo, Darryl Cass, Jesse Estrada, Tina Casey, Matthew Stevens, Harv Bisla, Steven

17  Koppany, Ruth Tyson, Frank Jang, John Journeay, Robert James, Charlotte Roberson, Kathy

18  Pruitt, Garren Saccomano, Kevin Nguyen, Cleo Sisco, Susan Maki, Peter Rizzo, Corinne Jacob,

19  Julie Hammond, Loni Cooper, Kimmie Jones, Robert Kirwan, Jarryl Anderson, Kathy Smolansky,

20  Brian Burch, Ken Mcgowan, Gregory Okulove, Alexander Gonzalez, Eric Spillman, Scott

21  Thompson, James Nelson, Catherine Bratton, Mark Jurczeski, Kristi Lewis, Michael Vink,

22  Syledra Hart, Alexia Wilson, Judith Stein, Nicole Fuller, Tim Jacobson, Peter Janoff, Keith

23  Eaddy, Eileen Cortez, Roger Williams, Shayla Rossignol-Smith, Rosa Cromwell, Broderick

24  Baldwin, Stephanie Morris, Cynthia Vasquez, Michael Poole, Brian Altman, Cindy Wright, Paula

25  Klein, Peter Yaya, Adrianna Trujillo, Susan Ballou, Geneva Wisnewski, Tamara Frazier, Shanika

26  Starks, Catalina Duenas, Karla Tapia, Joann Pepperdine, Tena Huson, Jonathan Mintzer, Robert

27  Denker, Maria Armijo, Lisa Williams, Kyle Shell, Barbara Sullivan, Elizabeth Mack, Marvin

28  Foster, Debbie Potter, Bob Ehrlich, Lucille Fincher, Richard Colorado, Michele Duggan, Carrie

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Spiro, Jennifer Garner, William Sussman, Deondre Bedgood, Andrew Thompson, Hecht Lauren, Thomas Joyce, Leo Yioupis, Linda Nguyen, Angela Morelli, Jeffrey Van Dam, Ashley Cohen, Robert Windham, Sarah Wilde, Karen Tolleson, Roger Jones, Robert Adams, Steve Aardappel, Eric Santillan, Mark Graves, Patti Morton, Dan Greenspan, Terry Johnson, Janis Luft, Karen Austin, Floyd Fenex, Cornelius Lewis, Jeff Ricker, Fanesha Fabre, Brad Draper, Lana Gartin, Sarah Yi, Brad Whitacre, Mary Prete, Susan Watson, Rick Quezada, Clarence Wilson, Angela Kirkwood, Maritza Cantu, Veronica Smith, Jacob Hancock, Jamila Banks, John Pearson, Maurizio Ursetta, Russell Lombardo, Karla Castro, Kristen Mcnelly, Benito Rios, Daniel Wozniak, David Clark, Kendra Cato, Ruth Tekeste, Manish Gupta, Jessica Ornelas, Janice Harris, Christina Jones, Mary Pankow, Jacqueline Boubion, Lisa Coney, Jeanette Vogt, Denisha Hawkins, Chester Barnhart, Teresa Stevens, Susannah Christopher, Raymond Chin, Carol Soriano, Beverly Fleer, Rosie Gonzales, Nichelle Weathers, Samnang Vang, Emily Citraro, Darlene Franco, Zinnia Esqueda, Natalie Cole, John Santillano, Kim Kibler, Helen Aguilar, Roberta Quon, Tim Rathbone, Judy Madnick, Stephanie Smith, Denise Yarbrough, Roger Yoh, Peter Chen, Ken Coulter, Magdalena Barrera, Maria Ballesteros, John Cummings, Nancy Mcfadden, Edward Paul, Luis Ramirez, Lorena Pena, Norma Reyes, Mona Hodges, Anthony Alberts, Patricia Hallissey, Ruby Beltran, Kennith Mascheri, Gerri Entler, Debra Edwards, Carlos Lerma, Alexandria Torres, Lisa Donahue, Zeb Maclennan, Emmanuel Baez, Jaree Adams, Rosemp Marousek, David Ginsburg, Amanda Reasons, Scott Omori, Migdalia Rivera, Debbie Miller, Kenneth Smith, Paige Meyer, Carlos Perez, Christina Rescigno, Lydia Gomez, Cheryl Smith, Priscilla Marie Torres, Ginger Wiley, Pete Duran, Chris Huff, Nancy Cordero, Sonserae Leese, Peter Dreyfuss, Stephen Blackwell, Jenny Rattaro, Mark Dennis, Erin Peterson, Martha Estrada, Julio Cabrera, Karla Rae Barker, Robert Dumitru, John Blake, Sam Ciccosillo, Jay Dedontney, Billy Boner, Barbara Mcdonald, Jo-Ann Crandall, Willard Elliott, Claudia Gonzales, Doc Phil Meyerson, James Friedrich, Robert Sandberg, Ray Beck, Jesse Barba, Michael Basnight, Rusanna Coyamin, Sarah Drisko, Chuck Kiriakos, Duane Boyer, Sona Smith, Michael Osullivan, Dana Baier, Aaron Jacobs, Socorro Montoya, Kim Mcbride, Robert Maron, Michelle Gardner, Phil Correale, Esther Millan, Anissa Singleton, Debora Garcia, Kristin Eller, Katherine Sherman, Lara Boyko, Ric Nesslage,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Luis Salgado, Lonny Huffar, Roy Nicholas Boyce, Alberto Caputo, Elizabeth Sanchez, Theresa Rodriguez, Carlos Mungarro, Emily Guzman, Nicole George, Judy Charlton, Mary Bonner, Ronnie Snipes, Jason Portis, Steven Bernstein, Jeff Marsh, Dyann Payne, Renona Weathersby, Ira Brooks, Sara Kim, Angela Hackett, Ericka Aguilar, Nathan Scoggins, Denise Bradbury, Ronald Matusea, Ernest Macmillan, David Fish, Tracy Holmes, Monica Dyakanoff, Melanie Votaw, Brian Bon, Peggie Kennison, Mary Grady, Charles Grauerholz, Cristina Duenes, Ron Kolman, Sharyn Felton, Timothy Peron, Steve Foster, Epigmenio Cueva Jr, Stephanie Sojka, Elizabeth Ohowell, James Mcmanus, Monica Dunkin, Calvin Byer, Arturo Dominguez, Eric Bass, Barbara Gaskill, Tony Brzezowski, Faddy Malley, Pauline Palmer, Rayna Palomino, Susana Castillo, Suzanne Zuniga, Regina Doddington, Tiffany Wade, Bruce Cameron, Bessie Karegianes, Stacey Phipps, Shyma Afredi, Paula Rivera, Terry Romero, Lon Adams, Kim Kasunic, Anabell Chavez, Len Kovner, Maneca Colquitt, Louis Godoy, Nicole Hoogland, Verna Agboola, Kayla Svereika, Rufino Landayan, Angelica Minjares, Crystal Mitchell, Felicia Raprager, Maria Corrales, Gina Toafa, Jen Duran, Pablo Flores, Paula Carl, Francesca Collebrusco, Angelica Bellavia, Lisa Johnson, April Rocha, Doddie Hecht, Joanne Conte, Tammy Tyler, Nadia Lopez, Aris Alvarado, Joy Gallivan, Emily Zinda, Debbie Kocol, Marcos Lopez, Emily Eyth, Rebecca Velazquez, Hannah Moore, Keisha Bishop, Deb Janus, Ruddy Vargas, Floyd Vergara, Margaret Lyburtus, Dean Bruce, Thomas Maloy, Gayle Walls, Maria Panduro, Diana Swearingen, Bob Roth, Dick Winters, Saul Gonzalez, Eric Kuck, Robert Brenneman, Marcos Fuentes, Margaret King, Kimberly Garcia, Christopher Kelley, Sylvia Lubera, Lisa Wardell, Kelly Madison, Kenneth Stollman, Michio Nakajima, Angela Devolder, Elaine Kennedy, Teresa Desatnick, Sabela Portillo, Andre Concepcion, Isaiah Burchett, Randy Sprout, Carlos Ponce, Stephen Bonelli, Jennifer Harrell, Douglas Beaver, Mariah Landis, Alisa Jones, Scott Baugh, Deborah Andrews, Sandra Walsh, Karen Fiorino, Barbra Conner, Allan Preckel, Stacy Frisher, Kristine Morris, Don Abel, Pamela Rico, Susanne Popaeko, Maria Canale, Dennis Dixon, Laurie Kester, Brandy Conaway, Laura Tabachnick, Eduardo Yabut, Lauri Hanson, Regina Mcgrath, Kim Brezniak, Judy Aronson, Nicole Conway, Erin Delegan, Jessie Landau, Wayne Nash, Bryttney Isgar, Elaine Smith, Lesly Mayoral, Scott Leeson, Callie Thurman, Rene Quimby, Benjamin Pauly, Evyette Gaines, Carol

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Sevilla, Humberto Lozano, Diane Sullivan, Russell Gilliam, Michelle Huitron, Graham Jones, Karl Shultis, Juanita Hernandez, Jeffrey Valfer, Bill Vanhorn, Megan Akright, Leonilo De Leon, Robert Lawson, Jessica Boccia, Joan Giammarino, Linda Silacci-Smith, Michael Hoyt, John Mendez, Colleen Gray, Susan Berenson, James Carmany, Dimitrios Pardalis, Suzanne Whitford, Alejandra Zavala, Arthur Wilderman, Deana Nuxoll, Erin Riffel, Shelli Salles, Eric Brown, Ilisa Goldman, Kristen Mclaughlin, Judie Arriola, Tanya Heuges, Kimberley Deems, Katie Swanson, Linda Paolano, David Martin, Kevin Burch, Charles Bernacchi, Lameisha Sherri and Judy Cronin (collectively, "Defendants").  Defendants are purchasers of Epson printers who, on information and belief, have been roped into a frivolous mass arbitration scheme by their counsel (Labaton Sucharow LLP) that seeks to extort a large settlement based not on the merits of any consumer grievance against Epson, but rather on the threat of having to pay tens of millions of dollars in individual arbitration filing fees.  Indeed, Defendants' counsel have threatened to file thousands of more arbitrations like those filed by Defendants in the wrong arbitral forum and without undertaking mandatory informal dispute resolution procedures to manufacture settlement leverage.

2.    Epson has no interest in suing its customers and files this suit only as a last resort because, despite Epson's repeated efforts to convince their counsel to observe the basic requirements of their clients' binding arbitration agreements, Defendants' counsel persisted in filing individual arbitrations on behalf of Defendants and others[1] in the wrong arbitral forum. Epson brings this action solely to enforce the terms of the parties' arbitration agreements, which Defendants have violated through the arbitrations their counsel have filed, and to require Defendants to pursue their claims in the contractually-mandated forum, FedArb, a nationally-recognized arbitration provider.

3.    According to the Labaton Sucharow law firm, Defendants are "individuals who purchased Epson printers and wish to use less expensive third-party ink," but allege that software

---

[1] Epson is filing this complaint against this initial group of Defendants while it investigates the claimants in the hundreds or thousands of additional arbitrations Defendants' counsel have filed concurrently or will file in the future (as counsel has threatened).  Epson intends to promptly amend its complaint to substitute additional claimants for the Doe defendants based on that investigation.

and firmware updates "disable" their printers "when non-Epson, replacement ink cartridges are installed." (In fact, as Epson discloses prominently on its packaging, in its instructions, and on the firmware update page itself, its printers are designed for use with Epson cartridges only and non-Epson cartridges may not continue to function after firmware updates. These updates keep the printer functioning as designed, prevent the inadvertent use of counterfeit cartridges, help to prevent damage that may not be covered by the limited warranty, maintain optimal printer performance, and promote overall customer satisfaction with Epson printers. Epson is also the leading manufacturer of EcoTank printers which do not use cartridges and deliver some of the lowest cost per printed page available in the industry today.)[2]

4.     In 2022, Labaton Sucharow informed Epson that, absent a resolution it deemed acceptable, its 13,000-plus clients "intend[ed] to commence individual arbitrations," alleging a variety of claims, with the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). On March 6, 2023, Labaton Sucharow proceeded with filing 3,994 individual arbitrations in JAMS, including those brought on behalf of the Defendants.

5.     Epson does not seek to deprive its consumers access to the arbitration proceedings to which they are entitled, and it fully anticipates defending and vindicating itself on the merits in any properly-filed case. But Defendants have failed to comply with a material condition precedent to pursuing arbitration: Epson's End-User Software License Agreement ("EULA") expressly requires that a party wishing to pursue claims against the other party engage in a sixty-day period

---

[2]  Third parties make efforts to "hack" Epson's patented cartridge and printer designs to offer non-genuine ink cartridges that purport to work with Epson printers. There is also a significant market presence of counterfeit ink cartridges. These counterfeit and other third-party cartridges are widely available on online marketplaces such as eBay and Amazon, but are not sold by traditional brick-and-mortar retailers such as Staples or Best Buy. Epson actively pursues counterfeiters through online and offline investigations, civil and criminal raids, and District Court actions. Epson has actively enforced its intellectual property rights, including by obtaining General Exclusion Orders and Cease and Desist Orders from the International Trade Commission, prohibiting patent-infringing cartridges from being imported, offered for sale, or sold in the United States, and through District Court actions against resellers of such cartridges. Still, some counterfeit and other non-genuine cartridges continue to make their way to the market, especially through online marketplaces. Epson firmware updates keep the printer functioning as designed, prevent the inadvertent use of counterfeit cartridges, help consumers prevent damage that may not be covered by the limited warranty, and promote overall customer satisfaction.

of good-faith efforts at informal dispute resolution prior to filing an arbitration. Rather than comply with this requirement, Defendants have failed to engage in good faith efforts at informal dispute resolution. Indeed, Defendants have at most provided evidence that they *may* have purchased an Epson printer (which is more than thousands of their counsel's threatened future claimants have done); none has provided any proof they received an allegedly "disabl[ing]" software or firmware update, much less any evidence supporting their claims under the Computer Fraud and Abuse Act claim and antitrust laws.

6. Further, although the EULA requires that "mass arbitrations"—such as those filed by Defendants and their co-clients—be filed with and administered by FedArb, Defendants' counsel have filed Defendants' arbitrations with JAMS.

7. The filing of individual arbitrations by Defendants and the remainder of Labaton Sucharow's 13,000-plus clients in JAMS may trigger requirements for Epson to pay filing fees in excess of $20,000,000 merely to prevent default, despite the fact that (i) none of these individuals has complied with the material condition precedent of engaging in good faith efforts at informal dispute resolution before filing claims and (ii) the EULA requires that mass arbitrations be filed with FedArb. (In many instances, filing fees are fully nonrefundable from JAMS five days after the arbitration demand has been filed, and, in consumer arbitrations, the fees cannot be recouped even where the company demonstrates the filing was frivolous or is completely victorious on the merits.) Epson brings this action for declaratory and injunctive relief against Defendants both to establish its rights under the EULA against these Defendants and to provide guidance to the remainder of Labaton's clients regarding the EULA's requirements regarding good faith pre-suit informal dispute resolution efforts and the proper arbitration venue for their claims.

8. In filing this action, Epson seeks to enforce the express provision in the EULA delegating to the Court any disputes concerning (i) compliance with the agreement's informal dispute resolution process, and (ii) failure to commence arbitration proceedings in the appropriate forum. Epson does not intend in any way to waive its right to arbitrate the claims Defendants have asserted against Epson and instead seeks to enforce its right to arbitrate those claims in the proper forum.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**The Parties**

9.      Epson is a corporation organized under the laws of the State of California, with its principal office located in Los Alamitos, California.  Epson is a wholly-owned subsidiary of Seiko Epson Corporation.  Epson sells, markets, and performs customer service for Epson printers and related software and/or firmware in North America.

10.      Defendants are individuals who, on information and belief, reside in the States of California, Illinois and New York and who, through their counsel at Labaton Sucharow, served a demand on Epson in California, commenced binding arbitration against Epson in JAMS seeking (among other relief) to enjoin certain business practices Epson conducts in California, and served their arbitration demands on Epson in California.

11.      On information and belief, Does 1-20,000, inclusive, are individuals who, through their counsel at Labaton Sucharow, have commenced or, through their counsel, have threatened to commence binding arbitration against Epson in JAMS in California.  Epson will amend its complaint to identify these individuals as their arbitrations are filed and Epson is able to confirm that the individuals are, in fact, Epson consumers bound by Epson's EULA.

**The End-User Software License Agreement**

12.      Epson printers include software and firmware that consumers can keep up-to-date with the latest upgrades, improvements, and patches through updates they can download over the Internet.  In accepting these updates, Epson consumers are also asked to accept the then-current EULA.  A true and correct copy of the operative EULA is attached to this Complaint as **Exhibit 1**.

13.      On information and belief, each of the Defendants accepted the terms of the operative EULA.

14.      Among other terms, the EULA includes several provisions relating to arbitration for consumers living within the United States.  With respect to any dispute between a consumer and Epson (excluding specified intellectual property claims and claims for public injunctive relief), the EULA requires the parties "to try, for sixty (60) days, to resolve any Dispute informally" before filing an arbitration.  EULA § 22.2.  The parties further agree that "engaging in this initial dispute resolution process is a material term" of the EULA "and a requirement that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

must be fulfilled before commencing any arbitration." *Id.* The parties acknowledge in the EULA that "either party's failure to comply with the provisions" of the section requiring the informal dispute resolution efforts "would irreparably harm the other" and that "a court may issue an order staying arbitration (and any obligation to pay arbitration fees) until the initial dispute resolution process . . . is complete." *Id.*

15.    The EULA further makes clear that any "disagreements regarding compliance" with the informal dispute resolution term "shall be decided by a court, not an arbitrator," and "pending resolution of any such disagreements by a court," the parties agree that "arbitration (as well as any obligation to pay arbitration fees) shall be stayed until the initial dispute resolution process . . . is complete." *Id*.

16.    The EULA also provides that "if 20 or more demands for arbitration are filed relating to the same or similar subject matter and sharing common issues of law or fact, and counsel for the parties submitting the demands are the same or coordinated," the parties "agree that this will constitute a 'Mass Arbitration.'" § 22.6(h). Under the EULA, the parties "agree that [a mass arbitration] shall **_not_** be governed by JAMS Rules or administered by JAMS," *id.* (emphasis original), and shall instead "be administered by FedArb, a nationally recognized arbitration provider" and "resolved using FedArb's Framework for Mass Arbitration Proceedings ADR-MDL." *Id.*

17.    As with the mandatory informal dispute resolution provisions, the EULA confirms that the parties agree that: "if either party fails or refuses to commence the Mass Arbitration before FedArb," the other "may seek an order from a court of competent jurisdiction compelling compliance . . . and compelling administration of the Mass Arbitration before FedArb"; "all arbitrations comprising the Mass Arbitration (and any obligation to pay arbitration fees) shall be stayed"; "either party's failure to comply" with the mass arbitration provision "would irreparably harm the other"; and "a court may issue an order staying the arbitrations (and any obligation to pay arbitration fees) until any disagreements over [the mass arbitration provision] are resolved by the court." *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Defendants' Arbitrations**

18.     On August 31, 2022, an attorney from Labaton Sucharow sent or caused to be sent to Epson's legal department a purported "Notice of Claims of 6,570 Individuals Against Epson America, Inc."  In this letter, Labaton Sucharow claimed that it represented 6,570 individuals "who purchased Epson printers and wish to use less expensive third-party ink," but complained of Epson's alleged "pattern or practice of using unauthorized software and firmware updates to disable [their] printers when non-Epson, replacement ink cartridges are installed."  Absent reaching a "satisfactory resolution" within 60 days, Labaton Sucharow represented that these 6,570 clients would "begin filing arbitrations" with JAMS.  The only information Labaton Sucharow provided regarding each of its 6,570 clients was the client's name, phone number, and email address.

19.     On September 16, 2022, Epson responded, noting that the minimal information provided by counsel was insufficient to enable Epson to make even threshold assessments of the validity of their clients' claims.  Among other things, Labaton Sucharow provided no information as to whether each of its clients owns an Epson printer; if so, which printer the client purportedly bought (since not all Epson printers utilize the technology complained of in the August 31, 2022 letter); the date of purchase (to assess timeliness of claims); whether each client actually downloaded the challenged firmware or software; and whether each client in fact bought and tried to use any third-party ink cartridges.  Accordingly, Epson requested additional information to further the informal dispute resolution process, including: (i) proof of printer purchase; (ii) printer model purchased; (iii) date of printer purchase; (iv) serial number of printer purchased; (v) date on which third-party ink cartridges were purchased; (vi) brand of third-party ink cartridges purchased; and (vii) the date of any firmware or software download.

20.     On September 22, 2022, counsel at Labaton Sucharow sent or caused to be sent a further purported "Notice of Claims" against Epson, this time for an additional 6,802 clients, making the same substantive allegations as those levied in Labaton Sucharow's August 31, 2022 letter, and again stating that these clients would "begin filing arbitrations" with JAMS absent a "satisfactory resolution."

21.     To date, none of the Defendants has provided the information requested by Epson on September 16, 2022.  Indeed, Labaton Sucharow has provided verifiable serial number information for less than 9% of the 13,372 clients identified in its two formal "Notice of Claims" letters.

22.     On behalf of its clients, including Defendants, Labaton Sucharow has taken the position that the operative EULA does not apply to their claims.

23.     On March 6, 2023, Defendants, through their counsel, Labaton Sucharow, commenced individual binding arbitrations in JAMS in violation of the EULA.  Doe Defendants 1-20,000, inclusive, have—through their counsel—filed or threatened to file identical arbitrations in JAMS in violation of the EULA.

**First Cause of Action**
**Declaratory Relief**
**(Against All Defendants)**

24.     Epson incorporates by reference and realleges paragraphs 1-23 of this Complaint as if fully set forth herein.

25.     Pursuant to Section 1060 *et seq*. of the California Code of Civil Procedure, the Court may declare rights, duties, status, and other legal relations of the parties, regardless of whether further relief is or could be claimed, in the case of an actual controversy relating to the parties' legal rights and duties.  The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought.

26.     On information and belief, Epson and Defendants are parties to the EULA.

27.     An actual controversy has arisen between Epson and Defendants regarding Defendants' duties and performance under the EULA, including, specifically, their non-compliance with the condition precedent that they engage in a 60-day period of good faith efforts at informal dispute resolution prior to filing any arbitration and their filing of more than 20 individual arbitrations raising the same or similar issues, through the same counsel, with JAMS instead of with FedArb.

28.     Resolution of the parties' respective rights and duties under the EULA by declaration of the Court is necessary, as there exists no adequate remedy at law and Epson will be

1    irreparably harmed if Defendants maintain their arbitrations in the wrong arbitral forum and

2    without first engaging in the good faith informal dispute resolution efforts required by the EULA.

3        29.    Accordingly, Epson seeks a declaration from this Court that, *inter alia*:

4    (i) Defendants are bound by the EULA; (ii) Defendants have not complied with the EULA's

5    mandatory informal dispute resolution requirement; (iii) Defendants must dismiss their individual

6    arbitrations filed in JAMS and, to the extent they refile their claims, must file them with FedArb,

7    for resolution under its Framework for Mass Arbitration Proceedings ADR-MDL, instead of

8    JAMS, and only after complying with the EULA's mandatory informal dispute resolution

9    requirement; and (iv) Epson is entitled to a stay of arbitration proceedings filed by Defendants

10   with JAMS, including a stay of any requirements to pay JAMS filing fees, under the EULA

11   pending resolution of this action.

12                                    **Prayer for Relief**

13       WHEREFORE, Epson prays for judgment in its favor and against Defendants, as follows:

14       A.    For a declaration adopting each of Epson's contentions set forth in the above Cause

15   of Action for Declaratory Relief;

16       B.    For injunctive relief requiring Defendants to dismiss the arbitrations they have filed

17   with JAMS;

18       C.    For Epson's attorneys' fees to the extent permitted by law or contract;

19       D.    For Epson's costs of suit; and

20       E.    For all such other relief as the Court may deem proper.

21

22   DATED:  March 10, 2023              QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
23

24

25                                       By
                                            _____
26                                          Shon Morgan
                                            Attorneys for Plaintiff Epson America, Inc.
27

28

                                    -42-

# EXHIBIT 1

NOTICE TO USER: PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING OR USING THIS PRODUCT. IF YOU ARE LOCATED IN THE UNITED STATES, SECTIONS 19-23 OF THIS DOCUMENT APPLY TO YOU. SECTION 22 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES. AN "OPT-OUT" IS AVAILABLE UNDER SECTION 22.7 FOR THOSE WHO WISH TO BE EXCLUDED FROM THE ARBITRATION AND CLASS WAIVER.

This is a legal agreement ("Agreement") between you (an individual or entity, referred to hereinafter as "you") and Seiko Epson Corporation (including its affiliates, "Epson") for the enclosed software programs, including any related documentation, firmware, or updates (collectively referred to hereinafter as the "Software"). The Software is provided by Epson and its suppliers for use only with the corresponding Epson brand computer peripheral product (the "Epson Hardware"). BEFORE INSTALLING, COPYING OR OTHERWISE USING THE SOFTWARE, YOU NEED TO REVIEW AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING

THE EPSON PRIVACY POLICY stated in Section 17. If you agree, click on the Agree ("ACCEPT", "OK" or any similar representation of agreement) button below. If you do not agree with the terms and conditions of this Agreement, click on the Disagree ("EXIT", "Cancel" or any similar representation of disagreement) button and return the Software, along with the packaging and related materials, to Epson or the place of purchase for a full refund.

1.      **Grant of License.**  Epson grants you a limited, nonexclusive license to (i) download, install and use the Software for your personal and internal business use on hard disks or other computer storage devices, or in the case of a software application (also referred to as "Software"), on the smartphone, tablet, or other mobile device (collectively, "Device"), provided that the Software is used (i) **only** in a single location (e.g., a home or office or place of business), or in the case of a mobile device, on a Device owned or otherwise controlled by you, and (ii) **only** in connection with Epson Hardware owned by you. You may allow other users of the Epson Hardware connected to your network to use the Software, provided that you shall ensure that such users use the Software only in accordance with this Agreement. You agree to be responsible for and indemnify Epson for liabilities incurred as a consequence of use by such users. You may make backup copies of the Software, as necessary, provided the backup is only used to support your use of the Epson Hardware.

2.      **Upgrades and Updates.**  If you acquire an upgrade, updated version, modified version, or additions to or for the Software from Epson, the upgrade, updated version, modified version, or addition, shall be included in the defined term Software and governed by this Agreement. You acknowledge that Epson has no obligation to provide you with any Updates (as defined below in this Section 2) to the Software. Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third-party servers via the Internet to check for available updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug-ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates. If you installed the EPSON Software Updater and do not wish to allow Epson to check for available updates to the Software, you may disable this feature by uninstalling EPSON Software Updater. By installing the Software and not disabling any automated check for Updates, if applicable, you hereby agree and consent to automatically request and receive Updates from Epson or third-party servers, and that the terms and conditions of this Agreement shall apply to all of these Updates.

3.   **Other Rights and Limitations.**   You agree not to modify, adapt or translate the Software and further agree not to attempt to reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software. You may not rent, lease, distribute, lend the Software to third parties or incorporate the Software into a revenue generating product or service. You may, however, transfer all of your rights to use the Software to another person or legal entity, provided that the recipient also agrees to the terms of this Agreement and you transfer the Software, including all copies, updates and prior versions, and the Epson Hardware, to such person or entity. The Software is licensed as a single unit, and its component programs may not be separated for some other use. Further, you agree not to place the Software onto or into a shared environment accessible via a public network such as the Internet or otherwise accessible by others outside the single location referred to in Section 1 above.

4.   **Ownership.**   Title, ownership rights, and intellectual property rights in and to the Software shall remain with Epson or its licensors and suppliers. The Software is protected by United States Copyright Law, copyright laws of Japan and international copyright treaties, as well as other intellectual property laws and treaties. There is no transfer to you of any title to or ownership of the Software and this License shall not be construed as a sale of any rights in the Software. You agree not to remove or alter any copyright, trademark, registered mark and other proprietary notices on any copies of the Software. Epson and/or its licensors and suppliers reserve all rights not granted. The Software may also contain images, illustrations, designs and photos ("Materials"), and the copyright of such material belongs to Epson and/or its licensors and suppliers, protected by national and/or international intellectual property laws, conventions and treaties. For clarity, (1) the Materials shall be used for non-commercial purposes only, (2) the Materials shall be edited, adjusted and copied only in the manner designated by the Software, and (3) you may use the Materials only for lawful personal use, home use or as otherwise legally permitted.

5.   **Open Source and Other Third-Party Components.**   Notwithstanding the foregoing license grant, you acknowledge that certain components of the Software may be covered by third-party licenses, including so-called "open source" software licenses, which means any software licenses approved as open source licenses by

the Open Source Initiative or any substantially similar licenses, including without limitation any license that, as a condition of distribution of the software licensed under such license, requires that the distributor make the software available in source code format (such third-party components, "Third-Party Components"). A list of Third-Party Components, and associated license terms (as required), for particular versions of the Software is indicated at the end of this Agreement, relevant user manual/CD, or the license information displayed on your Device/in Software. To the extent required by the licenses covering Third-Party Components, the terms of such licenses will apply in lieu of the terms of this Agreement. To the extent the terms of the licenses applicable to Third-Party Components prohibit any of the restrictions in this Agreement with respect to such Third-Party Components, such restrictions will not apply to such Third-Party Component.

6.    **Multiple Versions of Software.**  You may receive or obtain the Software in more than one version (e.g. for different operating environments; two or more language translation versions; downloaded from an Epson server or on a CD-ROM), however, regardless of the type or number of copies you receive, you still may use only the media or version appropriate for the license granted in Section 1 above.

7.    **Disclaimer of Warranty and Remedy.**  If you obtained the Software by media from Epson or a dealer, Epson warrants that the media on which the Software is recorded will be free from defects in workmanship and materials under normal use for a period of 90 days from the date of delivery to you. If the media is returned to Epson or the dealer from which the media was obtained within 90 days of the date of delivery to you, and if Epson determines the media to be defective and provided the media was not subject to misuse, abuse, misapplication or use in defective equipment, Epson will replace the media, upon your return to Epson of the Software, including all copies of any portions thereof. You acknowledge and agree that the use of the Software is at your sole risk. THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND. EPSON AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE. Epson does not warrant that the operation of the Software will be uninterrupted, error free, free from viruses or other harmful components or vulnerabilities, or that the functions of the Software will meet your needs or requirements. Epson's

sole and exclusive liability and your exclusive remedy for breach of warranty shall be limited to either, at Epson's option, the replacement of the media for the Software or to refund your money upon returning the Software and Epson Hardware.

Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer. If the above remedy fails for any reason, Epson's entire liability for a breach of warranty shall be limited to a refund of the price paid for the Epson Hardware. Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control. This Limited Warranty is void if failure of the Software resulted from accident, abuse, or misapplication. THE STATED LIMITED WARRANTIES AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHERS. EPSON DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE. SOME STATES OR JURISDICTIONS, HOWEVER, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, AND IN SUCH STATES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

8.      **Limitation of Liability.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL EPSON OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES, WHATSOEVER, WHETHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHETHER ARISING UNDER CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, BREACH OF WARRANTY, MISREPRESENTATION, OR OTHERWISE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS, ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR ARISING OUT OF THIS AGREEMENT, EVEN IF EPSON OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TRANSACTIONS, AND IN SUCH STATES, THE ABOVE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY.

9.     **U.S. Government Acquisition of the Software.**  This Section applies to all acquisitions of the Software by or for the U.S. Government ("Government"), or by any prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement, "other transaction" ("OT"), or other activity with the Government. By accepting delivery of the Software, the Government, any prime contractor, and any subcontractor agree that the Software qualifies as "commercial" computer software within the meaning of FAR Part 12, paragraph (b) of FAR Subpart 27.405, or DFARS Subpart 227.7202, as applicable, and that no other regulation, or FAR or DFARS data rights clause, applies to the delivery of this Software to the Government. Accordingly, the terms and conditions of this Agreement govern the Government's (and the prime contractor and subcontractor's) use and disclosure of the Software, and supersede any conflicting terms and conditions of the contract, grant, cooperative agreement, OT, or other activity pursuant to which the Software is delivered to the Government. If this Software fails to meet the Government's needs, if this Agreement is inconsistent in any respect with Federal law, or if the above cited FAR and DFARS provisions do not govern, the Government agrees to return the Software, unused, to Epson.

10.     **Export Restriction.**  You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

11.     **Entire Agreement.** This Agreement is the entire agreement between the parties related to the Software and supersedes any purchase order, communication, advertisement, or representation concerning the Software.

12.     **Binding Agreement; Assignees.** This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, assigns and legal representatives.

13.     **Severability; Modifications.** If any provision herein is found void or unenforceable by a court of competent jurisdiction (subject to Section 22.8 and 22.9 if you are located in the U.S.), it will not affect the validity of the balance of the Agreement, which shall remain valid and enforceable according to its terms. This Agreement may only be modified in writing signed by an authorized representative of Epson.

14.    **Indemnification.** You agree that you will indemnify and hold harmless, and upon Epson's request, defend Epson and its directors, officers, shareholders, employees and agents from and against any and all losses, liabilities, damages, costs, expenses (including reasonable attorneys' fees), actions, suits, and claims arising from (i) any breach of any of your obligations in this Agreement or (ii) any use of the Software or the Epson Hardware. If Epson asks you to defend any such action, suit or claim, Epson will have the right, at its own expense, to participate in the defense thereof with counsel of its choice. You will not settle any third-party claims for which Epson is entitled to indemnification without the prior written approval of Epson.

15.    **Termination.** Without prejudice to any other rights Epson has, your license rights under Section 1 above and your warranty rights under Section 7 above, shall automatically terminate upon failure by you to comply with this Agreement. Upon termination of such rights, you agree that the Software, and all copies thereof, will be immediately destroyed.

16.    **Capacity and Authority to Contract.** You represent that you are of the legal age of majority in your state or jurisdiction of residence and have all necessary authority to enter into this Agreement, including, if applicable, due authorization by your employer to enter into this Agreement.

17.    **Privacy, Information Processing.** The Software may have the ability to connect over the Internet to transmit data to and from your Device. For example, if you install the Software, the Software may cause your Device to send information about your Epson Hardware such as model and serial number, country identifier, language code, operating system information, and Epson Hardware usage information to an Epson Internet site which may return promotional or service information to your Device for display. Any processing of information provided through the Software, shall be according to applicable data protection laws and the Epson Privacy Policy located at **https://global.epson.com/privacy/area_select_confirm_eula.html**. To the extent permitted by applicable laws, by agreeing to the terms of this Agreement and by installing the Software, you consent to the processing and storage of your information in and/or outside your country of residence. If there is a specific privacy policy incorporated into the

Software and/or displayed when you use the Software (for example, in the case of certain software application software), such specific privacy policy shall prevail over the Epson Privacy Policy stated above.

18.    **Third Party Websites**. You may, through hypertext or other computer links from the Software, gain access to websites and use certain services that are not under the control of or operated by Epson, but rather are controlled by third parties. You acknowledge and agree that Epson is not responsible for such third party sites or services, including their accuracy, completeness, timeliness, validity, copyright compliance, legality, decency, quality, or any other aspect thereof. These third party websites/services are subject to different terms and conditions and when you access and use third party websites/services, you will be legally bound by the terms and conditions of those websites/services. If there is a conflict between this Agreement and terms and conditions of third party websites/services, the third party websites'/services' terms and conditions will govern with respect to your access and use of those websites/services. Although Epson may provide a link to a third party website/service from the Software, such a link is not an authorization, endorsement, sponsorship or affiliation by Epson with respect to such website/services, its content, its owners or its providers. Epson provides such links for your reference and convenience only. Accordingly, Epson makes no representations whatsoever concerning such websites/services and does not provide any support related to such third party sites or services. Epson has not tested any information, products or software found on such websites/services and therefore cannot make any representations whatsoever with respect thereto. You agree that Epson is not responsible for the content or operation of such websites/services, and it is up to you to take precautions to ensure that whatever you select is free of items such as viruses, worms, Trojan horses and other items of a destructive nature. You are solely responsible for determining the extent to which you may use any content at any other websites/services to which you link from this Software.

## (IF YOU ARE LOCATED IN THE UNITED STATES, THE FOLLOWING SECTIONS 19 - 23 APPLY TO YOU)

19.     **Ink Purchases**. For certain Epson printer products sold in North America, the Software may also display an option to buy ink from Epson. If you click on the buy button, the Software will cause your Device to display Epson Hardware cartridge types and ink levels and provide other information about your cartridges, such as the colors, available cartridge sizes, and prices for replacement ink cartridges, which you may purchase online from Epson.

20.     **Downloadable Updates**. You may also be able to download from an Epson Internet site updates or upgrades to the Software if such updates or upgrades are made available. If you agree to install the Software, any transmissions to or from the Internet, and data collection and use, will be in accordance with Epson's then-current Privacy Policy, and by installing the Software you agree that such then-current Privacy Policy shall govern such activities.

21.     **Epson Accounts and Promotional Messages**. In addition, if you install the Software and register your Epson Hardware with Epson, and/or you create an account at the Epson Store, and provided your consent to such use, you agree that Epson may merge the data collected in connection with installation of the Software, registration of your Epson Hardware and/or creation of your Epson Store account, consisting of personal information and non-personally identifiable information, and use such merged data to send you Epson promotional or service information. If you do not wish to send information about your Epson Hardware or receive promotional or service information, you will be able to disable these features on a Windows system through the Monitoring Preferences section in the driver. On a Mac operating system, you can disable these features by uninstalling the Epson Customer Research Participation and Low Ink Reminder software.

22.     **DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**

**22.1    Disputes.** The terms of this Section 22 shall apply to all Disputes between you and Epson. The term "Dispute" is meant to have the broadest meaning permissible under law or in equity and includes any past, present, or future dispute, claim, controversy or action between you and Epson including those that arose before the existence of this or any prior Agreement arising out of or relating to this Agreement (including its formation, performance, or breach), the Software, Epson Hardware, the parties' relationship with each other and/or any other transaction involving you and Epson, whether in contract, or with respect to warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis. However, a "Dispute" does not include a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation (an "IP Claim"). A "Dispute" also does not include a request for public injunctive relief. You and Epson agree, consistent with Section 22.6(a), that a court, not an arbitrator, may decide if a claim or cause of action is for an IP Claim, as well as whether a claim seeks public injunctive relief.

**22.2    Initial Dispute Resolution.** Before submitting a claim for arbitration in accordance with this Section 22, you and Epson agree to try, for sixty (60) days, to resolve any Dispute informally. If Epson and you do not reach an agreement to resolve the Dispute within the sixty (60) days, you or Epson may commence an arbitration in accordance with Section 22.6. Notice to Epson must be addressed to: Epson America, Inc., ATTN: Legal Department, 3131 Katella Avenue, Los Alamitos, CA 90720-2335. Any notice of the Dispute shall include the sender's name, address and contact information, the facts giving rise to the Dispute, and the relief requested. Any notice sent to you will be sent to the most recent address Epson has in its records for you. For this reason, it is important to notify us if your address changes by emailing us at EAILegal@ea.epson.com or writing us at the address above. You and Epson agree to act in good faith to resolve the Dispute before commencing arbitration in accordance with this Section 22. To minimize the cost and inconvenience to all parties, and to promote prompt resolution of Disputes, you and we agree that engaging in

this initial dispute resolution process is a material term of this Agreement and a requirement that must be fulfilled before commencing any arbitration.

Consistent with Section 22.6(a), you and Epson agree that any disagreements regarding compliance with this Section 22.2 shall be decided by a court, not an arbitrator; pending resolution of any such disagreements by a court, which may include requests to compel compliance with this Section 22.2, you and we agree that arbitration (as well as any obligation to pay arbitration fees) shall be stayed until the initial dispute resolution process in Section 22.2 is complete. You and Epson acknowledge that either party's failure to comply with the provisions of this Section 22.2 would irreparably harm the other, and you and Epson agree that a court may issue an order staying arbitration (and any obligation to pay arbitration fees) until the initial dispute resolution process in this Section 22.2 is complete.

**22.3     Binding Arbitration.** If we do not reach an agreed upon solution within a period of sixty (60) days from the time informal dispute resolution is pursued pursuant to Section 22.2 above, then either party may initiate binding arbitration. Except as stated below in Section 22.4, you and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING, AND YOUR RIGHT TO DISCOVERY AND GROUNDS FOR APPEAL ARE MORE LIMITED THAN IN COURT. Pursuant to this Agreement, and except as stated below in Section 22.6(h), binding arbitration shall be administered by JAMS, a nationally recognized arbitration provider, pursuant to the JAMS Streamlined Arbitration Rules and Procedures or its applicable code of procedures then in effect for consumer related disputes, but excluding any rules that permit class arbitration. For more detail on the procedure to initiate arbitration and what your demand for arbitration should include, see Sections 22.6(g) and 22.6(h) below. You and Epson understand and agree that (a) the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) governs the interpretation and enforcement of this Section 22, (b) this Agreement memorializes a transaction in interstate commerce, and (c) this Section 22 shall survive termination of this Agreement.

**22.4   Exception - Small Claims Court**. Notwithstanding the parties' agreement to resolve Disputes through arbitration, either party can elect to have an individual claim resolved in small claims court of your state or municipality if the action is within that court's jurisdiction, even if the claim was initiated by another party in a different forum.

**22.5   WAIVER OF CLASS ACTION AND CLASS ARBITRATION.** YOU AND EPSON AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A CLASS action or class arbitration. If any court or arbitrator determines that the class action waiver set forth in this paragraph is void or unenforceable for any reason or that an arbitration can proceed on a class basis, then the arbitration provision set forth above in Section 22.3 shall be deemed null and void in its entirety and the parties shall be deemed to have not agreed to arbitrate disputes.

**22.6   Arbitration Procedure.**

a) The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity, except for requests for public injunctive relief, if any, which shall be decided by a court, not an arbitrator. If either party seeks public injunctive relief, that request for relief shall be severed from any arbitration proceeding and stayed pending a final determination of the arbitration. Nothing in Section 22 of this Agreement shall be construed as a waiver of either party's right to seek public injunctive relief, and you and we agree to cooperate to effect the stay of any requests for public injunctive relief.

The arbitrator is bound by the terms of this Agreement. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable. Notwithstanding this broad delegation of authority to the arbitrator, and consistent with Sections 22.1, 22.2, 22.6(a) and 22.6(h) of this Agreement, a court may determine: (i) the limited question of

whether a claim or cause of action is for an IP Claim, which is excluded from the definition of "Disputes" in Section 22.1 above; (ii) disagreements regarding compliance with the initial dispute resolution provisions in Section 22.2 above; (iii) disagreements regarding claims for public injunctive relief as set forth in this Section 22.6(a); and/or (iv) disagreements regarding the provisions for "Mass Arbitration" in Section 22.6(h) below.

b) **Costs of Arbitration and Legal Fees.** In some instances, the costs of arbitration can exceed the costs of litigation. Each party will have the right to use legal counsel in connection with arbitration at its own expense. If, however, the arbitrator determines that a claim or defense asserted by you or Epson is patently frivolous or in bad faith, the arbitrator may award the reasonable legal fees and costs incurred by the other party defending against the claim or defense. By way of illustration only, and without limitation, a patently frivolous claim may be found where it is based on a product never purchased by a claimant.

c) **Discovery.** The discovery or exchange of non-privileged information relevant to the Dispute may be allowed during the arbitration. The right to discovery may be more limited in arbitration than in court.

d) **Awards.** The arbitrator's award is binding and may be entered as a judgment in any court of competent jurisdiction.

e) **Hearing Format and Location.** You may choose to engage in arbitration hearings by telephone or, if you and we both agree, to conduct it online, in lieu of appearing live. Arbitration hearings not conducted by telephone or online shall take place in a location reasonably accessible from your primary residence, or in Orange County, California, at your option.

f) **Settlement Offers.** During the arbitration, the amount of any settlement offer made shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which

you or Epson is entitled.

g) **Initiation of Arbitration Proceeding Before JAMS.** Except as stated in Section 22.6(h) below, if you or Epson commences arbitration, the arbitration shall be governed by the JAMS Streamlined Arbitration Rules and Procedures or the applicable rules of JAMS that are in effect when the arbitration is filed, excluding any rules that permit arbitration on a class-wide basis (the "JAMS Rules"), available at https://www.jamsadr.com or by calling 1-800-352-5267, and under the rules set forth in this Agreement. All Disputes shall be resolved by a single neutral arbitrator, which shall be selected in accordance with the JAMS Streamlined Arbitration Rules and Procedures, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator. If either you or Epson decides to arbitrate a Dispute before JAMS, both parties agree to the following procedure:

> (i) Write a Demand for Arbitration. The demand must include a description of the Dispute and the amount of damages sought to be recovered. The demand also must identify the product purchased, identify the date and place of purchase and, if possible, provide the serial number and proof of purchase. You can find a copy of a demand for arbitration at https://www.jamsadr.com.
> (ii) Send three copies of the demand for arbitration, plus the appropriate filing fee, to: JAMS, 500 North State College Blvd., Suite 600 Orange, CA 92868, U.S.A.
> (iii) Send one copy of the demand for arbitration to the other party (at the same address as the notice of a dispute, above in section 22.2), or as otherwise agreed by the parties.

h) **Initiation of Mass Arbitration Before FedArb.** Notwithstanding Sections 22.3 and 22.6(g), if 20 or more demands for arbitration are filed relating to the same or similar subject matter and sharing common issues of law or fact, and counsel for the parties submitting the demands are the same or coordinated, you and we agree that this will constitute a

"Mass Arbitration."

If a Mass Arbitration is commenced, you and we agree that it shall not be governed by JAMS Rules or administered by JAMS. Instead, a Mass Arbitration shall be administered by FedArb, a nationally recognized arbitration provider, and governed by the FedArb Rules in effect when the Mass Arbitration is filed, excluding any rules that permit arbitration on a class-wide basis (the "FedArb Rules"), and under the rules set forth in this Agreement. The FedArb Rules are available at **https://www.fedarb.com/** or by calling 1-650-328-9500. You and we agree that the Mass Arbitration shall be resolved using FedArb's Framework for Mass Arbitration Proceedings ADR-MDL, available at **https://www.fedarb.com/**.

Before any Mass Arbitration is filed with FedArb, you and we agree to contact FedArb jointly to advise that the parties intend to use FedArb's Framework for Mass Arbitration Proceedings ADR-MDL. The individual demands comprising the Mass Arbitration shall be submitted on FedArb's claim form(s) and as directed by FedArb.

Consistent with Section 22.6(a) above, you and Epson agree that if either party fails or refuses to commence the Mass Arbitration before FedArb, you or Epson may seek an order from a court of competent jurisdiction compelling compliance with this Section 22.6(h) and compelling administration of the Mass Arbitration before FedArb. Pending resolution of any such requests to a court, you and we agree that all arbitrations comprising the Mass Arbitration (and any obligation to pay arbitration fees) shall be stayed. You and Epson acknowledge that either party's failure to comply with the provisions of this Section 22.6(h) would irreparably harm the other, and you and Epson agree that a court may issue an order staying the arbitrations (and any obligation to pay arbitration fees) until any disagreements over the provisions of this Section 22.6(h) are resolved by the court.

22.7     **30 Day Opt-out Right.** You may elect to opt-out (exclude yourself) from the final, binding, individual arbitration procedure and waiver of class proceedings set forth in Sections 22.3 to 22.6 of this Agreement by sending a written letter to the Epson address listed above in Section 22.2 within thirty (30) days of your assent to this Agreement that specifies (i) your name, (ii) your mailing address, and (iii) your request to be excluded from the final, binding individual arbitration procedure and waiver of class proceedings specified in this Section 22. In the event that you opt-out consistent with the procedure set forth above, all other terms set forth in the Agreement, including this Section 22, shall continue to apply, including the requirement to provide notice prior to litigation. If you opt-out of these arbitration provisions, Epson will also not be bound by them.

22.8     **Amendments to Section 22.** Notwithstanding any provision in this Agreement to the contrary, you and Epson agree that if Epson makes any future amendments to the dispute resolution procedure and class action waiver provisions (other than a change to Epson's address) in this Agreement, Epson will obtain your affirmative assent to the applicable amendment. If you do not affirmatively assent to the applicable amendment, you are agreeing that you will arbitrate any Dispute between the parties in accordance with the language of this Section 22 (or resolve disputes as provided for in Section 22, if you timely elected to opt-out) when you first assented to this Agreement.

22.9     **Severability.** If any provision in this Section 22 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect. The foregoing shall not apply to the prohibition against class actions as provided in Section 22.5. This means that if Section 22.5 is found to be unenforceable, the entire Section 22 (but only Section 22) shall be null and void.

23.     **For New Jersey Residents.** NOTWITHSTANDING ANY TERMS SET FORTH IN THIS AGREEMENT, IF ANY OF THE PROVISIONS SET FORTH IN SECTIONS 7 OR 8 ARE HELD UNENFORCEABLE, VOID OR INAPPLICABLE UNDER NEW JERSEY LAW, THEN ANY SUCH PROVISION SHALL NOT APPLY TO YOU BUT THE REST OF THE

AGREEMENT SHALL REMAIN BINDING ON YOU AND EPSON. NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT, NOTHING IN THIS AGREEMENT IS INTENDED TO, NOR SHALL IT BE DEEMED OR CONSTRUED TO, LIMIT ANY RIGHTS AVAILABLE TO YOU UNDER THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

2022

© 2023  Epson America, Inc.

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Shon Morgan (No. 187736), Jack Baumann (No. 288881)
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543

| | |
|---|---|
| TELEPHONE NO.: (213) 443 3000 | FAX NO. (Optional): (213) 443 3100 |

E-MAIL ADDRESS: shonmorgan@quinnemanuel.com
ATTORNEY FOR (Name): EPSON AMERICA, INC.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, California 92701
BRANCH NAME: Central Justice Center

CASE NAME:
EPSON AMERICA, INC. v. GRAESEN ARNOFF, ET AL.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2023-01315890-CU-MC-CXC |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Peter Wilson  DEPT.: CX-101 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [ ] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): One (Declaratory Relief)
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 10, 2023

Shon Morgan
_____
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET** CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY<br>
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Graesen Arnoff, Suzanne Bonds, Matt Bozylinsky, Bill Bunkers, Erin Busse, Cindy Christensen, Michelle Churchill, Joshua Cook, (Additional Parties Attachment Form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EPSON AMERICA, INC.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SUPERIOR COURT OF CALIFORNIA

| | CASE NUMBER: *(Número del Caso):* | 30-2023-01315890-CU-MC-CXC |
| --- | --- | --- |
| | | Judge Peter Wilson |

Complex
County of Orange (XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
751 W Santa Ana Blvd., Santa Ana, Ca 92702

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: QUINN EMANUEL URQUHART & SULLIVAN, LLP
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Shon Morgan; 865 South Figueroa Street 10th Floor, Los Angeles, California 90017-2543; (213) 443 3000

DATE: 03/13/2023      DAVID H. YAMASAKI, Clerk of the Court      Clerk, by _O. Lopez_ , Deputy
*(Fecha)*      *(Secretario)*      *(Adjunto)*

O. Lopez

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [x] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)         [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

**Page 1 of 1**

| | | |
| --- | --- | --- |
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

**SUM-200(A)**

| SHORT TITLE:<br>EPSON AMERICA, INC. v. GRAESEN ARNOFF, SUZANNE BONDS, ET AL. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Carolyn Dezutter, Brandy Dolderer, Jason Elkins, Cheryl Fulk, Denise Harrold, Rachel Hassett, Amy Hood, Kristi Jacobs, Michelle Jenkins, Christine Jonas, Megan Kline, Sara Koehnke, Kelly Kunz, Julie Lee, Margie Markevicius, Kevin Nameth, Adam Newman, Kelly Nielsen, Susan Nowinski, Glaiza O'Malley, Dino Pezzato Iii, Natalee Roseboom, Noreen Shambo, Jordan Sinwelski, Sabrina Stroud, Stella Volkman, Douglas Wagner, Marta Zachara, Richard Polich, Catherine Walker, Shelby Cooper, Evan Weightman, Shelbi Mcfarland, Lisa Colp, John Salidas, Hannah Hood, Marie Ortega, Brian Naydol, Nicole Reynolds, Ward Roney, Lisa Borel, Dawn Ferguson, Kinh Nguyen, Connie Fields, Max Lima, Debra Coe, Steven Wear, Lora Benson, Nick Martinez, Craig Lux, Cedric Nocon, Richard Steele, Crystal Gibson, Charlene Madsen, Angelica Hernandez, Hideki Hara, Jennifer Lecharoen, William Butler, Ronald Talley, Marianina Arredondo, Charmaine Contreras, K Poore, Cathy Steele, Manique English, Cynthia Jaramillo, Jonathan Mok, Penny Dahlberg, Demir Bracic, Vincent Ibanez, John Lahommedieu, Princess Hampton, James Lonergan, Michael Walton, Wynn Esclovon, Thomas Green, Orlando Malaluan, Alexandria Vazquez, Carey Hylton, Veronica Perkins, Derek Newman, Brandon Medow, Ronald Stout, Kevin Teichen, Katie Hart, Jill Pacho, Ronald Piner, Jennifer Culbertson, Joel Borja, Blanca Carrasco, William Kewley, Rubie Gillon, Marta Madrid, Jennifer Ashline, Vicki Mallard, Michelle Lavoy, Mabel Tsi, Maria Livingston, Shamarra Frazier, Tyrone Hazel, Andres Vitiosus, Joseph Miranda, Cielito Leoncio, Monica Mungary, Tracy Smith, Madisyn Hill, Kara Heuer, Katherine Simpson, Allie Beyer, Johnny Murphy, Sharon Young, Kali Massey, Michael Goldstein, Jennifer Toy, Kathy James, Vivian Mooers, Art Faelnar, Nidia Montoya, Daniel Wimberly, Bessie Brisco, Lucero Villa, Maria Brooks, Krzysztof Zachara, Shane Campbell, Freddy Juarez, William Deacon, Adrian Saldana, Nathan Gotten, Marissa Smith, Tyler Varela-Rivas, Manuel Rodriguez, Sandra Henderson, Marissa Mangold, Greg Prodigalidad, Martin Ackerson, William Sanchez, Marcus David, Cindi Metzger, John Bohen, Fernando Hernandez, Juanita Kennedy, Alfredo Felix, Tyler Ridge, Susan Tran, David Rayford, George Love, Dominique Powell, Anthony Graham, Eric Bianco, Miguel Rodriguez, Maribeth Harder, Jessica Calhoun, Matt Gruenwald, Sydney Zubeck, Jjimmie Gibbs, Rich Cafferkey, Timothy Weaver, Joanna Ammons, Kathie Swibaker, Paul Aguilar, Thomas Rees, Eric Piotrowski, Mark Messina, William Midgett, Anthony Willis, Murad Abu Hannoun, Gina Sangricoli, Ann Wright, Evangeline Lee, Bob Berg, Michelle Mitchell, Jean Macaluso, Kalena Bush, Ryan Hengel, Jacklyn Walker, Hale Knox, Karen Grano, Rabecca Broschat, Annette Vodola, Denise Anderson Mckay, Victor Varney, Sean Weerasinghe, Ray Covert, Elmer Orpilla, Carroll Montague, Delbert Hobson, Scott Adams, Linda Calvin, Shenise Mcknight, Cathy Abraham, Nick Loya, Steven Polgar, Isaiah Robinson, Mike Sizemore, Tanisha Metcalf, Miguel Morales, Mary Hickey, Vishal Shah, Robert Hughes, Paris Gardner, Dana Lamb, Russel Savage, Donna Paul, Rickie Parks, Chantelle Adu-Berkoh, Rosa Casillas, Lance Groff, Tim Burman, Demetra Doss, Steve Chavez, Antwain Allen, Krystol Lamar, Marko Trajkovikj, Tina Cox, Adriana Montiel, Jorge Guzman, Larry Murphy, Connie Brown, Nicole Gomez, Kevin Rea, Patricia Hernandez, Caroline Garcia, Toya Kilgore, Maryjo Lawson, Kim Hands, Patrick Foley, Patricia Angenbroich, Billy Weeks, Danielle Davis Tucker, Ricardo Robledo, Pedro Rosas, Tequila Edwards, Andres Valdes, Griffin Jane, Ann Marie Yadegar, Nicole Diaz, Sylvia Nabong, Christina Buenaventura, Rokicki Brittney, Theresa Gould, William Powers, Dana Holgerson, Kristen Koerber, Delores Franks, Christopher Toney, Robert Kim, Jeremy Mccoy, Cynthia Conlin, Justin Thomas, Maurice Andrews, Marc Lee, Sydney Sabino, Sharon Brown, Elizabeth Luna, Nicholas Bowron, Jared Coleman, Jamul Jones, Ruchard Krieg, Nathaniel Joseph, Timothy Viane, Richard Goldberg, Moore Jeanette, Erma Johnson, Kimberley Gaul, Katherine Johnson, Sara Fiene, Michael Hirsch, Richard Schlosser, Veronica Drantz, Merelene Deo Chand, John Fremont, Michael Holcomb, Bianca Rizzo Gatto, Gretchen Fehling, Dean Steinbrenner, Elia Cervantes, Wendy Steinberg, Byerley Janna, Susan Gonzalez, Joycelyn Peete, Wallace Hudson, Christine Borovoy, Robert Hughes, Jacqueline Nitti-Silva, Edward Swiebocki, Aldena Beisen, Terry Boyd, Daniel Warner, Echols Sandra, Nicole Marte, Mary Kalafut, Steven Keca, Jerry Upchurch, Gary Klavans, Deborah Lindsey, Marilyn Gant, Sheila Chartier, Nicole Parrini, Reginald Woolston, Walter Ratajczak, Cole Leslie, Sharon Carwell, Penni Russell, Alan Dascottr, Alana Hannant, Mitchell Cottrell, Tonya Green, Teneka Shelton, Vladislav Jurenka, Townes Coates, Jeff Johnson, Tracy Knight, Carol Fritzgerald, Sharon Burgs, John Tenenbaum, Maria Yaou, Towanda Bell, Julie Clarke, Michael Atkinson-Leon, David Phorasavong, Gloria Miles, Susan Brook, Tiffany Scharringhausen, Debra Knight, Sandy Selesky, Elroy Johnson, Eric Pate, Regina Kelly, Brian Factor, Tanya Ray, Angel Collazo, Tammy Mcfeely, Patricia Medina, Demerette Kee, Marylou Obos, Olufunmilayo Ashiru, Ande Wegner, Eboney Bell, David Felix, Elbert Jordan, Shelby Peters, John Farringer, David Cassiere, Jerry Coonrod, Sandra Carcione, Dollicia Bell, Jose Gonzalez, Michael Rose, Kecia Gaines, Tiffany Kilgore, Michelle Viruet, Deborah Taylor, Gundars Simanis, Frank Hauser, Mike Bowen, Shawn Passwater, Kari Meyer, Dawn Werner, Rachel Brauer, Rico Camacho, Len Faltin, Mark Moreno, Crystal Weatherspoon, Lois Dickens, Marcy Lucchesi, Patrick Ramos, Rico Adams, Pamela Purl, Eric Willis, Melinda Caudillo, Holly Grover, Rachel Galvin, Arturo Aragon, Jeanclaude Lominy, Candace Davis, Ryan Wasney, Yolanda Coler, Lasheena Williams, Amanda Anderson, Ann Mitchell, Kaavir Ramirez, Alan Wolmer, Kathleen Garcia, Jorge Pedroza, Glen Hamel, Dehlia Williamson, Mary Abegg Sanchez, Debra Kuen, Mary Young, Deborah Delaney, Tracy Hartley, Randall Licht, Donna Cox

Page __1__ of __5__

**Page 1 of 1**

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE:<br>EPSON AMERICA, INC. v. GRAESEN ARNOFF, SUZANNE BONDS, ET AL. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Melissa Calvano, Paul Cohen, Kathy Mccloud, Garret Ambrosio, William Macgregor, Alexandra Camacho, Teresa Fajardo, Cathy Jackson, Jeffrey Chien, Wendy Waits, Stephen Alfon, Debbie Wilferling, Victor Castillo, Stephen Dobbins, Robert Evans, Howard Clark, Carol Weinberg, Alejandra Quiroz, Gary Allen, Paul Meyser, Patricia Jackson, Scott Gibson, Dee Kresge, Bob Vannini, Laurence Faulks, Janice Cope, Max Daniels, Debra Hill, Suzanne Guzman, Ninous Beitashour, Stephanie Seeley, Linda Haworth, Lance Dalgart, Carlos Herrera, Mark Jones, Marjorie Heddinger, Samuel Brown, Jason Husted, Diane Richmond, Kathie Calhoun, Gisela Saenz, Denise Reed, Brian Oltman, Michael Stadie, Jovana Lloyd, Willie Davis, Stephen Ferri, Patti Mcdonald, Chris Higham, Norman Deorian, Cheryl Thomas, Douglas Mercer, Lydia Micheli, Lena Campos, Lisa Bernal, Sharon Peterson, Nick Burchett, Sharon Gonzalez, Erica Jones, Michael Callahan, Christian Melanese, Jose Del Campo, Melissa Del Rosario, Osvaldo Alvarado, Alana Jelinek, Suzanne Sule, Lissa Gates, Frederick Reckeweg, Kimberly Sinclair, Nikki Dohn, Ursula Zamora, Angela King, Susan Galvan, Dennis Devilbiss, Robert Larson, Steven Boehm Boehm, Amy Hart, Amanda Yancy, Sandra Roller, Chelsea Loke, Frank Tucci, Cheryl Norton, Angelica Shatokin, Kenneth Sullivan, J Conavay, Zeid Nasser, Susie Abboud, Christopher Heron, John Schmidt, Jane Litman, Ricky Eck, Michael Betzag, Jacquelyn Donahue, Scott Binder, Joann Reeves, Penny Mores, Diane Phillips, Jimmie Hale, Joyce Beasley, Jill Barnett, Ellany Lawrence, Constance Adler Galloway, Wendy Vasquez, Brian Alsup, Ken Goetz, Cheryl Scaccio, Amy Stone, Kim Nunn, Annemarie Ruitenbach, Chitika Hemphill, Lisbeth Deforest, Stephanie Smith, Philip Searby, Eduardo Moreno, Readus Sago, Karen Schmidtke, Brian Favia, Dana Bradford, Monique Blake, Curtis Revak, Gilbert Tisdale, Adam Bitterman, Roy Rumaner, Tim Smith, Karen Hight, Valerie Gordon, Tim Burgess, Robert Oliver, Cheryl White, Michael Burns, Susan Slaughter, Amanda Quayle, Melissa Poly, Maria Haro, Martin Miller, Jason Gadacz, Eric Hughes, Jolynne Lewis, Miranda Snyder, Vaughn Buxton, Dianaloo Farmer, Toneshia Scales, Adam Bente, Sandra Lawrence, Debbie Gasaway, Harlow Cisco, Norman Milsner, Hamisi White, Frank Fales, Eddie Smith, Julianne Camello, Takesia Sanford, John Raya, Mark Netzel, Diane Cizunas, Mark Ackerman, Lisa Kaysinger, Kylie Nyboer, Danielle Emick, Dan Berry, Leilena Jones, James Reddish, Lorraine Rowe, Catherine Watt, Stu Oster, Ah Lan Ferrara, Stacie Pendleton, Andy Arden, Caroline Pegueros, Kimberlee Black, Teressa Kohman, Whui Kim, Canda Gray, Justin Cooper, Tammie Knight, Haller Norma, Patricia Thomas, Jay Romick, Michael Smith, Christian West, Diana Brooks, Salazar Daniel, Arash Shamsian, Fran Long, Suzette Wilder, Warren Lamb, Brenda Anderson, Patricia Birdsall, Rachel Nguyen, Lisa Pena Humes, Kevin Robinson, Murray Schechter, Corinne Andreano, Carol Novak, John Tarjavaara, Mercedes Gonzalez, Allen Wone, Kelly Manke, Susan Digianfilippo, Craig Renner, John Lund, Carol Maidlow, Rodney Sloan, Lea Sims, Abu Omar, Jim Policastro, Chrystal Caudle, Tammi Kellenberger, Aubrey Tanciangco, Bernadette Bitanga, Pam Martinez, Jan Bedell, Aimee Pavek, Chaka Theus, Hijinia Guerrero, Patrick Musni, Gilberto Pantoja, Patty Justiniano, Jeffrey Green, Cheri Roe, Leonard Bednarczyk, Frances Murray, Diane Jackson, Michelle Victory, Eileen Del Rosario, Erwin Hildenbrand, Richard Ernst, Melinda Jackson, Michelle Arellano, Bradley Lavalley, Julie Stasko, John Parkhurst, Rick Slansky, Romell Eggleston, Christy Broccardo, Jose Gonzalez, William Bell, Sacha Mercado, Margaret Grady, Elvira Castillo, Frederick Zubrin, Billy Woody, Joy Baynes, John Lewis, Eric Moreno, Mike Reyes, Marcella Pena, Betty Deconter, Karen Nash, Randy Lancaster, Bradford Patrice, Alan Swinford, Carson Tang, Rachel Rivera, Bryan Boone, Tom Harper, Sarah Kirk, Rebecca Dutton, James Domsic, Anabel Rodriguez, Daniel Tafolla, George Masny, Frank Lescrinier, Steve Griffith, Heather Hierl Weimer, Rebecca Huerta, Greg Edelson, Wendy Fosnaugh, Daniel Moore, John Davis, Frederick Davis, Erin Mcraith, Daniela Kreidler, Jimmy Sutton, Porter Katherine, Richard Wiseman, Jeanette Hale, Rene Lundy, Vonnie Dawson, Lonnie Hiatt, Jose Hernandez, Robin Chrusniak, Susan Gallardo, Linda Siriano, Julie London, Emily Dupree, Danny Abbott, David Colbert, Michael Harvey, Lynne Schick, Kevin Brown, Richard Dwyer, Evelyn Blizzard, Strassalyn Ayuba, Justin Patt, Jennifer Smith, Dennis Gross, Bob Madura, Scott Morgan, Shawna Hook, Mike King, Gloria Ana Ramirez, John Woodruff, Elliott Eubank, Kathleen Thomas, Bill Henshaw, Leeandra Brocker, Donna Ball, Ariana Clayton, Leslie Wilson, Fred Orr Jr, Mary Margaret Hudak, Victor De Grande, Traci Priest, Alan Maxwell, Dolores Gay, Robert Trujillo, Vivian Fernandez, Sandra Harmon, Aaron Campbell, Adly Pozas, Allen Heinen, Arthur Okeeffe, Robert Martz, James Wheeler, Julie Drake, Michael Mccluskey, Steven Simanonok, Maureen Goff, Melissa Flint, Celeste Bemoras, Robert Miller, Yolanda Gagne, Angel Arriaga, Mary Barrow, Mike Mccallum, Albert Jones, Esmeralda Cardenas, Linda Thompson, Donna Brooks, Nicole Morales, Donna Shore, Patricia Misso, Jose Osuna, Adrian Macias, George Duty, Joseph Lopez, Chessie Delaney, Leslie Riggs, David Quimby, Frank Vigneri, Alisha Alexander, Sylvia Madden, John Zwierzko, Kenneth Pulliam, Davie Cabral, Kathe Burkhart, Shawn Kulich, Scott Szydzik, Siegmund Baklarz, Luis Munoz, Theresa Drust, Ernest Nixon, Paul Norman, Melissa Magallanes, Judy Witasik, Melody Centonze, Christie Locascio, Roanne Pallasigui, Sue Dudowitz, Kristen Hejnal, Zach Wylie, Amanda Westrich, David Felker, Gordon Anderson, Julia Lamas, Brooke Bingaman, Deborah Herrera, John Merrill, Michael Keblusek, Susan Odaffer, Miguel Contreras, Tony Armalis, Zack Carrera, Katrina Brown, Chadd Creed, Justin Storer, Leticia Ramirez Artiaga, Gina Garcia, Joan Dimaio, Ryan Stephen, Janet Gibbs, Veronica Ramirez, Frank Sotelo, Fabian Marquez, Kristin Zimmerman, Mike Peters

Page __2__ of __5__

Page 1 of 1

---

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**<br>Attachment to Summons

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| EPSON AMERICA, INC. v. GRAESEN ARNOFF, SUZANNE BONDS, ET AL. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Joshua Goldberg, Anthony Caceres, Alexandria Hill, Theresa Derfuss, Perri Davis, Chanell Davis, Art Wood, Timothy Mancini, Reginald Mcafee, Kevin Gwartney, Nick Angilello, Evert Ortega, Sharon Barker Tubbs, Jaime Ryan, Derek Vanwinkle, Katie Birchfield, Christina Dorato, David Arnson, Debra Tapia, Kim Mandichak, Terry Saberhagen, Cj Benbrook, Tiffanie Williams, Lisa Wicker, Kim Serani, Robert Wing, Norm Halbert, Winston Chavoor, Gary Peterson, Barbara Mcdermott, Ramona Ali, Paul Cynkar, Adella Spencer, Kaitlyn Kelly, Jerry Hefley, Bill Griffin, Amanda Carney, Caesar Snee, Donald Forgy, Ashley Erickson, Danny Boswell, Jeremy Neimand, Janina Bias, Donna Cerro, Bob Sharpe, Evelyn Radcliffe, John Borders, David Pires, Alice Dortch, Sam Davis, Brian Powell, Annette Cady, Connie Tolefree, Steven Stecher, Paul Wasserman, Kristin Sanchez, Jessica Jolson, Michael Schofield, Robert Hefley, Dana Garlington, Andrew Coronado, Rick Cervarich, Vance Hallman, Carollee Rivera, Michael Lock, Sandy Adams, Jasmine Young, Misty Robles, Laura Simmons, Gretchen Trejo, Michelle Mccalister, Antoinette Carter, Herbert Huey, Gina Garcia, Reema Khan, Lonnie Briggs, Sebastian Romeo, Timothy Winthers, Stephen Goldhorn, Tom Moore, Glenn Maddock, Lennea La Hommedieu, Madeleine Rogow, Vernon Porter, Jon Evans, Terri Welch, Anthea Smith, Jason Williamson, Walter Macie, Sharon Herrera, David Williams, Deborah Morris, Denese Stthomas, Esther Torresulloa, Alissa Joseph, Alfreda Phillips, Fernando Garcia, Joel Dinovo, John Greggs, Roger Bubel, Richard Friedlander, Fernando Delgadillo, Charles Jedlicka, Teena Riley, George Kresse, Chuck Shepherd, Yvette Afflerbaugh, Jeff Ravenscraft, Mary Bateman, Robert Oliver, Warren Bjork, Adriana Martinez, Laura England, Somer Lowery, Julie Hart, Spencer Kayden, Robert Hamilton, Paul Kopilak, James Macpherson, Adam Iannazzo, Natalie Zimmerman, Michael Williams, Irene Mendoza, Luis Delgado, Lauren Anderson, Sonia Williams, Tara Brown, Bruce Cohen, Rochelle Hayes, Luis Correa, Abbey Austin-Wood, Delores Navarro, Bill Lewis, Detra Thompson, Meghan Fisher, Kevin Bradley, Lillian Harris, Carolyn Rogers, Raven Jeffries, Arthur Fisk, Gretchen Clifford, Kimmy Mcdaniel, Mark Fabela, Anna Watrous, Ignacio Menendez, Letty Guttilla, Shannon Jeralds, Stephen Monk, Howard Peter Brody, Heather Bush, Michael Portalatin, Diana Cruze, Ted Coopersmith, Paul Clem, Sandra Aguilar, Barbara Dube, Jacqueline Johnson, Jeffrey Lauritzen, Richard Moody, Peter Levakis, Hilary Howard, Kim Victor, Walter Viteri, Nicole Branch, Scott Otsuka, Renee Vetter, Lisa Herron, Richard Clark, Doug Alton, Steven Martin, Derek Esparza, Rhonda Conley, Talia Oropeza, Derrick Posner, Eli Kuo, Noel Aispuro, Sandra Abernathy, Gajewski Cynda, Michael Termine, Hiram Aguilera, Olivia Pittman, Jayson Sandoval, Steven Wise, Lucy Cordero, Cindy Wong, Laura Brown, Tg Lawson Iii, Robert Emerick, Gary Washington, Robert Staup, David Pask, Matt Mellon, Erin Pellot, Judith Davis, Faith Holland, Alison Erbetta, Thomas Miller, Jessica Serrano, Connie Peart, Eddie Galloway, Maria Lauro, Stacey Dick, Robin Cutler, Margo Schullerts, Alfredo Cunanan, Eyvonne Galloway, Kathryn Ploss, John Burke, Carl Willat, Erica Beveridge, Todd Mitchell, Amber Linnell, Wendi Rodney, Roderick Billingsley, Pete Fields, Natalie George, Marietta Falk, Ann Wenzell, Stanley Vossler, John Eccleston, Grace Reyes, Cindy An, Arthur Degennaro, Dina Kimbrough, Zach Johnson, Richard Sandona, Angela Hutcheson, Lora Duncan, Harlan Lawler, Edward Padilla, Janet Litton, Kevin Lewis, Danute Mazeika, Tracy Clark, Bill Hartman, Sue Caico, Russell Dilillo, Mala Dhillon, Katherine Drouin-Keith, Laura Green, Michael Bailin, James Greenwood, Malika Sanders, Judith Chapman, Ronald Matthias, Ramona Swift, Laurel Debello, Maria Sandoval, Yohan Isaac, Charles Sellman, Kathleen Maxian, Lynette Freeman, Dennis Sidoti, Ann Noel, Pamela Coleman, Michael Lopes, Kurt Nicolai, Timothy Conway, Lisa Lakritz, Alyssa Sepulveda, Lita Theodore, Jane Pannell, Griscelda Chavez, Wane Webber, William Keegan Jr, John Cordogan, Krista Robles, Steven Dewoody, Eduardo Rico, Anthony Rotella, Latonia Hoskins, J K Thomasser, Brittney Mouw, Suzanne Mccombs, Myron Porter, Richard Kanatzar, William Quinn, Jesus Castillo, Anthony Paiva, Tara Robertson, Latonia Newton, Debra Mccormick, Bee Vongphakdy, William Hegarty, Nik Lozano, Robert Reichert, Chrystal Bernasconi, Phyllis Hong, Mark Filcich, Kathie Oconnor, Karry Kleemann, Angelo Logrande, David Libert, Christine Poulsen, Edgard Entrala, Geovanni Alvarado, Maurice Calderon, Jeff Rodriguez, Katherine Macalma, David Williams, Daniel Mayeda, Joanne Simonson, Jessicz Leka, Amanda Rodriguez, Michael Skalon, Greg Williams, Julie Vad, Gloria Knight, Philip Olszewski, Dean Miya, Deborah Moran-Villarreal, Christine Scadina, Shawn Blethen, Francis Mateo, Greg Fung, Jeffery Lindsay, Farimah Mcharo, Roman Villapando, Rex Thornhill, Erica Gonzalez, William Combs, Kim Lawson, Jessica Plaut, Elizabeth Collins, Jim Shere, Michael Hastings, Tinnikie Atkins, Steven Rock, Mark Morales, Tamera Tanubagijo, Sean Patrick Lewis, Susan Campbell, Yvonne Vasquez, Eugenia Chen, Catharine Naughton, Delores Gilson, Jose Lopez, Charles Grey, Lope Yap Jr, Sue Trueblood, Connie Jones, Shana Hager, Lynne Pieroni, Anthony Brucia, Steve Pearlman, Renee Thompson, Derek Proffitt, Angela Tomey, Larissa Rapadas, Jonathan Cart, Gary Eisenberg, Kent Colton, Ryan Weatherby, Fran Oglesby, Joy Voltenburg, Joan Thomas, Ray Beldner, Robin Lane, Brenda Morales, Raul Morales, Gail Levine, John Burgess, Daragh Bennett, Bill Poggensee, Shelley Shepherd, Terrie Silva, Mark Christensen, James Andriacchi, Jennifer Boukidis, Juan Torres, Lisa Wilkins, Alicia Rodriguez, John Miles, Derek Michaels, Kelly Mochel, Kelly Parker, Silverio Sanchez, Elena Hedderig, Lester Stamnas, Ann Keating, Trista Powers, Issa Spencer, Mauricio Hernandez, Carolina Valenciano, Victoria Patryn, Nicole Wyszynski, Christina Coughlin, Maurice Stroud, David Sommerfeld, Cuong Nguyen, Carlos Yanez, Michelle Adams, Amy Kendall, Ryan Malloy

Page    3    of    5

**Page 1 of 1**

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE:<br>EPSON AMERICA, INC. v. GRAESEN ARNOFF, SUZANNE BONDS, ET AL. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff      ☒ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

Doug Williams, Gary Reitmeier, Rebecca Garcia, Annette Barnes, Eps Shrat, Szeredy Andrea, Angela Hughes, Theresa Scott, Tony Provancal, Nancy Reiter, Hannah Schulman, Amy Davis, Donald Adams, Carlos Gonzalez, Barbara Kenning, Lency Montgomery, Brigitte Robertson, Marvin Fishman, Marian Jacob, Anna Darosa, Susan Drabing, Karen Davidson, David Pinzolo, Rusty Allen, Shawna Weyrich, Cheryl Ames, June Delane, Bill Hanna, Michael Smith, Mehdy Naitaki, David Pesola, Jeff Wong, Bernard Whalen, Susan Myers, Jana Sheehan, Danielle Labarre, Christine Hendrix, Brad Reisz, Becky Bataille, Theresa Henderson, Thomas Dooley, Tyndall Mun, Gloria Wroten, Jessica Sticklen, Stephanie Ochoa, Ashley Willinger, Shavasia Golden, David Pichon, Linda Novy, Fred Kinney, Blair Parker, Lynn Walker, Wes Wheadon, Liz Sampras, Louis Scaturro, Michele Finley, Pat Munson, William Wallace, Marc Seligman, Vanessa Alonzo, Catherine Manion, Ruth Mattison, Frank Zazanis, Neil Holman, Nancy Dolan, Chris Reiman, Victor Krumdick, Patrick Schneider, Dejuan Boyd, Gretchen Morales, Bill Fagan, Ted Pon, Priscilla Reyes, Anita Munoz, Ralph Ferri, Amanda Traxler, Rebecca Piper, Luz Padilla, Laurel Digangi, Kye Osti, Robert Zirgulis, Erica Stephenson, Peggy Pugh, Evelyn Salas, Shakeel Syed, Denise Stires, Gary Bell, Richard Miller, R Lee Jewell, Ayreanne Bordeaux, Linda Seibert, Erica Madden, Wayne Guzak, Diane Butler, Jill Frechette, Melissa Norton, Bill Nolan, Genevieve Bremmeier, Jimmy Tran, Ron Jozaites, Lindsay Boyster, Luis Villavelazquez, Diana Rangel, Johnathan Stoor, Keith Hastings, Nate Bailey, Joel Holzman, Nicole Duzy, Darlene Prescott, Kecia Bailey, Roland Ferrer, Nanci Oconnell, Tammy Cabrera, Allen Denni, Steven Rochester, Brian Swanson, Gregory Wroblewski, Julie Schrey, Judy Zeeb, Christine Jackowski, Beatriz Avendano, Orv Neconie, Katrina Condis, Simon Chaykler, Jessica Dambrose, Jeffrey Plaza, Daniel Kupper, Connie Owens, Judy Nast, Dennis Canfield, Christina Burlison, Alfred Garcia, Kimberly Schultz, Nick Jones, Susana Luna, Lawrence Kornit, Michael Austin, Amy Taiwo, Scott Beaver, Floro Munoz, Shukay Suzan, Mary Lopez, Ritesh Seth, Nopadol Chuaycharoensuk, Seth Roberts, Jenevieve Hayes, Justin Majzel, Margaret Blake, Daryl Marcott, Shelah Spiegel, Michael Brown, Diane Talbert, Craig Johnson, Scott Janus, Suzanne Lewis-Gregory, Nancy Alonzo, Juanita Bryant, Diane Mcpherson, Rudy Cendejas, Dave Yuen, Gary Whyte, Steve Lemire, Fernando Di Zitti, Antonio Mariano, Michael Padden, Nicole Henry, Gary Stansbury, Bruce Pleat, Erin King, Gabriel Lopez, Robert Tannenbaum, Merlita Felipe, Rainer Mueller, Enricque Williamson, Mike Chambers, Catherine Winnie, Jose Rodriguez, Kerrigan Weber, Linda Hyman, Jaycee Mcgee, Robert Jorgensen, Victoria Almaraz, Erick Bieger, Wylma Harmon, Jay Leavelle, Emily Welker, Kristen Lick, Steven Payne, John Hipp, Julie Fair, Theresa Dolan, Kimberly Boltz, Yvonne Invergo, Darryl Cass, Jesse Estrada, Tina Casey, Matthew Stevens, Harv Bisla, Steven Koppany, Ruth Tyson, Frank Jang, John Journeay, Robert James, Charlotte Roberson, Kathy Pruitt, Garren Saccomano, Kevin Nguyen, Cleo Sisco, Susan Maki, Peter Rizzo, Corinne Jacob, Julie Hammond, Loni Cooper, Kimmie Jones, Robert Kirwan, Jarryl Anderson, Kathy Smolansky, Brian Burch, Ken Mcgowan, Gregory Okulove, Alexander Gonzalez, Eric Spillman, Scott Thompson, James Nelson, Catherine Bratton, Mark Jurczeski, Kristi Lewis, Michael Vink, Syledra Hart, Alexia Wilson, Judith Stein, Nicole Fuller, Tim Jacobson, Peter Janoff, Keith Eaddy, Eileen Cortez, Roger Williams, Shayla Rossignol-Smith, Rosa Cromwell, Broderick Baldwin, Stephanie Morris, Cynthia Vasquez, Michael Poole, Brian Altman, Cindy Wright, Paula Klein, Peter Yaya, Adrianna Trujillo, Susan Ballou, Geneva Wisnewski, Tamara Frazier, Shanika Starks, Catalina Duenas, Karla Tapia, Joann Pepperdine, Tena Huson, Jonathan Mintzer, Robert Denker, Maria Armijo, Lisa Williams, Kyle Shell, Barbara Sullivan, Elizabeth Mack, Marvin Foster, Debbie Potter, Bob Ehrlich, Lucille Fincher, Richard Colorado, Michele Duggan, Carrie Spiro, Jennifer Garner, William Sussman, Deondre Bedgood, Andrew Thompson, Hecht Lauren, Thomas Joyce, Leo Yioupis, Linda Nguyen, Angela Morelli, Jeffrey Van Dam, Ashley Cohen, Robert Windham, Sarah Wilde, Karen Tolleson, Roger Jones, Robert Adams, Steve Aardappel, Eric Santillan, Mark Graves, Patti Morton, Dan Greenspan, Terry Johnson, Janis Luft, Karen Austin, Floyd Fenex, Cornelius Lewis, Jeff Ricker, Fanesha Fabre, Brad Draper, Lana Gartin, Sarah Yi, Brad Whitacre, Mary Prete, Susan Watson, Rick Quezada, Clarence Wilson, Angela Kirkwood, Maritza Cantu, Veronica Smith, Jacob Hancock, Jamila Banks, John Pearson, Maurizio Ursetta, Russell Lombardo, Karla Castro, Kristen Mcnelly, Benito Rios, Daniel Wozniak, David Clark, Kendra Cato, Ruth Tekeste, Manish Gupta, Jessica Ornelas, Janice Harris, Christina Jones, Mary Pankow, Jacqueline Boubion, Lisa Coney, Jeanette Vogt, Denisha Hawkins, Chester Barnhart, Teresa Stevens, Susannah Christopher, Raymond Chin, Carol Soriano, Beverly Fleer, Rosie Gonzales, Nichelle Weathers, Samnang Vang, Emily Citraro, Darlene Franco, Zinnia Esqueda, Natalie Cole, John Santillano, Kim Kibler, Helen Aguilar, Roberta Quon, Tim Rathbone, Judy Madnick, Stephanie Smith, Denise Yarbrough, Roger Yoh, Peter Chen, Ken Coulter, Magdalena Barrera, Maria Ballesteros, John Cummings, Nancy Mcfadden, Edward Paul, Luis Ramirez, Lorena Pena, Norma Reyes, Mona Hodges, Anthony Alberts, Patricia Hallissey, Ruby Beltran, Kennith Mascheri, Gerri Entler, Debra Edwards, Carla Lerma, Alexandria Torres, Lisa Donahue, Zeb Maclennan, Emmanuel Baez, Jaree Adams, Rosemp Marousek, David Ginsburg, Amanda Reasons, Scott Omori, Migdalia Rivera, Debbie Miller, Kenneth Smith, Paige Meyer, Carlos Perez, Christina Rescigno, Lydia Gomez, Cheryl Smith, Priscilla Marie Torres, Ginger Wiley, Pete Duran, Chris Huff, Nancy Cordero, Sonserae Leese, Peter Dreyfuss, Stephen Blackwell, Jenny Rattaro, Mark Dennis, Erin Peterson, Martha Estrada, Julio Cabrera, Karla Rae Barker

Page ___4___ of ___5___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE:<br>EPSON AMERICA, INC. v. GRAESEN ARNOFF, SUZANNE BONDS, ET AL. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Robert Dumitru, John Blake, Sam Ciccosillo, Jay Dedontney, Billy Boner, Barbara Mcdonald, Jo-Ann Crandall, Willard Elliott, Claudia Gonzales, Doc Phil Meyerson, James Friedrich, Robert Sandberg, Ray Beck, Jesse Barba, Michael Basnight, Rusanna Coyamin, Sarah Drisko, Chuck Kiriakos, Duane Boyer, Sona Smith, Michael Osullivan, Dana Baier, Aaron Jacobs, Socorro Montoya, Kim Mcbride, Robert Maron, Michelle Gardner, Phil Correale, Esther Millan, Anissa Singleton, Debora Garcia, Kristin Eller, Katherine Sherman, Lara Boyko, Ric Nesslage, Luis Salgado, Lonny Huffar, Roy Nicholas Boyce, Alberto Caputo, Elizabeth Sanchez, Theresa Rodriguez, Carlos Mungarro, Emily Guzman, Nicole George, Judy Charlton, Mary Bonner, Ronnie Snipes, Jason Portis, Steven Bernstein, Jeff Marsh, Dyann Payne, Renona Weathersby, Ira Brooks, Sara Kim, Angela Hackett, Ericka Aguilar, Nathan Scoggins, Denise Bradbury, Ronald Matusea, Ernest Macmillan, David Fish, Tracy Holmes, Monica Dyakanoff, Melanie Votaw, Brian Bon, Peggie Kennison, Mary Grady, Charles Grauerholz, Cristina Duenes, Ron Kolman, Sharyn Felton, Timothy Peron, Steve Foster, Epigmenio Cueva Jr, Stephanie Sojka, Elizabeth Ohowell, James Mcmanus, Monica Dunkin, Calvin Byer, Arturo Dominguez, Eric Bass, Barbara Gaskill, Tony Brzezowski, Faddy Malley, Pauline Palmer, Rayna Palomino, Susana Castillo, Suzanne Zuniga, Regina Doddington, Tiffany Wade, Bruce Cameron, Bessie Karegianes, Stacey Phipps, Shyma Afredi, Paula Rivera, Terry Romero, Lon Adams, Kim Kasunic, Anabell Chavez, Len Kovner, Maneca Colquitt, Louis Godoy, Nicole Hoogland, Verna Agboola, Kayla Svereika, Rufino Landayan, Angelica Minjares, Crystal Mitchell, Felicia Raprager, Maria Corrales, Gina Toafa, Jen Duran, Pablo Flores, Paula Carl, Francesca Collebrusco, Angelica Bellavia, Lisa Johnson, April Rocha, Doddie Hecht, Joanne Conte, Tammy Tyler, Nadia Lopez, Aris Alvarado, Joy Gallivan, Emily Zinda, Debbie Kocol, Marcos Lopez, Emily Eyth, Rebecca Velazquez, Hannah Moore, Keisha Bishop, Deb Janus, Ruddy Vargas, Floyd Vergara, Margaret Lyburtus, Dean Bruce, Thomas Maloy, Gayle Walls, Maria Panduro, Diana Swearingen, Bob Roth, Dick Winters, Saul Gonzalez, Eric Kuck, Robert Brenneman, Marcos Fuentes, Margaret King, Kimberly Garcia, Christopher Kelley, Sylvia Lubera, Lisa Wardell, Kelly Madison, Kenneth Stollman, Michio Nakajima, Angela Devolder, Elaine Kennedy, Teresa Desatnick, Sabela Portillo, Andre Concepcion, Isaiah Burchett, Randy Sprout, Carlos Ponce, Stephen Bonelli, Jennifer Harrell, Douglas Beaver, Mariah Landis, Alisa Jones, Scott Baugh, Deborah Andrews, Sandra Walsh, Karen Fiorino, Barbra Conner, Allan Preckel, Stacy Frisher, Kristine Morris, Don Abel, Pamela Rico, Susanne Popaeko, Maria Canale, Dennis Dixon, Laurie Kester, Brandy Conaway, Laura Tabachnick, Eduardo Yabut, Lauri Hanson, Regina Mcgrath, Kim Brezniak, Judy Aronson, Nicole Conway, Erin Delegan, Jessie Landau, Wayne Nash, Bryttney Isgar, Elaine Smith, Lesly Mayoral, Scott Leeson, Callie Thurman, Rene Quimby, Benjamin Pauly, Evyette Gaines, Carol Sevilla, Humberto Lozano, Diane Sullivan, Russell Gilliam, Michelle Huitron, Graham Jones, Karl Shultis, Juanita Hernandez, Jeffrey Valfer, Bill Vanhorn, Megan Akright, Leonilo De Leon, Robert Lawson, Jessica Boccia, Joan Giammarino, Linda Silacci-Smith, Michael Hoyt, John Mendez, Colleen Gray, Susan Berenson, James Carmany, Dimitrios Pardalis, Suzanne Whitford, Alejandra Zavala, Arthur Wilderman, Deana Nuxoll, Erin Riffel, Shelli Salles, Eric Brown, Ilisa Goldman, Kristen Mclaughlin, Judie Arriola, Tanya Heuges, Kimberley Deems, Katie Swanson, Linda Paolano, David Martin, Kevin Burch, Charles Bernacchi, Lameisha Sherri and Judy Cronin.

Page    5    of    5

**Page 1 of 1**

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**CM-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Quinn Emanuel Urquhart and Sullivan, LLP<br>Shon Morgan (187736), Jack Baumann (288881), 865 South Figueroa<br>Street, 10th Floor, Los Angeles, CA 90017<br><br>TELEPHONE NO.: (213) 443 3000   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* shonmorgan@quinnemanuel.com<br>ATTORNEY FOR *(Name):* Epson America, Inc. | FOR COURT USE ONLY |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange<br>STREET ADDRESS: 700 Civic Center Drive West<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME: Central Justice Center |

| | |
|---|---|
| PLAINTIFF/PETITIONER: Epson America, Inc<br><br>DEFENDANT/RESPONDENT: Graesen Arnoff, et al. | CASE NUMBER:<br>30-2023-01315890-CU-MC-CXC |
| | JUDICIAL OFFICER:<br>Judge Peter Wilson |
| **NOTICE OF RELATED CASE** | DEPT.:<br>CX-101 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Epson America, Inc. v. Matt Adams, et al.

   b. Case number: 30-2023-01313431-CU-MC-CXC

   c. Court: [✓] same as above

   [ ] other state or federal court *(name and address):*

   d. Department: CX103

   e. Case type: [ ] limited civil [✓] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

   f. Filing date: 3/13/2023

   g. Has this case been designated or determined as "complex?" [✓] Yes [ ] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

   [ ] involves the same parties and is based on the same or similar claims.

   [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   [ ] involves claims against, title to, possession of, or damages to the same property.

   [ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   [ ] Additional explanation is attached in attachment 1h

   i. Status of case:

   [✓] pending

   [ ] dismissed [ ] with [ ] without prejudice

   [ ] disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: [ ] same as above

   [ ] other state or federal court *(name and address):*

   d. Department:

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 3.300<br>*www.courtinfo.ca.gov* |

**CM-015**

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Epson America, Inc | 30-2023-01315890-CU-MC-CXC |
| DEFENDANT/RESPONDENT: Graesen Arnoff, et al. | |

2. *(continued)*

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

           ☐ Additional explanation is attached in attachment 2h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

3.  a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court *(name and address):*

    d. Department:

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

           ☐ Additional explanation is attached in attachment 3h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 4/26/2023

Shon Morgan

▶ [signature]

_____       _____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)       (SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER: Epson America, Inc | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Graesen Arnoff, et al. | 30-2023-01315890-CU-MC-CXC |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

***(NOTE: You cannot serve the Notice of Related Case if you are a party to the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)***

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify)*:

   50 California Street, 22nd Floor, San Francisco, California 94111

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one)*:

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☑ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date)*: 4/26/2023

   b. from *(city and state)*: San Francisco, CA

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
      Jonathan Gardner
      Street address: 140 Broadway
      City: New York City
      State and zip code: New York, 10005

   c. Name of person served:
      Jonathan Waisnor
      Street address: 140 Broadway
      City: New York City
      State and zip code: New York, 10005

   b. Name of person served:
      Brandon Heitmann
      Street address: 140 Broadway
      City: New York City
      State and zip code: New York, 10005

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/26/23

Jacqueline Wu
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶

_____
(SIGNATURE OF DECLARANT)

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Epson America, Inc. vs. Graesen Arnoff, et al. | 30-2023-01315890-CU-MC-CXC |

**ATTACHMENT** *(Number):* 1h

*(This Attachment may be used with any Judicial Council form.)*

Epson America, Inc. vs. Graesen Arnoff, et al. and Epson America, Inc. vs. Matt Adams, et al. have been designated as complex, unlimited civil cases by the court. These cases involve the same legal issues and arise from substantially similar incidents or events.


Epson America, Inc. vs. Graesen Arnoff et al. was filed at  4:00:51 PM on March 13, 2023 and assigned to Judicial Officer Peter Wilson. Epson America, Inc. vs. Matt Adams, et al., despite being processed first, was filed approximately an hour later at 5:21:42 PM on March 13, 2023 and subsequently assigned to Judicial Officer Lon Hurwitz.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __1__ of __1__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

*www.courtinfo.ca.gov*

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 04/27/2023                    TIME: 02:39:00 PM          DEPT:  CX101

JUDICIAL OFFICER PRESIDING: Peter Wilson
CLERK: C. Townsend
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2023-01315890-CU-MC-CXC**    CASE INIT.DATE: 03/13/2023
CASE TITLE: **Epson America, Inc. vs. Arnoff**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Misc Complaints - Other

---

EVENT ID/DOCUMENT ID: 74003065
**EVENT TYPE:** Chambers Work

---

**APPEARANCES**

---

There are no appearances by any party.

Hon. Peter Wilson and Hon. Lon F. Hurwitz have conferred and the Court hereby takes notice that this case is related to Case No. 30-2023-01313431.

This case is hereby reassigned to the inventory of Hon. Lon F. Hurwitz in Department CX103 for all purposes.

The Court determines that for purposes of exercising C.C.P. 170.6 rights, there are two sides to this matter unless the contrary is brought to the attention of the Court, by Ex-Parte motion. Counsel has 15 days from the date of the enclosed certificate of mailing in which to exercise any rights under C.C.P. 170.6.

Court orders clerk to give notice.

---

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 06/06/2023                  TIME: 05:08:00 PM            DEPT:  CX103

JUDICIAL OFFICER PRESIDING: Lon F. Hurwitz
CLERK: M. Diaz
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: . None

CASE NO: **30-2023-01315890-CU-MC-CXC**   CASE INIT.DATE: 03/13/2023
CASE TITLE: **Epson America, Inc. vs. Arnoff**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Misc Complaints - Other

EVENT ID/DOCUMENT ID: 74032253
**EVENT TYPE:** Chambers Work

**APPEARANCES**

There are no appearances by any party.

The Court finds that this case is exempt from the case disposition time goals imposed by California Rule of Court, rule 3.714 due to exceptional circumstances and estimates that the maximum time required to dispose of this case will exceed twenty-four months due to the following case evaluation factors of California Rules of Court, rules 3.715 and 3.400:  Case is Complex.

Each party who has not paid the Complex fee of $ 1000.00 as required by Government Code section 70616 shall pay the fee to the Clerk of the Court within 10 days calendar days from date of this minute order.  Failure to pay required fees may result in the dismissal of complaint/cross-complaint or the striking of responsive pleadings and entry of default.

**The Case Management Conference is scheduled for 08/30/2023 at 01:30 PM in Department CX103.**

CASE MANAGEMENT CONFERENCE:
**Plaintiff shall, at least five court days before the hearing, file with the Court and serve on all parties of record or known to Plaintiff a brief, objective summary of the case, its procedural status, the contentions of the parties and any special considerations of which the Court should be aware**. Other parties who think it necessary may also submit similar summaries three court days prior to the hearing. DO NOT use the CMC (Case Management Statement) form used for non-complex cases (Judicial Council Form CM-110).

ELECTRONIC FILING:
This case is subject to **mandatory electronic filing** pursuant to Superior Court Rules, County of Orange, Rule 352 and mandatory electronic service by order of this Court. Plaintiff shall give notice of the Status Conference and the electronic filing and service requirement to all parties of record or known to plaintiff and shall attach a copy of this minute order.

CASE TITLE: Epson America, Inc. vs. Arnoff    CASE NO:
30-2023-01315890-CU-MC-CXC

PROPOSED ORDERS:
All **proposed orders** (including those submitted pursuant to stipulation) must be submitted in 2 electronic formats. One copy is to be filed in Word (without attachments), and another copy in.pdf format with all attachments/exhibits attached to it. Failure to follow this rule may result in the proposed order not being brought to the attention of the Court in a timely fashion. Ensure that the proposed order is identified as a "Proposed Order".

BOOKMARKING:
Bookmarking of exhibits to motions and supporting declarations - **The court requires strict compliance with CRC, rule 3.1110 (f) (4)** which requires electronic exhibits to include electronic bookmarks with the links to the first page of each exhibit, and with bookmarked titles that identify the exhibit number or letter and briefly describe the exhibit. CRC, rule 3.1110 (f) (4).

The court may continue a motion that does not comply with rule 3.1110 (f) (4) and require the parties to comply with that rule before resetting the hearing.

Clerk to give notice.
Plaintiff is to give notice to any party not listed on the Clerk's Certificate of Mailing/Electronic Service and is to file a Proof of Service.

Electronically Received by Superior Court of California, County of Orange, 06/07/2023 12:05:07 PM.
30-2023-01315890-CU-MC-CXC - ROA # 18 - DAVID H. YAMASAKI, Clerk of the Court By eClerk, Deputy Clerk.

Case 30-2023-01315890-CU-MC-CXC Document 1 Filed 06/09/2024 Page 79 of 351 PageID #:117

21323070

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE**

| | |
|---|---|
| EPSON AMERICA, INC., <br> Plaintiff, <br><br> versus <br><br> GRAESEN ARNOFF, an individual, et al., <br> Defendants. | **[PROPOSED] ORDER GRANTING DEFENDANTS' APPLICATION FOR A TEMPORARY EXTENSION OF TIME TO APPEAR ANSWER AND PARTICIPATE IN DISCOVERY** <br><br> Assigned for All Purposes to: <br> Hon. Lon F. Hurwitz <br> Date Action Filed: March 10, 2023 |

1

[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR TEMOPORARY EXTENSION OF TIME TO
APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

Defendants' Application for an Extension of Time to Appear, Answer, And Participate In Discovery came before this Court for hearing on June 8, 2023 at 1:30 p.m. Having reviewed the arguments of counsel, the papers submitted by the parties, and the pleadings and records on file herein, the Court finds that:

1.  Good cause exists for a stay of the requirement that defendants other than Michelle Churchill and Fernando Hernandez ("Proposed Lead Defendants") appear and answer the Complaint of Plaintiff Epson America, Inc. ("Plaintiff") pending this Court's decision on Proposed Lead Defendants' Motion for Class Certification, filed on June 7, 2023 (the "Class Certification Motion").

2.  Good cause exists for a stay of discovery sought from defendants other than Proposed Lead Defendants pending this Court's decision on the Class Certification Motion.

Based on the foregoing, and good cause appearing therefore,

**IT IS HEREBY ORDERED:**

1.  Proposed Lead Defendants' Application is hereby GRANTED.

2.  Any requirement for any Defendant other than Proposed Lead Defendants to appear in this action, to respond to Plaintiff's Complaint, and to respond to discovery of any kind, is hereby stayed pending this Court's decision on the Class Certification Motion.

3.  In the event this Court grants the Class Certification Motion, the aforesaid stay shall continue unless and until the Defendant class is decertified by order of a court of competent jurisdiction, and will resume 30 days following service of such order on counsel for Defendants.

2

1    4.    In the event this Court denies the Class Certification Motion, the aforesaid stay shall

2    continue until 30 days following service of the order denying the Class Certification

3    Motion on counsel for Defendants.

4

5

6    DATED: _____                    _____
                                           HONORABLE LON F. HURWITZ
7                                          CALIFORNIA SUPERIOR COURT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com

Jonathan Waisnor (CA 345801)
Jonathan Gardner (Pro Hac Vice Application Forthcoming)
Alexander Schlow (Pro Hac Vice Application Forthcoming)
Morris Dweck (Pro Hac Vice Application Forthcoming)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
jwaisnor@labaton.com

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| EPSON AMERICA, INC.,<br>Plaintiff,<br><br>versus<br><br>GRAESEN ARNOFF, an individual, et al.,<br>Defendants. | **Case No.: 30-2023-01315890-CU-MC-CXC**<br><br>**EX PARTE APPLICATION FOR ORDER TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY**<br><br>Date: June 8, 2023<br>Time: 1:30 p.m.<br>Location: CX103<br>Judge: Hon. Lon F. Hurwitz<br>Trial Date: Not Yet Set |

1    **DEFENDANTS MICHELLE CHURCHILL AND FERNANDO HERNANDEZ,** on

2  behalf of themselves and all other defendants, by their attorneys Labaton Sucharow LLP and

3  Scott+Scott Attorneys at Law LLP, hereby apply for a court order temporarily extending the time for

4  all other defendants in this action to appear, answer, and participate in discovery in this action,

5  pending a decision on Defendants' motion for certification of a defendant class in this action, filed

6  concurrently herewith.

7        This application is made based on the Court's inherent authority to control the matters before

8  it, including the inherent power to manage its calendar and waive or suspend filing or appearance fees

9  (Code Civ. Proc., §§ 128(a)(8), 187; Govt. 9 Code, § 68070(a); *Jameson v. Desta* 5 Cal.5th 594, 604-

10 605 (2018); *Jara 10 v. Mun. Ct.* 21 Cal.3d 181, 184 (1978); *Cottle v. Super. Ct.* 3  Cal.App.4th 1367,

11 1380 (1992)), and it is made on the grounds that:  (i) should the Named Defendants' motion for class

12 certification be granted, no other defendant will be required to individually appear, incur associated

13 fees, or participate in individual discovery; and (ii) a temporary waiver will ensure that access to this

14 Court is not denied due to Plaintiff's procedural gamesmanship in joining hundreds of individual

15 claims and will give the Court the flexibility to determine the proper procedural and legal framework

16 for adjudication of the parties' dispute without subjecting undeserving Defendants to unnecessary

17 expense.  This relief is sought on an *ex parte* basis rather than by noticed motion because Defendants'

18 current deadline to appear and answer is June 8, giving insufficient time to brief and decide a noticed

19 motion, and because appearing to make such a noticed motion would trigger the fee requirement this

20 motion seeks to have stayed, rendering any relief granted moot.

21

22

23

24

25

26

27

28

This application is based upon the accompanying declaration of Jonathan Waisnor in support of the application and the exhibits thereto, the accompanying declaration of Jonathan Waisnor regarding notice to Plaintiff, the accompanying supporting memorandum, the papers and records on file herein, and on such oral and documentary evidence as may be presented at the hearing, if any, on the application.

DATED:        June 7, 2023                    **LABATON SUCHAROW LLP**

_____
Jonathan Waisnor (Bar No. 345801)
140 Broadway
New York, New York 10005
Tel.:  (212) 907-0700
Fax:  (212) 907-7039
jwaisnor@labaton.com

**LABATON SUCHAROW LLP**
Jonathan Gardner (Pro Hac Pending)
Alexander Schlow (Pro Hac Pending)
Morris Dweck (Pro Hac Pending)
140 Broadway
New York, New York 10005
Tel.:  (212) 907-0700
Fax:  (212) 907-7039
jgardner@labaton.com
aschlow@labaton.com
mdweck@labaton.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone:  619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

*Counsel for Defendants*

EX PARTE APPLICATION FOR ORDER TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com


Jonathan Waisnor (CA 345801)
Jonathan Gardner (Pro Hac Vice Application Pending)
Alexander Schlow (Pro Hac Vice Application Pending)
Morris Dweck (Pro Hac Vice Application Pending)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
jwaisnor@labaton.com

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| EPSON AMERICA, INC.,<br>Plaintiff,<br><br>versus<br><br>GRAESEN ARNOFF, an individual, et al.,<br>Defendants. | **DECLARATION OF JONATHAN WAISNOR RE NOTICE OF EX PARTE APPLICATION**<br><br>Hearing Date: June 7, 2023<br>Time: 1:30 p.m.<br>Dept.: CX103<br><br>Assigned for All Purposes to:<br>Hon. Lon F. Hurwitz<br>Date Action Filed: March 10, 2023 |

## EX PARTE APPLICATION NOTICE DECLARATION

I, JONATHAN WAISNOR, declare as follows:

1.      I am an attorney duly admitted to practice in the State of California.  I am an attorney with the law firm of Labaton Sucharow LLP, counsel for Defendants in the above captioned action. This Declaration is based upon my personal knowledge and if called to testify, I could and would do so competently as to the matters set forth herein.

2.      Pursuant to California Rule of Court 3.1203, attorney Alexander Schlow of my firm informed counsel for Epson America, Inc. ("Epson"), the Plaintiff and only opposing party in this Action, of my intention to file this ex parte application, through an e-mail to Epson's counsel at Quinn Emmanuel LLP, on June 6, 2023.  I was copied on that e-mail.  Counsel for Epson responded that Epson opposes this motion.

3.      I have set forth reasons for seeking relief through an ex parte application in the memorandum of law filed concurrently herewith.


I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.


Executed on June 7, 2023, at Brooklyn, New York.

_____

Jonathan Waisnor (Bar No. 345801)

*Counsel for Defendants*

---

1

DECLARATION OF JONATHAN WAISNOR RE NOTICE OF EX PARTE APPLICATION
Case No. 30-2023-01315890-CU-MC-CXC

**<u>DECLARATION OF SERVICE BY EMAIL</u>**

I, the undersigned, declare:

1.      The declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Bergen, State of New York, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 140 Broadway, New York, NY 10005.

2.      That on June 7, 2023, served the DECLARATION OF JONATHAN WAISNOR RE NOTICE OF EX PARTE APPLICATION, via email to the parties listed on the attached Service List.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.

Executed on June 7, 2023, at Englewood, New Jersey.

_____

Morris Dweck (Pro Hac Vice Application Pending)

2

DECLARATION OF JONATHAN WAISNOR RE NOTICE OF EX PARTE APPLICATION
Case No. 30-2023-01315890-CU-MC-CXC

1

<u>**SERVICE LIST**</u>

2

Epson America, Inc., vs. Graesen Arnoff, et.al.

3

Orange County Superior Court Case No. 30-2023-01315890-CU-MC-CXC

4

5

**QUINN EMANUEL URQUHART &**          Attorneys for Plaintiff EPSON AMERICA INC.

**SULLIVAN, LLP**

6

Jack Baumann                          jackbaumann@quinnemanuel.com

7

Shon Morgan                           shonmorgan@quinnemanuel.com

865 South Figueroa Street, 10th Floor

8

Los Angeles, California 90017-2543

Telephone: (213) 443-3000

9

Facsimile: (213) 443-3100

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JONATHAN WAISNOR RE NOTICE OF EX PARTE APPLICATION

Case No. 30-2023-01315890-CU-MC-CXC

John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com

Jonathan Waisnor (CA 345801)
Jonathan Gardner (Pro Hac Vice Application Forthcoming)
Alexander Schlow (Pro Hac Vice Application Forthcoming)
Morris Dweck (Pro Hac Vice Application Forthcoming)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
jwaisnor@labaton.com

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| EPSON AMERICA, INC.,<br>Plaintiff,<br><br>versus<br><br>GRAESEN ARNOFF, an individual, et al.,<br>Defendants. | **Case No.: 30-2023-01315890-CU-MC-CXC**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY**<br><br>Date: June 8, 2023<br>Time: 1:30 p.m.<br>Location: CX103<br>Judge: Hon. Lon F. Hurwitz<br>Trial Date: Not Yet Set |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ii

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND .............................................................................................................. 3

      A.    Factual Background .................................................................................. 3

III.  THE COURT SHOULD EXTEND THE TIME TO APPEAR, ANSWER AND
      PARTICIPATE IN INDIVIDUALIZED DISCOVERY PENDING
      CONSIDERATION OF DEFENDANTS' MOTIONS. ................................................. 7

      A.    Legal Standard .......................................................................................... 7

      B.    A Temporary Extension of Time to Appear and Participate In Individualized
            Discovery Will Serve the Interests Of Justice And Efficiency ................... 9

IV.   CONCLUSION ............................................................................................................... 11

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cottle v. Super. Ct.*,
   3 Cal. App. 4th 1367 (1992) ............................................................................7

*Epson America, Inc. v. Matt Adams, et al.*,
   Case No. 30-2023-013134431-CU-MC-CXC ...........................................1, 5

*Galgon v. Epson America, Inc.*,
   No. 2:2021-cv-01794, 2021 U.S. Dist. LEXIS 193142 (C.D. Cal. June 16, 2021)......... *passim*

*Jameson v. Desta*,
   5 Cal. 5th 594 (2018) ........................................................................................8

*Jara v. Mun. Ct.*,
   21 Cal. 3d 181 (1978) ........................................................................................7

*Mondigo v. Epson Am., Inc.*,
   No. CV 20-4400-CBM-GJS(x), 2020 U.S. Dist. LEXIS 252136 (C.D. Cal. Oct.
   13, 2020) ..................................................................................................... *passim*

*Terminals Equip. Co. v. City of San Francisco*,
   221 Cal. App. 3d 234 (1990) ............................................................................9

*Twentieth Century Fox Film Corp. v. Superior Court*,
   79 Cal. App. 4th 188 (2000) .............................................................................8

**Statutes**

Code Civ. P. § 1054 ..........................................................................................2, 7

Code Civ. P. § 1281.4 .......................................................................................2, 8

Code Civ. P. § 2019.020(b) ..................................................................................9

Code Civ. Proc. §§ 128(a)(8) ................................................................................7

Govt. Code § 68070(a) ..........................................................................................7

**Other Authorities**

CIVIL RULES Rule 3.400 ....................................................................................7

EX PARTE APPLICATION FOR ORDER TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER,
AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1

https://www.jamsadr.com/blog/2023/jams-policy-regarding-mass-arbitration-
    filings#:~:text=JAMS%20will%20not%20reduce%20fees,impartial%2C%20neut
    ral%20and%20fair%20process ................................................................................6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX PARTE APPLICATION FOR ORDER TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER,
AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1    Defendants Michelle Churchill and Fernando Hernandez ("Proposed Lead Defendants"), on

2    behalf of themselves and all other defendants in this action, respectfully submit this memorandum in

3    support of their application for a temporary stay of the requirements to appear and answer in this

4    action for all defendants other than Proposed Lead Defendants ("Motion").[1]

5    **I.    INTRODUCTION**

6    In this action and the related action *Epson America, Inc. v. Matt Adams, et al.*, Case No. 30-

7    2023-013134431-CU-MC-CXC, plaintiff Epson America, Inc. ("Plaintiff" or "Epson") sued 3,994

8    individual Defendants, its own customers, in a "mass action," simply because Defendants attempted

9    to arbitrate their consumer protection disputes with Epson in the manner and forum imposed upon

10    them by Epson in its own End User Software License Agreement ("SLA")[2].  Epson's tactics are a

11    stunning about-face from its prior positions before a federal court, where it successfully compelled

12    claims identical to those of Defendants here to arbitration before JAMS – the forum where Defendants

13    brought their claims and that accepted jurisdiction over the matters.  Waisnor Dec. ¶¶5-8 and Exhs.

14    B ("*Mondigo* Motion to Compel"), C ("*Mondigo* Reply"); *See Mondigo v. Epson Am., Inc.*, No. CV

15    20-4400-CBM-GJS(x), 2020 U.S. Dist. LEXIS 252136 at *10 (C.D. Cal. Oct. 13, 2020).

16    To this day, Epson is still arbitrating the exact same underlying claims stemming from that

17    action at JAMS with a small number of individuals.  Waisnor Dec. ¶9 and Exh. D.  Nor was this the

18    only time Epson successfully compelled customers who alleged exactly what Defendants allege here

19    to arbitration before JAMS.  The next year, in *Galgon v. Epson America, Inc.*, No. 2:2021-cv-01794

20    (C.D. Cal. 2021), Epson straightforwardly (and correctly) argued that "[t]his dispute does not belong

21    in court."  Waisnor Dec. ¶¶10-12 and Exh. E ("*Galgon* Motion to Compel").  Epson's motion to

22    compel in *Galgon* was granted, with the District Court finding that the SLA "clearly and unmistakably

23    indicates the parties' intent for the arbitrator to decide the issue of arbitrability."  *Galgon v. Epson*

24

25

---

26    [1]Unless otherwise noted, citations and internal quotation marks are omitted, and emphasis is added.

27    [2] A copy of the SLA is attached as Exhibit A to the accompanying declaration of Jonathan Waisnor ("Waisnor Declaration" or "Waisnor Dec.") filed in support of this application.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1  *America, Inc.*, No. 2:2021-cv-01794, 2021 U.S. Dist. LEXIS 193142 at *6-*7 (C.D. Cal. June 16,
2  2021).

3      But when Defendants here took Epson at its word and brought their claims before JAMS,
4  rather than abiding by its own position and the terms of its agreement with them, Epson refused to
5  pay its share of the arbitration fees and instead brought this action.  Waisnor Dec. ¶¶13-16, 19.  As a
6  result, JAMS has indicated it has administratively closed the arbitrations as of June 6, 2023 due to
7  Epson's nonpayment.  *Id.*, ¶¶20-24 and Exh. J.  However, Epson continues to press these cases, even
8  though it refuses to arbitrate.

9      Unfortunately, narrow emergency relief is necessary to stop this unprecedented abuse of the
10  judicial process by a large corporation against its own customers.  Epson has refused repeatedly to
11  discuss any reasonable approach to scheduling or coordinating these nearly 4,000 undoubtedly
12  complex cases.  The goal is simple: block its customers from asserting their arbitration rights by any
13  means necessary.  Even though there has been no case management conference yet, Epson has
14  charged forward with vexatious and unnecessary discovery demands against 2,166 individual
15  Defendants in the *Adams* action.  Epson has refused to discuss a reasonable schedule for the exchange
16  of information that will moot the *Adams* action, and no arbitrations are currently pending or have any
17  prospect of beginning while Epson continues to breach its own arbitration agreement.  Waisnor Dec.
18  ¶¶ 28-29.

19      A brief extension of appearance deadlines and discovery is undoubtedly warranted here.  Ex
20  parte relief is also warranted under both "irreparable harm" and statutory grounds.  If Defendants are
21  required to appear now, they will be deprived of the benefit of the agreements they signed with Epson
22  that entitle them to an individualized, efficient, confidential arbitration process with streamlined
23  discovery and procedures.  Further, they will also be required to pay individualized appearance fees
24  totaling over $650,000, exclusive of complex case fees, without any reasonable opportunity to submit
25  indigent fee waivers.  Further, because Defendants intend to move to compel arbitration, a stay of
26  proceedings is warranted.  *See* Code Civ. P. §§ 1054; 1281.4.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1    In a prior litigation involving the exact practices forming the basis of Defendants' arbitration
2    claims here, Epson vigorously argued that all disputes between it and its customers belonged in
3    arbitration. *See Mondigo et al v. Epson America, Inc.*, Case No., 20-cv-4400 (C.D. Ca. 2020). In so
4    doing, Epson stated that: "Plaintiffs should not be permitted to ignore their arbitration agreements,
5    file a lawsuit in federal court, and force Epson to participate in litigation in violation of the terms of
6    the parties' agreements." *Mondigo* Motion to Compel at 12. Epson further argued – by citation to
7    JAMS rules – that "disputes over the formation, existence, validity, interpretation or scope of the
8    agreement under which Arbitration is sought" were "reserved for the arbitrator," "and not a court."
9    *Mondigo* Reply at 5-6. Epson's motion before the District Court was successful. 2020 U.S. Dist.
10   LEXIS 252136 (C.D. Cal. Oct. 13, 2020). As Epson straightforwardly put it when it successfully
11   compelled a *second* action involving functionally identical claims to arbitration before JAMS, "[t]his
12   dispute does not belong in court." *Galgon* Motion to Compel at 1.

13   In light of these representations, Epson cannot credibly oppose *ex parte* relief or a temporary
14   postponement of appearances or discovery. Further, because Epson has refused to pay arbitration
15   fees for any of the Defendants, and no *Adams* defendant is currently pursuing arbitration, it will not
16   be prejudiced by any stay. No arbitrations are pending or can practically commence until the court
17   rules on Defendants upcoming demurrer and motions to compel arbitration and for sanctions.

18   **II.    BACKGROUND**

19        **A.    Factual Background**

20   Epson is a California corporation and wholly-owned subsidiary of Seiko Epson Corporation,
21   a Japanese corporation. Complaint, ¶ 9[3]. Epson is responsible for selling and marketing Epson
22   printers in the United States. *Id.* Epson manufactures both printers and ink cartridges. Consumers
23   can purchase printers or ink cartridges either directly from Epson or from other retailers. Ink
24   cartridges are a vital source of revenue for printer companies like Epson. Epson's original equipment

25

26

27   _____
     [3] References to "Complaint" are to Plaintiff's complaint in this action, filed on March 10, 2023.

28
     MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
     TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
     Case No. 30-2023-01315890-CU-MC-CXC

1    manufacturer ("OEM") replacement ink ranges from $10-$150 per cartridge, with most printers

2    requiring four cartridges to work; third-party ink is typically much cheaper.

3          Epson printer owners must agree to SLA when purchasing and first setting up an Epson

4    Printer.  *Id.* ¶12.  Under the terms of Epson's SLA, Epson printer owners authorized Epson to access

5    their printers to apply fixes and upgrades to improve the printer's performance.  The SLA further

6    requires that any disputes between Epson and its customers thereunder, including questions regarding

7    jurisdiction or arbitrability, be decided by arbitration before JAMS.  (SLA at 14).

8          Defendants here and in the *Adams* action are Epson printer owners who allege that they wish

9    to use cheaper third-party ink in their printers, but can no longer do so because Epson pushed

10   unilateral firmware updates onto their printers that rendered them incompatible with third-party ink

11   cartridges.  Waisnor Dec. ¶ 3.  Claimants allege that, in violation of the SLA, Epson improperly forced

12   software and firmware updates on their printers which disabled the ability to use cheaper ink, in

13   violation of state and federal consumer protection laws.  *Id.*

14         The plaintiffs in *Mondigo et al v. Epson America, Inc*., Case No., 20-cv-4400 (C.D. Ca. 2020)

15   brought a putative class action against Epson alleging harm to Epson customers based on these same

16   wrongful practices.  Rather than defending that action in court on the merits, Epson, represented by

17   the same counsel representing it in these cases, successfully moved to stay the action and to compel

18   the claims to arbitration.  *See generally Mondigo*, 2020 U.S. Dist. LEXIS 252136 (C.D. Cal. Oct. 13,

19   2020).  In making that motion, Epson forcefully argued that the same SLA at issue in this action

20   "clearly and unmistakably delegate[s] issues of arbitrability to the arbitrator," including "whether the

21   parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Mondigo*

22   Motion to Compel at 6-7.  Epson further argued, contrary to its position in this action, that the question

23   of whether the plaintiffs in *Mondigo* "entered into valid arbitration agreements" was "not an issue for

24   the court."  *Id.* at 8 ("Because disputes regarding the **existence**, scope and validity of the arbitration

25   agreements **are reserved for the arbitrator**, the Court need not address these issues.").  Epson further

26   argued that the SLA "incorporate[s] the JAMS rules," which rules "provide the arbitrator, ***and not a***

27

28
                                                    4
     MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
       TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
                              Case No. 30-2023-01315890-CU-MC-CXC

1   *court,* shall resolve disputes over the ***formation, existence*** . . . or scope of an agreement under which

2   Arbitration is sought." *Mondigo* Reply at 5-6.

3        Similarly, in *Galgon*, Epson *again* successfully argued that disputes like those with

4   Defendants here "do[] not belong in court." *Galgon* Motion to Compel at 1. There, Epson argued,

5   in direct contravention of its position here:

6             to set up and begin using his printer, plaintiff was required to view and
              provide his affirmative consent to Epson's [SLA]. Additionally, plaintiff
7             reaffirmed his agreement to arbitrate when he was presented with the
              Updater EULA at the time of the software update and once again
8             affirmatively assented to the terms. . . . As this Court determined in *Mondigo*
              based on this same process, there can be no "dispute [plaintiff] entered into
9             the software license agreement and/or the Updater EULA[.]"
10            *Galgon* Motion to Compel at 9 (quoting *Mondigo*, 2020 U.S. Dist. LEXIS
              252136 at *4) (final two alterations in original).
11

12        Defendants concur with Epson's previous position that Claimants' representations that they

13   set up their printers and assented to the relevant terms leave no dispute that an agreement to arbitrate

14   exists, and that issues of arbitrability and formation raised by Epson's complaint here should be

15   decided by JAMS. Epson is judicially estopped from denying otherwise. Accordingly, in late 2022,

16   pursuant to the notice requirements of the SLA, and consistent with Epson's position in *Mondigo* and

17   *Galgon,* Defendants informed Epson of the nature and facts underlying their claims, and of their intent

18   to seek arbitration of those claims before JAMS. Waisnor Dec. ¶ 13.

19        Following a period of negotiation and information exchange and a failed mediation before a

20   JAMS mediator, Robert Meyer, Esq., 3,994 individuals filed arbitration claims with JAMS against

21   Epson on March 6, 2023. *Id.* ¶14. Epson asked JAMS for additional time to "evaluat[e] information"

22   on the Claimants, and then quickly filed this action and the related *Adams* action. Epson did not seek

23   a stay of the JAMS proceedings. *Id.* ¶¶15-16, 19 and Exh. F. For the first time, Epson admitted that

24   it had located arbitration agreements with certain individuals represented by counsel. *Id.*, ¶16. Epson

25   conceded that the Defendants here had agreed to its SLA (and thus that they and Epson were bound

26   to the arbitration provision therein), but contended that, because it had purportedly unilaterally

27   amended that SLA to require customers to bring any "Mass Arbitration" before FedArb ("Amended

28

1  SLA") and to impose administrative exhaustion requirements before consumers to commence

2  arbitration, arbitrations against it should not move forward before JAMS.  *Id.*  Claimants disputed the

3  validity and application of the Amended SLA to their claims, because, among other reasons, the

4  amendment had taken place after Epson was on notice of the claims and in anticipation of litigation.

5      Epson also contended that a subset of Defendants, those now named as defendants in this

6  action, had not provided it with sufficient information to determine whether such claimants owned

7  Epson printers and had agreed to any version of the SLA.  *Id.* ¶19.  Previously, despite being provided

8  with requested information on all the Defendants, Epson refused to engage in any meet and confer

9  process with Defendants, and simply demanded compliance with ever increasing requirements for

10  information that was not required under the SLA's dispute resolution provisions.

11      On April 6, 2023, JAMS rejected Epson's argument that Defendants' arbitrations should not

12  move forward before JAMS.  JAMS correctly recognized that the issue raised by Epson in this action

13  – which version of the SLA controls the parties' dispute – was properly decided by the arbitrators.

14  *See* Waisnor Dec., Exh. H ("April 6 JAMS Notice") at 2 ("JAMS will proceed with administration of

15  . . . the 'Arnoff' Demands . . . .  [Epson] may raise its jurisdictional and arbitrability objections with

16  the arbitrators upon appointment.").  JAMS determined that it would proceed with arbitration of

17  Defendants' claims, and on April 7, 2023, JAMS invoiced Epson for the case initiation fees for the

18  Arnoff Claimants' arbitrations, which it is obligated to pay under the SLA.  Waisnor Dec. ¶¶21-22

19  and Exhs. H, I.  Those initiation fees remain unpaid to date, and as of the date of this Motion, Epson

20  is in material breach of the SLA, and subject to sanctions for that breach under Cal. Civ. Pro. §

21  1281.97-99.  Waisnor Dec., ¶¶23-24 and Exh. K.  Epson has confirmed that it is not going to pay the

22  fees.  *Id.,* ¶23 and Exh. K.  As a result, JAMS has administratively closed the arbitrations.  *Id.,* ¶24

23  and Exh. J.

24      Epson was not assessed any fees with respect to the *Adams* Defendants.  Instead, Epson

25  refused their offer to have JAMS appoint a single procedural arbitrator appointed to facilitate a good-

26  faith information exchange to verify the existence of an arbitration agreement between Defendants in

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1   this action and Epson.[4]  *Id.* ¶¶17-20, 27 and Exh. K.  After Epson refused to pay the fees in

2   Defendants' arbitrations, the *Adams* Defendants withdrew without prejudice their arbitrations.  *Id.*

3   ¶27.

4        The Adams and Arnoff matters were designated as complex, and related and consolidated in

5   front of this Court.  *Id.* ¶ 25.  As an initial case management conference has been scheduled for

6   August 30,2023, no case management order been entered to date.  *Id.*  Defendants intend to file a

7   demurrer and motion to compel arbitration on June 8, the current response deadline.  Because Epson

8   has improperly joined 3,994 individual customers in two "mass actions," arising out of a common set

9   of facts, raising identical legal issues, and seeking the same relief, Defendants also intend to move for

10   certification of this matter as a Defendant class action.  However, Epson has already served discovery,

11   refused to consent to a stay of discovery or of appearances for defendants other than Proposed Lead

12   Defendants, and indicated that it intends to move to compel production at the soonest opportunity.

13   *Id.* ¶29.  Thus, expedited relief is needed.

14   **III.**    **THE COURT SHOULD EXTEND THE TIME TO APPEAR, ANSWER AND**
15               **PARTICIPATE IN INDIVIDUALIZED DISCOVERY PENDING**
                 **CONSIDERATION OF DEFENDANTS' MOTIONS.**

16        **A.**     **Legal Standard**

17        This Court has the inherent authority to extend the time to manage its calendar and grant

18   reasonable extensions of time upon a showing of good cause.  Code Civ. P. § 1054(a).  This includes

19   the power to grant a temporary extension of the time to appear where, as here, such relief is warranted.

20   *See* Code Civ. Proc. §§ 128(a)(8) ("Every court shall have the power to . . . . amend and control its

21   process and orders so as to make them conform to law and justice"); 187 ("in the exercise of [its]

22

23   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]   JAMS rules expressly encourage the parties to agree on such an approach.

24   https://www.jamsadr.com/blog/2023/jams-policy-regarding-mass-arbitration-
    filings#:~:text=JAMS%20will%20not%20reduce%20fees,impartial%2C%20neutral%20and%20fair

25   %20process. ("We encourage the parties to collaborate at the outset of a mass filing (which JAMS
    defines as any group of 25 or more filings from the same law firm or lawyer against the same company

26   at the same time). Strategies that have proven effective include sharing information about the validity
    of each individual's status (employee, customer, etc.); filing demands in batches; and agreeing on

27   "test" cases, arbitrator selection, manner of hearing (in-person, virtual or hybrid), timelines for
    commencement and hearings, etc.").

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1    jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute,

2    any suitable process or mode of proceeding may be adopted."); Govt. Code § 68070(a) ("Every court

3    may make rules for its own government . . . not inconsistent with law").

4       Both these cases have been designated as complex.  "A "complex case" is an action that

5    requires exceptional judicial management to avoid placing unnecessary burdens on the court or the

6    litigants and to expedite the case, keep costs reasonable, and promote effective decision making by

7    the court, the parties, and counsel."  CA ST CIVIL RULES Rule 3.400.  Further, "it is apparent that

8    courts have the power to fashion a new procedure in a complex litigation case to manage and control

9    the case before them. . . . [A] court should consider the totality of the circumstances of the particular

10   case in deciding how to manage a complex litigation case." *Cottle v. Super. Ct.*, 3 Cal. App. 4th 1367,

11   1380 (1992).

12      This Court also possesses the "inherent power to waive its filing fees to accommodate

13   indigents in civil litigation," *Jara v. Mun. Ct.*, 21 Cal. 3d 181, 184 (1978), and to adopt processes

14   facilitating "equal access to the judicial process" and "alternative procedures . . . so that indigent

15   litigants are not, as a practical matter, denied their day in court."  *Jameson v. Desta*, 5 Cal. 5th 594,

16   605 (2018).  The circumstances here clearly warrant the exercise of these inherent powers.

17      In addition, stays pending determination of an application to compel arbitration, such as the

18   application anticipated by Defendants here, are not only routinely granted, but required by statute.

19   "If an application has been made to a court of competent jurisdiction . . .  for an order to . . . and such

20   application is undetermined, the court in which such action or proceeding is pending shall, upon

21   motion of a party to such action or proceeding, stay the action or proceeding until the application for

22   an order to arbitrate is determined."  Code Civ. P. § 1281.4.  Section 1281.4 "is clear and

23   unambiguous: it requires that the trial court stay an action pending before it while an application to

24   arbitrate the subject matter of the action is pending in a court of competent jurisdiction.  There is no

25   specific or implied exception contained within the statute . . . ."  *Twentieth Century Fox Film Corp.*

26   *v. Superior Court, 79 Cal. App. 4th* 188, 192 (2000).

27

28

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1   Finally, this court has broad discretion to "establish the sequence and timing of discovery for

2   the convenience of parties . . . and in the interests of justice."  Code Civ. P. § 2019.020(b).  This

3   discretion is properly exercised to prevent "an unnecessary and burdensome additional expense"

4   where the fundamental viability of a complaint is being tested.  *Terminals Equip. Co. v. City of San*

5   *Francisco,* 221 Cal. App. 3d 234, 247 (1990).  If a plaintiff is "unable to state a viable cause of action

6   on the basis of the facts already available to" it, a stay of discovery is warranted.  *Id.*

7   **B.      A Temporary Extension of Tim to Appear and Participate In**
    **Individualized Discovery Will Serve the Interests Of Justice And**
8   **Efficiency**

9   As set forth above, these actions represent a stunning about-face for Epson, which has

10   previously insisted that all claims such as those of Defendants belong in arbitration, even those

11   concerning the "existence" or "formation" of the agreement to arbitrate.  Waisnor Dec. ¶¶5-12 and

12   Exhs. B, C, E.   Epson has also previously conceded that representations of customers such as

13   Defendants that they own and have set up Epson printers via Epson's process have *indisputably*

14   entered into agreements to arbitrate with it.  *Galgon* Motion to Compel at 8-9.  Epson now attempts

15   to avoid its contractual obligations to arbitrate, and to punish Defendants for asserting their rights

16   under the SLA.  For the reasons set forth in Defendants' accompanying motions for class certification,

17   Epson's claims are meritless, and all of the issues to be presented in Defendants' responses to those

18   claims are best adjudicated on a class-wide basis.

19   However, in the absence of relief from this court, all defendants other than the Proposed Lead

20   Defendants will be forced to choose between appearing (and incurring associated fees) and

21   responding to Epson's overbroad discovery requests, which would be unnecessary if Defendants'

22   class certification motions and motions to compel arbitration are granted, or failing to appear, and

23   risking a finding of default if Defendant's motions are denied.   Similarly, any individualized

24   discovery, such as individual depositions or document productions, would be unnecessary (and

25   unauthorized) if class certification is granted, but a failure to respond to such demands while

26   Defendants' motions are pending puts any individual Defendant at risk of associated presumptions,

27

28

9

1  motions to compel, or even sanctions.  Epson, clearly aware of this, has already threatened to file a

2  motion to compel production, despite the fact that no case management order has been entered.

3      In its Complaint, Epson again tacitly admits what it vigorously argued in *Mondigo* and *Galgon*

4  – its disputes with Defendants belong before an arbitrator.  Epson's suits against its customers are a

5  meritless and desperate attempt to avoid the results of its own successful position on the meaning of

6  a contract it drafted.  Defendants will directly address the fatal flaws in Epson's unfounded claims

7  through their motion to compel arbitration and for sanctions in this action and their demurrer in

8  *Adams*, both of which Defendants will file no later than June 8, the stipulated appearance deadline in

9  both actions.  The arguments advanced in these anticipated applications all apply with equal force to

10  each Defendant in each respective action, and Defendants are optimistic that this Court will quickly

11  and efficiently decide both actions against Epson and in favor of all defendants after evaluating those

12  arguments.  Further, staying Defendants' time to appear will also avoid the imposition of over $1

13  million in appearance fees.

14      There is no prejudice to Epson for a brief stay of appearance deadlines and discovery.  There

15  is not currently any pending or threatened arbitration by any of the *Adams* Defendants, nor could any

16  arbitration by any *Adams* Defendant, or any of the unnamed Doe Defendants, actually commence

17  until Epson is ordered to arbitrate with the *Arnoff* Defendants.  Because there is no reasonable prospect

18  of arbitration unless and until the court orders it, discovery into arbitrability is unduly burdensome.

19      Epson's position, in essence, is that the Defendants and this Court must become embroiled in

20  the procedural morass of thousands of individual declaratory judgment actions proceeding in parallel

21  any time it, or any other company, decides it doesn't like the consequences of an arbitration agreement

22  it drafted.  Together with Defendants' motions for class certification, filed concurrently herewith, this

23  application seeks to avoid such senseless inefficiency by allowing Defendants to present their

24  meritorious defenses on a unified basis while suspending the requirement that thousands of

25  individuals residing throughout the country individually appear and pay hundreds of dollars each in

26  fees and respond to discovery requests.  If certification of the proposed defendant classes is granted,

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1  these individuals will not be required to individually appear while this Court considers the merits of

2  class treatment, especially as a result of Epson's gamesmanship.

3  These procedural catch-22s can be easily remedied by the requested relief here – a temporary

4  stay of Defendants' obligations to appear and answer until such time as it is fully determined whether

5  they have such an obligation.  Thus, a temporary stay will also allow the court and the parties the

6  opportunity to arrive at a reasonable process for adjudicating this action, rather than the wasteful and

7  expensive procedural logjam imagined by Epson.

8  **IV.    CONCLUSION**

9  Defendants respectfully request that the Court grant their application for a stay of the time to

10  appear and answer and of all discovery pending decision on their motions for class certification and

11  for 30 days following such decision.

12

13  DATED:        June 7, 2023                    **LABATON SUCHAROW LLP**

14

15                                                                    _____
                                                                       Jonathan Waisnor (Bar No. 345801)
16                                                                     140 Broadway
                                                                       New York, New York 10005
17                                                                     Tel.:  (212) 907-0700
                                                                       Fax:  (212) 907-7039
18                                                                     jwaisnor@labaton.com

19                                                                    **LABATON SUCHAROW LLP**
                                                                       Jonathan Gardner (Pro Hac Pending)
20                                                                     Alexander Schlow (Pro Hac Pending)
                                                                       Morris Dweck (Pro Hac Pending)
21                                                                     140 Broadway
                                                                       New York, New York 10005
22                                                                     Tel.:  (212) 907-0700
                                                                       Fax:  (212) 907-7039
23                                                                     jgardner@labaton.com
                                                                       aschlow@labaton.com
24                                                                     mdweck@labaton.com

25                                                                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

26                                                                     John T. Jasnoch
                                                                       600 W. Broadway, Suite 3300
27                                                                     San Diego, CA 92101

28
                                                                            11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone:  619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

*Counsel for Defendants*

12

Electronically Filed by Superior Court of California, County of Orange, 06/07/2023 03:55:00 PM.
30-2023-01315890-CU-MC-CXC - ROA # 28 - DAVID H. YAMASAKI, Clerk of the Court By E. ellinguser, Deputy Clerk.
Case 8:23-cv-01236-JVS-JDE Document 1-24 Filed 07/07/23 Page 105 of 351 Page ID #:143

John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com


Jonathan Waisnor (CA 345801)
Jonathan Gardner (Pro Hac Vice Application Pending)
Alexander Schlow (Pro Hac Vice Application Pending)
Morris Dweck (Pro Hac Vice Application Pending)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
jwaisnor@labaton.com

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| EPSON AMERICA, INC.,<br>Plaintiff,<br><br>versus<br><br>GRAESEN ARNOFF, an individual, et al.,<br>Defendants. | Case No.: 30-2023-01315890-CU-MC-CXC<br><br>**DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF APPLICATION FOR AN ORDER TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY**<br><br>Assigned for All Purposes to:<br>Hon. Lon F. Hurwitz<br>Date Action Filed: March 10, 2023 |

I, JONATHAN WAISNOR, declare as follows:

1.      I am an attorney duly admitted to practice in the State of California.  I am an attorney with the law firm of Labaton Sucharow LLP, counsel for Defendants in the above captioned action. I respectfully submit this Declaration in support of Defendants' Application for an Order Temporarily Extending the Time to Appear, Answer, and Participate in Discovery (the "Extension Application").  This Declaration is based upon my personal knowledge and if called to testify, I could and would do so competently as to the matters set forth herein.

2.      This firm represents all named defendants in this action ("Arnoff Defendants")and all named defendants the related action *Epson America, Inc. v. Matt Adams, et al.*, Case No. 30-2023-01313431-CU-MC-CXC (the "Adams Defendants," and together with the Arnoff Defendants, "Defendants.")

3.      Defendants are individuals represented by undersigned counsel who reside primarily in California, New York, and Illinois.  In arbitration demands submitted to the Judicial Arbitration and Mediation Services ("JAMS") on March 6, 2023, Defendants alleged that Plaintiff Epson America, Inc. ("Epson" or "Plaintiff") violates federal and state law by forcing consumers to agree to software and firmware updates on their printers which disabled their printers' ability to use this cheaper ink, in violation of the federal Sherman Antitrust Act, 15 U.S.C. § 1 et. seq, Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et. seq., and consumer protection laws, including the California Civil Legal Remedies Act and Unfair Competition Law.

4.      The relationship between Epson and its customers is governed by the Epson-drafted End User Software License Agreement ("SLA").  A copy of the SLA is annexed hereto as **Exhibit A.**  The SLA requires all disputes between Epson and Defendants, with one exception not relevant here, to be arbitrated.

5.      Epson has previously stringently enforced this arbitration requirement on its customers in disputes stemming from the exact practices at issue in the underlying JAMS arbitrations.  In a putative class action brought by other Epson customers in the United States District Court for the Central District of California captioned *Mondigo et al v. Epson America, Inc.*,

1

1   Case No., 20-cv-4400 (C.D. Ca. 2020), a number of other Epson customers, alleging harm from the

2   exact practices which Claimants object to, sought to litigate their dispute with Epson on a class

3   basis. Epson argued vigorously, and effectively, that all disputes between it and its customers,

4   including disputes over the existence or formation of the arbitration agreement, should instead be

5   arbitrated before JAMS, pursuant to the SLA.

6       6.      Attached hereto as **Exhibit B** is a true and correct copy of Epson's notice of motion

7   and motion to compel arbitration in *Mondigo*, together with all attachments and exhibits thereto.

8       7.      Attached hereto as **Exhibit C** is a true and correct copy of Epson's reply

9   memorandum of law in further support of its motion to compel arbitration in *Mondigo.*

10      8.      Epson's efforts to compel arbitration in *Mondigo* were ultimately successful, with

11  the District Court staying the action and compelling the parties to arbitration. *See Mondigo v.*

12  *Epson Am., Inc.*, No. CV 20-4400-CBM-GJS(x), 2020 U.S. Dist. LEXIS 252136 at *10 (C.D. Cal.

13  Oct. 13, 2020).

14      9.      As status reports submitted to the *Mondigo* court reveal, Epson has engaged in

15  arbitration with the *Mondigo* plaintiffs regarding arbitrability issues. A copy of the November 1,

16  2022 status report in *Mondigo* is attached hereto as **Exhibit D.**

17      10.     The next year, in *Galgon v. Epson America, Inc.*, No. 2:2021-cv-01794 (C.D. Cal.

18  2021), Epson once again successfully argued that claims such as those of claimants must be

19  presented to a JAMS arbitrator rather than a court.

20      11.     A copy of Epson's Notice of Motion and Motion to Compel Arbitration in *Galgon* is

21  attached hereto as **Exhibit E.** Therein, Epson represented to the District Court that disputes with its

22  customers "do[] not belong in court," that the SLA "require[s] arbitration before JAMS," and that

23  the SLA "further provide[s] that 'Epson shall pay, or (if applicable) reimburse you for, all JAMS

24  filings and arbitrator fees." Exh. E. at 1, 5 (quoting SLA at ¶14.6(c)).

25      12.     Epson's motion to compel in *Galgon* was granted, just as in *Mondigo*. The *Galgon*

26  District Court found that the SLA's delegation clause "clearly and unmistakably indicates the

27

28

DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1    parties' intent for the arbitrator to decide the issue of arbitrability." *Galgon v. Epson America, Inc.*,

2    No. 2:2021-cv-01794, 2021 U.S. Dist. LEXIS 193142 at *6-*7 (C.D. Cal. June 16, 2021).

3        13.    In late 2022, pursuant to the notice requirements of the SLA, and consistent with

4    Epson's position in *Mondigo* and *Galgon,* Claimants, through counsel, informed Epson of the

5    nature and facts underlying their claims, and of their intent to seek arbitration of those claims before

6    JAMS.

7        14.    On March 6, 2023, following a period of negotiations, significant information

8    exchange, and a failed mediation before JAMS mediator Robert Meyer, Esq., the 3,994 Claimants

9    requested that JAMS open individual arbitrations against Epson.

10       15.    Following receipt of Defendants' arbitration demands, Epson asked JAMS for

11   additional time so that it could "evaluat[e] information" on the Claimants.  A copy of Epson's

12   correspondence requesting this additional time is attached hereto as **Exhibit F.**

13       16.    Epson then quickly filed this action on or about March 10, 2023, alleging that

14   Defendants' claims must be adjudicated before FedArb rather than JAMS under a purported

15   unilateral amendment to its SLA.  However, it did not seek a stay of the JAMS proceedings brought

16   by the Arnoff Defendants.  Despite receiving information regarding Defendants' printer ownership

17   status months before, this was the first time Epson affirmatively identified any specific Defendant it

18   asserted was subject to any such amended version of the SLA.

19       17.    JAMS Policy Regarding Mass Arbitration Filings, annexed hereto as **Exhibit G**

20   states that, "in the face of an arbitration clause that bars class or collective actions, attorneys

21   representing employees or consumers have responded in some instances by filing dozens, hundreds

22   or even thousands of individual arbitration demands against a single company."  However, JAMS's

23   "role as the administrator of the parties' arbitration proceedings prohibits us from modifying or

24   changing the arbitration agreement absent express agreement of the parties. If the parties'

25   agreement prohibits class actions and consolidations, we must treat each case individually. Each

26   matter is commenced and managed separately because that is what the pre-dispute contract requires.

27

28

1    Every arbitration receives its own process and its own arbitrator, and the resources needed to

2    manage these individual arbitrations are similar to or greater than any individual arbitration."

3        18.    JAMS urges the parties to "collaborate at the outset of a mass filing [of more than 25

4    filings from the same law firm against the same company at the same time], including "sharing

5    information about the validity of each individual's status (employee, customer, etc.); filing demands

6    in batches; and agreeing on "test" cases, arbitrator selection, manner of hearing (in-person, virtual

7    or hybrid), timelines for commencement and hearings, etc."  See  Exhibit G.

8        19.    Epson also brought suit against the other 2,161 Claimants, now the Adams

9    Defendants, alleging (solely on information and belief) that the Adams Defendants did not have

10   agreements to arbitrate with Epson.  This was the first time Epson affirmatively identified any

11   specific Claimant it asserted had no agreement to arbitrate with it.

12       20.    Defendants proposed to Plaintiff that JAMS appoint a procedural arbitrator who

13   could efficiently resolve Epson's concerns about the existence of such agreements with the Adams

14   Defendants within the arbitration forum prior to the commencement of any individual arbitrations or

15   the assignment of arbitrators.  Epson declined.

16       21.    On April 6, 2023, JAMS formally accepted administration of the Arnoff Defendants'

17   arbitrations, stating that "given the terms of the agreement under which Claimants seek arbitration,

18   JAMS will proceed with administration of these Demands . . . upon receipt of the filing fees.

19   Respondent may raise its jurisdictional and arbitrability objections with the arbitrators upon

20   appointment.  Respondent may participate in the arbitrator selection processes without waiving any

21   objection stated to date."  JAMS advised that no action would be taken on Defendants' arbitration

22   demands until Plaintiff tendered the requisite filing fees.  A copy of the April 6 correspondence

23   from JAMS is attached hereto as **Exhibit H**.

24       22.    On April 7, 2023, in accordance with its decision and the requirements of the SLA,

25   JAMS invoiced Epson for the case initiation fees for Defendants' arbitrations, totaling $3,666,000.

26   A copy of the invoice is annexed hereto as **Exhibit I.**

27

28

4

23.     Epson never paid the invoiced case initiation fees, and, upon inquiry from JAMS, affirmatively confirmed that it had no intention of doing so.  A copy of an email from Epson's counsel confirming it did not intend to pay is annexed as **Exhibit K.**

24.     Epson's refusal to abide by the SLA and pay the initiation fees for the Arnoff Defendants' arbitrations effectively halted these arbitrations before they could begin.  On June 6, 2023, JAMS administratively closed the Arnoff Defendants' arbitrations due to Epson's nonpayment of fees.  **Exhibit J.**

25.     A notice of related case was filed on April 26, 2023, noticing this court of Plaintiff's related action against Defendants Matt Adams, et al., No. 30-2023-01313431-CU-MC-CXC, also assigned to this Court for all purposes.  Both cases were designated as complex cases.  At this time, no case management order has been entered.

26.     On or about April 26, 2023, Plaintiff purported to serve on my office form interrogatories, special interrogatories, requests for production, and requests for admission directed at each of the 2,161 Adams Defendants (the "Requests").

27.     As a result of Epson's refusal to participate in the arbitration process for the Arnoff Defendants, while continuing to press forward with parallel litigation in the *Adams* action, on May 19, 2023, the Adams Defendants formally withdrew their arbitrations without prejudice.  *See* Exh. K.

28.     During a telephonic meet-and-confer on June 2, 2023, concerning discovery which Plaintiff's counsel described as "check[ing]-the-box," Plaintiff's counsel threatened to file a motion to compel discovery against the Adams Defendants.

29.     Despite valid objections to the premature nature, breadth, and undue burden of the discovery sought, in correspondence following this meet-and-confer, the Adams Defendants offered to address what Plaintiff's counsel described as the "central issue" in this action – proof of valid arbitration agreements between it and the Adams Defendants.  This would consist of sworn attestations providing information sufficient for Epson to confirm the existence of arbitration agreements with these individuals, provided the parties negotiated a reasonable discovery schedule

1  that took into account the preliminary stages of this action and Defendants' forthcoming demurrers

2  and motions to compel arbitration.  Epson rejected this offer and reasserted its intention to file a

3  motion to compel.

4         30.    Concurrent with this Application, Defendants are filing motions for certification of

5  Defendant classes in both the *Arnoff* and *Adams* actions.

6         31.    As set forth in detail here and in the accompanying memorandum of points and

7  authorities, *ex parte* relief is warranted here both on statutory grounds and because of the imminent

8  danger of irreparable harm to nearly 3,994 Defendants if this motion is not granted.  Specifically,

9  Defendants may be required to pay individual appearance fees totaling $1,417,870, be hailed into

10  court in a jurisdiction far from their home states, or compelled to produce or provide substantive

11  discovery in a manner inconsistent with the terms of the customer agreements they signed with

12  Epson that provide for arbitration under JAMS rules (which limit discovery requests and do not

13  automatically provide for interrogatories or request for admission).  Moreover, in the absence of

14  such relief, Defendants would have to incur those appearance fees even to be allowed to advance

15  their argument that these fees are inappropriate because, as Epson previously argued, JAMS is the

16  appropriate forum for all disputes between the parties, including issues of contract formation or

17  existence.

18         32.    Good cause exists for a brief extension of appearance and discovery deadlines as it

19  will enable this Court to fully hear and rule on Defendants' anticipated dispositive motions,

20  including the Arnoff Defendants' motion to compel arbitration which would carry with it a

21  presumptive automatic stay, while keeping the schedules in both related actions synchronized.

22         33.    Further, even if either of these cases is allowed to proceed as a "mass action" in this

23  Court, additional time will be needed for those Defendants who are unable to afford appearance fees

24  to submit indigent fee waivers in the form mandated by California law.   As a result, Defendants

25  may be deprived of a benefit they are entitled to under California law and rules of court.

26

27

28

DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

1          On June 6, 2023 and June 7, 2023, Defendants, by their counsel, gave notice by sending an

2    e-mail to counsel for all parties in this action of their intent to bring this *ex parte* application, as well

3    as the date, time and location of the application.   Plaintiff's counsel has indicated they plan to

4    oppose the requested relief.  I declare under penalty of perjury under the laws of the state of

5    California that the foregoing is true and correct.

6          Executed on June 7, 2023, at Brooklyn, New York.

7

8

9                                       Jonathan Waisnor (Bar No. 345801)

10                                       *Counsel for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
TEMPORARILY EXTENDING THE TIME TO APPEAR, ANSWER, AND PARTICIPATE IN DISCOVERY
Case No. 30-2023-01315890-CU-MC-CXC

# EXHIBIT A

**NOTICE TO USER:** PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING OR USING THIS PRODUCT. IF YOU ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES. AN "OPT-OUT" IS AVAILABLE UNDER SECTION 14.7 FOR THOSE WHO WISH TO BE EXCLUDED FROM THE ARBITRATION AND CLASS WAIVER.

This is a legal agreement ("Agreement") between you (an individual or entity, referred to hereinafter as "you") and Seiko Epson Corporation ("Epson") for the enclosed software programs, including any related documentation, firmware, or updates (collectively referred to hereinafter as the "Software"). The Software is provided by Epson and its suppliers for use only with the corresponding Epson brand computer peripheral product (the "Epson Hardware"). BEFORE INSTALLING, COPYING OR OTHERWISE USING THE SOFTWARE, YOU NEED TO REVIEW AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING THE

EPSON PRIVACY POLICY (SEE SECTION 10). If you agree, click on the Download button. If you do not agree with the terms and conditions of this Agreement, click on the browser's back button to return to the previous page.

1.      **Grant of License.**  Epson grants you a limited, nonexclusive license to install and use the Software on hard disks or other computer storage devices, provided that the Software is used <u>only</u> in a single location (e.g., a home or office or place of business) and <u>only</u> in connection with Epson Hardware owned by you.  You may make backup copies of the Software, as necessary, provided the backup is only used to support your use of the Epson Hardware.

2.      **Upgrades and Updates.**  If you acquire an upgrade, updated version, modified version, or additions to or for the Software from Epson, the upgrade, updated version, modified version, or addition, shall be included in the defined term Software and governed by this Agreement. You acknowledge that Epson has no obligation to provide you with any Updates (as defined below in this Section 2) to the Software. Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third-party servers via the Internet to check for available updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug-ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates. If you do not wish to allow Epson to check for available updates to the Software, you may disable this feature by uninstalling EPSON Software Updater. By installing the Software and not disabling any automated check for Updates, if applicable, you hereby agree and consent to automatically request and receive Updates from Epson or third-party servers, and that the terms and conditions of this Agreement shall apply to all of these Updates.

3.      **Other Rights and Limitations.**  You agree not to modify, adapt or translate the Software and further agree not to attempt to reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software.  You may not rent, lease, distribute or lend the Software to third parties.  You may, however, transfer all of your rights to use the Software to another person or legal entity, provided that the recipient also agrees to the terms of this Agreement and you transfer the Software, including all copies, updates and prior versions, and the Epson Hardware, to such person or entity.  The Software is licensed as a single unit, and its component programs may not be separated for some other

use.  Further, you agree not to place the Software onto or into a shared environment accessible via a public network such as the Internet or otherwise accessible by others outside the single location referred to in Section 1 above.

4.    **Ownership.**  Title, ownership rights, and intellectual property rights in and to the Software shall remain with Epson or its suppliers.  The Software is protected by United States Copyright Law, copyright laws of Japan and international copyright treaties, as well as other intellectual property laws and treaties.  There is no transfer to you of any title to or ownership of the Software and this License shall not be construed as a sale of any rights in the Software.  You agree not to remove or alter any copyright, trademark, registered mark and other proprietary notices on any copies of the Software. Epson and its suppliers reserve all rights not granted.

5.    **Multiple Versions of Software.**  You may receive or obtain the Software in more than one version (e.g. for different operating environments; two or more language translation versions; downloaded from an Epson server or on a CD-ROM), however, regardless of the type or number of copies you receive, you still may use only the media or version appropriate for the license granted in Section 1 above.

6.    **Disclaimer of Warranty and Remedy.**  If you obtained the Software by media from EPSON or a dealer, EPSON warrants that the media on which the Software is recorded will be free from defects in workmanship and materials under normal use for a period of 90 days from the date of delivery to you. If the media is returned to EPSON or the dealer from which the media was obtained within 90 days of the date of delivery to you, and if EPSON determines the media to be defective and provided the media was not subject to misuse, abuse, misapplication or use in defective equipment, EPSON will replace the media, upon your return to EPSON of the Software, including all copies of any portions thereof. You acknowledge and agree that the use of the Software is at your sole risk. THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND. EPSON AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE. Epson does not warrant that the operation of the Software will be uninterrupted, error free, free from viruses or other harmful components or vulnerabilities, or that the

functions of the Software will meet your needs or requirements. Epson's sole and exclusive liability and your exclusive remedy for breach of warranty shall be limited to either, at Epson's option, the replacement of the media for the Software or to refund your money upon returning the Software and Epson Hardware.  Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer.  If the above remedy fails for any reason, Epson's entire liability for a breach of warranty shall be limited to a refund of the price paid for the Epson Hardware. Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control.  This Limited Warranty is void if failure of the Software resulted from accident, abuse, or misapplication.  THE STATED LIMITED WARRANTIES AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHERS. EPSON DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.  SOME STATES OR JURISDICTIONS, HOWEVER, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, AND IN SUCH STATES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

7.     **Limitation of Liability.**  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL EPSON OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES, WHATSOEVER, WHETHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, whether arising under contract, tort (including negligence), strict liability, breach of warranty, misrepresentation, or otherwise, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS, ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR ARISING OUT OF THIS AGREEMENT, EVEN IF EPSON OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TRANSACTIONS, AND IN SUCH STATES, THE ABOVE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY.

8.      **U.S. Government Acquisition of the Software.**  This Section applies to all acquisitions of the Software by or for the U.S. Government ("Government"), or by any prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement, "other transaction" ("OT"), or other activity with the Government.  By accepting delivery of the Software, the Government, any prime contractor, and any subcontractor agree that the Software qualifies as "commercial" computer software within the meaning of FAR Part 12, paragraph (b) of FAR Subpart 27.405, or DFARS Subpart 227.7202, as applicable, and that no other regulation, or FAR or DFARS data rights clause, applies to the delivery of this Software to the Government.  Accordingly, the terms and conditions of this Agreement govern the Government's (and the prime contractor and subcontractor's) use and disclosure of the Software, and supersede any conflicting terms and conditions of the contract, grant, cooperative agreement, OT, or other activity pursuant to which the Software is delivered to the Government.  If this Software fails to meet the Government's needs, if this Agreement is inconsistent in any respect with Federal law, or if the above cited FAR and DFARS provisions do not govern, the Government agrees to return the Software, unused, to Epson.

9.      **Export Restriction.**  You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

10.     **Privacy, Information Collection and Transfer of Data Overseas.** The Software may have the ability to connect over the Internet to transmit data to and from your computer. For example, if you install the Software, the Software may cause your computer to send information about your Epson Hardware such as model and serial number, country identifier, language code, operating system information, and Epson Hardware usage information to an Epson Internet site which may return promotional or service information to your computer for display. For more information on how Epson collects and uses information provided through the Software, please review the Epson Privacy Policy located at www.epson.com/privacy (if you are located in the U.S.), www.epson.ca/privacy (if you are located in Canada), which is incorporated herein by reference. By agreeing to the terms of this Agreement, you agree to the terms of the Epson Privacy Policy. The

Epson Internet site may be located overseas. By installing the Software, you consent to this transfer, processing and storage of your information in and/or outside your country of residence.

11.    **Ink Purchases**. For certain Epson printer products sold in North America, the Software may also display an option to buy ink from Epson. If you click on the buy button, the Software will cause your computer to display Epson Hardware cartridge types and ink levels and provide other information about your cartridges, such as the colors, available cartridge sizes, and prices for replacement ink cartridges, which you may purchase online from Epson.

12.    **Downloadable Updates**. You may also be able to download from an Epson Internet site updates or upgrades to the Software if such updates or upgrades are made available. If you agree to install the Software, any transmissions to or from the Internet, and data collection and use, will be in accordance with Epson's then-current Privacy Policy, and by installing the Software you agree that such then-current Privacy Policy shall govern such activities.

13.    **Epson Accounts and Promotional Messages**. In addition, if you install the Software and register your Epson Hardware with Epson, and/or you create an account at the Epson Store, and provided your consent to such use, you agree that Epson may merge the data collected in connection with installation of the Software, registration of your Epson Hardware and/or creation of your Epson Store account, consisting of personal information and non-personally identifiable information, and use such merged data to send you Epson promotional or service information. If you do not wish to send information about your Epson Hardware or receive promotional or service information, you will be able to disable these features on a Windows system through the Monitoring Preferences section in the driver. On a Mac operating system, you can disable these features by uninstalling the Epson Customer Research Participation and Low Ink Reminder software.

14.    DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS

**14.1      Disputes.** The terms of this Section 14 shall apply to all Disputes between you and Epson. The term "Dispute" is meant to have the broadest meaning permissible under law and includes any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis. "DISPUTE" DOES NOT INCLUDE IP CLAIMS, or more specifically, a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation (an "IP Claim"). You and Epson also agree, notwithstanding Section 14.6, that a court, not an arbitrator, may decide if a claim or cause of action is for an IP Claim.

**14.2      Binding Arbitration.** You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.** Pursuant to this Agreement, binding arbitration shall be administered by JAMS, a nationally recognized arbitration authority, pursuant to its code of procedures then in effect for consumer related disputes, but excluding any rules that permit joinder or class actions in arbitration (for more detail on procedure, see Section 14.6 below). You and Epson understand and agree that (a) the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 14, (b) this Agreement memorializes a transaction in interstate commerce, and (c) this Section 14 shall survive termination of this Agreement.

**14.3      Pre-Arbitration Steps and Notice.** Before submitting a claim for arbitration, you and Epson agree to try, for sixty (60) days, to resolve any Dispute informally. If Epson and you do not reach an agreement to resolve the Dispute within the sixty (60) days), you or Epson may commence an arbitration. Notice to Epson must be addressed to: Epson America, Inc., ATTN: Legal Department, 3131 Katella Ave., Los Alamitos, CA 90720 (the "Epson Address"). The Dispute Notice to you will be sent to the most recent address Epson

has in its records for you. For this reason, it is important to notify us if your address changes by emailing us at EAILegal@ea.epson.com or writing us at the Epson Address above. Notice of the Dispute shall include the sender's name, address and contact information, the facts giving rise to the Dispute, and the relief requested (the "Dispute Notice"). Following receipt of the Dispute Notice, Epson and you agree to act in good faith to resolve the Dispute before commencing arbitration.

**14.4     Small Claims Court.** Notwithstanding the foregoing, you may bring an individual action in the small claims court of your state or municipality if the action is within that court's jurisdiction and is pending only in that court.

**14.5     WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS. YOU AND EPSON AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING WITHOUT LIMITATION FEDERAL OR STATE CLASS ACTIONS, OR CLASS ARBITRATIONS. CLASS ACTION LAWSUITS, CLASS-WIDE ARBITRATIONS, PRIVATE ATTORNEY-GENERAL ACTIONS, AND ANY OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY ARE NOT ALLOWED. ACCORDINGLY, UNDER THE ARBITRATION PROCEDURES OUTLINED IN THIS SECTION, AN ARBITRATOR SHALL NOT COMBINE OR CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS WITHOUT THE WRITTEN CONSENT OF ALL AFFECTED PARTIES TO AN ARBITRATION PROCEEDING.**

**14.6     Arbitration Procedure. If** you or Epson commences arbitration, the arbitration shall be governed by the rules of JAMS that are in effect when the arbitration is filed, excluding any rules that permit arbitration on a class or representative basis (the "JAMS Rules"), available at http://www.jamsadr.com or by calling 1-800-352-5267, and under the rules set forth in this Agreement. All Disputes shall be resolved by a single neutral arbitrator, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator. The arbitrator is bound by the terms of

this Agreement. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable. Notwithstanding this broad delegation of authority to the arbitrator, a court may determine the limited question of whether a claim or cause of action is for an IP Claim, which is excluded from the definition of "Disputes" in Section 14.1 above. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator may award you the same damages as a court could, and may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. In some instances, the costs of arbitration can exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court. The arbitrator's award is binding and may be entered as a judgment in any court of competent jurisdiction.

You may choose to engage in arbitration hearings by telephone. Arbitration hearings not conducted by telephone shall take place in a location reasonably accessible from your primary residence, or in Orange County, California, at your option.

a)   Initiation of Arbitration Proceeding. If either you or Epson decides to arbitrate a Dispute, both parties agree to the following procedure:

(i)   Write a Demand for Arbitration. The demand must include a description of the Dispute and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at http://www.jamsadr.com ("Demand for Arbitration").

(ii)   Send three copies of the Demand for Arbitration, plus the appropriate filing fee, to: JAMS, 500 North State College Blvd., Suite 600 Orange, CA 92868, U.S.A.

(iii) Send one copy of the Demand for Arbitration to the other party (same address as the Dispute Notice), or as otherwise agreed by the parties.

b)   Hearing Format. During the arbitration, the amount of any settlement offer made shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or

Epson is entitled. The discovery or exchange of non-privileged information relevant to the Dispute may be allowed during the arbitration.

c)   Arbitration Fees. Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement.

d)   Award in Your Favor. For Disputes in which you or Epson seeks $75,000 or less in damages exclusive of attorney's fees and costs, if the arbitrator's decision results in an award to you in an amount greater than Epson's last written offer, if any, to settle the Dispute, Epson will: (i) pay you $1,000 or the amount of the award, whichever is greater; (ii) pay you twice the amount of your reasonable attorney's fees, if any; and (iii) reimburse you for any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing the Dispute in arbitration. Except as agreed upon by you and Epson in writing, the arbitrator shall determine the amount of fees, costs, and expenses to be paid by Epson pursuant to this Section 14.6d).

e)   Attorney's Fees. Epson will not seek its attorney's fees and expenses for any arbitration commenced involving a Dispute under this Agreement. Your right to attorney's fees and expenses under Section 14.6(d) above does not limit your rights to attorney's fees and expenses under applicable law; notwithstanding the foregoing, the arbitrator may not award duplicative awards of attorney's fees and expenses.

**14.7      Opt-out. You may elect to opt-out (exclude yourself) from the final, binding, individual arbitration procedure and waiver of class and representative proceedings specified in this Agreement by sending a written letter to the Epson Address within thirty (30) days of your assent to this Agreement (including without limitation the purchase, download, installation of the Software or other applicable use of Epson Hardware, products and services) that specifies (i) your name, (ii) your mailing address, and (iii) your request to be excluded from the final, binding individual arbitration procedure and waiver of class and representative proceedings specified in this Section 14. In the event that you opt-out consistent**

with the procedure set forth above, all other terms shall continue to apply, including the requirement to provide notice prior to litigation.

**14.8    Amendments to Section 14.** Notwithstanding any provision in this Agreement to the contrary, you and Epson agree that if Epson makes any future amendments to the dispute resolution procedure and class action waiver provisions (other than a change to Epson's address) in this Agreement, Epson will obtain your affirmative assent to the applicable amendment. If you do not affirmatively assent to the applicable amendment, you are agreeing that you will arbitrate any Dispute between the parties in accordance with the language of this Section 14 (or resolve disputes as provided for in Section 14.7, if you timely elected to opt-out when you first assented to this Agreement).

**14.9    Severability.** If any provision in this Section 14 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect. **The foregoing shall not apply to the prohibition against class or representative actions as provided in Section 14.5. This means that if Section 14.5 is found to be unenforceable, the entire Section 14 (but only Section 14) shall be null and void.**

15.    **Jurisdiction.**  Except for Section 14, which is governed by the Federal Arbitration Act, in the event of a Dispute in which the provisions in Section 14 are inapplicable, severed from the remainder of this Agreement, or you opt-out pursuant to the provisions of Section 14.7, you and Epson both consent to the jurisdiction of your state of residence. Such Dispute must be filed no later than one year after the date the Software is first acquired.  This Agreement will not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded.

16.    **For New Jersey Residents.** Notwithstanding any terms set forth in this Agreement, if any of the provisions set forth in Sections 6, 7, or 16 are held unenforceable, void or inapplicable under New Jersey law, then ANY SUCH provision shall not apply TO YOU BUT THE REST OF THE AGREEMENT SHALL REMAIN BINDING ON YOU AND EPSON. NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT, Nothing

in this AGREEMENT IS INTENDED TO, NOR shall IT be deemed OR CONSTRUED to, limit any rights available to you UNDER THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

17.    **Entire Agreement.**  This Agreement is the entire agreement between the parties related to the Software and supersedes any purchase order, communication, advertisement, or representation concerning the Software.

18.    **Binding Agreement; Assignees**.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, assigns and legal representatives.

19.    **Severability**; **Modifications**. Subject to Section 14.8 and 14.9 if any provision herein is found void or unenforceable by a court of competent jurisdiction, it will not affect the validity of the balance of the Agreement, which shall remain valid and enforceable according to its terms. This Agreement may only be modified in writing signed by an authorized representative of Epson.

20.    **Termination.**  Without prejudice to any other rights Epson has, your license rights under Section 1 above and your warranty rights under Section 6 above, shall automatically terminate upon failure by you to comply with its terms.  Upon termination of such rights, you agree that the Software, and all copies thereof, will be immediately destroyed.

21.    **Capacity and Authority to Contract.**  You represent that you are of the legal age of majority in your state or jurisdiction of residence and have all necessary authority to enter into this Agreement, including, if applicable, due authorization by your employer to enter into this Agreement.

EPSON is a registered trademark of Seiko Epson Corporation.

© 2022  Epson America, Inc.

# EXHIBIT B

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant Epson America,
Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EPSON AMERICA, INC.,<br><br>Defendant. | CASE No. 2:20-cv-04400-CBM-GJS<br><br>**DEFENDANT EPSON AMERICA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;**<br><br>**DECLARATION OF SIRANUSH ARABIAN;**<br><br>**[PROPOSED] ORDER**<br><br>Date:       August 18, 2020<br>Time:       10:00 a.m.<br>Judge:      Hon. Consuelo B. Marshall<br>Courtroom:  8B |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 18, 2020 at 10:00 a.m., or as soon thereafter as counsel may be heard, defendant Epson America, Inc. ("Epson"), by and through its attorneys and pursuant to 9 U.S.C. § 4, hereby moves to compel arbitration of plaintiffs' claims, stay proceedings pending resolution of any arbitration, and stay proceedings pending a decision on this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 13, 2020.

This motion is made on the grounds that plaintiffs agreed to arbitrate their claims against Epson on a non-class basis and further agreed any disputes concerning the arbitrability of their claims must be submitted to the arbitrator for resolution. This motion is based upon this Notice, the following memorandum of points and authorities, the Declaration of Siranush Arabian ("Arabian Decl.") and exhibits thereto, the pleadings and records on file herein, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

DATED: July 20, 2020

QUINN EMANUEL URQUHART & SULLIVAN. LLP


By  /s/ Shon Morgan
Shon Morgan
Attorneys for Defendant Epson America, Inc.

MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .......................................................................... 1

BACKGROUND ................................................................................................. 1

PLAINTIFFS' ARBITRATION AGREEMENTS ........................................... 1

LEGAL STANDARD ........................................................................................ 5

ARGUMENT ...................................................................................................... 6

I.     ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR .................................................................................. 6

II.    THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFFS ENTERED INTO VALID ARBITRATION AGREEMENTS THAT CLEARLY COVER THE CLAIMS AT ISSUE ........................................ 8

III.   THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS ............................................ 11

IV.   PLAINTIFFS' CLAIMS SHOULD BE STAYED PENDING RESOLUTION OF ANY ARBITRATION, AND THIS ACTION SHOULD BE STAYED PENDING A RULING ON THIS MOTION ......... 12

CONCLUSION ................................................................................................. 13

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4
*Amirhamzeh v. Wells Fargo Bank, N.A.*,
    2014 WL 12610227 (N.D. Cal. Oct. 31, 2014) ...............................................10

5

6
*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) .........................................................................................6

7
*Bitstamp Ltd. v. Ripple Labs Inc.*,
    2015 WL 4692418 (N.D. Cal. Aug. 6, 2015) ....................................................7

8

9
*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ..........................................................................5

10
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ..........................................................................8

11

12
*Dryer v. Los Angeles Rams*,
    40 Cal. 3d 406 (1985) .....................................................................................10

13
*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ...................................................................................11

14

15
*Goldman v. KPMG, LLP*,
    173 Cal. App. 4th 209 (2009) ...........................................................................9

16
*Hamoudeh v. Unitedhealth Grp. Inc.*,
    2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016) ........................................12

17

18
*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ......................................................................................7

19
*Hotel Greystone Corp. v. New York Hotel & Motel Trades*
    *Council, AFL-CIO*,
    897 F. Supp. 168 (S.D.N.Y. 1995) .................................................................12

20

21
*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ..........................................................................................7

22

23
*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) ........................................................................10

24
*Kim v. Tinder, Inc.*,
    2018 WL 6694923 (C.D. Cal. July 12, 2018) ..................................................5

25

26
*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ..........................................................................9

27
*Lakhan v. U.S. Sec. Assocs., Inc.*,
    2019 WL 175043 (C.D. Cal. Jan. 11, 2019) ....................................................7

28

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ...................................................................................11

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
   2017 WL 2727874 (N.D. Cal. Feb. 14, 2017)................................................12

*Mendoza v. Uber Techs. Inc.*,
   2020 WL 2563047 (C.D. Cal. May 4, 2020) .................................................12

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
   109 Cal. App. 4th 1705 (2003).........................................................................9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) ...................................................................................5, 6, 11

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
   388 U.S. 395 (1967) .........................................................................................6

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ......................................................................................6, 7

*Ronay Family Ltd. P'ship v. Tweed*,
   216 Cal. App. 4th 830 (2013)...........................................................................9

*Smith v. Kansas Pub. Employees Ret. Sys.*,
   2019 WL 339542 (D. Kan. Jan. 28, 2019) ..................................................2, 8

*Stockman-Sann v. McKnight*,
   2013 WL 8284817 (C.D. Cal. Mar. 25, 2013) ................................................1

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ................................................................................11, 12

## **<u>Statutory Authorities</u>**

9 U.S.C. §§ 1-16 ....................................................................................................5

9 U.S.C. § 2 ...........................................................................................................5

9 U.S.C. § 3 ......................................................................................................6, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

This dispute does not belong in court. Plaintiffs expressly agreed to arbitrate any grievances related to the printers they purchased from Epson and the software used in those printers. The terms of their arbitration agreements are conspicuous, fair, and reached through a process and on substantive terms that courts have consistently held must be enforced to effectuate the purposes of the Federal Arbitration Act. Plaintiffs' arbitration agreements also express a clear and unmistakable intent to commit issues of arbitrability to the arbitrator. Thus, to the extent plaintiffs contend their claims are not subject to the arbitration agreements for any reason, this issue must be decided in arbitration. Accordingly, the Court should compel arbitration of plaintiffs' claims and stay proceedings pending resolution of any arbitration.

Additionally, because this Court is not the proper forum for plaintiffs' claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration.

## BACKGROUND

## PLAINTIFFS' ARBITRATION AGREEMENTS

Plaintiffs each allege they purchased an Epson printer[1] and concede owners of Epson printers "must agree to Epson's software license when purchasing and using an Epson printer." ECF No. 1 at ¶ 32.[2] *See also id.* at ¶ 35 ("Under the terms of

---

[1] ECF No. 1 at ¶¶ 52 (plaintiff Famiglietti); 65 (plaintiff Rabinovich); 77 (plaintiff Mondigo); 86 (plaintiff Gordon); 98 (plaintiff Szot); 106 (plaintiff Dignard); 116 (plaintiff Kovach).

[2] Plaintiffs refer to, quote from, and provide a hyperlink in their complaint linking to the software license. *See* ECF No. 1 at ¶¶ 32-33 & n. 8. Thus, this document is incorporated by reference and may be considered by the Court. *Stockman-Sann v. McKnight*, 2013 WL 8284817, at *3 (C.D. Cal. Mar. 25, 2013) ("Because Plaintiff's CAC references these documents and quotes from them, they

(footnote continued)

Epson's software licenses, Plaintiffs . . . authorized Epson to access their printers to apply fixes and upgrades."); Arabian Decl. at ¶¶ 3-4, Ex. 1 (software license).  Thus, there can be no dispute plaintiffs agreed to the terms of Epson's software license.  *See, e.g., Smith v. Kansas Pub. Employees Ret. Sys.*, 2019 WL 339542, at *4 (D. Kan. Jan. 28, 2019) (contract formation established where plaintiff "conceded that she entered the agreement in her own complaint").

Among the terms in the software license to which plaintiffs agreed is an arbitration agreement—indeed, the very first paragraph of the license agreement calls attention to this in capitalized, oversized font that notifies the user "IF YOU ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES."  *See* ECF No. 1 at ¶ 32 n. 8 (providing hyperlink to this document); Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14.

Additionally, plaintiffs Rabinovich, Famiglietti, Gordon, Szot, Dignard and Kovach each reaffirmed their agreements to arbitrate disputes with Epson at the time they installed the software updates that are the subject of plaintiffs' complaint. Arabian Decl. at ¶¶ 4-5, Ex. 2.[3]  To install the updates, these plaintiffs were required to view the Epson End User Software License Agreement ("Updater EULA"),

---

are appropriate for consideration under the doctrine of incorporation by reference."). Additionally, a true and correct copy of the software license to which plaintiffs agreed is attached as Exhibit 1 to the Declaration of Siranush Arabian.  *See* Arabian Decl. at ¶ 3, Ex. 1.

[3]  *See* ECF No. 1 at ¶¶ 57 (alleging plaintiff Famiglietti installed the "Updates" in "March of April of 2019"); 69 (alleging plaintiff Rabinovich installed the "Updates" in "February of 2020"); 88 (alleging plaintiff Gordon installed the "Updates" in "early 2020"); 101 (alleging plaintiff Szot installed the "Updates" in "August 2019"); 109-111 (alleging plaintiff Dignard installed the "Updates" in November 2019); 116, 119 (alleging plaintiff Kovach installed the "Updates" sometime after he purchased his printer in "summer of 2019").

which was automatically displayed for plaintiffs to see, and plaintiffs were required to click to signify their agreement. Arabian Decl. at ¶ 4. The arbitration agreement in the Updater EULA is substantively identical to the arbitration agreement in plaintiffs' software licenses. *Compare* Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14 (software license), *with* ¶ 5, Ex. 2 at ¶ 22 (Updater EULA).

**Prominent Headings and Clear Terms.** Plaintiffs' arbitration agreements begin with a prominent heading in capitalized, bolded font identifying the separate agreement to arbitrate and explain in simple terms the arbitration process and how it differs from a trial in court:

> **DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**
> …
> You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.**

*See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1-2 at ¶ 14.2 (software license) & 2 at ¶ 22.2 (Updater EULA) (emphasis in original).

**Class Action Waiver.** Plaintiffs' arbitration agreements also explicitly set forth the rights plaintiffs waived by agreeing to arbitrate, and contain a separate section in bold, capitalized font notifying plaintiffs of their agreements to waive the right to serve "**AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING**[.]" ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA) (emphasis in original).

**Broad Scope.** Plaintiffs' arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action

between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).[4]

**Delegation of Arbitrability Disputes.** Plaintiffs' arbitration agreements also contain a clear expression of intent to delegate issues of arbitrability to the arbitrator. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").

**Arbitration Before JAMS And Payment Of Fees.** Plaintiffs' arbitration agreements require arbitration before JAMS, pursuant to the rules of JAMS in effect at the time the arbitration is filed, and broadly empower the arbitrator "to grant whatever relief would be available in a court under law or in equity." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA). The agreements further provide that "Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this

---

[4] The arbitration agreements contain a limited carve out—not applicable here— for "a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation," which are required to be heard in court. ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).

1  Agreement." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶

2  14.6(c) (software license) & 2 at ¶ 22.6(c) (Updater EULA).

3    **Broad Right To Opt Out.** Finally, the agreements allowed plaintiffs to opt

4  out within thirty days of their assent to the agreement by sending a letter to "Epson

5  America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach,

6  CA 90806." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.7

7  (software license) & 2 at ¶ 22.7 (Updater EULA). Despite having this option, none

8  of the plaintiffs chose to opt out of their arbitration agreements. Arabian Decl. at

9  ¶ 8.

10           **LEGAL STANDARD**

11    The FAA governs the enforcement of arbitration clauses in commercial

12  contracts.[5] 9 U.S.C. §§ 1-16. Section 2 of the FAA states:

13    A written provision in . . . a contract evidencing a transaction involving
   commerce to settle by arbitration a controversy thereafter arising out of
14  such contract or transaction, or the refusal to perform the whole or any
   part thereof, or an agreement in writing to submit to arbitration an
15  existing controversy arising out of such contract, transaction, or refusal,
   shall be valid, irrevocable, and enforceable, save upon such grounds as
16  exist at law or in equity for the revocation of any contract.

17

18  9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy

19  favoring arbitration agreements . . . ." *Moses H. Cone Memorial Hosp. v. Mercury*

20  *Const. Corp.*, 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a

21  matter of federal law, any doubts concerning the scope of arbitrable issues should be

22

23     [5] The FAA applies where, as here, the arbitration agreement appears in a
   contract involving interstate commerce. *See* 9 U.S.C § 1; Dkt. No. 1 at ¶ 17
24  (recognizing the parties are diverse for purposes of CAFA jurisdiction). Further,
   plaintiffs' arbitration agreements contain an explicit FAA choice-of-law clause. *See*
25  ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.2 (software license)
   & 2 at ¶ 22.2 (Updater EULA) ("You and Epson understand and agree that . . . the
26  Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and
   enforcement of this Section 14"). "An FAA choice-of-law provision in an
27  arbitration agreement is enforceable." *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2
   (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31
28  (9th Cir. 2015)).

resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation, citation and alterations omitted).

Pursuant to Section 3 of the FAA, if a suit is brought in court:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Once a court determines a claim is subject to arbitration, it lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967).

# ARGUMENT

## I. ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR

The Supreme Court has recognized "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. If the parties have "clearly and unmistakably" agreed that questions of arbitrability must be decided by

the arbitrator, such provisions must be enforced. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted). As the United States Supreme Court recently held, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Rather, "[i]n those circumstances, a court possesses no power to decide the arbitrability issue." *Id.*

Here, plaintiffs' arbitration agreements clearly and unmistakably delegate issues of arbitrability to the arbitrator. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").[6] Courts have repeatedly held the language contained in plaintiffs' arbitration agreements evinces such an intent. *See, e.g., Rent-A-Ctr.*, 561 U.S. at 66 (delegation provision stated "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *Lakhan v. U.S. Sec. Assocs., Inc.*, 2019 WL 175043, at *6 (C.D. Cal. Jan. 11, 2019) (holding agreement that required an arbitrator to "resolve any issue relating to the interpretation,

---

[6]   In addition to the explicit delegation agreements, plaintiffs' agreements also incorporate the JAMS rules, which separately evinces the "clear and unmistakable" intent to commit arbitrability issues to the arbitrator. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at 22.6 (Updater EULA) (arbitration to be conducted under JAMS rules); *Bitstamp Ltd. v. Ripple Labs Inc.*, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (holding that incorporation of the JAMS rules "overcame the default rule and assigned the arbitrability question to the arbitrator.").

formation or enforceability of this Agreement, or any issue relating to whether a Claim is subject to arbitration under this Agreement" was "similar to others that courts in this District have determined clearly and unmistakably provide for threshold issues of arbitrability to be determined by an arbitrator.") (citation omitted).

Because plaintiffs "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, to the extent they challenge the interpretation, applicability, enforceability or formation of their agreements, those issues must be decided by the arbitrator.

## II.    THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFFS ENTERED INTO VALID ARBITRATION AGREEMENTS THAT CLEARLY COVER THE CLAIMS AT ISSUE

Because disputes regarding the existence, scope and validity of the arbitration agreements are reserved for the arbitrator, the Court need not address these issues. However, if the Court were to reach these issues, they too mandate this dispute be sent to arbitration. Under the FAA, arbitration must be compelled where, as in this case: (1) a valid agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, both conditions are met and arbitration is required.

As discussed, plaintiffs concede as owners of Epson printers they were required to "agree to Epson's software license when purchasing and using an Epson printer." ECF No. 1 at ¶ 32. *See also id.* at ¶ 35 ("Under the terms of Epson's software licenses, Plaintiffs . . . authorized Epson to access their printers to apply fixes and upgrades."); Arabian Decl. at ¶ 3, Ex. 1 (software license). Thus, there can be no dispute plaintiffs agreed to the terms of Epson's software license, including the agreement to arbitrate their disputes with Epson. *See, e.g., Smith*, 2019 WL 339542, at *4 (contract formation established where plaintiff "conceded

1    that she entered the agreement in her own complaint").[7]   Additionally, plaintiffs

2    Rabinovich, Famiglietti, Gordon, Szot, Dignard and Kovach reaffirmed their

3    _____

4    [7]    Plaintiffs concede the software license constituted an agreement between themselves and defendant Epson America, Inc.  *See* ECF No. 1 at 1 (defining "Epson" to mean "Epson America, Inc."), ¶ 35 ("Under the terms of Epson's software licenses, Plaintiffs . . . authorized Epson to access their printers to apply fixes and upgrades").  This is consistent with the terms of plaintiffs' agreements, which explicitly include defendant Epson America, Inc. in the arbitration provisions.  *See, e.g.,* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14.3 (software license) (among other provisions, requiring notice of any arbitration to be sent directly to "Epson America, Inc.").  *See also* Arabian Decl. at ¶ 5, Ex. 2 at ¶ 22.3 (Updater EULA) (same).  While plaintiffs' own allegations and the terms of their agreements plainly establish Epson has standing to enforce plaintiffs' arbitration agreements, to the extent plaintiffs attempt to contend otherwise, it is worth noting Epson America, Inc. would also have standing to enforce the arbitration agreements: (1) as a third-party beneficiary; (2) under the doctrine of equitable estoppel; and (3) under an agency theory.  On the first, though the arbitration agreements ***do*** explicitly name Epson America, to "invoke the third party beneficiary exception," Epson need only show "the arbitration clause . . . was made expressly for [its] benefit," and it is "not necessary that the beneficiary be named and identified as an individual." *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838–39 (2013) (quotations and citations omitted).  Here, plaintiffs allege Epson America "is responsible for selling and marketing Epson printers in the United States," (ECF No. 1 at ¶ 14) and assert Epson America is responsible for the software updates at issue in this lawsuit (*id.* at ¶ 3).  The arbitration agreements at issue apply, by their express terms, to users "in the United States," and expressly cover "any dispute, claim, controversy or action" arising out of or related to the Epson hardware, software and updates for which plaintiffs claim Epson America is responsible.  ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 & 2.  The arbitration agreements' explicit reference to Epson America (including as the party who must be notified of the initiation of any arbitration), further confirms the agreements were intended to benefit Epson America.  Additionally, under California law, both species of equitable estoppel would allow enforcement of the arbitration agreements. First, "if a plaintiff relies on the terms of an agreement to assert his or her claims . . . the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009). Here, as but one example, plaintiffs rely on the terms of the license agreement to define the scope of Epson's authority to access their printers, which Epson purportedly exceeded with the software updates at issue (ECF No. 1 at ¶¶ 35-36)— plaintiffs cannot "have it both ways," and must abide by their agreements to arbitrate these claims.  *See id. See also* Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128 (9th Cir. 2013) (equitable estoppel applies where "a signatory must rely on the terms of the written agreement in asserting its claims").   Second, "the equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003). Here, there can be no doubt this theory would also apply—plaintiffs' entire complaint is premised on software updates that are the subject of plaintiffs' license agreements and arbitration provisions.  *See, e.g.,* ECF No. 1 at ¶¶ 3 ("Epson designed and delivered software

(footnote continued)

_____

-9-                    Case No.   2:20-cv-4400-CBM-GJS

agreements to arbitrate when they were presented with the Updater EULA at the time of their software updates and once again affirmatively assented to the terms. Arabian Decl. at ¶ 5, Ex. 2 (Updater EULA). "Federal courts . . . have recognized the general enforceability of . . . online agreements that require affirmative user assent." *In re Holl*, 925 F.3d 1076, 1085 (9th Cir. 2019).

Further, there can be no dispute plaintiffs' arbitration agreements cover the claims at issue here. Plaintiffs' arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA). Courts analyzing arbitration agreements with similar language have held it must be interpreted broadly. *See, e.g., Amirhamzeh v. Wells Fargo Bank, N.A.*, 2014 WL 12610227, at *1 (N.D. Cal. Oct. 31, 2014) ("The arbitration agreement has an extremely broad scope; it provides that 'any dispute' between the parties is subject to arbitration."). While plaintiffs' claims clearly fall within the scope of their

---

and/or firmware Updates (defined below) to Epson printers that purposely disabled those printers with non-Epson printer cartridges installed."); 33 ("The Software License covers 'any related documentation, firmware, or Updates.'"); 35 ("The Software licenses do not alert owners that these software Updates might render their printer inoperable if they use or attempt to use third-party ink cartridges."). Finally, if accepted as true, plaintiffs' allegations give rise to an agency theory that would permit Epson America's enforcement of the arbitration agreements. *See, e.g., Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) ("If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams, then they are entitled to the benefit of the arbitration provisions."). Specifically, plaintiffs contend Epson America is responsible for the conduct alleged in the complaint (ECF No. 1 at ¶ 3) and allege the software licenses containing the applicable arbitration agreements explicitly govern this conduct (*id.* at ¶ 33). Without the agency relationship alleged by plaintiffs, Epson America would not "belong in this suit at all." *See Dryer*, 40 Cal. 3d at 418.

agreements, to the extent there is any question, all "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24-25.

## III. THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS

Because disputes regarding the interpretation of the arbitration agreements are reserved for the arbitrator, the Court need not determine whether class arbitration is permitted. *See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-85 (2010) (arbitrator made initial determination whether class arbitration was permitted under the parties' agreement).

But again, this is an issue the agreements unambiguously and enforceably resolve. Plaintiffs' agreements clearly prohibit class claims. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA). In *Stolt-Nielsen*, the Supreme Court held "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U.S. at 684 (emphasis in original). The Supreme Court has consistently enforced this precedent and has repeatedly upheld class waivers in arbitration agreements. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.").

The arbitration agreements here are clear and expressly state the parties' intentions that arbitration may not proceed on a class basis. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA). "[C]ourts and arbitrators must give effect to the contractual rights

and expectations of the parties." *Stolt-Nielsen*, 559 U.S. at 682 (internal quotations omitted). Thus, arbitration may not proceed on a class basis.

## IV. PLAINTIFFS' CLAIMS SHOULD BE STAYED PENDING RESOLUTION OF ANY ARBITRATION, AND THIS ACTION SHOULD BE STAYED PENDING A RULING ON THIS MOTION

Under the FAA, an action compelled to arbitration shall be stayed by the district court pending resolution of the arbitration. 9 U.S.C. § 3. *See also Mendoza v. Uber Techs. Inc.*, 2020 WL 2563047, at *2 (C.D. Cal. May 4, 2020) ("This action is STAYED pending resolution of the arbitration proceedings. The Clerk is directed to administratively close the case.").

Additionally, because this Court is not the proper forum for plaintiffs' claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration. Plaintiffs should not be permitted to ignore their arbitration agreements, file a lawsuit in federal court, and force Epson to participate in litigation in violation of the terms of the parties' agreements. For this reason, courts routinely stay proceedings pending the resolution of a motion to compel arbitration. *See, e.g., Mahamedi IP Law, LLP v. Paradice & Li, LLP*, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (granting "motion to stay discovery until the Court rules on [the] motion to compel arbitration."); *Hotel Greystone Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 897 F. Supp. 168, 170 (S.D.N.Y. 1995) ("[P]etitioner's motion for a preliminary stay pending resolution of the petition for a stay of arbitration and respondent's cross-motion to compel is granted."); *Hamoudeh v. Unitedhealth Grp. Inc.*, 2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016) (granting "motion to stay this action pending resolution of UnitedHealth's motion to compel arbitration of Plaintiffs' claims.").

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' claims should be compelled to arbitration and, to the extent plaintiffs raise any defenses to arbitration of their claims, those disputes must be resolved by the arbitrator. The action should be stayed pending resolution of the arbitration and, in the interim, stayed pending resolution of this motion.

DATED: July 20, 2020

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By_____*/s/ Shon Morgan*_____

Shon Morgan
Attorneys for Defendant Epson America, Inc.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  jackbaumann@quinnemanuel.com
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant Epson America,
Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EPSON AMERICA, INC.,<br><br>Defendant. | CASE No. 2:20-cv-04400-CBM-GJS<br><br>**DECLARATION OF SIRANUSH ARABIAN IN SUPPORT OF DEFENDANT EPSON AMERICA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:        August 18, 2020<br>Time:        10:00 a.m.<br>Judge:       Hon. Consuelo B. Marshall<br>Courtroom:  8B |

## <u>DECLARATION OF SIRANUSH ARABIAN</u>

I, SIRANUSH ARABIAN, declare as follows:

1.     I am the Director, Service and Support Operation for Epson America, Inc. (hereinafter, "Epson").   I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.     I have worked for Epson in various service and support positions since December 1993.  I have held the role of Director, Service and Support Operation since August 2017.  In this role, I have access to and have reviewed Epson's records and other documents that provide the basis for my statements herein.  Through this review and through the course of my regular duties as Director, Service Support Operation, I have personal knowledge of the facts stated herein.

3.     Attached hereto as Exhibit 1 is a true and correct copy of the Epson End User Software License Agreement ("software license"), which remained in effect from 2016 through today.  The terms of the arbitration agreement set forth in Paragraph 14 of the software license did not change during that period.  Exhibit 1 was kept in the ordinary course of Epson's business and retrieved from Epson's records system.

4.     Throughout this period, users setting up an Epson printer have been required to view the software license as part of the set-up process—the software license is automatically displayed for the users to see during this process.  The users are required to click a bubble that appears immediately after the displayed software license to signify their agreement to the terms of the software license.

5.     Attached hereto as Exhibit 2 is a true and correct copy of the Epson End User Software License Agreement ("Updater EULA") that accompanied the software updates in effect for, among others, the Epson Expression Premium XP-7100 All -in-One Printer; Epson XP-830 All-in-One; Epson WF-4740; Epson XP 440; Epson Workforce Pro WS3720 3-in-1; and Epson Workforce 3720.  Exhibit 2 was kept in the ordinary course of Epson's business and retrieved from Epson's records system.

6.     The Updater EULA remained in effect throughout 2019 and 2020 and the terms of the arbitration agreement set forth in Paragraph 22 of the Updater EULA did not change during that period.

7.     To install software updates on (among others) the printers listed in Paragraph 5 above, users were required to view the Updater EULA, which was automatically displayed for the users to see, and the users were required to click, immediately after the displayed Updater EULA, to signify their agreement to its terms.

8.     The software license and Updater EULA contain opt-out provisions for customers who wish to opt-out of the arbitration agreements in the software license and Updater EULA.  In the ordinary course of its business, Epson maintains records of any users who choose to opt-out of the arbitration agreements in the software license and Updater EULA.  I have reviewed these records and confirmed Epson did not receive any opt-out notices from plaintiffs William Mondigo, Felix Rabinovich, Richard Famiglietti, Jesse Gordon, Gregory Szot, Martin Dignard, or Michael Kovach.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed July __, 2020, at _____.


By_____
     Siranush Arabian

# ARABIAN DECLARATION
# EXHIBIT 1

**NOTICE TO USER**: PLEASE READ THIS
AGREEMENT CAREFULLY BEFORE INSTALLING OR
USING THIS PRODUCT. IF YOU ARE LOCATED IN
THE UNITED STATES, SECTION 14 OF THIS
DOCUMENT APPLIES TO YOU. SECTION 14
CONTAINS A BINDING ARBITRATION PROVISION
THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A
COURT BEFORE A JUDGE OR JURY, AND WAIVES
YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS
OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES.
AN "OPT-OUT" IS AVAILABLE UNDER SECTION 14.7
FOR THOSE WHO WISH TO BE EXCLUDED FROM
THE ARBITRATION AND CLASS WAIVER.

This is a legal agreement ("Agreement") between you
(an individual or entity, referred to hereinafter as "you")
and Seiko Epson Corporation ("Epson") for the enclosed
software programs, including any related documentation,
firmware, or updates (collectively referred to hereinafter
as the "Software"). The Software is provided by Epson
and its suppliers for use only with the corresponding
Epson brand computer peripheral product (the "Epson
Hardware"). BEFORE INSTALLING, COPYING OR
OTHERWISE USING THE SOFTWARE, YOU NEED TO

Exhibit 1 - p. 5

REVIEW AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING THE EPSON PRIVACY POLICY (SEE SECTION 10). If you agree, click on the Download button. If you do not agree with the terms and conditions of this Agreement, click on the browser's back button to return to the previous page.

Exhibit 1 - p. 6

1.      **Grant of License.**  Epson grants you a limited, nonexclusive license to install and use the Software on hard disks or other computer storage devices, provided that the Software is used <u>only</u> in a single location (e.g., a home or office or place of business) and <u>only</u> in connection with Epson Hardware owned by you.  You may make backup copies of the Software, as necessary, provided the backup is only used to support your use of the Epson Hardware.

2.      **Upgrades and Updates.**  If you acquire an upgrade, updated version, modified version, or additions to or for the Software from Epson, the upgrade, updated version, modified version, or addition, shall be included in the defined term Software and governed by this Agreement. You acknowledge that Epson has no obligation to provide you with any Updates (as defined below in this Section 2) to the Software. Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third-party servers via the Internet to check for available updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug-ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates. If you do not wish to allow Epson to check for available updates to the Software, you may disable this feature by uninstalling EPSON Software Updater. By installing the Software and not disabling any automated check for Updates, if applicable, you hereby agree and consent to automatically request and receive Updates from Epson or third-party servers, and that the terms and conditions of this Agreement shall apply to all of these Updates.

3.      **Other Rights and Limitations.**  You agree not to modify, adapt or translate the Software and further agree not to attempt to reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software.  You may not rent, lease, distribute or lend the Software to third parties.  You may, however, transfer all of your rights to use the Software to another person or legal entity, provided that the recipient also agrees to the terms of this Agreement and you transfer the Software, including all copies, updates and prior versions, and the Epson Hardware, to such person or entity.  The Software is

Exhibit 1 - p. 7

licensed as a single unit, and its component programs may not be separated for some other use.  Further, you agree not to place the Software onto or into a shared environment accessible via a public network such as the Internet or otherwise accessible by others outside the single location referred to in Section 1 above.

4. **Ownership.**  Title, ownership rights, and intellectual property rights in and to the Software shall remain with Epson or its suppliers.  The Software is protected by United States Copyright Law, copyright laws of Japan and international copyright treaties, as well as other intellectual property laws and treaties.  There is no transfer to you of any title to or ownership of the Software and this License shall not be construed as a sale of any rights in the Software.  You agree not to remove or alter any copyright, trademark, registered mark and other proprietary notices on any copies of the Software. Epson and its suppliers reserve all rights not granted.

5. **Multiple Versions of Software.**  You may receive or obtain the Software in more than one version (e.g. for different operating environments; two or more language translation versions; downloaded from an Epson server or on a CD-ROM), however, regardless of the type or number of copies you receive, you still may use only the media or version appropriate for the license granted in Section 1 above.

6. **Disclaimer of Warranty and Remedy.**  If you obtained the Software by media from EPSON or a dealer, EPSON warrants that the media on which the Software is recorded will be free from defects in workmanship and materials under normal use for a period of 90 days from the date of delivery to you. If the media is returned to EPSON or the dealer from which the media was obtained within 90 days of the date of delivery to you, and if EPSON determines the media to be defective and provided the media was not subject to misuse, abuse, misapplication or use in defective equipment, EPSON will replace the media, upon your return to EPSON of the Software, including all copies of any portions thereof. You acknowledge and agree that the use of the Software is at your sole risk. THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND. EPSON AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE. Epson does not warrant that the operation of the Software

Exhibit 1 - p. 8

will be uninterrupted, error free, free from viruses or other harmful components or vulnerabilities, or that the functions of the Software will meet your needs or requirements. Epson's sole and exclusive liability and your exclusive remedy for breach of warranty shall be limited to either, at Epson's option, the replacement of the media for the Software or to refund your money upon returning the Software and Epson Hardware. Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer. If the above remedy fails for any reason, Epson's entire liability for a breach of warranty shall be limited to a refund of the price paid for the Epson Hardware. Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control. This Limited Warranty is void if failure of the Software resulted from accident, abuse, or misapplication. THE STATED LIMITED WARRANTIES AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHERS. EPSON DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE. SOME STATES OR JURISDICTIONS, HOWEVER, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, AND IN SUCH STATES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

7.     **Limitation of Liability.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL EPSON OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES, WHATSOEVER, WHETHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, whether arising under contract, tort (including negligence), strict liability, breach of warranty, misrepresentation, or otherwise, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS, ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR ARISING OUT OF THIS AGREEMENT, EVEN IF EPSON OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TRANSACTIONS, AND IN SUCH STATES, THE ABOVE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY.

Exhibit 1 - p. 9

8. **U.S. Government Acquisition of the Software.** This Section applies to all acquisitions of the Software by or for the U.S. Government ("Government"), or by any prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement, "other transaction" ("OT"), or other activity with the Government. By accepting delivery of the Software, the Government, any prime contractor, and any subcontractor agree that the Software qualifies as "commercial" computer software within the meaning of FAR Part 12, paragraph (b) of FAR Subpart 27.405, or DFARS Subpart 227.7202, as applicable, and that no other regulation, or FAR or DFARS data rights clause, applies to the delivery of this Software to the Government. Accordingly, the terms and conditions of this Agreement govern the Government's (and the prime contractor and subcontractor's) use and disclosure of the Software, and supersede any conflicting terms and conditions of the contract, grant, cooperative agreement, OT, or other activity pursuant to which the Software is delivered to the Government. If this Software fails to meet the Government's needs, if this Agreement is inconsistent in any respect with Federal law, or if the above cited FAR and DFARS provisions do not govern, the Government agrees to return the Software, unused, to Epson.

9. **Export Restriction.** You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

10. **Privacy, Information Collection and Transfer of Data Overseas.** The Software may have the ability to connect over the Internet to transmit data to and from your computer. For example, if you install the Software, the Software may cause your computer to send information about your Epson Hardware such as model and serial number, country identifier, language code, operating system information, and Epson Hardware usage information to an Epson Internet site which may return promotional or service information to your computer for display. For more information on how Epson collects and uses information provided through the Software, please review the Epson Privacy Policy located at www.epson.com/privacy (if you are located in the U.S.), www.epson.ca/privacy (if you are located in Canada), which is incorporated herein by reference. By agreeing to the

Exhibit 1 - p. 10

terms of this Agreement, you agree to the terms of the Epson Privacy Policy. The Epson Internet site may be located overseas. By installing the Software, you consent to this transfer, processing and storage of your information in and/or outside your country of residence.

11.     **Ink Purchases**. For certain Epson printer products sold in North America, the Software may also display an option to buy ink from Epson. If you click on the buy button, the Software will cause your computer to display Epson Hardware cartridge types and ink levels and provide other information about your cartridges, such as the colors, available cartridge sizes, and prices for replacement ink cartridges, which you may purchase online from Epson.

12.     **Downloadable Updates**. You may also be able to download from an Epson Internet site updates or upgrades to the Software if such updates or upgrades are made available. If you agree to install the Software, any transmissions to or from the Internet, and data collection and use, will be in accordance with Epson's then-current Privacy Policy, and by installing the Software you agree that such then-current Privacy Policy shall govern such activities.

13.     **Epson Accounts and Promotional Messages**. In addition, if you install the Software and register your Epson Hardware with Epson, and/or you create an account at the Epson Store, and provided your consent to such use, you agree that Epson may merge the data collected in connection with installation of the Software, registration of your Epson Hardware and/or creation of your Epson Store account, consisting of personal information and non-personally identifiable information, and use such merged data to send you Epson promotional or service information. If you do not wish to send information about your Epson Hardware or receive promotional or service information, you will be able to disable these features on a Windows system through the Monitoring Preferences section in the driver. On a Mac operating system, you can disable these features by uninstalling the Epson Customer Research Participation and Low Ink Reminder software.

14.     DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS

Exhibit 1 - p. 11

**14.1     Disputes.** The terms of this Section 14 shall apply to all Disputes between you and Epson. The term "Dispute" is meant to have the broadest meaning permissible under law and includes any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis. "DISPUTE" DOES NOT INCLUDE IP CLAIMS, or more specifically, a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation (an "IP Claim"). You and Epson also agree, notwithstanding Section 14.6, that a court, not an arbitrator, may decide if a claim or cause of action is for an IP Claim.

**14.2     Binding Arbitration.** You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.** Pursuant to this Agreement, binding arbitration shall be administered by JAMS, a nationally recognized arbitration authority, pursuant to its code of procedures then in effect for consumer related disputes, but excluding any rules that permit joinder or class actions in arbitration (for more detail on procedure, see Section 14.6 below). You and Epson understand and agree that (a) the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 14, (b) this Agreement memorializes a transaction in interstate commerce, and (c) this Section 14 shall survive termination of this Agreement.

**14.3     Pre-Arbitration Steps and Notice.** Before submitting a claim for arbitration, you and Epson agree to try, for sixty (60) days, to resolve any Dispute informally. If Epson and you do not reach an agreement to resolve the Dispute within the sixty (60) days), you or Epson may commence an arbitration. Notice to Epson must be addressed to: Epson America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach, CA 90806 (the

Exhibit 1 - p. 12

"Epson Address"). The Dispute Notice to you will be sent to the most recent address Epson has in its records for you. For this reason, it is important to notify us if your address changes by emailing us at EAILegal@ea.epson.com or writing us at the Epson Address above. Notice of the Dispute shall include the sender's name, address and contact information, the facts giving rise to the Dispute, and the relief requested (the "Dispute Notice"). Following receipt of the Dispute Notice, Epson and you agree to act in good faith to resolve the Dispute before commencing arbitration.

**14.4** **Small Claims Court**. Notwithstanding the foregoing, you may bring an individual action in the small claims court of your state or municipality if the action is within that court's jurisdiction and is pending only in that court.

**14.5** WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS. YOU AND EPSON AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING WITHOUT LIMITATION FEDERAL OR STATE CLASS ACTIONS, OR CLASS ARBITRATIONS. CLASS ACTION LAWSUITS, CLASS-WIDE ARBITRATIONS, PRIVATE ATTORNEY-GENERAL ACTIONS, AND ANY OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY ARE NOT ALLOWED. ACCORDINGLY, UNDER THE ARBITRATION PROCEDURES OUTLINED IN THIS SECTION, AN ARBITRATOR SHALL NOT COMBINE OR CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS WITHOUT THE WRITTEN CONSENT OF ALL AFFECTED PARTIES TO AN ARBITRATION PROCEEDING.

**14.6** **Arbitration Procedure.** If you or Epson commences arbitration, the arbitration shall be governed by the rules of JAMS that are in effect when the arbitration is filed, excluding any rules that permit arbitration on a class or representative basis (the "JAMS Rules"), available at http://www.jamsadr.com or by calling 1-800-352-5267, and under the rules set forth in this Agreement.

Exhibit 1 - p. 13

Epson End User Software License Agreement | Epson US

All Disputes shall be resolved by a single neutral arbitrator, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator. The arbitrator is bound by the terms of this Agreement. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable. Notwithstanding this broad delegation of authority to the arbitrator, a court may determine the limited question of whether a claim or cause of action is for an IP Claim, which is excluded from the definition of "Disputes" in Section 14.1 above. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator may award you the same damages as a court could, and may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. In some instances, the costs of arbitration can exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court. The arbitrator's award is binding and may be entered as a judgment in any court of competent jurisdiction.

You may choose to engage in arbitration hearings by telephone. Arbitration hearings not conducted by telephone shall take place in a location reasonably accessible from your primary residence, or in Orange County, California, at your option.

a)  Initiation of Arbitration Proceeding. If either you or Epson decides to arbitrate a Dispute, both parties agree to the following procedure:

(i)  Write a Demand for Arbitration. The demand must include a description of the Dispute and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at http://www.jamsadr.com ("Demand for Arbitration").

(ii)  Send three copies of the Demand for Arbitration, plus the appropriate filing fee, to: JAMS, 500 North State College Blvd., Suite 600 Orange, CA 92868, U.S.A.

(iii) Send one copy of the Demand for Arbitration to the other party (same address as the Dispute Notice), or as otherwise agreed by

Exhibit 1 - p. 14

the parties.

b)   Hearing Format. During the arbitration, the amount of any settlement offer made shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or Epson is entitled. The discovery or exchange of non-privileged information relevant to the Dispute may be allowed during the arbitration.

c)   Arbitration Fees. Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement.

d)   Award in Your Favor. For Disputes in which you or Epson seeks $75,000 or less in damages exclusive of attorney's fees and costs, if the arbitrator's decision results in an award to you in an amount greater than Epson's last written offer, if any, to settle the Dispute, Epson will: (i) pay you $1,000 or the amount of the award, whichever is greater; (ii) pay you twice the amount of your reasonable attorney's fees, if any; and (iii) reimburse you for any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing the Dispute in arbitration. Except as agreed upon by you and Epson in writing, the arbitrator shall determine the amount of fees, costs, and expenses to be paid by Epson pursuant to this Section 14.6d).

e)   Attorney's Fees. Epson will not seek its attorney's fees and expenses for any arbitration commenced involving a Dispute under this Agreement. Your right to attorney's fees and expenses under Section 14.6(d) above does not limit your rights to attorney's fees and expenses under applicable law; notwithstanding the foregoing, the arbitrator may not award duplicative awards of attorney's fees and expenses.

**14.7     Opt-out. You may elect to opt-out (exclude yourself) from the final, binding, individual arbitration procedure and waiver of class and representative proceedings specified in this Agreement by sending a written letter to the Epson Address within thirty (30) days of your assent to this Agreement (including without limitation the purchase, download, installation of the Software or other applicable use of Epson**

Exhibit 1 - p. 15

Hardware, products and services) that specifies (i) your name, (ii) your mailing address, and (iii) your request to be excluded from the final, binding individual arbitration procedure and waiver of class and representative proceedings specified in this Section 14. In the event that you opt-out consistent with the procedure set forth above, all other terms shall continue to apply, including the requirement to provide notice prior to litigation.

**14.8** **Amendments to Section 14.** Notwithstanding any provision in this Agreement to the contrary, you and Epson agree that if Epson makes any future amendments to the dispute resolution procedure and class action waiver provisions (other than a change to Epson's address) in this Agreement, Epson will obtain your affirmative assent to the applicable amendment. If you do not affirmatively assent to the applicable amendment, you are agreeing that you will arbitrate any Dispute between the parties in accordance with the language of this Section 14 (or resolve disputes as provided for in Section 14.7, if you timely elected to opt-out when you first assented to this Agreement).

**14.9** **Severability.** If any provision in this Section 14 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect. **The foregoing shall not apply to the prohibition against class or representative actions as provided in Section 14.5. This means that if Section 14.5 is found to be unenforceable, the entire Section 14 (but only Section 14) shall be null and void.**

**15.** **Jurisdiction.** Except for Section 14, which is governed by the Federal Arbitration Act, in the event of a Dispute in which the provisions in Section 14 are inapplicable, severed from the remainder of this Agreement, or you opt-out pursuant to the provisions of Section 14.7, you and Epson both consent to the jurisdiction of your state of residence. Such Dispute must be filed no later than one year after the date the Software is first acquired. This Agreement will not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded.

Exhibit 1 - p. 16

16.     **For New Jersey Residents.** Notwithstanding any terms set forth in this Agreement, if any of the provisions set forth in Sections 6, 7, or 16 are held unenforceable, void or inapplicable under New Jersey law, then ANY SUCH provision shall not apply TO YOU BUT THE REST OF THE AGREEMENT SHALL REMAIN BINDING ON YOU AND EPSON. NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT, Nothing in this AGREEMENT IS INTENDED TO, NOR shall IT be deemed OR CONSTRUED to, limit any rights available to you UNDER THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

17.     **Entire Agreement.** This Agreement is the entire agreement between the parties related to the Software and supersedes any purchase order, communication, advertisement, or representation concerning the Software.

18.     **Binding Agreement; Assignees.** This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, assigns and legal representatives.

19.     **Severability; Modifications.** Subject to Section 14.8 and 14.9 if any provision herein is found void or unenforceable by a court of competent jurisdiction, it will not affect the validity of the balance of the Agreement, which shall remain valid and enforceable according to its terms. This Agreement may only be modified in writing signed by an authorized representative of Epson.

20.     **Termination.** Without prejudice to any other rights Epson has, your license rights under Section 1 above and your warranty rights under Section 6 above, shall automatically terminate upon failure by you to comply with its terms. Upon termination of such rights, you agree that the Software, and all copies thereof, will be immediately destroyed.

21.     **Capacity and Authority to Contract.** You represent that you are of the legal age of majority in your state or jurisdiction of residence and have all necessary authority to enter into this Agreement, including, if applicable, due authorization by your employer to enter into this Agreement.

# EPSON is a registered trademark of Seiko Epson

Exhibit 1 - p. 17

Corporation.

© 2019  Epson America, Inc.

Exhibit 1 - p. 18

# ARABIAN DECLARATION
# EXHIBIT 2

## EPSON END USER SOFTWARE LICENSE AGREEMENT

> **NOTICE TO USER: PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING OR USING THIS PRODUCT. IF YOU ARE LOCATED IN THE UNITED STATES, SECTIONS 19–23 OF THIS DOCUMENT APPLY TO YOU. SECTION 22 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES. AN "OPT–OUT" IS AVAILABLE UNDER SECTION 22.7 FOR THOSE WHO WISH TO BE EXCLUDED FROM THE ARBITRATION AND CLASS WAIVER.**
>
> This is a legal agreement ("Agreement") between you (an individual or entity, referred to hereinafter as "you") and Seiko Epson Corporation (including its affiliates, "Epson") for the enclosed software programs, including any related documentation, firmware, or updates (collectively referred to hereinafter as the "Software"). The Software is provided by Epson and its suppliers for use only with the corresponding Epson brand computer peripheral product (the "Epson Hardware"). BEFORE INSTALLING, COPYING OR OTHERWISE USING THE SOFTWARE, YOU NEED TO REVIEW AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING THE EPSON PRIVACY POLICY stated in Section 17. If you agree, click on the Agree ("ACCEPT", "OK" or any similar representation of agreement) button below. If you do not agree with the terms and conditions of this Agreement, click on the Disagree ("EXIT", "Cancel" or any similar representation of disagreement) button and return the Software, along with the packaging and related materials, to Epson or the place of purchase for a full refund.

1.    **Grant of License.** Epson grants you a limited, nonexclusive license to (i) download, install and use the Software for your personal and internal business use on hard disks or other computer storage devices, or in the case of a software application (also referred to as "Software"), on the smartphone, tablet, or other mobile device (collectively, "Device"), provided that the Software is used (i) **only** in a single location (e.g., a home or office or place of business), or in the case of a mobile device, on a Device owned or otherwise controlled by you, and (ii) **only** in connection with Epson Hardware owned by you. You may allow other users of the Epson Hardware connected to your network to use the Software, provided that you shall ensure that such users use the Software only in accordance with this Agreement. You agree to be responsible for and indemnify Epson for liabilities incurred as a consequence of use by such users. You may make backup copies of the Software, as necessary, provided the backup is only used to support your use of the Epson Hardware.

2.    **Upgrades and Updates.** If you acquire an upgrade, updated version, modified version, or additions to or for the Software from Epson, the upgrade, updated version, modified version, or addition, shall be included in the defined term Software and governed by this Agreement. You acknowledge that Epson has no obligation to provide you with any Updates (as defined below in this Section 2) to the Software. Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third–party servers via the Internet to check for available updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug–ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates. If you installed the EPSON Software Updater and do not wish to allow Epson to check for available updates to the Software, you may disable this feature by uninstalling EPSON Software Updater. By installing the Software and not disabling any automated check for Updates, if applicable, you hereby agree and consent to automatically request and receive Updates from Epson or third–party servers, and that the terms and conditions of this Agreement shall apply to all of these Updates.

3.    **Other Rights and Limitations.** You agree not to modify, adapt or translate the Software and further agree not to attempt to reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software. You may not rent, lease, distribute, lend the Software to third parties or incorporate the Software into a revenue generating product or service. You may, however, transfer all of your rights to use the Software to another person or legal entity, provided that the recipient also agrees

Exhibit 2 - p. 19

to the terms of this Agreement and you transfer the Software, including all copies, updates and prior versions, and the Epson Hardware, to such person or entity. The Software is licensed as a single unit, and its component programs may not be separated for some other use. Further, you agree not to place the Software onto or into a shared environment accessible via a public network such as the Internet or otherwise accessible by others outside the single location referred to in Section 1 above.

4.    **Ownership.**  Title, ownership rights, and intellectual property rights in and to the Software shall remain with Epson or its licensors and suppliers. The Software is protected by United States Copyright Law, copyright laws of Japan and international copyright treaties, as well as other intellectual property laws and treaties. There is no transfer to you of any title to or ownership of the Software and this License shall not be construed as a sale of any rights in the Software. You agree not to remove or alter any copyright, trademark, registered mark and other proprietary notices on any copies of the Software. Epson and/or its licensors and suppliers reserve all rights not granted. The Software may also contain images, illustrations, designs and photos ("Materials"), and the copyright of such material belongs to Epson and/or its licensors and suppliers, protected by national and/or international intellectual property laws, conventions and treaties. For clarity, (1) the Materials shall be used for non-commercial purposes only, (2) the Materials shall be edited, adjusted and copied only in the manner designated by the Software, and (3) you may use the Materials only for lawful personal use, home use or as otherwise legally permitted.

5.    **Open Source and Other Third-Party Components.** Notwithstanding the foregoing license grant, you acknowledge that certain components of the Software may be covered by third-party licenses, including so-called "open source" software licenses, which means any software licenses approved as open source licenses by the Open Source Initiative or any substantially similar licenses, including without limitation any license that, as a condition of distribution of the software licensed under such license, requires that the distributor make the software available in source code format (such third-party components, "Third-Party Components"). A list of Third-Party Components, and associated license terms (as required), for particular versions of the Software is indicated at the end of this Agreement, relevant user manual/CD, or the license information displayed on your Device/in Software. To the extent required by the licenses covering Third-Party Components, the terms of such licenses will apply in lieu of the terms of this Agreement. To the extent the terms of the licenses applicable to Third-Party Components prohibit any of the restrictions in this Agreement with respect to such Third-Party Components, such restrictions will not apply to such Third-Party Component.

6.    **Multiple Versions of Software.**  You may receive or obtain the Software in more than one version (e.g. for different operating environments; two or more language translation versions; downloaded from an Epson server or on a CD-ROM), however, regardless of the type or number of copies you receive, you still may use only the media or version appropriate for the license granted in Section 1 above.

7.    **Disclaimer of Warranty and Remedy.**  If you obtained the Software by media from Epson or a dealer, Epson warrants that the media on which the Software is recorded will be free from defects in workmanship and materials under normal use for a period of 90 days from the date of delivery to you. If the media is returned to Epson or the dealer from which the media was obtained within 90 days of the date of delivery to you, and if Epson determines the media to be defective and provided the media was not subject to misuse, abuse, misapplication or use in defective equipment, Epson will replace the media, upon your return to Epson of the Software, including all copies of any portions thereof. You acknowledge and agree that the use of the Software is at your sole risk. THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND. EPSON AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE. Epson does not warrant that the operation of the Software will be uninterrupted, error free, free from viruses or other harmful components or vulnerabilities, or that the functions of the Software will meet your needs or requirements. Epson's sole and exclusive liability and your exclusive remedy for breach of warranty shall be limited to either, at Epson's option, the replacement of the media for the Software or to refund your money upon returning the Software and Epson Hardware. Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer. If the above remedy

Exhibit 2 - p. 20

fails for any reason, Epson's entire liability for a breach of warranty shall be limited to a refund of the price paid for the Epson Hardware.  Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control.  This Limited Warranty is void if failure of the Software resulted from accident, abuse, or misapplication.  THE STATED LIMITED WARRANTIES AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHERS. EPSON DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.  SOME STATES OR JURISDICTIONS, HOWEVER, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, AND IN SUCH STATES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

8.     **Limitation of Liability.**  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL EPSON OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES, WHATSOEVER, WHETHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHETHER ARISING UNDER CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, BREACH OF WARRANTY, MISREPRESENTATION, OR OTHERWISE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS, ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR ARISING OUT OF THIS AGREEMENT, EVEN IF EPSON OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TRANSACTIONS, AND IN SUCH STATES, THE ABOVE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY.

9.     **U.S. Government Acquisition of the Software.**  This Section applies to all acquisitions of the Software by or for the U.S. Government ("Government"), or by any prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement, "other transaction" ("OT"), or other activity with the Government.  By accepting delivery of the Software, the Government, any prime contractor, and any subcontractor agree that the Software qualifies as "commercial" computer software within the meaning of FAR Part 12, paragraph (b) of FAR Subpart 27.405, or DFARS Subpart 227.7202, as applicable, and that no other regulation, or FAR or DFARS data rights clause, applies to the delivery of this Software to the Government.  Accordingly, the terms and conditions of this Agreement govern the Government's (and the prime contractor and subcontractor's) use and disclosure of the Software, and supersede any conflicting terms and conditions of the contract, grant, cooperative agreement, OT, or other activity pursuant to which the Software is delivered to the Government.  If this Software fails to meet the Government's needs, if this Agreement is inconsistent in any respect with Federal law, or if the above cited FAR and DFARS provisions do not govern, the Government agrees to return the Software, unused, to Epson.

10.    **Export Restriction.**  You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

11.    **Entire Agreement.**  This Agreement is the entire agreement between the parties related to the Software and supersedes any purchase order, communication, advertisement, or representation concerning the Software.

12.    **Binding Agreement; Assignees.**  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, assigns and legal representatives.

13.    **Severability; Modifications.**  If any provision herein is found void or unenforceable by a court of competent jurisdiction (subject to Section 22.8 and 22.9 if you are a located in the U.S.), it will not affect the validity of the balance of the Agreement, which shall remain valid and enforceable according to its terms.  This Agreement may only be modified in writing signed by an authorized representative of Epson.

14.    **Indemnification.**  You agree that you will indemnify and hold harmless, and upon Epson's request, defend Epson and its directors, officers, shareholders, employees and agents from and against any and all

Exhibit 2 - p. 21

losses, liabilities, damages, costs, expenses (including reasonable attorneys' fees), actions, suits, and claims arising from (i) any breach of any of your obligations in this Agreement or (ii) any use of the Software or the Epson Hardware.  If Epson asks you to defend any such action, suit or claim, Epson will have the right, at its own expense, to participate in the defense thereof with counsel of its choice.  You will not settle any third-party claims for which Epson is entitled to indemnification without the prior written approval of Epson.

15.  **Termination**.  Without prejudice to any other rights Epson has, your license rights under Section 1 above and your warranty rights under Section 7 above, shall automatically terminate upon failure by you to comply with this Agreement.  Upon termination of such rights, you agree that the Software, and all copies thereof, will be immediately destroyed.

16.  **Capacity and Authority to Contract.**  You represent that you are of the legal age of majority in your state or jurisdiction of residence and have all necessary authority to enter into this Agreement, including, if applicable, due authorization by your employer to enter into this Agreement.

17.  **Privacy, Information Processing.**  The Software may have the ability to connect over the Internet to transmit data to and from your Device.  For example, if you install the Software, the Software may cause your Device to send information about your Epson Hardware such as model and serial number, country identifier, language code, operating system information, and Epson Hardware usage information to an Epson Internet site which may return promotional or service information to your Device for display.  Any processing of information provided through the Software, shall be according to applicable data protection laws and the Epson Privacy Policy located at https://global.epson.com/privacy/area_select_confirm_eula.html.  To the extent permitted by applicable laws, by agreeing to the terms of this Agreement and by installing the Software, you consent to the processing and storage of your information in and/or outside your country of residence.  If there is a specific privacy policy incorporated into the Software and/or displayed when you use the Software (for example, in the case of certain software application software), such specific privacy policy shall prevail over the Epson Privacy Policy stated above.

18.  **Third Party Websites.**  You may, through hypertext or other computer links from the Software, gain access to websites and use certain services that are not under the control of or operated by Epson, but rather are controlled by third parties.  You acknowledge and agree that Epson is not responsible for such third party sites or services, including their accuracy, completeness, timeliness, validity, copyright compliance, legality, decency, quality, or any other aspect thereof.  These third party websites/services are subject to different terms and conditions and when you access and use third party websites/services, you will be legally bound by the terms and conditions of those websites/services.  If there is a conflict between this Agreement and terms and conditions of third party websites/services, the third party websites'/services' terms and conditions will govern with respect to your access and use of those websites/services.  Although Epson may provide a link to a third party website/service from the Software, such a link is not an authorization, endorsement, sponsorship or affiliation by Epson with respect to such website/services, its content, its owners or its providers.  Epson provides such links for your reference and convenience only.  Accordingly, Epson makes no representations whatsoever concerning such websites/services and does not provide any support related to such third party sites or services.  Epson has not tested any information, products or software found on such websites/services and therefore cannot make any representations whatsoever with respect thereto.  You agree that Epson is not responsible for the content or operation of such websites/services, and it is up to you to take precautions to ensure that whatever you select is free of items such as viruses, worms, Trojan horses and other items of a destructive nature.  You are solely responsible for determining the extent to which you may use any content at any other websites/services to which you link from this Software.

## (IF YOU ARE LOCATED IN THE UNITED STATES, THE FOLLOWING SECTIONS 19 – 23 APPLY TO YOU)

Exhibit 2 - p. 22

19.    **Ink Purchases.**  For certain Epson printer products sold in North America, the Software may also display an option to buy ink from Epson.  If you click on the buy button, the Software will cause your Device to display Epson Hardware cartridge types and ink levels and provide other information about your cartridges, such as the colors, available cartridge sizes, and prices for replacement ink cartridges, which you may purchase online from Epson.

20.    **Downloadable Updates.**  You may also be able to download from an Epson Internet site updates or upgrades to the Software if such updates or upgrades are made available.  If you agree to install the Software, any transmissions to or from the Internet, and data collection and use, will be in accordance with Epson's then–current Privacy Policy, and by installing the Software you agree that such then–current Privacy Policy shall govern such activities.

21.    **Epson Accounts and Promotional Messages.**  In addition, if you install the Software and register your Epson Hardware with Epson, and/or you create an account at the Epson Store, and provided your consent to such use, you agree that Epson may merge the data collected in connection with installation of the Software, registration of your Epson Hardware and/or creation of your Epson Store account, consisting of personal information and non–personally identifiable information, and use such merged data to send you Epson promotional or service information.  If you do not wish to send information about your Epson Hardware or receive promotional or service information, you will be able to disable these features on a Windows system through the Monitoring Preferences section in the driver.  On a Mac operating system, you can disable these features by uninstalling the Epson Customer Research Participation and Low Ink Reminder software.

22.    **DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**

22.1    **Disputes.**  The terms of this Section 22 shall apply to all Disputes between you and Epson. The term "Dispute" is meant to have the broadest meaning permissible under law and includes any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis.  "DISPUTE" DOES NOT INCLUDE IP CLAIMS, or more specifically, a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation (an "IP Claim").  You and Epson also agree, notwithstanding Section 22.6, that a court, not an arbitrator, may decide if a claim or cause of action is for an IP Claim.

22.2    **Binding Arbitration.**  You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement.  **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED**.  Pursuant to this Agreement, binding arbitration shall be administered by JAMS, a nationally recognized arbitration authority, pursuant to its code of procedures then in effect for consumer related disputes, but excluding any rules that permit joinder or class actions in arbitration (for more detail on procedure, see Section 22.6 below).  You and Epson understand and agree that (a) the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 22, (b) this Agreement memorializes a transaction in interstate commerce, and (c) this Section 22 shall survive termination of this Agreement.

22.3    **Pre–Arbitration Steps and Notice.**  Before submitting a claim for arbitration, you and Epson agree to try, for sixty (60) days, to resolve any Dispute informally.  If Epson and you do not reach an agreement to resolve the Dispute within the sixty (60) days, you or Epson may commence an arbitration. Notice to Epson must be addressed to: Epson America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach, CA 90806 (the "Epson Address").  The Dispute Notice to you will be sent to the most recent address Epson has in its records for you.  For this reason, it is

Exhibit 2 - p. 23

important to notify us if your address changes by emailing us at EAILegal@ea.epson.com or writing us at the Epson Address above.  Notice of the Dispute shall include the sender's name, address and contact information, the facts giving rise to the Dispute, and the relief requested (the "Dispute Notice").  Following receipt of the Dispute Notice, Epson and you agree to act in good faith to resolve the Dispute before commencing arbitration.

22.4  **Small Claims Court**.  Notwithstanding the foregoing, you may bring an individual action in the small claims court of your state or municipality if the action is within that court's jurisdiction and is pending only in that court.

22.5  **WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS.  YOU AND EPSON AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING WITHOUT LIMITATION FEDERAL OR STATE CLASS ACTIONS, OR CLASS ARBITRATIONS. CLASS ACTION LAWSUITS, CLASS–WIDE ARBITRATIONS, PRIVATE ATTORNEY–GENERAL ACTIONS, AND ANY OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY ARE NOT ALLOWED.  ACCORDINGLY, UNDER THE ARBITRATION PROCEDURES OUTLINED IN THIS SECTION, AN ARBITRATOR SHALL NOT COMBINE OR CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS WITHOUT THE WRITTEN CONSENT OF ALL AFFECTED PARTIES TO AN ARBITRATION PROCEEDING.**

22.6  **Arbitration Procedure.**   If you or Epson commences arbitration, the arbitration shall be governed by the rules of JAMS that are in effect when the arbitration is filed, excluding any rules that permit arbitration on a class or representative basis (the "JAMS Rules"), available at http://www.jamsadr.com or by calling 1–800–352–5267, and under the rules set forth in this Agreement.  All Disputes shall be resolved by a single neutral arbitrator, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator.  The arbitrator is bound by the terms of this Agreement.  The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.  Notwithstanding this broad delegation of authority to the arbitrator, a court may determine the limited question of whether a claim or cause of action is for an IP Claim, which is excluded from the definition of "Disputes" in Section 22.1 above.  The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity.  The arbitrator may award you the same damages as a court could, and may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.  In some instances, the costs of arbitration can exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court.  The arbitrator's award is binding and may be entered as a judgment in any court of competent jurisdiction.

You may choose to engage in arbitration hearings by telephone.  Arbitration hearings not conducted by telephone shall take place in a location reasonably accessible from your primary residence, or in Orange County, California, at your option.

a)    Initiation of Arbitration Proceeding.  If either you or Epson decides to arbitrate a Dispute, both parties agree to the following procedure:

(i)    Write a Demand for Arbitration.  The demand must include a description of the Dispute and the amount of damages sought to be recovered.  You can find a copy of a Demand for Arbitration at http://www.jamsadr.com ("Demand for Arbitration").

(ii)    Send three copies of the Demand for Arbitration, plus the appropriate filing fee, to: JAMS, 500 North State College Blvd., Suite 600 Orange, CA 92868, U.S.A.

Exhibit 2 - p. 24

      (iii)    Send one copy of the Demand for Arbitration to the other party (same address as the Dispute Notice), or as otherwise agreed by the parties.

b)    Hearing Format.  During the arbitration, the amount of any settlement offer made shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or Epson is entitled.  The discovery or exchange of non-privileged information relevant to the Dispute may be allowed during the arbitration.

c)    Arbitration Fees.  Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement.

d)    Award in Your Favor.  For Disputes in which you or Epson seeks $75,000 or less in damages exclusive of attorney's fees and costs, if the arbitrator's decision results in an award to you in an amount greater than Epson's last written offer, if any, to settle the Dispute, Epson will: (i) pay you $1,000 or the amount of the award, whichever is greater; (ii) pay you twice the amount of your reasonable attorney's fees, if any; and (iii) reimburse you for any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing the Dispute in arbitration.  Except as agreed upon by you and Epson in writing, the arbitrator shall determine the amount of fees, costs, and expenses to be paid by Epson pursuant to this Section 22.6d).

e)    Attorney's Fees.  Epson will not seek its attorney's fees and expenses for any arbitration commenced involving a Dispute under this Agreement.  Your right to attorney's fees and expenses under Section 22.6(d) above does not limit your rights to attorney's fees and expenses under applicable law; notwithstanding the foregoing, the arbitrator may not award duplicative awards of attorney's fees and expenses.

**22.7    Opt–out.  You may elect to opt–out (exclude yourself) from the final, binding, individual arbitration procedure and waiver of class and representative proceedings specified in this Agreement by sending a written letter to the Epson Address within thirty (30) days of your assent to this Agreement (including without limitation the purchase, download, installation of the Software or other applicable use of Epson Hardware, products and services) that specifies (i) your name, (ii) your mailing address, and (iii) your request to be excluded from the final, binding individual arbitration procedure and waiver of class and representative proceedings specified in this Section 22.  In the event that you opt–out consistent with the procedure set forth above, all other terms shall continue to apply, including the requirement to provide notice prior to litigation.**

**22.8    Amendments to Section 22.**  Notwithstanding any provision in this Agreement to the contrary, you and Epson agree that if Epson makes any future amendments to the dispute resolution procedure and class action waiver provisions (other than a change to Epson's address) in this Agreement, Epson will obtain your affirmative assent to the applicable amendment.  If you do not affirmatively assent to the applicable amendment, you are agreeing that you will arbitrate any Dispute between the parties in accordance with the language of this Section 22 (or resolve disputes as provided for in Section 22.7, if you timely elected to opt–out when you first assented to this Agreement).

**22.9    Severability.**  If any provision in this Section 22 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect.  **The foregoing shall not apply to the prohibition against class or representative actions as provided in Section 22.5.  This means that if Section 22.5 is found to be unenforceable, the entire Section 22 (but only Section 22) shall be null and void.**

**23.    For New Jersey Residents.**  NOTWITHSTANDING ANY TERMS SET FORTH IN THIS AGREEMENT, IF ANY OF THE PROVISIONS SET FORTH IN SECTIONS 7 OR 8 ARE HELD UNENFORCEABLE, VOID OR INAPPLICABLE

Exhibit 2 - p. 25

UNDER NEW JERSEY LAW, THEN ANY SUCH PROVISION SHALL NOT APPLY TO YOU BUT THE REST OF THE AGREEMENT SHALL REMAIN BINDING ON YOU AND EPSON.  NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT, NOTHING IN THIS AGREEMENT IS INTENDED TO, NOR SHALL IT BE DEEMED OR CONSTRUED TO, LIMIT ANY RIGHTS AVAILABLE TO YOU UNDER THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

Rev. December 2018

Exhibit 2 - p. 26

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>EPSON AMERICA, INC.,<br><br>        Defendant. | CASE No. 2:20-cv-04400-CBM-GJS<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT EPSON AMERICA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:      August 18, 2020<br>Time:     10:00 a.m.<br>Judge:   Hon. Consuelo B. Marshall<br>Courtroom:  8B |

1        **[PROPOSED] ORDER**

2        Before the Court is defendant Epson America, Inc.'s Motion to Compel

3   Arbitration and Stay Proceedings.  Having considered the briefing, evidence, and

4   arguments raised by the parties in support of and in opposition to the Motion, the

5   Court GRANTS in full the defendant's Motion.

6        For all the reasons stated in defendants' Motion, this action is compelled to

7   arbitration, and to the extent plaintiffs have raised any disputes regarding the

8   arbitrability of their claims, those disputes must be resolved by the arbitrator.  This

9   action is STAYED pending resolution of the arbitration proceedings. The Clerk is

10  directed to administratively close the case.

11       **IT IS SO ORDERED.**

12

13       Dated:                                    _____

14                                                 Hon. Consuelo B. Marshall
                                                   United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant Epson America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>EPSON AMERICA, INC.,<br><br>        Defendant. | CASE No. 2:20-cv-04400-CBM-GJS<br><br>**DEFENDANT EPSON AMERICA INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;**<br><br>Date:      September 29, 2020<br>Time:      10:00 a.m.<br>Judge:    Hon. Consuelo B. Marshall<br>Courtroom:  8B |

# I.     ANY *MCGILL* CONCERNS HAVE BEEN DELEGATED TO THE ARBITRATOR TO DECIDE

Plaintiffs' sole argument to avoid arbitration is the (misplaced) contention that the arbitration provision impermissibly waives the right to seek "public injunctive relief" under the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). Their waiver concern is unfounded, but in any event the agreements delegate this threshold issue to the arbitrator. ECF No. 21-2 at ¶ 14.6[1] ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").

Where, as here, the arbitration agreement delegates arbitrability issues, courts uniformly agree that challenges premised on *McGill* must be sent to arbitration. *See, e.g., Moffett v. Recording Radio Film Connection, Inc.*, 2019 WL 6898955, at *7 (C.D. Cal. Oct. 4, 2019) (Gutierrez, J.) ("Courts have found, post-*McGill*, that where there is a delegation provision the public injunctive relief question is reserved to the arbitrator.") (collecting cases).

Plaintiffs raise three arguments to avoid this result: (1) the delegation agreement is not "clear and unmistakable" (Opp. at 9-10); (2) the delegation clause itself somehow waives the ability to seek public injunctive relief (Opp. at 11); and (3) questions of "validity" have not been delegated to the arbitrator (Opp. at 11-12). Each of these contentions can be readily dispatched.

**<u>The Delegation Agreement Is Clear And Unmistakable.</u>** As shown in Epson's opening memorandum, courts have repeatedly held the language in

---

[1]     Plaintiffs recognize the Software License and Updater EULA "contain the same Arbitration Clause." Opp. at 1 n. 1. Accordingly, in the interest of brevity, Epson cites only the arbitration agreement in the Software License throughout this brief. *See* ECF No. 21-2,

plaintiffs' arbitration agreements evinces the "clear and unmistakable" intent necessary to delegate issues of arbitrability. Mot. at 7-8 (citing *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010); *Lakhan v. U.S. Sec. Assocs., Inc.*, 2019 WL 175043, at \*6 (C.D. Cal. Jan. 11, 2019)). Plaintiffs' contention to the contrary is premised on a purported inconsistency—they argue a "Severability" clause outside the arbitration agreement creates "ambiguity" by recognizing that "a court of competent jurisdiction" could determine some provision in the Software License agreement is "void or unenforceable." Opp. at 9-10.

Courts have consistently rejected this *exact* argument following the Ninth Circuit's decision in *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016). *See, e.g., Taylor v. Shutterfly, Inc.*, 2018 WL 4334770, at \*5 (N.D. Cal. Sept. 11, 2018) ("As the Ninth Circuit held, no matter how broad the arbitration clause, the parties may need to invoke the jurisdiction of a court for adjudicating claims that are not covered by their arbitration agreement or to seek other remedies. . . . Accordingly, here the reference to a 'court of competent jurisdiction' in one provision of the Terms of Use does not render the express delegation clause of the Arbitration Agreement ambiguous. As the Ninth Circuit held in *Mohamed*, the purported conflict is 'artificial.'"); *MegaCorp Logistics LLC v. Turvo, Inc.*, 2018 WL 3619656, at \*6 (N.D. Cal. July 30, 2018) ("[R]eference to a court of competent jurisdiction in one provision in the Consulting Services Agreement does not render the delegation clause of the arbitration provision ambiguous."); *Miller v. Time Warner Cable Inc.*, 2016 WL 7471302, at \*5 (C.D. Cal. Dec. 27, 2016) ("the mere reference to a court making decisions based upon the Subscriber Agreement is insufficient to undermine its explicit [delegation] provision"); *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at \*4 (N.D. Cal. Oct. 11, 2017) (holding the "severability statement [did] not make ambiguous the parties' delegation of gateway issues").

Unsurprisingly, plaintiffs cannot cite a single case within the Ninth Circuit that supports their argument, relying instead on a California state court case that pre-

1   dated the Ninth Circuit's decision in *Mohamed*. Opp. at 9-10 (citing *Peleg v.*

2   *Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012)). Plaintiffs' reliance on

3   a state court case is entirely misplaced—instead, the substantive law of arbitrability

4   established by the Ninth Circuit's decision in *Mohamed* controls. *See Brennan v.*

5   *Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (where, as here, the arbitration

6   agreement is governed by the FAA, "the court is to make the arbitrability

7   determination by applying the federal substantive law of arbitrability[.]"); *Rent-A-*

8   *Ctr.*, 561 U.S. at 69 ("the FAA operates on this additional [delegation] agreement

9   just as it does on any other.").

10        **The Delegation Clause Does Not (And Cannot) Waive The Right To Seek**

11   **Public Injunctive Relief.** Plaintiffs next contend the delegation agreement itself

12   waives the right to seek public injunctive relief and thus runs afoul of *McGill*. Opp.

13   at 11. This argument fundamentally misunderstands the nature of a delegation

14   agreement. As the Supreme Court has repeatedly recognized, the delegation clause

15   merely constitutes agreement about *who* will decide questions of arbitrability: the

16   court or the arbitrator. *See, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc.*,

17   139 S. Ct. 524, 527 (2019) ("When a dispute arises, the parties sometimes may

18   disagree not only about the merits of the dispute but also about the threshold

19   arbitrability question—that is, whether their arbitration agreement applies to the

20   particular dispute. Who decides that threshold arbitrability question? . . . The Act

21   allows parties to agree by contract that an arbitrator, rather than a court, will resolve

22   threshold arbitrability questions as well as underlying merits disputes.").

23        The delegation agreement does *not* waive the right to seek any particular

24   relief in arbitration. Indeed, the delegation clause here consists solely of the

25   following sentence (none of which plaintiffs even attempt to characterize as a

26   purported "waiver"):

27          The arbitrator, and not any federal, state or local court or agency, shall
           have exclusive authority to resolve all disputes arising out of or relating

28

to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.

ECF No. 21-2 at ¶ 14.6.[2]  Plaintiffs instead try to interject language from outside the delegation agreement to argue it waives the right to seek public injunctive relief.  Opp. at 11.  As courts have consistently held, however, the delegation provision constitutes a *separate* agreement—covering the limited issue of *who* will decide arbitrability disputes—and it cannot be challenged based on terms outside that specific provision.  *Rent-A-Ctr.*, 561 U.S. at 70-72 ("Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. . . . Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid "); *Brennan*, 796 F.3d at 1133 ("The arbitration clause at issue, as in *Rent–A–Center*, is the Delegation Provision . . . the only issue before this Court is *who*—an arbitrator or a judge—should decide the forum . . . and that question is resolved by determining the validity of the Delegation Provision alone.") (quotations, citations omitted, and emphasis in original).

Indeed, if plaintiffs were allowed to rely on purported waiver language outside the delegation agreement to avoid arbitrating issues of arbitrability, this would render meaningless the wall of authority holding that, "post-*McGill*, . . . where there is a delegation provision the public injunctive relief question is reserved to the arbitrator."  *See Moffett*, 2019 WL 6898955, at *7 (collecting cases).  Had the courts in those cases simply imputed the purported waiver language into the delegation agreements, as plaintiffs attempt here, the courts could have bypassed the delegation issue to address the *McGill* challenges.  Of course, that is not what happened, nor would it be consistent with Supreme Court authority requiring

---

[2]  This conclusion is further confirmed by the very next sentence, which refers to the provision as the "broad delegation of authority to the arbitrator[.]"  *Id.*

challenges *specific* to the delegation provision.  *E.g., Schein*, 139 S. Ct. at 530 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."); *Rent-A-Ctr.*, 561 U.S. at 70-72.

**Validity Question Have Been Delegated To The Arbitrator.**  Plaintiffs' last-ditch effort to avoid the express delegation agreements depends on a nonsensically over-narrow interpretation of the language: plaintiffs contend these provisions do not apply because this is purportedly a dispute about the "validity" of the arbitration agreement, and the delegation agreements apply only to issues of "enforceability," not "validity."  Opp. at 11-12.  But the question whether the agreements will be enforced necessitates a determination whether the agreements are valid.  *Dornaus v. Best Buy Co.*, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019) ("Given that the Agreement contains invalid terms under *McGill*, the court turns to their effect on the enforceability of the Agreement.").

In any event, plaintiffs conveniently ignore that the agreements also expressly state an arbitrator will resolve "any claim that all or any part of this Agreement is void or voidable."  ECF No. 21-2 at ¶ 14.6.  As plaintiffs concede, their *McGill* argument raises the question whether a provision in the agreement (or, in plaintiffs' view, the whole agreement) is "void."  Opp. at 12 ("the invalidation of the clause prohibiting a claim for public injunctive relief renders the entire arbitration clause void.").  This issue is expressly reserved for the arbitrator.

Moreover, even beyond the delegation language quoted above—which covers the dispute—the agreements also incorporate the JAMS rules, which courts have found separately constitutes the necessary "clear and unmistakable" intent to delegate issues of arbitrability.  *E.g. Amtax Holdings 463, LLC v. KDF Communities-Hallmark, LLC*, 2018 WL 4743386, at *5 (C.D. Cal. Jan. 9, 2018) ("[T]he incorporation of the JAMS rules constitutes 'clear and unmistakable' evidence of the parties' intent to delegate arbitrability to the arbitrator.").  The

1  JAMS rules provide the arbitrator, and not a court, shall resolve "disputes over the

2  formation, existence, **validity**, interpretation or scope of the agreement under which

3  Arbitration is sought[.]" JAMS Rule 11(b) (emphasis added). Thus, there can be no

4  doubt the validity of the arbitration agreements is an issue reserved for the arbitrator.

5  ## II.    SHOULD THE COURT REACH THE ISSUE, PLAINTIFFS'
        ARBITRATION AGREEMENTS DO NOT RUN AFOUL OF *MCGILL*
6

7      Because arbitrability disputes must be resolved by the arbitrator, the Court

8  need not reach plaintiffs' underlying challenge to the arbitration provisions. *Schein*,

9  139 S. Ct. at 530; *Rent-A-Ctr.*, 561 U.S. at 70-72. In any event, the agreements do

10 not effect any waiver of plaintiffs' right to seek public injunctive relief.

11     ***First***, plaintiffs make the perplexing argument that the class-action waiver

12 somehow amounts to a waiver of the right to public injunctive relief. Opp. at 2. But

13 nothing in this waiver of *group* claims prohibits any individual plaintiff from

14 seeking public injunctive relief. Indeed, courts have repeatedly recognized—

15 including the *McGill* court itself—that an action for public injunctive relief is an

16 **individual** (not a representative) action. *McGill*, 2 Cal. 5th at 959 ("[W]e also

17 conclude that a request for such [public injunctive] relief does not constitute the

18 pursuit of 'representative claims or relief on behalf of others'") (alterations

19 omitted). *See also Lee v. Postmates Inc.*, 2018 WL 4961802, at *9 (N.D. Cal. Oct.

20 15, 2018) ("The court [in *McGill*] noted that a request for public injunctive relief

21 does not require a claim to be brought as a class or representative action, but is

22 instead a remedy available to an individual private plaintiff[.]"); *Magana v.*

23 *DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018) ("Magana argues that

24 the Arbitration Agreement has a Class Action Waiver provision which states that 'an

25 arbitrator shall not have any authority to hear or arbitrate any class, collective or

26 representative action[.]' . . . But a claim for public injunctive relief is not a class,

27 collective, or representative action."). Thus, the class and representative action

28

REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

waiver in plaintiffs' agreements cannot be characterized as a waiver of the right to seek public injunctive relief.

**Second**, plaintiffs have not advanced any argument that the right to public injunctive relief is waived as a result of the language in the arbitration agreements that states the arbitrator may award "injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." *See, e.g., Abram v. C.R. England, Inc.*, 2020 WL 5077373, at *3 (C.D. Cal. June 23, 2020) ("Plaintiff has waived this argument because she failed to raise it in her Arbitration Opposition. In her Arbitration Opposition, Plaintiff exclusively focused on a **different** provision of the Arbitration Agreement (on a **different** page of the agreement)") (emphasis in original); *Brown v. DIRECTV, LLC*, 2019 WL 6604879, at *10 (C.D. Cal. Aug. 5, 2019) ("Plaintiff waived any defense to arbitration predicated on the *McGill* Rule by omitting it from her opposition to DIRECTV's motion.").

Although plaintiffs never frame their challenge to the arbitration agreements in these terms, to the extent plaintiffs pivot to contend this language effects a waiver of public injunctive relief, this argument fails on the law. The California Supreme Court in *McGill* recognized a claim for public injunctive relief is an **individual** claim. *McGill*, 2 Cal. 5th at 959. Thus, under these agreements, an arbitrator's award of injunctive relief "in favor of the individual party seeking relief" could include public injunctive relief to the extent warranted by that individual's claim.[3] This interpretation is further bolstered by the express statement in the

---

[3] This language stands in contrast, for example, to the provision in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), on which plaintiffs rely, which prohibited the arbitrator from awarding "relief that would **affect RAC account holders other than you**." *Id.* at 831 (emphasis added). Here, the agreements' statement the arbitrator may award injunctive relief "only in favor of the individual party seeking relief" and to the "extent necessary to provide relief warranted by that individual party's claim" would not prohibit relief that *affects* others, as in *Blair*, because, as explained, "public injunctive relief" is a remedy available to an individual for an individual claim. *Compare also McGill*, 2 Cal. 5th at 952, 956
(footnote continued)

1   agreements that the "arbitrator shall be empowered to grant ***whatever relief would***
2   ***be available in a court under law or in equity***." ECF No. 21-2 at ¶ 14.6 (emphasis
3   added). To the extent there is any ambiguity or doubt as to whether the arbitrator
4   has authority to grant such relief (there is not), these must be resolved in favor of
5   arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1,
6   24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be
7   resolved in favor of arbitration").

8       ***Third,*** even if the agreements did prohibit public injunctive relief (they do
9   not), plaintiffs here do not seek such relief, and *McGill* is thus inapplicable. *See,*
10  *e.g., Sponheim v. Citibank, N.A.*, 2019 WL 2498938 at *5 (C.D. Cal. June 10, 2019)
11  ("[T]he Court finds that Sponheim does not seek public injunctive relief . . .
12  Accordingly, *McGill* does not invalidate the Arbitration Provision[.]"); *Johnson v.*
13  *JP Morgan Chase Bank, N.A.*, 2018 WL 4726042 at *6-8 (C.D. Cal. Sept. 18, 2018)
14  (same); *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580 at *9-10 (C.D. Cal. June
15  1, 2017) (same). Rather, plaintiffs' claims are asserted on behalf of a class of
16  persons "who ***purchased*** a printer from Epson," and plaintiffs rely on purported
17  misrepresentations in their individual software license agreements and firmware
18  updates—not broad advertising geared toward the general public. ECF No. 1 at ¶¶
19  1, 5, 38, 40 122 (emphasis added). Where, as here, plaintiffs "[m]erely request[]

20  ───────────────
21  ("The arbitrator will not award relief for or against anyone who is not a party," and
    the parties also had the "shared view" the language precluded plaintiff "from
    seeking public injunctive relief . . . in any forum."); *McArdle v. AT&T Mobility*
22  *LLC*, 2017 WL 4354998, at *4 (N.D. Cal. Oct. 2, 2017), *aff'd*, 772 F. App'x 575 (9th
    Cir. 2019) (unlike here, in *McCardle* there was no dispute whether the agreement
23  purported to waive the right to public injunctive relief, and instead "[t]he parties
    agree[d] that the [challenged language] purports to waive the arbitrator's ability to
24  award public injunctive relief."); *Lotsoff v. Wells Fargo Bank, N.A.*, 2019 WL
    4747667, at *2 (S.D. Cal. Sept. 30, 2019) (agreement stated "[N]either Wells Fargo
25  nor you will be entitled . . . to act in any arbitration ***in the interests of the general***
    ***public***") (emphasis added); *Cottrell v. AT&T Inc.*, 2020 WL 2747774, at *5 (N.D.
26  Cal. May 27, 2020) (unlike here, the parties did not dispute whether the agreement
    waived the right to public injunctive relief, and instead "agree[d] in their arguments
27  . . . the agreement is intended to prevent the award of such [public injunctive] relief
    altogether.").
28

relief which would generally enjoin a defendant from wrongdoing [this] does not elevate requests for injunctive relief to requests for <u>public</u> injunctive relief." *Johnson*, 2018 WL 4726042 at *6 ("[T]he relief sought is actually intended to redress and prevent further injury to a group of plaintiffs who have already been injured . . . the individuals who stand to benefit are still an inherently circumscribed group. Because Plaintiffs' claims center on breaches of contract, only individuals who enter into contractual relationships with JPMorgan can benefit from this ruling.").[4]

## III. ANY ARGUABLE *MCGILL* ISSUE COULD BE APPROPRIATELY ADDRESSED BY SEVERING AND STAYING THE PUBLIC INJUNCTIVE RELIEF CLAIM

The arbitration agreements here expressly provide that "[i]f any provision in this Section 14 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect." ECF No. 21-2 at ¶ 14.9. Courts addressing such language have severed and stayed claims for public injunctive relief even where an impermissible *McGill* waiver was found. *See, e.g., Dornaus*, 2019 WL 632957 at *6 ("While the remainder of plaintiff's action must be compelled to arbitration under the terms of the Agreement—including all questions of liability—the court shall retain jurisdiction over the adjudication of plaintiff's request for public injunctive relief . . . this action is STAYED in its entirety until such arbitration has been had in accordance with the terms of the agreement.").

---

[4]     Plaintiffs argue whether they seek public injunctive relief is irrelevant to whether *McGill* will allow them to avoid their agreements to arbitrate. Opp. at 6-7. As demonstrated by *Sponheim*, *Johnson* and *Wright*, *supra*, this is wrong. Plaintiffs' argument instead hinges on a misreading of *McGovern v. U.S. Bank N.A.*, 2020 WL 4582687, at *2 n. 1 (S.D. Cal. Aug. 10, 2020) (contrary to plaintiff's assertion, this is not a Ninth Circuit case). In *McGovern*, the arbitration agreement had a particular contractual provision that "render[ed] the entire arbitration provision null and void" in the event any part was determined to be unenforceable. *Id.* It was for that reason the court held the relief sought was not relevant, not because that inquiry is never relevant under *McGill*. As explained further below, plaintiffs' arbitration agreements here have no such "poison pill" as it relates to the purported waiver of
(footnote continued)

Plaintiffs contend the agreements include a "poison pill" that renders the entire arbitration agreement invalid if the class action waiver in the agreements is determined to be invalid.  *See* ECF No. 21-2 at ¶ 14.9 ("The foregoing shall not apply to the prohibition against class or representative actions as provided in Section 14.5.  This means that if Section 14.5 is found to be unenforceable, the entire Section 14 (but only Section 14) shall be null and void.").  However, as explained above, it is well established that nothing in Section 14.5—the class and representative action waiver—could constitute a waiver of "public injunctive" relief under *McGill*, as such actions for "public injunctive" relief are *individual* actions.  Accordingly, a determination the agreement somehow waives the right to "public injunctive" relief would *not* be a determination that Section 14.5 is unenforceable.  Thus, the "poison pill" is inapplicable and instead, as in *Dornaus*, the express severability provision mandates enforcement of the remainder of the agreement.  *See also Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) ("In the event that the arbitrator concludes that Corinthian has violated the UCL, FAL, or CLRA, and that entry of an injunction might be appropriate, but further determines that it lacks the authority under the agreements at issue to grant the requested injunction, Plaintiffs may seek the requested injunction in court.").

DATED:  September 15, 2020          QUINN EMANUEL URQUHART & SULLIVAN. LLP


By  ____/s/ Shon Morgan_____
    Shon Morgan
    Attorneys for Defendant Epson America, Inc.

_____
public injunctive relief, and *McGovern* is thus inapplicable.

# EXHIBIT D

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant Epson America,
Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated, | CASE No. 2:20-cv-04400-CBM-GJS |
|---|---|
| Plaintiffs, | **JOINT STATUS REPORT** |
| vs. | |
| EPSON AMERICA, INC., | |
| Defendant. | |

### JOINT STATUS REPORT

The parties, Defendant Epson America, Inc. ("Epson") and Plaintiff William Mondigo, file this joint status report pursuant to the Court's September 6, 2022 Order (ECF No. 47).

Plaintiffs Rabinovich, Famiglietti, Gordon, Szot, Dignard and Kovach submitted demands for arbitration against Epson, and the parties agreed to first raise in arbitration the threshold issue of whether Plaintiffs' claims for public injunctive relief should be returned to this Court prior to any proceedings on the merits. This issue has been fully briefed in each of the arbitrations.

The arbitrators in the Szot and Famiglietti arbitrations issued tentative rulings determining the merits of those plaintiff's claims must be resolved in arbitration. In the interim, the parties have agreed to a stay of each of the arbitrations to allow the parties to discuss potential resolutions of these matters. The parties' discussions are ongoing.

DATED:  November 1, 2022          QUINN EMANUEL URQUHART & SULLIVAN. LLP


By_____*/s/ John W. Baumann*_____
    John W. Baumann
    Attorneys for Defendant Epson America, Inc.

DATED:  November 1, 2022          CARLSON LYNCH LLP


By_____*/s/ Edwin J. Kilpela (with permission)*_____
    Edwin J. Kilpela (*pro hac vice*)
    Attorneys for Plaintiffs

-1-          Case No.   2:20-cv-4400-CBM-GJS

# EXHIBIT E

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendant Epson America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GALGON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EPSON AMERICA, INC.,<br><br>Defendant. | CASE No. 2:21-cv-01794-CBM-MRW<br><br>**DEFENDANT EPSON AMERICA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;**<br><br>**DECLARATION OF SIRANUSH ARABIAN;**<br><br>**[PROPOSED] ORDER**<br><br>Date:        April 20, 2021<br>Time:        10:00 a.m.<br>Judge:      Hon. Consuelo B. Marshall<br>Courtroom:  8B |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 20, 2021 at 10:00 a.m., or as soon thereafter as counsel may be heard, defendant Epson America, Inc. ("Epson"), by and through its attorneys and pursuant to 9 U.S.C. § 4, hereby moves to compel arbitration of plaintiff's claims, stay proceedings pending resolution of any arbitration, and stay proceedings pending a decision on this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 15, 2021.

This motion is made on the grounds that plaintiff agreed to arbitrate his claims against Epson on a non-class basis and further agreed any disputes concerning the arbitrability of his claims must be submitted to the arbitrator for resolution. This motion is based upon this Notice, the following memorandum of points and authorities, the Declaration of Siranush Arabian ("Arabian Decl.") and exhibits thereto, the pleadings and records on file herein, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

DATED:  March 22, 2021          QUINN EMANUEL URQUHART &
                                SULLIVAN. LLP


                                By  /s/ Shon Morgan
                                    Shon Morgan
                                    Attorneys for Defendant Epson America,
                                    Inc.

1

2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................... 1

BACKGROUND .............................................................................................. 1

I. THE COURT'S ORDER COMPELLING ARBITRATION IN
*MONDIGO* ............................................................................................ 1

II. PLAINTIFF'S ARBITRATION AGREEMENTS ............................................ 2

LEGAL STANDARD ...................................................................................... 6

ARGUMENT .................................................................................................. 7

III. ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY
AN ARBITRATOR .................................................................................... 7

IV. THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFF
ENTERED INTO VALID ARBITRATION AGREEMENTS THAT
CLEARLY COVER THE CLAIMS AT ISSUE ........................................... 9

V. THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION
MAY NOT PROCEED ON A CLASS BASIS............................................ 11

VI. PLAINTIFF'S CLAIMS SHOULD BE STAYED PENDING
RESOLUTION OF ANY ARBITRATION, AND THIS ACTION
SHOULD BE STAYED PENDING A RULING ON THIS MOTION ........ 12

CONCLUSION............................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
  2014 WL 12610227 (N.D. Cal. Oct. 31, 2014)............................................10

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ...................................................................................6

*Bitstamp Ltd. v. Ripple Labs Inc.*,
  2015 WL 4692418 (N.D. Cal. Aug. 6, 2015)................................................8

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ....................................................................6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ....................................................................9

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ..............................................................................11

*Hamoudeh v. Unitedhealth Grp. Inc.*,
  2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016)....................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) .................................................................................7

*Hotel Greystone Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*,
  897 F. Supp. 168 (S.D.N.Y. 1995)..............................................................12

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .....................................................................................7

*In re Holl*,
  925 F.3d 1076 (9th Cir. 2019) ....................................................................9

*Jialu Wu v. iTalk Glob. Commc'ns, Inc.*,
  2020 WL 8461696 (C.D. Cal. Oct. 21, 2020) ............................................10

*Kim v. Tinder, Inc.*,
  2018 WL 6694923 (C.D. Cal. July 12, 2018) ..............................................6

*Lakhan v. U.S. Sec. Assocs., Inc.*,
  2019 WL 175043 (C.D. Cal. Jan. 11, 2019) ................................................8

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ..............................................................................11

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
  2017 WL 2727874 (N.D. Cal. Feb. 14, 2017)..............................................12

*Mendoza v. Uber Techs. Inc.*,
  2020 WL 2563047 (C.D. Cal. May 4, 2020) ................................................ 12

*Mondigo v. Epson America, Inc.*,
  Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.) at ECF No. 32 ..... 1, 2, 7, 8, 9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) .................................................................................... 6, 10

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
  388 U.S. 395 (1967) ........................................................................................ 7

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ..................................................................................... 7, 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ...................................................................................... 11

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ................................................................. 10

## <u>Statutory Authorities</u>

9 U.S.C. § 1 ........................................................................................................ 6

9 U.S.C. §§ 1-16 ................................................................................................. 6

9 U.S.C. § 2 ........................................................................................................ 6

9 U.S.C. § 3 .................................................................................................... 7, 12

Cal. Bus. & Prof. Code § 17200 ......................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

This dispute does not belong in court. Indeed, this Court recently compelled to arbitration a nearly identical putative class action based on the exact same arbitration agreement to which plaintiff here agreed. *Mondigo v. Epson America, Inc.*, Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.) at ECF No. 32. There is no reason the result should differ in this copycat case.

Here, as in *Mondigo*, plaintiff expressly agreed to arbitrate any grievances related to the printer he purchased from Epson and the software used in that printer. The terms of his arbitration agreement are conspicuous, fair, and reached through a process and on substantive terms that courts have consistently held must be enforced to effectuate the purposes of the Federal Arbitration Act. Plaintiff's arbitration agreement also expresses a clear and unmistakable intent to commit issues of arbitrability to the arbitrator. Thus, as in *Mondigo*, to the extent plaintiff contends his claims are not subject to the arbitration agreements for any reason, this issue must be decided in arbitration. Accordingly, the Court should compel arbitration of plaintiff's claims and stay proceedings pending resolution of any arbitration.

Additionally, because this Court is not the proper forum for plaintiff's claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration.

## BACKGROUND

## I. THE COURT'S ORDER COMPELLING ARBITRATION IN *MONDIGO*

On May 15, 2020, plaintiffs William Mondigo, Martin Dignard, Richard Famiglietti, Michael Kovach, Felix Rabinovich, Jesse Gordon, and Gregory Szot filed a putative class action complaint against Epson, which was assigned to this Court. *Mondigo v. Epson America, Inc.*, Case No. 2:20-cv-04400-CBM-GJS (C.D.

Cal.).  There, as here, plaintiffs alleged third-party ink stopped functioning in their printers as a result of Epson's software updates and, based on these allegations, asserted class claims under the Computer Fraud and Abuse Act ("CFAA"); California Business & Professions Code § 17200 ("UCL"); and a common law theory of unjust enrichment.  *Id.* at ECF No. 1.

Epson promptly moved to compel arbitration.  *Id.* at ECF No. 21.  Like plaintiff here, each plaintiff in *Mondigo* had agreed—both at the time they originally set up their printers and again upon updating their software—to arbitrate "all disputes" with Epson on an individual basis.  *Id.*

On October 13, 2020, this Court granted Epson's motion and stayed the proceedings pending the completion of any arbitration.  *Id.* at ECF No. 32.  This Court determined plaintiffs had "each agreed to the software license agreement" at the time they first set up their Epson printers and "entered into another arbitration agreement when they installed the software updates which are the subject of the Complaint."  *Id.* at 3.  This Court further found "the delegation clause in the software license agreement and Updater EULA 'clearly and unmistakably' indicates the parties' intent for the arbitrator to decide the issue of arbitrability."  *Id.* at 5.  Accordingly, this Court rejected plaintiffs' attempts to upend the arbitration agreements and instead determined it "must enforce the agreements according to their terms and compel the issue of arbitrability of Plaintiffs' claims to arbitration."  *Id.* at 6-7.

## II.  PLAINTIFF'S ARBITRATION AGREEMENTS

Plaintiff here followed the exact same steps to agree to the exact same arbitration agreements that were the subject of this Court's order compelling arbitration in *Mondigo*.

Plaintiff alleges he purchased an Epson XP-640 printer on January 25, 2018 and subsequently began using this printer.  ECF No. 1 at ¶¶ 37, 40.  To set up and begin using his printer, plaintiff was required to view Epson's software license—this

license was automatically displayed for the user to see as part of the setup process. Declaration of Siranush Arabian at ¶ 4. Plaintiff was then required to click a bubble that appeared immediately below the displayed software license (just beneath the text of the license) to signify his agreement to the terms of the software license. *Id.*

Among the terms in the software license to which plaintiff agreed is an arbitration agreement—indeed, the very first paragraph of the license agreement calls attention to this in capitalized, oversized font that notifies the user "IF YOU ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES." Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14.

Additionally, plaintiff reaffirmed his agreement to arbitrate disputes with Epson at the time he installed the software updates that are the subject of his complaint. Arabian Decl. at ¶¶ 4-5, Ex. 2; ECF No. 1 at ¶ 31 (conceding plaintiff "authorized" the update). To install the update, plaintiff was required to view the Epson End User Software License Agreement ("Updater EULA"), which was automatically displayed for plaintiff to see, and plaintiff was once again required to click to signify his agreement. Arabian Decl. at ¶ 7. The arbitration agreement in the Updater EULA is substantively identical to the arbitration agreement in plaintiff's software license. *Compare* Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14 (software license), *with* ¶ 5, Ex. 2 at ¶ 22 (Updater EULA).

**<u>Prominent Headings and Clear Terms.</u>** Plaintiff's arbitration agreements begin with a prominent heading in capitalized, bolded font identifying the separate agreement to arbitrate and explain in simple terms the arbitration process and how it differs from a trial in court:

**DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**
…
You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.**

Arabian Decl. at ¶¶ 3, 5, Exs. 1-2 at ¶ 14.2 (software license) & 2 at ¶ 22.2 (Updater EULA) (emphasis in original).

**Class Action Waiver.** Plaintiff's arbitration agreements also explicitly set forth the rights plaintiff waived by agreeing to arbitrate, and contain a separate section in bold, capitalized font notifying plaintiff of his agreements to waive the right to serve "**AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING**[.]" Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA) (emphasis in original).

**Broad Scope.** Plaintiff's arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).[1]

**Delegation of Arbitrability Disputes.** Plaintiff's arbitration agreements also contain a clear expression of intent to delegate issues of arbitrability to the

arbitrator.  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").

**Arbitration Before JAMS And Payment Of Fees**.  Plaintiff's arbitration agreements require arbitration before JAMS, pursuant to the rules of JAMS in effect at the time the arbitration is filed, and broadly empower the arbitrator "to grant whatever relief would be available in a court under law or in equity."  *See* Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA). The agreements further provide that "Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement."  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6(c) (software license) & 2 at ¶ 22.6(c) (Updater EULA).

**Broad Right To Opt Out**.  Finally, the agreements allowed plaintiff to opt out within thirty days of his assent to the agreements by sending a letter to "Epson America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach, CA 90806."  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.7 (software license) & 2 at ¶ 22.7 (Updater EULA).  Despite having this option, plaintiff chose not to opt out of his arbitration agreements.  Arabian Decl. at ¶ 8.

---

[1]  The arbitration agreements contain a limited carve out—not applicable here—for "a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation," which are required to be heard in court.  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).

## **LEGAL STANDARD**

The FAA governs the enforcement of arbitration clauses in commercial contracts.[2] 9 U.S.C. §§ 1-16.  Section 2 of the FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ."  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability."  *Id.* at 24-25.  "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation, citation and alterations omitted).

---

[2]    The FAA applies where, as here, the arbitration agreement appears in a contract involving interstate commerce.  *See* 9 U.S.C § 1; ECF No. 1 at ¶ 15 (recognizing the parties are diverse for purposes of CAFA jurisdiction).  Further, plaintiffs' arbitration agreements contain an explicit FAA choice-of-law clause.  *See* Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.2 (software license) & 2 at ¶ 22.2 (Updater EULA) ("You and Epson understand and agree that . . . the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 14").  "An FAA choice-of-law provision in an arbitration agreement is enforceable."  *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31 (9th Cir. 2015)).

Pursuant to Section 3 of the FAA, if a suit is brought in court:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Once a court determines a claim is subject to arbitration, it lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967).

## ARGUMENT

## III.   ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR

The Supreme Court has recognized "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. If the parties have "clearly and unmistakably" agreed that questions of arbitrability must be decided by the arbitrator, such provisions must be enforced. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted). As the United States Supreme Court recently held, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Rather, "[i]n those circumstances, a court possesses no power to decide the arbitrability issue." *Id.*

This was the basis on which plaintiffs' claims were compelled to arbitration in *Mondigo* and it applies equally here. As this Court determined in *Mondigo*, "the

delegation clause in the software license agreement and Updater EULA 'clearly and unmistakably' indicates the parties' intent for the arbitrator to decide the issue of arbitrability." *Mondigo*, Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.), ECF No. 32 at 5. *See also* Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").[3]

Consistent with this Court's decision in *Mondigo*, other courts have likewise held the language contained in plaintiff's arbitration agreements evinces such an intent. *See, e.g., Rent-A-Ctr.*, 561 U.S. at 66 (delegation provision stated "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *Lakhan v. U.S. Sec. Assocs., Inc.*, 2019 WL 175043, at *6 (C.D. Cal. Jan. 11, 2019) (holding agreement that required an arbitrator to "resolve any issue relating to the interpretation, formation or enforceability of this Agreement, or any issue relating to whether a Claim is subject to arbitration under this Agreement" was "similar to others that courts in this District have determined clearly and unmistakably provide for threshold issues of arbitrability to be determined by an arbitrator.") (citation omitted).

---

[3] In addition to the explicit delegation agreements, plaintiffs' agreements also incorporate the JAMS rules, which separately evinces the "clear and unmistakable" intent to commit arbitrability issues to the arbitrator. Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at 22.6 (Updater EULA) (arbitration to be conducted under JAMS rules); *Bitstamp Ltd. v. Ripple Labs Inc.*, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (holding that incorporation of the JAMS rules "overcame the default rule and assigned the arbitrability question to the arbitrator.").

Because plaintiff "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, to the extent he challenges the interpretation, applicability, or enforceability of his agreements, those issues must be decided by the arbitrator.

## IV. THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFF ENTERED INTO VALID ARBITRATION AGREEMENTS THAT CLEARLY COVER THE CLAIMS AT ISSUE

Because disputes regarding the scope and validity of the arbitration agreements are reserved for the arbitrator, the Court need not address these issues. However, if the Court were to reach these issues, they too mandate this dispute be sent to arbitration. Under the FAA, arbitration must be compelled where, as in this case: (1) a valid agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, both conditions are met and arbitration is required.

As discussed, to set up and begin using his printer, plaintiff was required to view and provide his affirmative consent to Epson's software license. Arabian Decl. at ¶ 4. Additionally, plaintiff reaffirmed his agreement to arbitrate when he was presented with the Updater EULA at the time of the software update and once again affirmatively assented to the terms. Arabian Decl. at ¶ 7; ECF No. 1 at ¶ 31 (conceding he "authorized" the update). As this Court determined in *Mondigo* based on this same process, there can be no "dispute [plaintiff] entered into the software license agreement and/or the Updater EULA[.]" *See Mondigo*, Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.), ECF No. 32 at 5.[4] Indeed, "[f]ederal courts . . . have recognized the general enforceability of . . . online agreements that require affirmative user assent." *In re Holl*, 925 F.3d 1076, 1085 (9th Cir. 2019). *See also*

---

[4] In fact, the plaintiffs in *Mondigo* did not even attempt to dispute this issue. *Id.*

*Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) ("The notices on Amazon's checkout and account registration pages, which alerted Wiseley that clicking the corresponding action button constituted agreement to the hyperlinked [Conditions of Use], were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms."); *Jialu Wu v. iTalk Glob. Commc'ns, Inc.*, 2020 WL 8461696, at *3 (C.D. Cal. Oct. 21, 2020) ("Plaintiff clearly assented to the Agreement. . . . Because Plaintiff could not have purchased the relevant services unless he clicked the box that said he agreed to the Agreement, he assented to it.").

Further, there can be no dispute plaintiff's arbitration agreements cover the claims at issue here. Plaintiff's arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA). Courts analyzing arbitration agreements with similar language have held it must be interpreted broadly. *See, e.g., Amirhamzeh v. Wells Fargo Bank, N.A.*, 2014 WL 12610227, at *1 (N.D. Cal. Oct. 31, 2014) ("The arbitration agreement has an extremely broad scope; it provides that 'any dispute' between the parties is subject to arbitration."). While plaintiff's claims clearly fall within the scope of his agreements, to the extent there is any question, all "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24-25.

## V.  THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS

Because disputes regarding the interpretation of the arbitration agreements are reserved for the arbitrator, the Court need not determine whether class arbitration is permitted. *See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-85 (2010) (arbitrator made initial determination whether class arbitration was permitted under the parties' agreement).

But again, this is an issue the agreements unambiguously and enforceably resolve. Plaintiff's agreements clearly prohibit class claims. Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA). In *Stolt-Nielsen*, the Supreme Court held "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U.S. at 684 (emphasis in original). The Supreme Court has consistently enforced this precedent and has repeatedly upheld class waivers in arbitration agreements. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.").

The arbitration agreements here are clear and expressly state the parties' intentions that arbitration may not proceed on a class basis. Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA). "[C]ourts and arbitrators must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen*, 559 U.S. at 682 (internal quotations omitted). Thus, arbitration may not proceed on a class basis.

## VI.   PLAINTIFF'S CLAIMS SHOULD BE STAYED PENDING RESOLUTION OF ANY ARBITRATION, AND THIS ACTION SHOULD BE STAYED PENDING A RULING ON THIS MOTION

Under the FAA, an action compelled to arbitration shall be stayed by the district court pending resolution of the arbitration.  9 U.S.C. § 3.  *See also Mendoza v. Uber Techs. Inc.*, 2020 WL 2563047, at *2 (C.D. Cal. May 4, 2020) ("This action is STAYED pending resolution of the arbitration proceedings. The Clerk is directed to administratively close the case.").

Additionally, because this Court is not the proper forum for plaintiff's claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration.  Plaintiff should not be permitted to ignore his arbitration agreements, file a lawsuit in federal court, and force Epson to participate in litigation in violation of the terms of the parties' agreements.  For this reason, courts routinely stay proceedings pending the resolution of a motion to compel arbitration.  *See, e.g., Mahamedi IP Law, LLP v. Paradice & Li, LLP*, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (granting "motion to stay discovery until the Court rules on [the] motion to compel arbitration."); *Hotel Greystone Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 897 F. Supp. 168, 170 (S.D.N.Y. 1995) ("[P]etitioner's motion for a preliminary stay pending resolution of the petition for a stay of arbitration and respondent's cross-motion to compel is granted."); *Hamoudeh v. Unitedhealth Grp. Inc.*, 2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016) (granting "motion to stay this action pending resolution of UnitedHealth's motion to compel arbitration of Plaintiffs' claims.").

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's claims should be compelled to arbitration and, to the extent plaintiff raises any defenses to arbitration of his claims, those disputes must be resolved by the arbitrator.  The action should be stayed

1  pending resolution of the arbitration and, in the interim, stayed pending resolution of

2  this motion.

3  DATED: March 22, 2021          QUINN EMANUEL URQUHART &
                                  SULLIVAN. LLP
4

5
                                  By      /s/ Shon Morgan
6                                        Shon Morgan
                                         Attorneys for Defendant Epson America,
7                                        Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

**Schlow, Alexander F.**

| | |
|---|---|
| **From:** | Jack Baumann <jackbaumann@quinnemanuel.com> |
| **Sent:** | Wednesday, March 29, 2023 7:05 PM |
| **To:** | Heitmann, Brandon; Sarah Nevins |
| **Cc:** | Gardner, Jonathan; Shon Morgan; Waisnor, Jonathan; Schlow, Alexander F. |
| **Subject:** | RE: [EXTERNAL]RE: Arbitration Proceedings |
| **Attachments:** | 2023.3.29 Epson Response to JAMS.pdf |

> This sender is trusted. This message was sent from outside your organization.

Ms. Nevins,

Please see the attached correspondence.  Thank you.

Best,

**Jack Baumann**
*Partner*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3169 Office
310-245-9886 Cell
213-443-3100 Fax
jackbaumann@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Jack Baumann
**Sent:** Thursday, March 23, 2023 8:37 AM
**To:** Heitmann, Brandon <BHeitmann@labaton.com>; Sarah Nevins <snevins@jamsadr.com>
**Cc:** Gardner, Jonathan <JGardner@labaton.com>; Shon Morgan <shonmorgan@quinnemanuel.com>; Waisnor, Jonathan <JWaisnor@labaton.com>; Schlow, Alexander F. <ASchlow@labaton.com>
**Subject:** RE: [EXTERNAL]RE: Arbitration Proceedings

Ms. Nevins,

Epson intends to respond to claimants' letter by March 29.  Thank you.

Best,

**Jack Baumann**
*Partner*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3169 Office
310-245-9886 Cell
213-443-3100 Fax
jackbaumann@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Heitmann, Brandon <[BHeitmann@labaton.com](mailto:BHeitmann@labaton.com)>
**Sent:** Wednesday, March 22, 2023 11:46 AM
**To:** Sarah Nevins <[snevins@jamsadr.com](mailto:snevins@jamsadr.com)>
**Cc:** Gardner, Jonathan <[JGardner@labaton.com](mailto:JGardner@labaton.com)>; Shon Morgan <[shonmorgan@quinnemanuel.com](mailto:shonmorgan@quinnemanuel.com)>; Jack Baumann <[jackbaumann@quinnemanuel.com](mailto:jackbaumann@quinnemanuel.com)>; Waisnor, Jonathan <[JWaisnor@labaton.com](mailto:JWaisnor@labaton.com)>; Schlow, Alexander F. <[ASchlow@labaton.com](mailto:ASchlow@labaton.com)>
**Subject:** RE: [EXTERNAL]RE: Arbitration Proceedings

<mark>**[EXTERNAL EMAIL from [bheitmann@labaton.com](mailto:bheitmann@labaton.com)]**</mark>

Sarah,

Please see attached for Claimants' response letter. In addition, we are attaching two excel files with the two groups of claimants referenced in Epson's letter to assist JAMS in issuing invoices. Please let us know if you need anything else.

**From:** Sarah Nevins <[snevins@jamsadr.com](mailto:snevins@jamsadr.com)>
**Sent:** Tuesday, March 21, 2023 1:23 PM
**To:** Waisnor, Jonathan <[JWaisnor@labaton.com](mailto:JWaisnor@labaton.com)>; 'Jack Baumann' <[jackbaumann@quinnemanuel.com](mailto:jackbaumann@quinnemanuel.com)>; Heitmann, Brandon <[BHeitmann@labaton.com](mailto:BHeitmann@labaton.com)>
**Cc:** Gardner, Jonathan <[JGardner@labaton.com](mailto:JGardner@labaton.com)>; Shon Morgan <[shonmorgan@quinnemanuel.com](mailto:shonmorgan@quinnemanuel.com)>
**Subject:** RE: [EXTERNAL]RE: Arbitration Proceedings

Thank you for letting me know.

Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS** - *Local Solutions. Global Reach.*™
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access.**
Follow us on **LinkedIn** and **Twitter**.

**From:** Waisnor, Jonathan <[JWaisnor@labaton.com](mailto:JWaisnor@labaton.com)>
**Sent:** Tuesday, March 21, 2023 12:55 PM
**To:** 'Jack Baumann' <[jackbaumann@quinnemanuel.com](mailto:jackbaumann@quinnemanuel.com)>; Sarah Nevins <[snevins@jamsadr.com](mailto:snevins@jamsadr.com)>; Heitmann, Brandon <[BHeitmann@labaton.com](mailto:BHeitmann@labaton.com)>
**Cc:** Gardner, Jonathan <[JGardner@labaton.com](mailto:JGardner@labaton.com)>; Shon Morgan <[shonmorgan@quinnemanuel.com](mailto:shonmorgan@quinnemanuel.com)>
**Subject:** Re: [EXTERNAL]RE: Arbitration Proceedings

**Caution:** This email originated from outside JAMS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello Sarah,

Just wanted to give you an update you on this.  Claimants need another day to respond, we will send you our response letter tomorrow.  We appreciate your patience.

---

**From:** Waisnor, Jonathan
**Sent:** Tuesday, March 14, 2023 10:51 AM
**To:** 'Jack Baumann' <jackbaumann@quinnemanuel.com>; Sarah Nevins <snevins@jamsadr.com>; Heitmann, Brandon <BHeitmann@labaton.com>
**Cc:** Gardner, Jonathan <JGardner@labaton.com>; Shon Morgan <shonmorgan@quinnemanuel.com>
**Subject:** RE: [EXTERNAL]RE: Arbitration Proceedings

Hi Sarah,

We are in receipt of Epson's letter and plan to respond substantively by March 21.  We would request no action be taken until JAMS has had time to consider our response. Thank you.

---

**From:** Jack Baumann <jackbaumann@quinnemanuel.com>
**Sent:** Monday, March 13, 2023 8:55 PM
**To:** Sarah Nevins <snevins@jamsadr.com>; Heitmann, Brandon <BHeitmann@labaton.com>
**Cc:** Waisnor, Jonathan <JWaisnor@labaton.com>; Gardner, Jonathan <JGardner@labaton.com>; Shon Morgan <shonmorgan@quinnemanuel.com>
**Subject:** RE: [EXTERNAL]RE: Arbitration Proceedings

Ms. Nevins,

Please see the attached correspondence.  Thank you.

Best,

**Jack Baumann**
*Partner*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3169 Office
310-245-9886 Cell
213-443-3100 Fax
jackbaumann@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Jack Baumann
**Sent:** Wednesday, March 8, 2023 2:29 PM
**To:** Sarah Nevins <snevins@jamsadr.com>; Heitmann, Brandon <BHeitmann@labaton.com>
**Cc:** Waisnor, Jonathan <JWaisnor@labaton.com>; Gardner, Jonathan <JGardner@labaton.com>; Shon Morgan

<shonmorgan@quinnemanuel.com>
**Subject:** RE: [EXTERNAL]RE: Arbitration Proceedings

Ms. Nevins,

Epson is evaluating information related to the 3,994 claims submitted Monday afternoon.  Given the number of claimants, Epson plans to respond Monday, March 13.  Thank you.

Best,

**Jack Baumann**
*Partner*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3169 Office
310-245-9886 Cell
213-443-3100 Fax
jackbaumann@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Sarah Nevins <snevins@jamsadr.com>
**Sent:** Wednesday, March 8, 2023 5:15 AM
**To:** Heitmann, Brandon <BHeitmann@labaton.com>
**Cc:** Waisnor, Jonathan <JWaisnor@labaton.com>; Gardner, Jonathan <JGardner@labaton.com>; Jack Baumann <jackbaumann@quinnemanuel.com>; Shon Morgan <shonmorgan@quinnemanuel.com>
**Subject:** RE: [EXTERNAL]RE: Arbitration Proceedings

**[EXTERNAL EMAIL from snevins@jamsadr.com]**

Thank you.

Does Respondent with to respond?  If so, by when?  Please advise.

Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

*JAMS - Local Solutions. Global Reach.™*
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access.**
Follow us on **LinkedIn** and **Twitter**.

**From:** Heitmann, Brandon <BHeitmann@labaton.com>
**Sent:** Tuesday, March 7, 2023 6:02 PM
**To:** Sarah Nevins <snevins@jamsadr.com>
**Cc:** Waisnor, Jonathan <JWaisnor@labaton.com>; Gardner, Jonathan <JGardner@labaton.com>; Jack Baumann <jackbaumann@quinnemanuel.com>; Shon Morgan <shonmorgan@quinnemanuel.com>
**Subject:** Re: [EXTERNAL]RE: Arbitration Proceedings

**Caution:** This email originated from outside JAMS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Sarah,

Thank you. Pursuant to Section 14.6(c) of the operative terms, Epson has agreed to pay all JAMS filing and arbitrator fees. Accordingly, we request that JAMS invoice Epson for the filing fees. If Epson has an alternative position, we ask that their counsel let us know what their position is.

> On Mar 7, 2023, at 12:13 PM, Sarah Nevins <snevins@jamsadr.com> wrote:
>
>
> Thank you.  Confirming receipt.
>
> Do you wish to pay the $250 non-refundable filing fee for all of these claims, or handle them in rounds?  Please advise.
>
> Sarah
>
>
> <image001.jpg>
>
> **Sarah Nevins**
> Arbitration Practice Manager – East/Central
>
> **JAMS - *Local Solutions. Global Reach.*** ™
> P: 313.209.8851
> **www.jamsadr.com**
>
> Manage your case anytime, anywhere.
> **Register now for JAMS Access**.
> Follow us on **LinkedIn** and **Twitter**.

**From:** Heitmann, Brandon <BHeitmann@labaton.com>
**Sent:** Monday, March 6, 2023 5:22 PM
**To:** Sarah Nevins <snevins@jamsadr.com>
**Cc:** Waisnor, Jonathan <JWaisnor@labaton.com>; Gardner, Jonathan <JGardner@labaton.com>; Jack Baumann <jackbaumann@quinnemanuel.com>; Shon Morgan <shonmorgan@quinnemanuel.com>
**Subject:** Arbitration Proceedings

**Caution:** This email originated from outside JAMS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Nevins,

This firm represents the 3,994 claimants asserting claims against Epson America, Inc. We write to provide JAMS with the materials necessary to commence arbitration proceedings. Attached please find an Excel spreadsheet identifying the 3,994 individuals this firm represents, along with a copy of the operative terms that govern each claimants' individual arbitration. Additionally, please use the FTP link below to access the completed demand forms and demands for arbitration for each of the 3,994 claimants. The password will follow under separate cover. Additionally, the operative terms are Exhibit A to each claimants' demand.

Pursuant to Section 14.6(c) of the operative terms, Epson is required to pay all JAMS filing and arbitrator fees. We request that JAMS invoice Epson accordingly. Counsel for Epson is copied here.

FTP URL:            https://fts.labaton.com
USERNAME:        epsonftp

***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

# EXHIBIT G



# Insight from the President: JAMS Policy Regarding Mass Arbitration Filings

JAMS' core value is neutrality



## KIMBERLY TAYLOR, ESQ.
*JAMS President*

The question whether class action arbitration waiver agreements are enforceable was decided by the United States Supreme Court in its 2018 opinion in *Epic Systems Corp. v. Lewis*, 823 F.3d 1147, where Justice Gorsuch, writing for the majority, stated that the Court has determined that the Federal Arbitration Act "establishes 'liberal federal policy favoring arbitration agreements,'… [and] arbitration agreements like those before us must be enforced as written."

Following that decision, and in the face of an arbitration clause that bars class or collective actions, attorneys representing employees or consumers have responded in some instances by filing dozens, hundreds or even thousands of individual arbitration demands against a single company. These filings have prompted questions from Claimants' and Respondents' counsel about how ADR providers will administer the matters, what fees apply and whether providers will impose specialized processes that may run counter to the specific terms of the parties' contract. Claimants whose contract requires them to pay a portion of the initial filing fee may request a discount or waiver of the filing fees, and Respondent companies that may be required to pay the remainder or all of the filing fees balk at what may be a costly and prohibitive sum. Respondents may also question whether every individual claim is legitimate before it posts filing fees for the matter, but in some jurisdictions face penalties if they don't pay the arbitration filing fees within a specified time period.

JAMS understands the complexities of the situation. However, we have a fundamental responsibility and commitment to neutrality and high ethical and professional standards. Our role as the administrator of the parties' arbitration proceedings prohibits us from modifying or changing the arbitration agreement absent express agreement of the parties. If the parties' agreement prohibits class actions and consolidations, we must treat each case individually. Each matter is commenced and managed separately because that is what the pre-dispute contract requires. Every arbitration receives its own process and its own arbitrator, and the resources needed to manage these individual arbitrations are similar to or greater than any individual arbitration.

JAMS has developed internal protocols to make the commencement process as efficient as possible, including maximizing the use of technology and creating a dedicated team to oversee the commencement of the arbitration and appointment of the arbitrator. We aim to fulfill the goal of arbitration—an efficient, fair and neutral proceeding that leads to a final arbitration award that will be upheld in court. JAMS will not reduce fees for either side to avoid even an appearance of impartiality or bias. Every individual arbitration receives individual treatment and an individual award to ensure the parties receive an impartial, neutral and fair process.

We encourage the parties to collaborate at the outset of a mass filing (which JAMS defines as any group of 25 or more filings from the same law firm or lawyer against the same company at the same time). Strategies that have proven effective include sharing information about the validity of each individual's status (employee, customer, etc.); filing demands in batches; and agreeing on "test" cases, arbitrator selection, manner of hearing (in-person, virtual or hybrid), timelines for commencement and hearings, etc. JAMS can work with the parties to implement any processes or procedures that have been agreed upon prior to or even after an arbitration has been filed. However, in the absence of an agreement amongst the parties, the arbitration agreement controls.

To reiterate, JAMS' core value is neutrality. We take each individual arbitration as it is filed, according to the terms of the contract. We take that position to maintain our neutrality and because we do not believe we have the power, as the administering body, to change the parties' agreement unilaterally.

**EXPLORE MORE ON THESE TOPICS**

---

Disclaimer:
This page is for general information purposes. JAMS makes no representations or warranties regarding its accuracy or completeness. Interested persons should conduct their own research regarding information on this website before deciding to use JAMS, including investigation and research of JAMS neutrals. See More

# EXHIBIT H



NOTICE TO ALL PARTIES                                                    April 6, 2023

        **RE:     Labaton Epson Cases**

Dear Parties:

JAMS has received and reviewed Respondent's objection to the above-referenced Demands for Arbitration, and the parties' related communications to JAMS.

Regarding the 2,161 "Adams" Claimants, JAMS will take no action on these Demands at this time in light of Respondent's objection and counsel for Claimants' offer to meet and confer on these claims.

Regarding the 1,833 "Arnoff" Claimants, the Demands enclose an end user license agreement between a user and Respondent.  The agreement calls for all disputes (excluding IP claims) to be resolved by binding arbitration administered by JAMS.  Section 14.2.  The agreement states, "The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claims that all of any part of this Agreement is void or voidable."  Section 14.6.  The agreement states "the arbitration shall be governed by the rules of JAMS that are in effect when the arbitration is filed . . . ."  Section 14.6.  Under the JAMS Rules, jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which arbitration is sought, and who are proper parties to the arbitration, shall be submitted to and ruled on by the arbitrator.  The arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.  See, for example, JAMS Streamlined Arbitration Rule 8(b).

Respondent contends it updated its end user license agreement in April 2022, and the updated agreement calls for any "Mass Arbitration" to be administered by FedArb, not JAMS.  (The updated agreement defines a "Mass Arbitration" as "20 or more demands for arbitration . . . filed relating to the same or similar subject matter and sharing common issues of law of fact, [where] counsel for the parties submitting the demands are the same or coordinated . . . .")  Respondent further argues the updated agreement provides that only a court may resolve disagreements over compliance with the agreement's condition precedent to arbitration, and here the parties disagree over compliance.  For these reasons, according to Respondent, JAMS lacks jurisdiction to administer these claims.

Labaton Epson Cases
April 6, 2023
P a g e  | **2**

In response, Claimants offer a procedural history of their claims and argue they provided their claims to Respondent before Respondent updated the agreement.  Claimants argue that pursuant to the terms of the agreement under which they seek arbitration, Respondent's jurisdictional and arbitrability objections must go to the arbitrator in a given case.

JAMS notes that the parties mediated these claims in February of this year.  JAMS encourages the parties to continue to seek a mutually agreeable resolution and to avoid the time and expense of arbitrating these claims individually.

JAMS cannot force any party to participate in arbitration or to pay JAMS fees.  However, given the terms of the agreement under which Claimants seek arbitration, JAMS will proceed with administration of these Demands (the "Arnoff" Demands) upon receipt of the filing fees. Respondent may raise its jurisdictional and arbitrability objections with the arbitrators upon appointment.  Respondent may participate in the arbitrator selection processes without waiving any objection stated to date.

Lastly, the agreement states, "[Respondent] shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or [Respondent]) pursuant to provisions of this Agreement."  Accordingly, JAMS will issue an invoice to Respondent for the entire amount of the filing fees for these Demands.

Sincerely,

*/s/ Sheri Eisner*

Sheri Eisner
Senior Vice President, General Counsel
Co-Chair, JAMS National Arbitration Committee

# EXHIBIT I

# DEPOSIT REQUEST



**Invoice Date**
4/7/2023

**Invoice Number**
6612432

Bill To:
**Mr. John Baumann Esq.**
**Quinn Emanuel Urquhart & Sullivan LLP**
**865 S. Figueroa St.**
**10th Floor**
**Los Angeles, CA 90017**
**US**

| Reference #: | **1601002154 - Rep# 4** |
|---|---|
| Billing Specialist: | **Mindiola, Nicholaus** |
| Email: | **nmindiola@jamsadr.com** |
| Telephone: | **949-224-4626** |
| Employer ID: | **68-0542699** |

RE: **Labaton Epson Cases**                    Neutral(s): **JAMS 1-JAMS**
Representing: **Seiko Epson Corporation**          Hearing Type: **ARBITRATION**          SN

| Date / Time | Description | Your Share |
|---|---|---|
| 4/6/23 | **JAMS INC**<br>Filing Fees 1,833 cases x $2,000/each | $ 3,666,000.00 |

| | |
|---|---|
| **Total Billed:** | $ 3,666,000.00 |
| **Total Payment:** | $ 0 |
| **Balance:** | $ 3,666,000.00 |

---

Invoice total is based on the fee split agreed upon by all parties. If the case cancels or continues, fees are due per our cancellation and continuance policy. Please make checks payable to JAMS, Inc. Payment is due upon receipt.

**Click here to pay**

Standard mail:
**P.O. Box 845402**
**Los Angeles, CA 90084**

Overnight mail:
**18881 Von Karman Ave. Suite 350**
**Irvine, CA 92612**

# EXHIBIT J



# NOTICE OF CLOSING FILE

NOTICE TO ALL PARTIES                                                    June 6, 2023

RE:     **Labaton Epson Cases**
        Reference #: 1601002154

Dear Parties:

This letter is to confirm the above referenced matter is closed as of June 5, 2023 due to lack of payment of the filing fees on behalf of Respondent.

Please contact me should you have any questions.


Sincerely,


Sarah Nevins
Arbitration Practice Manager
snevins@jamsadr.com

# EXHIBIT K

**Schlow, Alexander F.**

| | |
|---|---|
| **From:** | Waisnor, Jonathan |
| **Sent:** | Friday, May 19, 2023 4:24 PM |
| **To:** | Jack Baumann; Sarah Nevins; Shon Morgan |
| **Cc:** | Heitmann, Brandon; Gardner, Jonathan; Dweck, Morris S.; Schlow, Alexander F. |
| **Subject:** | Re: [EXTERNAL]RE: Labaton Epson Cases - JAMS Ref No. 1601002154 |

Dear Ms. Nevins,

We represent the Claimants in this matter and write to provide you with an update.  We appreciate Mr. Baumann's confirmation that Epson is not planning to pay the filing fees for the Claimants they have named as defendants in the *Arnoff* matter.  We have separately conveyed to Epson our position that they are in material breach of the arbitration agreement, and our intention to assert the Claimants' rights under Cal. Civ. Proc. 1281.97 and 1281.99 to seek relief for this material breach.  We disagree with Epson's position that there are any threshold jurisdictional issues for the court to resolve or that JAMS cannot resolve any disputes about formation or delegation.   We will otherwise wait to hear from JAMS on next steps for the *Arnoff* Claimants.

We also filed demands on behalf of the 2,161 *Adams* Claimants but asked JAMS to hold those arbitrations in abeyance while we met and conferred with them on the issues raised in their letters. However, in light of Epson's default, we are withdrawing the *Adams* Claimants' demands for arbitration without prejudice.  The list of *Adams* Claimants are on the attached spreadsheet.

Also, would you please keep my colleagues Alex Schlow and Morris Dweck copied on all further correspondence related to these matters?

Enjoy your weekend.

**From:** Jack Baumann <jackbaumann@quinnemanuel.com>
**Sent:** Friday, May 19, 2023 2:02 PM
**To:** Sarah Nevins <snevins@jamsadr.com>; Shon Morgan <shonmorgan@quinnemanuel.com>
**Cc:** Heitmann, Brandon <BHeitmann@labaton.com>; Waisnor, Jonathan <JWaisnor@labaton.com>; Gardner, Jonathan <JGardner@labaton.com>
**Subject:** [EXTERNAL]RE: Labaton Epson Cases - JAMS Ref No. 1601002154

This sender is trusted. This message was sent from outside your organization.

Ms. Nevins,
Epson maintains the view, as explained in its March 13 and March 29, 2023 letters, that JAMS lacks jurisdiction over these claims, including with respect to the initial formation and delegation disputes at issue.  Consistent with that position, Epson promptly filed a declaratory action to address these issues in Orange County Superior Court.  Epson respectfully declines to advance non-recoverable filing fees pending judicial resolution of that threshold jurisdictional issue.  Epson reserves all rights and waives none.
Best,

**Jack Baumann**
*Partner*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3169 Office
310-245-9886 Cell

213-443-3100 Fax
jackbaumann@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Sarah Nevins <snevins@jamsadr.com>
**Sent:** Friday, May 19, 2023 5:47 AM
**To:** Jack Baumann <jackbaumann@quinnemanuel.com>; Shon Morgan <shonmorgan@quinnemanuel.com>
**Cc:** bheitman@labaton.com; jwaisnor@labaton.com; jgardner@labaton.com
**Subject:** RE: Labaton Epson Cases - JAMS Ref No. 1601002154

<mark>[EXTERNAL EMAIL from snevins@jamsadr.com]</mark>

Good Morning Counsel.

I am writing to follow up regarding the filing fee on behalf of Respondent in the above referenced matter.  Please advise as to payment status.

Thank you,
Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS** - *Local Solutions. Global Reach.*™
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access.**
Follow us on **LinkedIn** and **Twitter**.

**From:** Sarah Nevins
**Sent:** Friday, May 5, 2023 8:13 AM
**To:** jackbaumann@quinnemanuel.com; shonmorgan@quinnemanuel.com
**Cc:** bheitman@labaton.com; jwaisnor@labaton.com; jgardner@labaton.com
**Subject:** RE: Labaton Epson Cases - JAMS Ref No. 1601002154

Good Morning Counsel.

I am writing to follow up regarding the filing fee on behalf of Respondent in the above referenced matter.  Please advise as to payment status.

Thank you,
Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS** - *Local Solutions. Global Reach.*™
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access**.
Follow us on **LinkedIn** and **Twitter**.

---

**From:** Sarah Nevins
**Sent:** Friday, April 21, 2023 8:16 AM
**To:** 'jackbaumann@quinnemanuel.com' <jackbaumann@quinnemanuel.com>; 'shonmorgan@quinnemanuel.com' <shonmorgan@quinnemanuel.com>
**Cc:** 'bheitmann@labaton.com' <bheitmann@labaton.com>; 'jwaisnor@labaton.com' <jwaisnor@labaton.com>; 'jgardner@labaton.com' <jgardner@labaton.com>
**Subject:** RE: Labaton Epson Cases - JAMS Ref No. 1601002154

Good Morning Counsel.

I am writing to follow up regarding the filing fee on behalf of Respondent in the above referenced matter.  Please advise as to payment status.

Thank you,
Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS** - *Local Solutions. Global Reach.*™
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access**.
Follow us on **LinkedIn** and **Twitter**.

---

**From:** Sarah Nevins
**Sent:** Friday, April 7, 2023 11:03 AM
**To:** jackbaumann@quinnemanuel.com; shonmorgan@quinnemanuel.com
**Cc:** bheitmann@labaton.com; jwaisnor@labaton.com; jgardner@labaton.com
**Subject:** Labaton Epson Cases - JAMS Ref No. 1601002154

Counsel:

Attached please find Respondent's filing fee invoice for the 1,833 filings in the above referenced matter.

3

Thank you,
Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS - *Local Solutions. Global Reach.<sup>TM</sup>***
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access**.
Follow us on **LinkedIn** and **Twitter**.

Electronically Received by Superior Court of California, County of Orange, 06/07/2023 06:48:46 PM.
30-2023-01315890-CU-MC-CXC - ROA # 29 - DAVID H. YAMASAKI, Clerk of the Court By eClerk, Deputy Clerk.
Case 8:24-cv-00936 Document 1-3 Filed 08/29/24 Page 233 of 351 Page ID #:271

11152699

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE**

| | |
|---|---|
| EPSON AMERICA, INC.,<br>Plaintiff,<br><br>versus<br><br>GRAESEN ARNOFF, an individual, et al.,<br>Defendants. | CASE NO. 30-2023-01315890-CU-MC-CXC<br><br>]PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR CLASS CERTIFICATION<br><br>Assigned for All Purposes to:<br>Hon. Lon F. Hurwitz, Dept. CX103<br>Date Action Filed: March 10, 2023 |

Defendants' Motion for Class Certification pursuant to California Code of Civil Procedure §382 came before this Court for hearing on August 4, 2023, at 1:30 p.m.  Having reviewed the arguments of counsel, the papers submitted by the parties, and the pleadings and records on file herein, the Court finds that:

1.    The Class members are ascertainable, and it is impracticable to bring all of them before the Court;

2.    There are common questions of law and fact at issue here that predominate over other questions;

3.    The claims against the Proposed Class Representatives, Michelle Churchill and Fernando Hernandez, ("Class Representatives"), are typical of the claims for the Class;

4.    Class Representatives and their counsel will fairly and adequately represent and protect the interests of the proposed Class; and

5.    A Defendant class is the superior method of proceeding with the claims that are being litigated in this Action.

Based on the foregoing, and good cause appearing therefore,

**IT IS HEREBY ORDERED:**

1.    Defendants Motion for Class Certification is hereby GRANTED.  This Action shall be maintained against a Defendant class on behalf of all persons who were named as Defendants by Plaintiff in the instant action;

2.    Michelle Churchill and Fernando Hernandez are appointed Class Representatives; and

3.    Labaton Sucharow are appointed as Class Counsel.

[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

1

2   DATED: _____            _____

3                                      HONORABLE LON HURWITZ
                                       CALIFORNIA SUPERIOR COURT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

Electronically Filed by Superior Court of California, County of Orange, 06/07/2023 06:48:00 PM.
30-2023-01315890-CU-MC-CXC - ROA # 31 - DAVID H. YAMASAKI, Clerk of the Court By E. effinguser, Deputy Clerk.
Case 8:25-cv-00509-JWH-KES Document 21 Filed 05/05/24 Page 236 of 351 Page ID #:274

John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com


Jonathan Waisnor (CA 345801)
Jonathan Gardner (Pro Hac Vice Application Pending)
Alexander Schlow (Pro Hac Vice Application Pending)
Morris Dweck (Pro Hac Vice Application Pending)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
jwaisnor@labaton.com

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| EPSON AMERICA, INC.,<br>Plaintiff,<br><br>versus<br><br>GRAESEN ARNOFF, an individual, et al.,<br>Defendants. | **CASE NO.:** 30-2023-01315890-CU-MC-CXC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR CLASS CERTIFICATION**<br><br>Assigned for All Purposes to:<br>Hon. Lon F. Hurwitz<br>Date Action Filed: March 10, 2023 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................ii

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ............................................................................................ 3

        A.      Factual Background.............................................................................. 3

III.    THE COURT SHOULD GRANT CLASS CERTIFICATION ............................. 6

        A.      Legal Standard .................................................................................... 6

        B.      The Elements of Class Certification are Easily Satisfied ......................... 7

                1.      The Class Is Ascertainable ........................................................ 7

                2.      The Class Is Sufficiently Numerous ........................................... 8

                3.      The Class Shares a Well-Defined Community of Interest............... 8

                        a.      Common Questions Predominate ...................................... 9

                        b.      The Proposed Class Representatives' Claims Are Typical ............... 11

                        c.      The Proposed Class Representatives and Their Counsel Will
                                Fairly and Adequately Represent the Class..................... 12

                4.      A Class Action Is Superior to Any Alternative............................ 14

        C.      The Additional Requirements Unique To Defendant Classes Are Present
                Here ................................................................................................ 15

IV.     CONCLUSION ......................................................................................... 177

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*,
   191 Cal. App. 3d 1341 (1987)............................................................8, 9, 15

*Barnes Group, Inc. v. Int'l Union United Automobile Aerospace & Agricultural*
   *Implement Workers of America, et al.*,
   No. 3:16-cv-00559 (MPS), 2017 WL 1407638 (D. Conn. Apr. 19, 2017)............................14

*Bd. of Pilot Commissioners v. Superior Court*,
   218 Cal. App. 4th 577 (2013)............................................................10

*Brinker Rest. Corp. v. Super. Ct.*,
   53 Cal. 4th 1004 (2012)............................................................6, 9, 11

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)............................................................14

*Carter v. City of Los Angeles*,
   224 Cal. App. 4th 808 (2014)............................................................9, 11

*Classen v. Weller*,
   145 Cal. App. 3d 27 (1983)............................................................11, 12

*Daar v. Yellow Cab Co.*,
   67 Cal. 2d 695 (1967)............................................................8, 12, 15

*Espinoza v. Superior Court*,
   83 Cal. App. 5th 761 (2022)............................................................11

*Farwell v. Sunset Mesa Property Owners Assn., Inc.*,
   163 Cal. App. 4th 1545 (2008)............................................................6

*Galgon v. Epson America, Inc.*,
   No. 2:2021-cv-01794, 2021 U.S. Dist. LEXIS 193142 (C.D. Cal. June 16, 2021)....2, 4, 9, 10

*Gallo v. Wood Ranch USA Inc.*,
   81 Cal. App. 5th 621 (2022)............................................................11

*Hebbard v. Colgrove*,
   28 Cal. App. 3d 1017 (1972)............................................................8

*Hendershot v. Ready to Roll Transp., Inc.*,
   228 Cal. App. 4th 1213 (2014)............................................................8

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

*J. P. Morgan & Co., Inc. v. Super. Ct.*,
    113 Cal. App. 4th 195 (2003)............................................................................12

*McGhee v. Bank of Am.*,
    60 Cal. App. 3d 442 (1976)........................................................................12, 13

*Medrazo v. Honda of N. Hollywood*,
    166 Cal. App. 4th 89 (2008) ......................................................................7, 12

*Miller v. Woods*,
    148 Cal. App. 3d. 862 (1983)......................................................................9, 11

*Mondigo et al. v. Epson America, Inc.*,
    Case No. 20-cv-4400, 2020 U.S. Dist. LEXIS 252136 (C.D. Cal. Oct. 13, 2020).....2, 4, 9, 10

*Occidental Land, Inc. v. Superior Court of Orange County*,
    18 Cal. 3d 355 (1976) .....................................................................................8

*Reyes v. Bd. of Supervisors*,
    196 Cal. App. 3d 1263 (1987).......................................................................7, 9

*Richmond v. Dart Indus., Inc.*,
    29 Cal. 3d 462 (1981) ...........................................................................*passim*

*Rubin v. L.A. Fed. Sav. & Loan Ass'n*,
    159 Cal. App. 3d 292 (1984)...........................................................................15

*Sav-On Drug Stores, Inc. v. Super. Ct.*,
    34 Cal. 4th 319 (2004) .....................................................................................8

*Simons v. Horowitz*,
    151 Cal. App. 3d 834 (1984)................................................................7, 15, 16

*Speck v. Coastal Massage Santa Barbara*,
    2022 WL 19574610 (2022)..............................................................................11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) .......................................................................................14

*Vasquez v. Superior Court*,
    4 Cal. 3d 800 (1971) ................................................................................14, 15

**Statutes**

California Code of Civil Procedure §382 .........................................................1, 3, 6

1    Pursuant to California Code of Civil Procedure §382, Defendants Michelle Churchill and

2    Fernando Hernandez, for themselves and on behalf of all other named and unnamed defendants in

3    this action (together, "Defendants") respectfully submit this memorandum in support of their Motion

4    for Certification of a Defendant Class ("Motion").[1]

5    **I.    INTRODUCTION**

6    Here, as in the related action filed by plaintiff Epson America, Inc. ("Plaintiff" or "Epson")

7    captioned *Epson America, Inc. v. Matt Adams, et al.*, No. 30-2023-01313431-CU-MC-CXC ("Adams

8    Action")[2], Epson is attempting to use an unfounded declaratory judgment action to escape its

9    contractual duty to arbitrate with Defendants under an agreement Epson itself drafted and has

10   repeatedly relied on to compel related disputes to arbitration.  Indeed, JAMS – the arbitrator selected

11   by Epson in drafting its agreement with customers – has already concluded that disputes between

12   Epson and Defendants, *including disputes over the specific legal issues raised in Epson's complaint

13   here*, should proceed before JAMS, and *not* before this Court or FedArb.  See Declaration of Jonathan

14   Waisnor ("Waisnor Declaration" or "Waisnor Dec."), Exh. G ("April 6 JAMS Notice").  Pursuant to

15   the Epson-drafted arbitration agreement in question, JAMS invoiced Epson for the initiation fees for

16   Defendants' arbitrations on April 7, 2023.  Waisnor Dec., Exh. H.  Epson, in material breach of its

17   contractual obligations and in violation of Cal. Civ. P. § 1281.97-99, refused to pay this invoice,

18   resulting in administrative closure of Defendants' arbitrations.[3]   *Id.*, ¶¶22-23 and Exhs. I, J.

19   Certification of a defendant class in this action will permit the court and the parties to return this

20   action to the proper arbitral forum without subjecting individual Defendants to purposeless

21   harassment and expense and this court to the burden of adjudicating thousands of individual disputes.

22

23

---

24   [1] Unless otherwise noted, citations and internal quotation marks are omitted, and emphasis is added.

25   [2] Counsel for Defendants also represents all defendants in the Adams Action, and a motion for
     certification of a defendant class in that related action is being filed and served concurrently herewith.

26   The Court is respectfully referred to the Adams defendants' papers in support of class certification
     for further information relevant to both actions.

27   [3] Defendants anticipate filing a motion for sanctions based on Epson's violation of § 1281.97 *et seq.*
     in short order.

28

Indeed, in multiple prior litigations involving these exact practices, Epson vigorously argued that disputes between it and its customers belonged before JAMS.  *See Galgon v. Epson America, Inc.*, No. 2:2021-cv-01794, 2021 U.S. Dist. LEXIS 193142 at \*6-\*7 (C.D. Cal. June 16, 2021); *Mondigo et al. v. Epson America, Inc.*, Case No. 20-cv-4400, 2020 U.S. Dist. LEXIS 252136 (C.D. Cal. Oct. 13, 2020).  In so doing, Epson stated that: "Plaintiffs should not be permitted to ignore their arbitration agreements, file a lawsuit in federal court, and force Epson to participate in litigation in violation of the terms of the parties' agreements."  Waisnor Dec., Exh. B ("*Mondigo* Motion to Compel") at 12.  Epson further argued – by citation to JAMS rules – that "disputes over the formation, existence, *validity*, interpretation or scope of the agreement under which Arbitration is sought" were "reserved for the arbitrator," "and not a court."  Waisnor Dec., Exh. C (*Mondigo* Reply) (emphasis in original).  Epson's motions before the District Court were successful.  2021 U.S. Dist. LEXIS 193142 at \*6-\*7; 2020 U.S. Dist. LEXIS 252136.

Epson's individualized joinder of the 1,833 named defendants here, along with potentially thousands of as-yet-unnamed Doe Defendants residing in dozens of different states, is entirely impracticable, constitutes a violation of its own user agreement, and is intended only to harass Defendants.  Further, *all* of the major legal issues in this case - whether Plaintiff's claims that an updated version of its user agreement applies to Defendants were delegated, whether Epson is judicially estopped from denying enforcement of its own arbitration clause, whether Epson should be sanctioned for its failure to pay arbitration fees, and whether Epson has properly alleged sufficient facts giving it a right to the relief it seeks – are common to every single member of the proposed class, and requiring individualized responses (and attendant appearance fees) from each and every Defendant before adjudicating these common issues is a waste of party and judicial resources.  The proposed lead defendants, Michelle Churchill and Fernando Hernandez, are typical of the entire class, and their defenses adequately represent those of the entire set of Defendants.  *See* Waisnor Dec., Exhs. K, L. Finally, as in the *Adams* action, all defendants are already represented by the same counsel well versed in litigating class actions, such that the proposed lead defendants and Defendants' counsel will adequately protect the interests of all absent class members.  Waisnor Dec., ¶¶2-3, Exhs. M, N.

1    Epson's decision to prosecute this action against hundreds of its customers *via* joinder of

2    individual claims, despite its prior position that such disputes belong in arbitration, and despite an

3    arbitral forum originally chosen by Epson already concluding that the issues raised by Epson are

4    properly for an arbitrator and not this Court, reveal this action for what it is – an attempt by Epson to

5    change the rules mid-game and subject Defendants to the expense and burden of defending this

6    meritless litigation despite properly asserting their right to arbitration before JAMS.  This court should

7    reject Epson's misuse of the court system and certify a defendant class so that it can quickly and

8    efficiently return these disputes to arbitration.  Accordingly, pursuant to California Code of Civil

9    Procedure §382, Defendants move the Court to: (1) certify a class of all named and unnamed

10   Defendants in this action; (2) appoint Michelle Churchill and Fernando Hernandez as class

11   representatives; and (3) appoint Labaton Sucharow LLP ("Labaton") and Scott+Scott Attorneys at

12   Law LLP ("Scott+Scott") as Class Counsel.

13   **II.    BACKGROUND**

14       **A.    Factual Background**

15       Epson is one of the largest printer companies in the world.  As the American subsidiary of

16   Seiko Epson Corporation, a Japanese corporation, Epson is responsible for selling and marketing

17   Epson printers in the United States.  Complaint[4], ¶9.  Epson manufactures both printers and ink

18   cartridges. Consumers can purchase printers or ink cartridges either directly from Epson or from other

19   retailers.  Ink cartridges are a vital source of revenue for printer companies like Epson.  Epson's

20   original equipment manufacturer ("OEM") replacement ink ranges from $10-$150 per cartridge, with

21   most printers requiring four cartridges to work; third-party ink is typically much cheaper.

22       Epson printer owners must agree to Epson's End User Software License Agreement ("SLA")[5]

23   when purchasing and first setting up an Epson Printer.  Complaint, ¶12.  Under the terms of Epson's

24   SLA, Epson printer owners authorized Epson to access their printers to apply fixes and upgrades to

25

26   [4] References to the "Complaint" are to Epson's Complaint for Declaratory and Injunctive Relief in this action filed on or about March 10, 2023.

27   [5] A copy of the SLA is annexed as Exhibit A to the Waisnor Declaration.

28

1    improve the printer's performance.  The SLA further requires that any disputes between Epson and

2    its customers, including questions regarding jurisdiction or arbitrability, be decided by arbitration

3    before JAMS.  (SLA at 14).

4          Defendants here and in the related *Adams* Action (together, "Claimants") are Epson printer

5    owners who allege that they wish to use cheaper third-party ink in their printers, but can no longer do

6    so because Epson pushed unilateral firmware updates onto their printers that rendered them

7    incompatible with third-party ink cartridges.  Waisnor Dec., ¶3.

8          The plaintiffs in *Mondigo et al. v. Epson America, Inc.*, Case No., 20-cv-4400 (C.D. Ca. 2020)

9    brought a putative class action against Epson alleging harm to Epson customers based on these same

10   wrongful practices.  Rather than defending that action in court on the merits, Epson, represented by

11   the same counsel that is representing it in this case, successfully moved to stay the action and to

12   compel the claims to arbitration.  *See generally Mondigo*, 2020 U.S. Dist. LEXIS 252136 (C.D. Cal.

13   Oct. 13, 2020).  In making that motion, Epson forcefully argued that the same SLA at issue in this

14   action "clearly and unmistakably delegate[s] issues of arbitrability to the arbitrator," including

15   "whether the parties have agreed to arbitrate or whether their agreement covers a particular

16   controversy."  *Mondigo* Motion to Compel at 6-7.  Epson further argued, contrary to its position in

17   this action, that the question of whether the plaintiffs in *Mondigo* "entered into valid arbitration

18   agreements" was "not an issue for the court."  *Id.* at 8  ("Because disputes regarding the **existence**,

19   scope and validity of the arbitration agreements **are reserved for the arbitrator**, the Court need not

20   address these issues.").  *Id.*  Epson further argued that the SLA "incorporate[s] the JAMS rules,"

21   which rules "provide the arbitrator, **and not a court,** shall resolve disputes over the **formation,**

22   **existence** . . . or scope of the  agreement under which Arbitration is sought."  Waisnor Dec., Exh. C

23   at 5-6 (*Mondigo* Reply).  Epson has in fact continued to arbitrate the *Mondigo* plaintiffs' claims, as

24   confirmed by case status reports it has since filed in the District Court.  *See, e.g.,* Waisnor Dec., Exh.

25   D.  Epson made substantially the same arguments in another class action, *Galgon v. Epson America*

26   *Inc.*, No. 2:2021-cv-01794 (C.D. Cal. 2021), less than a year later.  As Epson put it, disputes like

27   those of Defendants here "do[] not belong in court."  Waisnor Dec., Exh. E at 1.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

1  Defendants here concur with Epson's previous position that the issues of the applicable

2  arbitration provision raised by Epson's complaint here should be decided by JAMS.  Epson is

3  judicially estopped from arguing otherwise.  Accordingly, in August and September 2022, pursuant

4  to the notice requirements of the SLA, Claimants informed Epson of the nature and facts underlying

5  their claims, and of their intent to seek arbitration of those claims before JAMS. Waisnor Dec., ¶13.

6  Following a period of negotiation and information exchange, including an unsuccessful

7  mediation before a JAMS mediator, Claimants contacted JAMS and requested that arbitrations be

8  opened against Epson.  *Id.*, ¶¶14-15.  Epson agreed that some Claimants had agreed to its SLA (and

9  thus that they and Epson were bound to the arbitration provision therein), but contended that, because

10  it had purportedly unilaterally amended that SLA (many months after it was noticed of the claims) to

11  change the relevant arbitration provider to FedArb ("Amended SLA") and to impose administrative

12  exhaustion requirements before consumers could commence arbitration, arbitrations against it should

13  not move forward before JAMS.  *Id.*, ¶14.  In the case of a so-called "Mass Arbitration," the Amended

14  SLA purportedly requires claimants to bring their claims before FedArb rather than JAMS.  *Id.*, ¶14;

15  Complaint ¶¶5-6 and Exh. 1.  However, Epson did not identify any specific claimant it asserted was

16  bound by the Amended SLA, or provide any evidence that any particular claimant had agreed to, or

17  even been notified of, the Amended SLA.  Waisnor Dec., ¶14.  Claimants disputed the validity and

18  application of the Amended SLA to their claims.  Waisnor Dec., ¶14.

19  Upon receiving the complaint in this action and the related *Adams* action, Claimants suggested

20  that a single procedural arbitrator be appointed to facilitate a good-faith information exchange to

21  verify the existence of an arbitration agreement between Defendants in this action and Epson.  *Id.*,

22  ¶¶18-19.  Epson declined.  *Id.*, ¶19.

23  However, Defendants in this action continued to seek arbitration, and on April 6, 2023, JAMS

24  rejected Epson's argument that the Arnoff Claimants' arbitrations should not move forward before

25  JAMS.  *Id.*, ¶21.  JAMS correctly recognized that the issue raised by Epson in this action – which

26  version of the SLA controls the parties' dispute – was properly decided by the arbitrator rather than

27  this Court.  *See* Waisnor Dec., ¶20; April 6 JAMS Notice at 2 ("JAMS will proceed with

28

1    administration of . . . the 'Arnoff' Demands . . . . [Epson] may raise its jurisdictional and arbitrability

2    objections with the arbitrators upon appointment.").  JAMS determined that it would proceed with

3    arbitration of Defendants' claims, and on April 7, 2023, JAMS invoiced Epson for the case initiation

4    fees for the Arnoff Claimants' arbitrations, which it is obligated to pay under the SLA.  Waisnor Dec.,

5    ¶21 and Exh. H.  Epson affirmatively confirmed that it did not intend to pay, and on June 6, 2023,

6    JAMS administratively closed the Arnoff Claimants' arbitrations because of nonpayment of fees.  *Id.*

7    ¶¶22-23 and Exhs. I, J.  As of the date of this Motion, Epson is in material breach of the SLA, and

8    subject to sanctions for that breach as a matter of law under Cal. Civ. Pro. § 1281.97-99.  *Id*.  Epson

9    has continued to press this action despite its confirmed contractual and legal duty to pay the relevant

10    initiation fees and arbitrate before JAMS.  *Id.*

11    **III.    THE COURT SHOULD GRANT CLASS CERTIFICATION**

12        **A.    Legal Standard**

13        A class may be certified "when the question is one of a common or general interest, of many

14    persons, or when the parties are numerous, and it is impracticable to bring them all before the court."

15    C.C.P. §382.  "Drawing on [the language of §382] and federal precedent," the California Supreme

16    Court "ha[s] articulated clear requirements for the certification of a class." *Brinker Rest. Corp. v.*

17    *Super. Ct.*, 53 Cal. 4th 1004, 1021 (2012).  "The party advocating class treatment must demonstrate

18    the existence of an ascertainable and sufficiently numerous class, a well-defined community of

19    interest, and substantial benefits from certification that render proceeding as a class superior to the

20    alternatives." *Id.*  The "community of interest" requirement embodies three factors: "(1) predominant

21    common questions of law or fact; (2) class representatives with claims or defenses typical of the class;

22    and (3) class representatives who can adequately represent the class." *Richmond v. Dart Indus., Inc.*,

23    29 Cal. 3d 462, 470 (1981) (citing C.C.P. §1781(b)).

24        Although less common than plaintiff classes, "there is nothing unprecedented about a

25    defendant class," and "California has . . . long recognized defendant classes." *Farwell v. Sunset Mesa*

26    *Property Owners Assn., Inc.*, 163 Cal. App. 4th 1545, 1550-51 (2008) (collecting cases).  Certification

27    of a defendant class is appropriate provided that the above three requirements are met, so long as

28

1    "careful scrutiny is given to preserving the safeguards of adequate representation, notice and

2    standing." *Simons v. Horowitz*, 151 Cal. App. 3d 834, 845 (1984).  As set forth below, such

3    safeguards are amply provided for here, and the proposed defendant class should be certified.

4        **B.    The Elements of Class Certification are Easily Satisfied**

5            **1.    The Class Is Ascertainable**

6        "A class is ascertainable if it identifies a group . . . by describing a set of common

7    characteristics sufficient to allow a member of that group to identify himself or herself [as part of the

8    class] … based on the description." *Medrazo v. Honda of N. Hollywood*, 166 Cal. App. 4th 89, 101

9    (2008).  "As long as the potential class members may be identified without unreasonable expense or

10   time and given notice of the litigation, and the proposed class definition offers an objective means of

11   identifying those persons who will be bound by the results of the litigation, the ascertainability

12   requirement is met." *Id.* (class was ascertainable where "the potential class members may easily be

13   identified by reference to [defendant's] sales records").

14       Here, as in *Adams*, Plaintiff has specifically named 1,833 members of the class, all of whom

15   were represented by Labaton before the filing of this action.  Complaint, ¶¶1, 10.  Further, again just

16   as in *Adams*, Plaintiff has provided a basis for an ascertainable class definition in its own definition

17   of the unnamed Doe Defendants: "individuals who, through their counsel at Labaton Sucharow have

18   commenced or . . . have threatened to commence binding arbitration against Epson in JAMS in

19   California." *Id.,* ¶11.  Although Defendants dispute that there is any possibility that Epson could

20   reasonably believe additional defendants exist without also knowing their identities[6], Epson's

21   approach to the Doe Defendants demonstrates that the following class definition would encompass

22   all possible defendants here:

23

24   _____
     [6] It is not credible that Epson cannot identify all defendants at this time since it could gather the same
25   information on the Doe Defendants as it did for the Arnoff Defendants and Adams Defendants.
     Nevertheless, a proposed class representative "need *not* identify the individual members of the class
26   at the class certification stage." *Medrazo*, 166 Cal. App. 4th at 101 (citing *Daar v. Yellow Cab Co.*,
     67 Cal. 2d 695, 706 (1967)); *see also Reyes v. Bd. of Supervisors*, 196 Cal. App. 3d 1263, 1274 (1987)
27   ("it is firmly established [that] a plaintiff is not required at [the class-certification] stage of the
     proceedings to establish the existence and identity of class members").

28

1
2
3
4

> All individuals who: (i) are represented by Labaton Sucharow LLP; (ii) assert that they have a claim against Epson due to Epson's allegedly wrongful use of firmware updates to remove their printers' capability to use cheaper third-party ink refills; and who (iii) Epson concedes are parties to an agreement to arbitrate with it but contends must bring arbitrations relating to such firmware updates before FedArb rather than JAMS.

5    A class so defined would be readily ascertainable, with over 1,800 members already specified

6  by name and the rest ascertainable by counsel.  Accordingly, this prong of the test for certification is

7  met.

8    **2.    The Class Is Sufficiently Numerous**

9    A class action is proper where the parties are numerous and it is impracticable to bring them

10  all before the court.  *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 326 (2004); *see also*

11  *Daar*, 67 Cal. 2d at 695 (certifying class of several thousand class members); *B.W.I. Custom Kitchen*

12  *v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341, 1355 (1987) (same).  The numerosity requirement is

13  "indefinite and has been construed liberally."  *Hendershot v. Ready to Roll Transp., Inc.*, 228 Cal.

14  App. 4th 1213, 1222 (2014).  "No set number is required as a matter of law for the maintenance of a

15  class action."  *Id.*  Indeed, California courts have certified classes with as few as ten members.  *Id.*

16    The class here numbers at least 1,833 individuals, residing in several states.  Joinder of this

17  number of individual claims, as Epson has attempted here, is facially impracticable, especially

18  considering the predominance of common issues set forth below.  The proposed class is thus

19  sufficiently numerous.  *See, e.g.*, *Richmond*, 29 Cal. 3d at 478 (joinder of all potential plaintiffs not

20  practicable in a case involving the buyers of over 2,600 lots).  Indeed, much smaller classes have been

21  held to be sufficiently numerous.  *See Hebbard v. Colgrove*, 28 Cal. App. 3d 1017, 1030 (1972) (28

22  members sufficient); *Occidental Land, Inc. v. Superior Court of Orange County*, 18 Cal. 3d 355,

23  (1976) at 364 n.7 (150 members sufficient).

24    **3.    The Class Shares a Well-Defined Community of Interest**

25    In evaluating certification of a proposed class, California courts evaluate whether that class

26  shares a well-defined community of interest.  Such a community of interest is established by fulfilling

27  three requirements: "(1) predominant common questions of law or fact; (2) class representatives with

28

8

1  claims or defenses typical of the class; and (3) class representatives who can adequately represent the

2  class." *Brinker*, 53 Cal. 4th at 1021.  Each of these elements is met here.

### a.      Common Questions Predominate

4      Predominance is established when "common questions are sufficiently pervasive to permit

5  adjudication in a class action rather than in a multiplicity of suits" and "the legal claims arise out of

6  a common set of factual circumstances." *Reyes*, 196 Cal. App. 3d at 1277; *see also Miller v. Woods*,

7  148 Cal. App. 3d. 862, 874 (1983).  "Common issues predominate when they would be the principal

8  issues in any individual action, both in terms of time to be expended in their proof and of their

9  importance." *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 818 (2014) (quoting *Vasquez v.*

10  *Superior Court*, 4 Cal. 3d 800, 810 (1971)).  Where "issues which may be jointly tried" are sufficiently

11  "substantial to make the class action  advantageous to the judicial process and to the litigants," the

12  predominance requirement is met. *Id.*  Such issues need not be the *only* kind of issues in the case; "it

13  has never been the law in California that the class representative must have identical interests with

14  the class members.  The only requirements are that common questions of law and fact ***predominate***

15  and that the class representative be similarly situated." *B.W.I.*, 191 Cal. App. 3d at 1347.

16      Here, nearly every single question of law or fact is common to the entire proposed class.

17  Whether this entire action must be dismissed in favor of active JAMS arbitration; whether Plaintiff's

18  conduct in refusing to pay JAMS fees and participate in arbitration is sanctionable; whether Epson's

19  assertion that the Amended SLA applies has been delegated to the arbitrator rather than this Court;

20  the legal sufficiency of Epson's complaint; whether Epson is judicially estopped from pursuing this

21  action based on its representations to and positions taken before the federal court in *Mondigo* and

22  *Galgon* – all of these issues (many of them dispositive) are best adjudicated on a class-wide basis.

23  Notably, Epson itself claims that it "does not seek to deprive its consumers access to the arbitration

24  proceedings to which they are entitled," and agrees that the substance of Defendants' claims against

25  it must be arbitrated.  Complaint, ¶ 5.

26      Defendants anticipate a class-wide motion to dismiss or stay this action in favor of

27  proceedings before JAMS, a class-wide motion for sanctions for Epson's failure to pay the contracted

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

1    JAMS initiation fees, and a class-wide general demurrer to Epson's complaint.  Defendants will argue

2    that, as Epson itself has previously successfully argued, the issues it raises in this action are

3    unquestionably for the arbitrator rather than the courts, the same conclusion JAMS reached when it

4    considered this issue months ago.  *See generally* April 6 JAMS Notice.

5         Defendants will further argue that Epson is estopped from taking a position here inconsistent

6    with its position in the *Mondigo* and *Galgon* actions and accordingly is bound to its position there –

7    that claims like those of Defendants are properly before JAMS.  In *Mondigo* and *Galgon,* Epson

8    forcefully argued that "whether the parties have agreed to arbitrate" is a question reserved for the

9    arbitrator and not the courts.  *See Mondigo* Motion to Compel; *Mondigo* Reply; *Galgon* Motion to

10   Compel.  In such circumstances, judicial estoppel "prevents" Epson from "asserting a position in

11   [this] legal proceeding that is contrary to a position previously taken in the same or some earlier

12   proceeding [i.e., *Mondigo* and *Galgon*]." *Bd. of Pilot Commissioners v. Superior Court*, 218 Cal. App.

13   4th 577, 591 (2013).  Indeed, with respect to the Claimants named as defendants in the related *Arnoff*

14   action, JAMS itself concluded that "jurisdictional and arbitrability disputes, including disputes over

15   the formation, existence, ***validity***, interpretation or scope of the agreement under which arbitration is

16   sought . . .  shall be submitted to and ruled on by the arbitrator."  April 6 JAMS Notice at 2.  Thus,

17   common questions as to whether this case must be dismissed in favor of arbitration, and as to whether

18   Epson is estopped from arguing otherwise, predominate over any individualized ones here.

19        Finally, Defendants will seek sanctions against Epson for its refusal to pay arbitration fees

20   under Cal. Civ. P. § 1281.97-99.  JAMS transmitted its invoice to Epson on April 7, 2023.  *See*

21   Waisnor Dec. ¶21 and Exh. H.  Cal. Civ. Proc. §  1281.97(a)(1) provides that, "[i]n an employment

22   or consumer arbitration that requires . . . the drafting party to pay certain fees and costs before the

23   arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30

24   days after the due date the drafting party is in material breach of the arbitration agreement."  Section

25   1281.97(b)(2) empowers Defendants to "[c]ompel arbitration in which [Epson] shall pay reasonable

26   attorney's fees and costs related to the arbitration."  Further, Section 1281.97(d) *requires* a court,

27   upon motion, to "impose sanctions on [Epson] in accordance with Section 1281.99," which must

28

1   include "the reasonable expenses, including attorney's fees and costs, incurred by" Defendants.  The

2   court may also impose terminating sanctions, including striking pleadings or precluding the breaching

3   party, here Epson, from seeking discovery.  Cal. Civ. P. § 1281.99(b).

4          It has now been almost two months since Epson received JAMS's invoice, far more than the

5   30 days permitted under Section 1281.97, and JAMS has administratively closed Defendants'

6   arbitrations due to Epson's nonpayment.  Waisnor Dec., Exh. J.  Courts have consistently held that

7   Sections 1281.97 and 1281.99, and sanctions thereunder, are enforceable against California

8   corporations such as Epson, are not preempted by the Federal Arbitration Act, and absent

9   extraordinary circumstances require the imposition of mandatory sanctions where, as here, a corporate

10  defendant has willfully failed to comply with its obligation to pay arbitration fees.  *See, e.g., Gallo v.*

11  *Wood Ranch USA Inc.*, 81 Cal. App. 5th 621, 633-37 (2022) (affirming sanctions for failure to timely

12  pay arbitration fees and rejecting federal preemption argument). California courts have imposed

13  sanctions in far less egregious circumstances.  *Espinoza v. Superior Court,* 83 Cal. App. 5th 761, 776

14  (2022) (declining to excuse a party from sanctions despite inadvertent failure to pay arbitral fees

15  because "the Legislature intended the statute to be strictly applied whenever a drafting party failed to

16  pay by the statutory deadline"); *Speck v. Coastal Massage Santa Barbara*, 2022 WL 19574610 at *3-

17  *4 (2022) (declining, under *Espinoza* and Section 1281.97, to excuse payment of arbitration fees

18  made a single day late).

19         Thus, the instant action will be entirely decided on common questions of law and fact; it is

20  difficult to imagine any situation where individual questions would change the outcome for any given

21  Defendant.  Accordingly, the predominance requirement is met.  *See, e.g.*, *Brinker*, 53 Cal. 4th at

22  1022 ("[I]f the defendant's liability can be determined by facts common to all members of the class,

23  a class will be certified even if the members must individually prove their damages."); *Miller* 148

24  Cal. App. 3d. at 874: *Carter*, 224 Cal. App. 4th at 818.

25         **b.      The Proposed Class Representatives' Claims Are Typical**

26         Typicality requires only that the proposed representative's interests be significantly similar to

27  those of other class members.  *See Richmond*, 29 Cal. 3d at 470-75; *Classen v. Weller*, 145 Cal. App.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

3d 27, 46 (1983).  "The typicality requirement is meant to ensure that the class representative is able to adequately represent the class and focus on common issues."  *Medrazo*, 166 Cal. App. 4th at 99. This does not require that the representative's claims or defenses be "identical" with the claims of other class members.  Rather, "[t]he only requirements are that common questions of law and fact predominate and that the class representative be similarly situated."  *Classen*, 145 Cal. App. 3d at 46; *see also Daar*, 67 Cal. 2d at 709 (all issues involved in the case need not be common to all class members for the class to be certified).

Here, the Court should appoint Michelle Churchill and Fernando Hernandez as Class representatives because their defenses, and the facts underlying those defenses, are typical of the entire class.  As set forth in detail in their declarations, annexed as exhibits K ("Churchill Declaration") and L ("Hernandez Declaration") to the Waisnor Declaration, these proposed representatives each owned an Epson printer, wished to use cheaper non-OEM ink in that printer, and were prevented from doing so by Epson's firmware update.  *See* Churchill Declaration, ¶¶2-3 and Exh. A.; Hernandez Declaration ¶¶2-3 and Exh. A.  They assert that they agreed to Epson's SLA, as Epson concedes, and assert that the original version of the SLA applies to their claims.  *See* Churchill Declaration, ¶¶2-3 and Exh. A; Hernandez Declaration ¶¶2-3 and Exh. A; Waisnor Dec., ¶¶2-4.  Their defenses, positions, and entitlement to affirmative relief from this Court are the same as the remaining class of Defendants, as set forth above.  Accordingly, Epson's claims against them turn upon the very legal theories, and present the same central legal issues, as those of the rest of the proposed class. Thus, the typicality requirement is satisfied.  *See Medrazo*, 166 Cal. App. 4th at 98; *Classen*, 145 Cal. App. 3d at 46.

### c.    The Proposed Class Representatives and Their Counsel Will Fairly and Adequately Represent the Class

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent."  *J. P. Morgan & Co., Inc. v. Super. Ct.*, 113 Cal. App. 4th 195, 212 (2003).  It is met by fulfilling two conditions.  First, the plaintiffs must be represented by counsel qualified to conduct the pending litigation.  *McGhee v. Bank of Am.*, 60 Cal. App. 3d 442, 450 (1976).

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

1    Second, the plaintiffs' interests cannot be antagonistic to those of the class. *Id.* Both of these

2    conditions are met here.

3         The interests of Michelle Churchill and Fernando Hernandez, the proposed class

4    representatives here, are wholly aligned with the remainder of the class. The entire class, represented

5    by undersigned counsel, intends to assert a common, unified defense to Epson's claims, based on the

6    clear jurisdiction of the arbitrator rather than this Court over Epson's claims, the legal inadequacy of

7    Epson's allegations, and Epson's failure to proceed with arbitration in violation of law and contract.

8    There is thus no conflict between the interests of Michelle Churchill and Fernando Hernandez and

9    the interests of the rest of the proposed class; to the contrary, such interests are directly aligned.

10        Moreover, as set forth in the accompanying declarations, the proposed class representatives:

11   (i) are committed to vigorously defending this litigation should they be appointed as class

12   representatives; (ii) understand their obligations as class representatives, (iii) intend to vigorously

13   defend this action on behalf of the entire proposed class consistent with good faith and sound

14   judgment; (iv) have, through counsel, the resources and ability to adequately represent the proposed

15   class; and (v) are committed to continuing to actively supervise, monitor, and participate in the

16   ongoing defense of this litigation by working with counsel, participating in discovery, and preparing

17   for trial. *See* Churchill Declaration, ¶¶2-9; Hernandez Declaration, ¶¶2-9. Thus, they are adequate

18   Class representatives.

19        Further, counsel for the proposed class representatives maintains an active attorney-client

20   relationship with each named Defendant, and is committed to providing zealous representation for

21   each of them. Defendants' counsel is highly experienced in both class litigation and issues

22   surrounding consumer arbitration, having recovered billions of dollars for injured individuals

23   nationwide in both class and mass actions. For the Court's convenience, the firm résumés of proposed

24   class counsel, Labaton Sucharow and Scott+Scott, are submitted herewith as Exhibits L and M to the

25   Waisnor Declaration. Counsel's commitment to vigorously representing the proposed class, and its

26   experience with complex class litigation, readily establishes adequacy. *See Richmond*, 29 Cal. 3d at

27   478.

28

### 4.    A Class Action Is Superior to Any Alternative

In granting class certification, the Court also considers whether the class action device is superior to other available methods for adjudicating the controversy.  *See Vasquez*, 4 Cal. 3d at 821; *Richmond*, 29 Cal. 3d at 470; *Lazar*, 143 Cal. App. 3d at 143.  Where, as here, the proposed defendant class is comprised of numerous individuals residing in many different states, "joinder is impracticable," and "consolidating all of these individual defendants in a single proceeding . . . would serve judicial economy."  *Barnes Group, Inc. v. Int'l Union United Automobile Aerospace & Agricultural Implement Workers of America, et al.*, No. 3:16-cv-00559 (MPS), 2017 WL 1407638 at *3 (D. Conn. Apr. 19, 2017).  The alternative apparently contemplated by Epson, involving thousands of individualized actions running in parallel, would constitute severely inefficient administration of justice – precisely the "evil that [class actions were] designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).  Indeed, denial of class treatment would subject thousands of Defendants to this and other wholly unnecessary procedural and financial hurdles, including individualized appearance fees and discovery proceedings, simply so that their defenses, common to the entire proposed class, could be heard.

The class action device is a superior method for resolving Plaintiffs' and the Class's claims in this action.  Without a class action, many of the consumers pursuing individual arbitration claims regarding Epson's practices, a forum that allows the parties to "forgo the procedural rigor" of the court system and have their claims heard with "lower costs, greater efficiency and speed" – may be economically precluded or otherwise disincentivized from bringing their arbitrations because they also have to defend against Epson's parallel state court action, which imposes considerable delay and procedural complexity regarding what are straightforward consumer protection claims.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

Further, should these actions proceed, this Court will be in the inevitable position of adjudicating not only Epson's suit against Defendants, but Defendants' cross motions to compel arbitration against Epson and their motions for sanctions under Cal. Civ. Proc. § 1281.97-99.  Indeed, this Court has the discretion as part of Defendants' cross-motions to compel arbitration and for

1  sanctions to strike the pleadings and limit discovery in this action.  Thus, maintaining a class action

2  will provide all litigants with a remedy without overwhelming the judicial system with a multiplicity

3  of lawsuits with duplicative papers or dissuading aggrieved consumers from seeking relief.  *See Daar*,

4  67 Cal. 2d at 714-15 ("If a class suit is not permitted here, a multiplicity of legal actions dealing with

5  identical basic issues will be required. . . .  The result would be multiple burdens upon the plaintiffs,

6  the defendant and the court."); *Vasquez*, 4 Cal. 3d at 810 ("Absent a class suit, a wrongdoing

7  defendant would retain the benefits of its wrongs"); *B.W.I.*, 191 Cal. App. 3d at 1355 (same).

8        Epson may argue that this Motion should be denied on the basis of the waiver provision in

9  ¶14.5 of the SLA, which states that "**EACH PARTY MAY BRING DISPUTES AGAINST THE**

10 **OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT . . . IN ANY CLASS**

11 **OR REPRESENTATIVE PROCEEDING,**" or the nearly identical provision in ¶22.5 of the

12 amended SLA.  Any such argument fails, largely because of Epson's own conduct in bringing this

13 action.  It is Epson, not Defendants, who have "br[ought]" this "dispute," and it did so by joining its

14 claims against all 1,833 Defendants into a single action.  Thus, it is Epson, not Defendants, that has

15 improperly brought a mass action in court.  Further, by this conduct, Epson has waived the right to

16 enforce this bilateral term against Defendants here.  *See, e.g., Rubin v. L.A. Fed. Sav. & Loan Ass'n*,

17 159 Cal. App. 3d 292, 298 (1984) (conduct which "is so inconsistent with the intent to enforce the

18 right in question as to induce a reasonable belief that such right has been relinquished" constitutes

19 waiver thereof).

20        The size and geographic dispersal of the class, the lack of adequate alternatives, Epson's class-

21 wide refusal to comply with its obligation to pay initiation fees and arbitrate Defendants' claims, and

22 Epson's obvious attempt to twist joinder of individualized claims beyond the point of reasonableness

23 all weigh in favor of class certification here.  Class treatment of all Defendants is the best method to

24 efficiently and fairly resolve this litigation.

25      **C.**    **The Additional Requirements Unique To Defendant Classes Are Present
              Here**

26

27        In evaluating whether to certify a defendant class, "careful scrutiny is given to preserving the

28 safeguards of adequate representation, notice and standing."  *Simons*, 151 Cal. App. 3d at 845.  This

is because, in circumstances where the specific identity of all defendant class members cannot be ascertained, an absent class member may not ever know his or her interests are at issue until after he or she is bound by a class-wide judgment. *Id.* Further, there is heightened concern that a defendant class representative may put their own interest ahead of the rest of the class, or otherwise fail to marshal a robust defense of all absent class members' interests.

As set forth in Section III.B.3.c above, it is clear that the proposed class representatives here, and their counsel, are fully committed to putting forward the best defense possible on behalf of all Defendants, and that their interests align entirely with those of the rest of the proposed class. In addition, because the proposed class counsel individually represents all members of the proposed class, there can be no difficulty providing notice to the entire class, and there is similarly no question that the proposed class representatives and their counsel have standing to defend on behalf of all. *See* Waisnor Dec., ¶2. Under these circumstances, certification of a defendant class is appropriate.

IV.    **CONCLUSION**

For all these reasons, Defendants respectfully request that the Court: (1) grant their motion for class certification; (2) appoint Michelle Churchill and Fernando Hernandez as Class representatives; and (3) appoint Labaton Sucharow and Scott+Scott Class Counsel.

DATED:        June 7, 2023                **LABATON SUCHAROW LLP**


Jonathan Waisnor (Bar No. 345801)
140 Broadway
New York, New York 10005
Tel.:  (212) 907-0700
Fax:  (212) 907-7039
jwaisnor@labaton.com


**LABATON SUCHAROW LLP**
Jonathan Gardner (Pro Hac Pending)
Alexander Schlow (Pro Hac Pending)
Morris Dweck (Pro Hac Pending)
140 Broadway
New York, New York 10005
Tel.:  (212) 907-0700
Fax:  (212) 907-7039
jgardner@labaton.com
aschlow@labaton.com
mdweck@labaton.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone:  619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

*Counsel for Defendants*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

Electronically Filed by Superior Court of California, County of Orange, 06/07/2023 06:48:00 PM.
30-2023-01315890-CU-MC-CXC - ROA # 33 - DAVID H. YAMASAKI, Clerk of the Court By E. Eflinguser, Deputy Clerk.
Case 8:24-cv-01136 Document 24-1 Filed 05/20/24 Page 257 of 351 Page ID #:295

John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com
jpettigrew@scott-scott.com

Jonathan Waisnor (CA 345801)
Jonathan Gardner (Pro Hac Vice Application Pending)
Alexander Schlow (Pro Hac Vice Application Pending)
Morris Dweck (Pro Hac Vice Application Pending)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
jwaisnor@labaton.com

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| EPSON AMERICA, INC.,<br>Plaintiff,<br><br>versus<br><br>GRAESEN ARNOFF, an individual, et al.,<br>Defendants. | **CASE NO.:** 30-2023-01315890-CU-MC-CXC<br><br>**DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF DEFENDANTS' MOTION FOR CLASS CERTIFICATION**<br><br>Assigned for All Purposes to:<br>Hon. Lon F. Hurwitz<br>Date Action Filed: March 10, 2023 |

1    I, JONATHAN WAISNOR, declare as follows:

2    1.    I am an attorney duly admitted to practice in the State of California.  I am of counsel

3    to the law firm of Labaton Sucharow LLP, counsel for Defendants in the above captioned action.  I

4    respectfully submit this Declaration in support of Defendants' Motion for Class Certification.  This

5    Declaration is based upon my personal knowledge and if called to testify, I could and would do so

6    competently as to the matters set forth herein.

7    2.    This firm represents all named defendants in this action ("Defendants") and all

8    named defendants the related action *Epson America, Inc. v. Matt Adams, et al.*, No. 30-2023-

9    01313431-CU-MC-CXC (the "Adams Defendants," and together with the Arnoff Defendants,

10    "Defendants.").  This firm also represents Named Defendants _____.

11    3.    Defendants are consumers represented by Labaton Sucharow LLP in connection with

12    underlying arbitration disputes arising out of Epson's practices of improperly forcing software and

13    firmware updates on their printers which disabled their printers' ability to use this cheaper ink, in

14    violation of state and federal consumer protection laws.

15    4.    The relationship between Defendants and Epson is governed by the Epson-drafted

16    End User Software License Agreement ("SLA").  A copy of the SLA applicable to this dispute is

17    annexed hereto as **Exhibit A.**  The SLA requires all claims between Epson and Defendants to be

18    arbitrated.

19    5.    Epson has previously stringently enforced this arbitration requirement on its

20    customers in disputes stemming from the exact practices at issue here.  In a putative class action

21    brought by other Epson customers in the United States District Court for the Central District of

22    California captioned *Mondigo et al. v. Epson America, Inc.*, Case No., 20-cv-4400 (C.D. Ca. 2020),

23    a number of other Epson customers, alleging harm from the exact practices which Defendants

24    object to, sought to litigate their dispute with Epson on a class basis.  Epson argued vigorously, and

25    effectively, that these claims should instead be arbitrated before the Judicial Arbitration and

26    Mediation Services, Inc. ("JAMS"), pursuant to the SLA.

27

28

2

DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF DEFENDANTS' MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

6.     Attached hereto as **Exhibit B** is a true and correct copy of Epson's notice of motion and motion to compel arbitration in *Mondigo*, together with all attachments and exhibits thereto.

7.     Attached hereto as **Exhibit C** is a true and correct copy of Epson's reply memorandum of law in further support of its motion to compel arbitration in *Mondigo*.

8.     Epson's efforts to compel arbitration in *Mondigo* were ultimately successful, with the District Court staying the action and compelling the parties to arbitration.  *See Mondigo v. Epson Am., Inc.*, No. CV 20-4400-CBM-GJS(x), 2020 U.S. Dist. LEXIS 252136 at *10 (C.D. Cal. Oct. 13, 2020).

9.     As status reports submitted to the *Mondigo* court reveal, Epson has engaged in substantive arbitration with the *Mondigo* plaintiffs.  A copy of the November 1, 2022 status report in *Mondigo*, filed by Epson's counsel and reflecting the status of some of these arbitrations, is attached hereto as **Exhibit D.**

10.     The next year, in *Galgon v. Epson America, Inc.*, No. 2:2021-cv-01794 (C.D. Cal. 2021), Epson once again successfully argued that claims such as those of Defendants must be presented to a JAMS arbitrator rather than a court.

11.     A copy of Epson's Notice of Motion and Motion to Compel Arbitration in *Galgon* is attached hereto as **Exhibit E.**  Therein, Epson represented to the District Court that disputes with its customers "do[] not belong in court," that the SLA "require[s] arbitration before JAMS," and that the SLA "further provide[s] that 'Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees."  Exh. E. at 1, 5 (quoting SLA at ¶14.6(c)).

12.     Epson's motion to compel in *Galgon* was granted, just as it had been in *Mondigo*. The *Galgon* District Court found that the SLA's delegation clause "clearly and unmistakably indicates the parties' intent for the arbitrator to decide the issue of arbitrability."  *Galgon v. Epson America, Inc.*, No. 2:2021-cv-01794, 2021 U.S. Dist. LEXIS 193142 at *6-*7 (C.D. Cal. June 16, 2021).

---

3

13.     In August and September, 2022, in accordance with the notice provision of the SLA, Defendants, through counsel, provided notice to Epson of the nature and facts underlying their claims, and of their intent to seek arbitration before JAMS.

14.     Thereafter, the parties engaged in negotiations, information exchange, and a failed mediation before a JAMS mediator.  During this period, Epson repeatedly requested a large amount of information from the Defendants, despite the SLA not requiring such information as a condition to filing arbitrations.  Epson insisted that some of the Defendants had not provided it with enough information to determine whether they had agreements to arbitrate, but would not provide Defendants with the identities of any specific claimants they asserted had this issue or any information on Epson's search process.  Epson also insisted that other Defendants, though they did have agreements to arbitrate with it, were bound by the requirements of a purported amendment to the SLA which had additional administrative exhaustion requirements and required a different arbitral forum, FedArb, due in part to Defendants choice of counsel.  Again, Epson did not specifically identify anyone in this group, and Defendants dispute the validity and application of the amended version of the SLA to their claims.

15.     Accordingly, on March 6, 2023, the 3,994 Defendants filed formal arbitration demands with JAMS against Epson.

16.     Following receipt of these arbitration demands, Epson asked JAMS for additional time so that it could "evaluat[e] information" on the Defendants.  A copy of Epson's correspondence requesting this additional time is attached hereto as **Exhibit F.**

17.     Epson then quickly filed this action on or about March 10, 2023, alleging that its purported amendment to the SLA required Defendants' claims to be adjudicated before FedArb rather than JAMS, and that Defendants had not satisfied various administrative exhaustion requirements the amendment purportedly imposed.  This was the first time it identified any specific Defendant it asserted was bound by its amended SLA.  However, it did not seek a stay of the JAMS proceedings brought by Defendants.

---

4

18.     In its formal Policy Regarding Mass Arbitration Filings, available at https://www.jamsadr.com/blog/2023/jams-policy-regarding-mass-arbitration-filings, JAMS urges the parties to "collaborate at the outset of a mass filing [of more than 25 filings from the same law firm against the same company at the same time], including "sharing information about the validity of each individual's status (employee, customer, etc.); filing demands in batches; and agreeing on "test" cases, arbitrator selection, manner of hearing (in-person, virtual or hybrid), timelines for commencement and hearings, etc."

19.     In accordance with this policy, Defendants suggested that a single procedural arbitrator be appointed to facilitate a good-faith information exchange to verify the existence of an arbitration agreement between Defendants in this action and Epson.  Epson declined.

20.     On April 6, 2023, JAMS formally accepted administration of the Arnoff Defendants' arbitrations, stating that "given the terms of the agreement under which Claimants seek arbitration, JAMS will proceed with administration of these Demands (the "Arnoff" Demands) upon receipt of the filing fees.  Respondent may raise its jurisdictional and arbitrability objections with the arbitrators upon appointment.  Respondent may participate in the arbitrator selection processes without waiving any objection stated to date".  A copy of the April 6 correspondence from JAMS is attached hereto as **Exhibit G**.

21.     On April 7, 2023, in accordance with its decision and the requirements of the SLA, JAMS invoiced Epson for the case initiation fees for the Arnoff Defendants' arbitrations.  A copy of the invoice is annexed hereto as **Exhibit H.**

22.     Epson never paid the invoiced case initiation fees, and, upon inquiry from JAMS, affirmatively confirmed that it had no intention of doing so.  A copy of an email from Epson's counsel confirming it did not intend to pay is annexed as **Exhibit I.**

23.     On June 6, 2023, JAMS administratively closed the Arnoff Defendants arbitrations due to Epson's non-payment of fees.  Attached hereto as **Exhibit J** is a true and correct copy of correspondence from JAMS administratively closing the arbitrations.

5

DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF DEFENDANTS' MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

24.     Attached hereto as **Exhibit K** is a true and correct copy of the Declaration of Michelle Churchill dated June 2, 2023, together with its exhibit.

25.     Attached hereto as **Exhibit L** is a true and correct copy of the Declaration of Fernando Hernandez dated June 2, 2023, together with its exhibit.

26.     Attached hereto as **Exhibit M** is a firm resume for Labaton Sucharow LLP

27.     Attached hereto as **Exhibit N** is a firm resume for Scott+Scott LLP.

28.     For the foregoing reasons, and for the reasons set forth in Defendants' other submissions in support of their Motion for Class Certification, I respectfully request that Defendants' Motion be granted in its entirety.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.  Executed on June 7, 2023 at Brooklyn, New York

JONATHAN WAISNOR

DECLARATION OF JONATHAN WAISNOR IN SUPPORT OF DEFENDANTS' MOTION FOR CLASS CERTIFICATION
Case No. 30-2023-01315890-CU-MC-CXC

# EXHIBIT A

**NOTICE TO USER:** PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING OR USING THIS PRODUCT. IF YOU ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES. AN "OPT-OUT" IS AVAILABLE UNDER SECTION 14.7 FOR THOSE WHO WISH TO BE EXCLUDED FROM THE ARBITRATION AND CLASS WAIVER.

This is a legal agreement ("Agreement") between you (an individual or entity, referred to hereinafter as "you") and Seiko Epson Corporation ("Epson") for the enclosed software programs, including any related documentation, firmware, or updates (collectively referred to hereinafter as the "Software"). The Software is provided by Epson and its suppliers for use only with the corresponding Epson brand computer peripheral product (the "Epson Hardware"). BEFORE INSTALLING, COPYING OR OTHERWISE USING THE SOFTWARE, YOU NEED TO REVIEW AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING THE

EPSON PRIVACY POLICY (SEE SECTION 10). If you agree, click on the Download button. If you do not agree with the terms and conditions of this Agreement, click on the browser's back button to return to the previous page.

1.    **Grant of License.**  Epson grants you a limited, nonexclusive license to install and use the Software on hard disks or other computer storage devices, provided that the Software is used <u>only</u> in a single location (e.g., a home or office or place of business) and <u>only</u> in connection with Epson Hardware owned by you.  You may make backup copies of the Software, as necessary, provided the backup is only used to support your use of the Epson Hardware.

2.    **Upgrades and Updates.**  If you acquire an upgrade, updated version, modified version, or additions to or for the Software from Epson, the upgrade, updated version, modified version, or addition, shall be included in the defined term Software and governed by this Agreement. You acknowledge that Epson has no obligation to provide you with any Updates (as defined below in this Section 2) to the Software. Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third-party servers via the Internet to check for available updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug-ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates. If you do not wish to allow Epson to check for available updates to the Software, you may disable this feature by uninstalling EPSON Software Updater. By installing the Software and not disabling any automated check for Updates, if applicable, you hereby agree and consent to automatically request and receive Updates from Epson or third-party servers, and that the terms and conditions of this Agreement shall apply to all of these Updates.

3.    **Other Rights and Limitations.**  You agree not to modify, adapt or translate the Software and further agree not to attempt to reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software.  You may not rent, lease, distribute or lend the Software to third parties.  You may, however, transfer all of your rights to use the Software to another person or legal entity, provided that the recipient also agrees to the terms of this Agreement and you transfer the Software, including all copies, updates and prior versions, and the Epson Hardware, to such person or entity.  The Software is licensed as a single unit, and its component programs may not be separated for some other

use.  Further, you agree not to place the Software onto or into a shared environment accessible via a public network such as the Internet or otherwise accessible by others outside the single location referred to in Section 1 above.

4.    **Ownership.**  Title, ownership rights, and intellectual property rights in and to the Software shall remain with Epson or its suppliers.  The Software is protected by United States Copyright Law, copyright laws of Japan and international copyright treaties, as well as other intellectual property laws and treaties.  There is no transfer to you of any title to or ownership of the Software and this License shall not be construed as a sale of any rights in the Software.  You agree not to remove or alter any copyright, trademark, registered mark and other proprietary notices on any copies of the Software. Epson and its suppliers reserve all rights not granted.

5.    **Multiple Versions of Software.**  You may receive or obtain the Software in more than one version (e.g. for different operating environments; two or more language translation versions; downloaded from an Epson server or on a CD-ROM), however, regardless of the type or number of copies you receive, you still may use only the media or version appropriate for the license granted in Section 1 above.

6.    **Disclaimer of Warranty and Remedy.**  If you obtained the Software by media from EPSON or a dealer, EPSON warrants that the media on which the Software is recorded will be free from defects in workmanship and materials under normal use for a period of 90 days from the date of delivery to you. If the media is returned to EPSON or the dealer from which the media was obtained within 90 days of the date of delivery to you, and if EPSON determines the media to be defective and provided the media was not subject to misuse, abuse, misapplication or use in defective equipment, EPSON will replace the media, upon your return to EPSON of the Software, including all copies of any portions thereof. You acknowledge and agree that the use of the Software is at your sole risk. THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND. EPSON AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE. Epson does not warrant that the operation of the Software will be uninterrupted, error free, free from viruses or other harmful components or vulnerabilities, or that the

functions of the Software will meet your needs or requirements. Epson's sole and exclusive liability and your exclusive remedy for breach of warranty shall be limited to either, at Epson's option, the replacement of the media for the Software or to refund your money upon returning the Software and Epson Hardware.  Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer.  If the above remedy fails for any reason, Epson's entire liability for a breach of warranty shall be limited to a refund of the price paid for the Epson Hardware. Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control.  This Limited Warranty is void if failure of the Software resulted from accident, abuse, or misapplication.  THE STATED LIMITED WARRANTIES AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHERS. EPSON DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.  SOME STATES OR JURISDICTIONS, HOWEVER, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, AND IN SUCH STATES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

7.    **Limitation of Liability.**  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL EPSON OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES, WHATSOEVER, WHETHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, whether arising under contract, tort (including negligence), strict liability, breach of warranty, misrepresentation, or otherwise, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS, ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR ARISING OUT OF THIS AGREEMENT, EVEN IF EPSON OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TRANSACTIONS, AND IN SUCH STATES, THE ABOVE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY.

8.      **U.S. Government Acquisition of the Software.**  This Section applies to all acquisitions of the Software by or for the U.S. Government ("Government"), or by any prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement, "other transaction" ("OT"), or other activity with the Government.  By accepting delivery of the Software, the Government, any prime contractor, and any subcontractor agree that the Software qualifies as "commercial" computer software within the meaning of FAR Part 12, paragraph (b) of FAR Subpart 27.405, or DFARS Subpart 227.7202, as applicable, and that no other regulation, or FAR or DFARS data rights clause, applies to the delivery of this Software to the Government.  Accordingly, the terms and conditions of this Agreement govern the Government's (and the prime contractor and subcontractor's) use and disclosure of the Software, and supersede any conflicting terms and conditions of the contract, grant, cooperative agreement, OT, or other activity pursuant to which the Software is delivered to the Government.  If this Software fails to meet the Government's needs, if this Agreement is inconsistent in any respect with Federal law, or if the above cited FAR and DFARS provisions do not govern, the Government agrees to return the Software, unused, to Epson.

9.      **Export Restriction.**  You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

10.     **Privacy, Information Collection and Transfer of Data Overseas.** The Software may have the ability to connect over the Internet to transmit data to and from your computer. For example, if you install the Software, the Software may cause your computer to send information about your Epson Hardware such as model and serial number, country identifier, language code, operating system information, and Epson Hardware usage information to an Epson Internet site which may return promotional or service information to your computer for display. For more information on how Epson collects and uses information provided through the Software, please review the Epson Privacy Policy located at www.epson.com/privacy (if you are located in the U.S.), www.epson.ca/privacy (if you are located in Canada), which is incorporated herein by reference. By agreeing to the terms of this Agreement, you agree to the terms of the Epson Privacy Policy. The

Epson Internet site may be located overseas. By installing the Software, you consent to this transfer, processing and storage of your information in and/or outside your country of residence.

11.    **Ink Purchases**. For certain Epson printer products sold in North America, the Software may also display an option to buy ink from Epson. If you click on the buy button, the Software will cause your computer to display Epson Hardware cartridge types and ink levels and provide other information about your cartridges, such as the colors, available cartridge sizes, and prices for replacement ink cartridges, which you may purchase online from Epson.

12.    **Downloadable Updates**. You may also be able to download from an Epson Internet site updates or upgrades to the Software if such updates or upgrades are made available. If you agree to install the Software, any transmissions to or from the Internet, and data collection and use, will be in accordance with Epson's then-current Privacy Policy, and by installing the Software you agree that such then-current Privacy Policy shall govern such activities.

13.    **Epson Accounts and Promotional Messages**. In addition, if you install the Software and register your Epson Hardware with Epson, and/or you create an account at the Epson Store, and provided your consent to such use, you agree that Epson may merge the data collected in connection with installation of the Software, registration of your Epson Hardware and/or creation of your Epson Store account, consisting of personal information and non-personally identifiable information, and use such merged data to send you Epson promotional or service information. If you do not wish to send information about your Epson Hardware or receive promotional or service information, you will be able to disable these features on a Windows system through the Monitoring Preferences section in the driver. On a Mac operating system, you can disable these features by uninstalling the Epson Customer Research Participation and Low Ink Reminder software.

14.    **DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**

**14.1    Disputes.** The terms of this Section 14 shall apply to all Disputes between you and Epson. The term "Dispute" is meant to have the broadest meaning permissible under law and includes any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis. "DISPUTE" DOES NOT INCLUDE IP CLAIMS, or more specifically, a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation (an "IP Claim"). You and Epson also agree, notwithstanding Section 14.6, that a court, not an arbitrator, may decide if a claim or cause of action is for an IP Claim.

**14.2    Binding Arbitration.** You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.** Pursuant to this Agreement, binding arbitration shall be administered by JAMS, a nationally recognized arbitration authority, pursuant to its code of procedures then in effect for consumer related disputes, but excluding any rules that permit joinder or class actions in arbitration (for more detail on procedure, see Section 14.6 below). You and Epson understand and agree that (a) the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 14, (b) this Agreement memorializes a transaction in interstate commerce, and (c) this Section 14 shall survive termination of this Agreement.

**14.3    Pre-Arbitration Steps and Notice.** Before submitting a claim for arbitration, you and Epson agree to try, for sixty (60) days, to resolve any Dispute informally. If Epson and you do not reach an agreement to resolve the Dispute within the sixty (60) days), you or Epson may commence an arbitration. Notice to Epson must be addressed to: Epson America, Inc., ATTN: Legal Department, 3131 Katella Ave., Los Alamitos, CA 90720 (the "Epson Address"). The Dispute Notice to you will be sent to the most recent address Epson

has in its records for you. For this reason, it is important to notify us if your address changes by emailing us at EAILegal@ea.epson.com or writing us at the Epson Address above. Notice of the Dispute shall include the sender's name, address and contact information, the facts giving rise to the Dispute, and the relief requested (the "Dispute Notice"). Following receipt of the Dispute Notice, Epson and you agree to act in good faith to resolve the Dispute before commencing arbitration.

**14.4     Small Claims Court.** Notwithstanding the foregoing, you may bring an individual action in the small claims court of your state or municipality if the action is within that court's jurisdiction and is pending only in that court.

**14.5     WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS. YOU AND EPSON AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING WITHOUT LIMITATION FEDERAL OR STATE CLASS ACTIONS, OR CLASS ARBITRATIONS. CLASS ACTION LAWSUITS, CLASS-WIDE ARBITRATIONS, PRIVATE ATTORNEY-GENERAL ACTIONS, AND ANY OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY ARE NOT ALLOWED. ACCORDINGLY, UNDER THE ARBITRATION PROCEDURES OUTLINED IN THIS SECTION, AN ARBITRATOR SHALL NOT COMBINE OR CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS WITHOUT THE WRITTEN CONSENT OF ALL AFFECTED PARTIES TO AN ARBITRATION PROCEEDING.**

**14.6     Arbitration Procedure. If** you or Epson commences arbitration, the arbitration shall be governed by the rules of JAMS that are in effect when the arbitration is filed, excluding any rules that permit arbitration on a class or representative basis (the "JAMS Rules"), available at http://www.jamsadr.com or by calling 1-800-352-5267, and under the rules set forth in this Agreement. All Disputes shall be resolved by a single neutral arbitrator, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator. The arbitrator is bound by the terms of

this Agreement. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable. Notwithstanding this broad delegation of authority to the arbitrator, a court may determine the limited question of whether a claim or cause of action is for an IP Claim, which is excluded from the definition of "Disputes" in Section 14.1 above. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator may award you the same damages as a court could, and may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. In some instances, the costs of arbitration can exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court. The arbitrator's award is binding and may be entered as a judgment in any court of competent jurisdiction.

You may choose to engage in arbitration hearings by telephone. Arbitration hearings not conducted by telephone shall take place in a location reasonably accessible from your primary residence, or in Orange County, California, at your option.

a)   Initiation of Arbitration Proceeding. If either you or Epson decides to arbitrate a Dispute, both parties agree to the following procedure:

(i)   Write a Demand for Arbitration. The demand must include a description of the Dispute and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at http://www.jamsadr.com ("Demand for Arbitration").

(ii)  Send three copies of the Demand for Arbitration, plus the appropriate filing fee, to: JAMS, 500 North State College Blvd., Suite 600 Orange, CA 92868, U.S.A.

(iii) Send one copy of the Demand for Arbitration to the other party (same address as the Dispute Notice), or as otherwise agreed by the parties.

b)   Hearing Format. During the arbitration, the amount of any settlement offer made shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or

Epson is entitled. The discovery or exchange of non-privileged information relevant to the Dispute may be allowed during the arbitration.

c)    Arbitration Fees. Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement.

d)    Award in Your Favor. For Disputes in which you or Epson seeks $75,000 or less in damages exclusive of attorney's fees and costs, if the arbitrator's decision results in an award to you in an amount greater than Epson's last written offer, if any, to settle the Dispute, Epson will: (i) pay you $1,000 or the amount of the award, whichever is greater; (ii) pay you twice the amount of your reasonable attorney's fees, if any; and (iii) reimburse you for any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing the Dispute in arbitration. Except as agreed upon by you and Epson in writing, the arbitrator shall determine the amount of fees, costs, and expenses to be paid by Epson pursuant to this Section 14.6d).

e)    Attorney's Fees. Epson will not seek its attorney's fees and expenses for any arbitration commenced involving a Dispute under this Agreement. Your right to attorney's fees and expenses under Section 14.6(d) above does not limit your rights to attorney's fees and expenses under applicable law; notwithstanding the foregoing, the arbitrator may not award duplicative awards of attorney's fees and expenses.

**14.7     Opt-out. You may elect to opt-out (exclude yourself) from the final, binding, individual arbitration procedure and waiver of class and representative proceedings specified in this Agreement by sending a written letter to the Epson Address within thirty (30) days of your assent to this Agreement (including without limitation the purchase, download, installation of the Software or other applicable use of Epson Hardware, products and services) that specifies (i) your name, (ii) your mailing address, and (iii) your request to be excluded from the final, binding individual arbitration procedure and waiver of class and representative proceedings specified in this Section 14. In the event that you opt-out consistent**

with the procedure set forth above, all other terms shall continue to apply, including the requirement to provide notice prior to litigation.

14.8     **Amendments to Section 14.** Notwithstanding any provision in this Agreement to the contrary, you and Epson agree that if Epson makes any future amendments to the dispute resolution procedure and class action waiver provisions (other than a change to Epson's address) in this Agreement, Epson will obtain your affirmative assent to the applicable amendment. If you do not affirmatively assent to the applicable amendment, you are agreeing that you will arbitrate any Dispute between the parties in accordance with the language of this Section 14 (or resolve disputes as provided for in Section 14.7, if you timely elected to opt-out when you first assented to this Agreement).

14.9     **Severability.** If any provision in this Section 14 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect. **The foregoing shall not apply to the prohibition against class or representative actions as provided in Section 14.5. This means that if Section 14.5 is found to be unenforceable, the entire Section 14 (but only Section 14) shall be null and void.**

15.     **Jurisdiction.**  Except for Section 14, which is governed by the Federal Arbitration Act, in the event of a Dispute in which the provisions in Section 14 are inapplicable, severed from the remainder of this Agreement, or you opt-out pursuant to the provisions of Section 14.7, you and Epson both consent to the jurisdiction of your state of residence. Such Dispute must be filed no later than one year after the date the Software is first acquired.  This Agreement will not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded.

16.     **For New Jersey Residents.** Notwithstanding any terms set forth in this Agreement, if any of the provisions set forth in Sections 6, 7, or 16 are held unenforceable, void or inapplicable under New Jersey law, then ANY SUCH provision shall not apply TO YOU BUT THE REST OF THE AGREEMENT SHALL REMAIN BINDING ON YOU AND EPSON. NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT, Nothing

in this AGREEMENT IS INTENDED TO, NOR shall IT be deemed OR CONSTRUED to, limit any rights available to you UNDER THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

17.   **Entire Agreement.**  This Agreement is the entire agreement between the parties related to the Software and supersedes any purchase order, communication, advertisement, or representation concerning the Software.

18.   **Binding Agreement; Assignees**.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, assigns and legal representatives.

19.   **Severability**; **Modifications**. Subject to Section 14.8 and 14.9 if any provision herein is found void or unenforceable by a court of competent jurisdiction, it will not affect the validity of the balance of the Agreement, which shall remain valid and enforceable according to its terms. This Agreement may only be modified in writing signed by an authorized representative of Epson.

20.   **Termination.**  Without prejudice to any other rights Epson has, your license rights under Section 1 above and your warranty rights under Section 6 above, shall automatically terminate upon failure by you to comply with its terms.  Upon termination of such rights, you agree that the Software, and all copies thereof, will be immediately destroyed.

21.   **Capacity and Authority to Contract.**  You represent that you are of the legal age of majority in your state or jurisdiction of residence and have all necessary authority to enter into this Agreement, including, if applicable, due authorization by your employer to enter into this Agreement.

EPSON is a registered trademark of Seiko Epson Corporation.

© 2022  Epson America, Inc.

# EXHIBIT B

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant Epson America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>      vs.<br><br>EPSON AMERICA, INC.,<br><br>        Defendant. | CASE No. 2:20-cv-04400-CBM-GJS<br><br>**DEFENDANT EPSON AMERICA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;**<br><br>**DECLARATION OF SIRANUSH ARABIAN;**<br><br>**[PROPOSED] ORDER**<br><br>Date: August 18, 2020<br>Time: 10:00 a.m.<br>Judge: Hon. Consuelo B. Marshall<br>Courtroom: 8B |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 18, 2020 at 10:00 a.m., or as soon thereafter as counsel may be heard, defendant Epson America, Inc. ("Epson"), by and through its attorneys and pursuant to 9 U.S.C. § 4, hereby moves to compel arbitration of plaintiffs' claims, stay proceedings pending resolution of any arbitration, and stay proceedings pending a decision on this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 13, 2020.

This motion is made on the grounds that plaintiffs agreed to arbitrate their claims against Epson on a non-class basis and further agreed any disputes concerning the arbitrability of their claims must be submitted to the arbitrator for resolution. This motion is based upon this Notice, the following memorandum of points and authorities, the Declaration of Siranush Arabian ("Arabian Decl.") and exhibits thereto, the pleadings and records on file herein, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

DATED: July 20, 2020

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By_____ */s/ Shon Morgan*
Shon Morgan
Attorneys for Defendant Epson America, Inc.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................ 1

BACKGROUND ................................................................................ 1

PLAINTIFFS' ARBITRATION AGREEMENTS .................................. 1

LEGAL STANDARD .......................................................................... 5

ARGUMENT ...................................................................................... 6

I.     ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY
AN ARBITRATOR ...................................................................... 6

II.    THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFFS
ENTERED INTO VALID ARBITRATION AGREEMENTS THAT
CLEARLY COVER THE CLAIMS AT ISSUE ................................ 8

III.   THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION
MAY NOT PROCEED ON A CLASS BASIS ............................... 11

IV.   PLAINTIFFS' CLAIMS SHOULD BE STAYED PENDING
RESOLUTION OF ANY ARBITRATION, AND THIS ACTION
SHOULD BE STAYED PENDING A RULING ON THIS MOTION ......... 12

CONCLUSION .................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
   2014 WL 12610227 (N.D. Cal. Oct. 31, 2014) ............................................. 10

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ....................................................................................... 6

*Bitstamp Ltd. v. Ripple Labs Inc.*,
   2015 WL 4692418 (N.D. Cal. Aug. 6, 2015) ................................................ 7

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ....................................................................... 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ....................................................................... 8

*Dryer v. Los Angeles Rams*,
   40 Cal. 3d 406 (1985) .................................................................................. 10

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ................................................................................ 11

*Goldman v. KPMG, LLP*,
   173 Cal. App. 4th 209 (2009) ....................................................................... 9

*Hamoudeh v. Unitedhealth Grp. Inc.*,
   2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016) ................................... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) .................................................................................... 7

*Hotel Greystone Corp. v. New York Hotel & Motel Trades*
   *Council, AFL-CIO*,
   897 F. Supp. 168 (S.D.N.Y. 1995) .............................................................. 12

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ........................................................................................ 7

*In re Holl*,
   925 F.3d 1076 (9th Cir. 2019) ..................................................................... 10

*Kim v. Tinder, Inc.*,
   2018 WL 6694923 (C.D. Cal. July 12, 2018) ............................................... 5

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ....................................................................... 9

*Lakhan v. U.S. Sec. Assocs., Inc.*,
   2019 WL 175043 (C.D. Cal. Jan. 11, 2019) ................................................ 7

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) .................................................................... 11

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
2017 WL 2727874 (N.D. Cal. Feb. 14, 2017)......................................... 12

*Mendoza v. Uber Techs. Inc.*,
2020 WL 2563047 (C.D. Cal. May 4, 2020) .......................................... 12

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
109 Cal. App. 4th 1705 (2003).......................................................... 9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) ................................................................. 5, 6, 11

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
388 U.S. 395 (1967) ................................................................... 6

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) .................................................................. 6, 7

*Ronay Family Ltd. P'ship v. Tweed*,
216 Cal. App. 4th 830 (2013)........................................................... 9

*Smith v. Kansas Pub. Employees Ret. Sys.*,
2019 WL 339542 (D. Kan. Jan. 28, 2019) ......................................... 2, 8

*Stockman-Sann v. McKnight*,
2013 WL 8284817 (C.D. Cal. Mar. 25, 2013) ........................................ 1

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ............................................................... 11, 12

## **Statutory Authorities**

9 U.S.C. §§ 1-16 ......................................................................... 5

9 U.S.C. § 2 .............................................................................. 5

9 U.S.C. § 3 ......................................................................... 6, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

This dispute does not belong in court. Plaintiffs expressly agreed to arbitrate any grievances related to the printers they purchased from Epson and the software used in those printers. The terms of their arbitration agreements are conspicuous, fair, and reached through a process and on substantive terms that courts have consistently held must be enforced to effectuate the purposes of the Federal Arbitration Act. Plaintiffs' arbitration agreements also express a clear and unmistakable intent to commit issues of arbitrability to the arbitrator. Thus, to the extent plaintiffs contend their claims are not subject to the arbitration agreements for any reason, this issue must be decided in arbitration. Accordingly, the Court should compel arbitration of plaintiffs' claims and stay proceedings pending resolution of any arbitration.

Additionally, because this Court is not the proper forum for plaintiffs' claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration.

## BACKGROUND

## PLAINTIFFS' ARBITRATION AGREEMENTS

Plaintiffs each allege they purchased an Epson printer[1] and concede owners of Epson printers "must agree to Epson's software license when purchasing and using an Epson printer." ECF No. 1 at ¶ 32.[2] *See also id.* at ¶ 35 ("Under the terms of

---

[1]  ECF No. 1 at ¶¶ 52 (plaintiff Famiglietti); 65 (plaintiff Rabinovich); 77 (plaintiff Mondigo); 86 (plaintiff Gordon); 98 (plaintiff Szot); 106 (plaintiff Dignard); 116 (plaintiff Kovach).

[2]  Plaintiffs refer to, quote from, and provide a hyperlink in their complaint linking to the software license. *See* ECF No. 1 at ¶¶ 32-33 & n. 8. Thus, this document is incorporated by reference and may be considered by the Court. *Stockman-Sann v. McKnight*, 2013 WL 8284817, at *3 (C.D. Cal. Mar. 25, 2013) ("Because Plaintiff's CAC references these documents and quotes from them, they
(footnote continued)

1  Epson's software licenses, Plaintiffs . . . authorized Epson to access their printers to

2  apply fixes and upgrades."); Arabian Decl. at ¶¶ 3-4, Ex. 1 (software license). Thus,

3  there can be no dispute plaintiffs agreed to the terms of Epson's software license.

4  *See, e.g., Smith v. Kansas Pub. Employees Ret. Sys.*, 2019 WL 339542, at *4 (D.

5  Kan. Jan. 28, 2019) (contract formation established where plaintiff "conceded that

6  she entered the agreement in her own complaint").

7      Among the terms in the software license to which plaintiffs agreed is an

8  arbitration agreement—indeed, the very first paragraph of the license agreement

9  calls attention to this in capitalized, oversized font that notifies the user "IF YOU

10  ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS

11  DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING

12  ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK

13  RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR

14  RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS

15  FOR CERTAIN DISPUTES." *See* ECF No. 1 at ¶ 32 n. 8 (providing hyperlink to

16  this document); Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14.

17      Additionally, plaintiffs Rabinovich, Famiglietti, Gordon, Szot, Dignard and

18  Kovach each reaffirmed their agreements to arbitrate disputes with Epson at the time

19  they installed the software updates that are the subject of plaintiffs' complaint.

20  Arabian Decl. at ¶¶ 4-5, Ex. 2.[3] To install the updates, these plaintiffs were required

21  to view the Epson End User Software License Agreement ("Updater EULA"),

22
23  are appropriate for consideration under the doctrine of incorporation by reference."). Additionally, a true and correct copy of the software license to which plaintiffs agreed is attached as Exhibit 1 to the Declaration of Siranush Arabian. *See* Arabian

24  Decl. at ¶ 3, Ex. 1.

25     [3]  *See* ECF No. 1 at ¶¶ 57 (alleging plaintiff Famiglietti installed the "Updates" in "March of April of 2019"); 69 (alleging plaintiff Rabinovich installed the

26  "Updates" in "February of 2020"); 88 (alleging plaintiff Gordon installed the "Updates" in "early 2020"); 101 (alleging plaintiff Szot installed the "Updates" in

27  "August 2019"); 109-111 (alleging plaintiff Dignard installed the "Updates" in November 2019); 116, 119 (alleging plaintiff Kovach installed the "Updates"

28  sometime after he purchased his printer in "summer of 2019").

which was automatically displayed for plaintiffs to see, and plaintiffs were required to click to signify their agreement. Arabian Decl. at ¶ 4. The arbitration agreement in the Updater EULA is substantively identical to the arbitration agreement in plaintiffs' software licenses. *Compare* Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14 (software license), *with* ¶ 5, Ex. 2 at ¶ 22 (Updater EULA).

**Prominent Headings and Clear Terms.** Plaintiffs' arbitration agreements begin with a prominent heading in capitalized, bolded font identifying the separate agreement to arbitrate and explain in simple terms the arbitration process and how it differs from a trial in court:

> **DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**
> …
> You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.**

*See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1-2 at ¶ 14.2 (software license) & 2 at ¶ 22.2 (Updater EULA) (emphasis in original).

**Class Action Waiver.** Plaintiffs' arbitration agreements also explicitly set forth the rights plaintiffs waived by agreeing to arbitrate, and contain a separate section in bold, capitalized font notifying plaintiffs of their agreements to waive the right to serve "**AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING**[.]" ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA) (emphasis in original).

**Broad Scope.** Plaintiffs' arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action

between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).[4]

**Delegation of Arbitrability Disputes.** Plaintiffs' arbitration agreements also contain a clear expression of intent to delegate issues of arbitrability to the arbitrator. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").

**Arbitration Before JAMS And Payment Of Fees.** Plaintiffs' arbitration agreements require arbitration before JAMS, pursuant to the rules of JAMS in effect at the time the arbitration is filed, and broadly empower the arbitrator "to grant whatever relief would be available in a court under law or in equity." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA). The agreements further provide that "Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this

---

[4] The arbitration agreements contain a limited carve out—not applicable here— for "a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation," which are required to be heard in court. ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).

1   Agreement."  *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶

2   14.6(c) (software license) & 2 at ¶ 22.6(c) (Updater EULA).

3       **Broad Right To Opt Out.**  Finally, the agreements allowed plaintiffs to opt

4   out within thirty days of their assent to the agreement by sending a letter to "Epson

5   America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach,

6   CA 90806."  *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.7

7   (software license) & 2 at ¶ 22.7 (Updater EULA).  Despite having this option, none

8   of the plaintiffs chose to opt out of their arbitration agreements.  Arabian Decl. at

9   ¶ 8.

10                           **LEGAL STANDARD**

11       The FAA governs the enforcement of arbitration clauses in commercial

12   contracts.[5]  9 U.S.C. §§ 1-16.  Section 2 of the FAA states:

13       A written provision in . . . a contract evidencing a transaction involving
     commerce to settle by arbitration a controversy thereafter arising out of
14   such contract or transaction, or the refusal to perform the whole or any
     part thereof, or an agreement in writing to submit to arbitration an
15   existing controversy arising out of such contract, transaction, or refusal,
     shall be valid, irrevocable, and enforceable, save upon such grounds as
16   exist at law or in equity for the revocation of any contract.

17

18   9 U.S.C. § 2.  "Section 2 is a congressional declaration of a liberal federal policy

19   favoring arbitration agreements . . . ."  *Moses H. Cone Memorial Hosp. v. Mercury*

20   *Const. Corp.*, 460 U.S. 1, 24 (1983).  "The Arbitration Act establishes that, as a

21   matter of federal law, any doubts concerning the scope of arbitrable issues should be

22   _____

23      [5]  The FAA applies where, as here, the arbitration agreement appears in a
     contract involving interstate commerce.  *See* 9 U.S.C § 1; Dkt. No. 1 at ¶ 17
24   (recognizing the parties are diverse for purposes of CAFA jurisdiction).  Further,
     plaintiffs' arbitration agreements contain an explicit FAA choice-of-law clause.  *See*
25   ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.2 (software license)
     & 2 at ¶ 22.2 (Updater EULA) ("You and Epson understand and agree that . . . the
26   Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and
     enforcement of this Section 14").  "An FAA choice-of-law provision in an
27   arbitration agreement is enforceable."  *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2
     (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31
28   (9th Cir. 2015)).

resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation, citation and alterations omitted).

Pursuant to Section 3 of the FAA, if a suit is brought in court:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Once a court determines a claim is subject to arbitration, it lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967).

## ARGUMENT

## I. ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR

The Supreme Court has recognized "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. If the parties have "clearly and unmistakably" agreed that questions of arbitrability must be decided by

the arbitrator, such provisions must be enforced. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted). As the United States Supreme Court recently held, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Rather, "[i]n those circumstances, a court possesses no power to decide the arbitrability issue." *Id.*

Here, plaintiffs' arbitration agreements clearly and unmistakably delegate issues of arbitrability to the arbitrator. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").[6] Courts have repeatedly held the language contained in plaintiffs' arbitration agreements evinces such an intent. *See, e.g., Rent-A-Ctr.*, 561 U.S. at 66 (delegation provision stated "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *Lakhan v. U.S. Sec. Assocs., Inc.*, 2019 WL 175043, at *6 (C.D. Cal. Jan. 11, 2019) (holding agreement that required an arbitrator to "resolve any issue relating to the interpretation,

---

[6]   In addition to the explicit delegation agreements, plaintiffs' agreements also incorporate the JAMS rules, which separately evinces the "clear and unmistakable" intent to commit arbitrability issues to the arbitrator. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at 22.6 (Updater EULA) (arbitration to be conducted under JAMS rules); *Bitstamp Ltd. v. Ripple Labs Inc.*, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (holding that incorporation of the JAMS rules "overcame the default rule and assigned the arbitrability question to the arbitrator.").

formation or enforceability of this Agreement, or any issue relating to whether a Claim is subject to arbitration under this Agreement" was "similar to others that courts in this District have determined clearly and unmistakably provide for threshold issues of arbitrability to be determined by an arbitrator.") (citation omitted).

Because plaintiffs "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, to the extent they challenge the interpretation, applicability, enforceability or formation of their agreements, those issues must be decided by the arbitrator.

## II.     THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFFS ENTERED INTO VALID ARBITRATION AGREEMENTS THAT CLEARLY COVER THE CLAIMS AT ISSUE

Because disputes regarding the existence, scope and validity of the arbitration agreements are reserved for the arbitrator, the Court need not address these issues. However, if the Court were to reach these issues, they too mandate this dispute be sent to arbitration. Under the FAA, arbitration must be compelled where, as in this case: (1) a valid agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, both conditions are met and arbitration is required.

As discussed, plaintiffs concede as owners of Epson printers they were required to "agree to Epson's software license when purchasing and using an Epson printer." ECF No. 1 at ¶ 32. *See also id.* at ¶ 35 ("Under the terms of Epson's software licenses, Plaintiffs . . . authorized Epson to access their printers to apply fixes and upgrades."); Arabian Decl. at ¶ 3, Ex. 1 (software license). Thus, there can be no dispute plaintiffs agreed to the terms of Epson's software license, including the agreement to arbitrate their disputes with Epson. *See, e.g., Smith*, 2019 WL 339542, at *4 (contract formation established where plaintiff "conceded

1  that she entered the agreement in her own complaint").[7]  Additionally, plaintiffs

2  Rabinovich, Famiglietti, Gordon, Szot, Dignard and Kovach reaffirmed their

3  _____

4  [7]    Plaintiffs concede the software license constituted an agreement between themselves and defendant Epson America, Inc.  *See* ECF No. 1 at 1 (defining "Epson" to mean "Epson America, Inc."), ¶ 35 ("Under the terms of Epson's software licenses, Plaintiffs . . . authorized Epson to access their printers to apply fixes and upgrades").  This is consistent with the terms of plaintiffs' agreements, which explicitly include defendant Epson America, Inc. in the arbitration provisions. *See, e.g.,* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14.3 (software license) (among other provisions, requiring notice of any arbitration to be sent directly to "Epson America, Inc.").  *See also* Arabian Decl. at ¶ 5, Ex. 2 at ¶ 22.3 (Updater EULA) (same).  While plaintiffs' own allegations and the terms of their agreements plainly establish Epson has standing to enforce plaintiffs' arbitration agreements, to the extent plaintiffs attempt to contend otherwise, it is worth noting Epson America, Inc. would also have standing to enforce the arbitration agreements: (1) as a third-party beneficiary; (2) under the doctrine of equitable estoppel; and (3) under an agency theory.  On the first, though the arbitration agreements *do* explicitly name Epson America, to "invoke the third party beneficiary exception," Epson need only show "the arbitration clause . . . was made expressly for [its] benefit," and it is "not necessary that the beneficiary be named and identified as an individual." *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838–39 (2013) (quotations and citations omitted).  Here, plaintiffs allege Epson America "is responsible for selling and marketing Epson printers in the United States," (ECF No. 1 at ¶ 14) and assert Epson America is responsible for the software updates at issue in this lawsuit (*id.* at ¶ 3).  The arbitration agreements at issue apply, by their express terms, to users "in the United States," and expressly cover "any dispute, claim, controversy or action" arising out of or related to the Epson hardware, software and updates for which plaintiffs claim Epson America is responsible.  ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 & 2.  The arbitration agreements' explicit reference to Epson America (including as the party who must be notified of the initiation of any arbitration), further confirms the agreements were intended to benefit Epson America.  Additionally, under California law, both species of equitable estoppel would allow enforcement of the arbitration agreements.  First, "if a plaintiff relies on the terms of an agreement to assert his or her claims . . . the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement."  *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009). Here, as but one example, plaintiffs rely on the terms of the license agreement to define the scope of Epson's authority to access their printers, which Epson purportedly exceeded with the software updates at issue (ECF No. 1 at ¶¶ 35-36)— plaintiffs cannot "have it both ways," and must abide by their agreements to arbitrate these claims.  *See id. See also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (equitable estoppel applies where "a signatory must rely on the terms of the written agreement in asserting its claims").  Second, "the equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants."  *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003). Here, there can be no doubt this theory would also apply—plaintiffs' entire complaint is premised on software updates that are the subject of plaintiffs' license agreements and arbitration provisions.  *See, e.g.,* ECF No. 1 at ¶¶ 3 ("Epson designed and delivered software

(footnote continued)

agreements to arbitrate when they were presented with the Updater EULA at the time of their software updates and once again affirmatively assented to the terms. Arabian Decl. at ¶ 5, Ex. 2 (Updater EULA). "Federal courts . . . have recognized the general enforceability of . . . online agreements that require affirmative user assent." *In re Holl*, 925 F.3d 1076, 1085 (9th Cir. 2019).

Further, there can be no dispute plaintiffs' arbitration agreements cover the claims at issue here. Plaintiffs' arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA). Courts analyzing arbitration agreements with similar language have held it must be interpreted broadly. *See, e.g., Amirhamzeh v. Wells Fargo Bank, N.A.*, 2014 WL 12610227, at *1 (N.D. Cal. Oct. 31, 2014) ("The arbitration agreement has an extremely broad scope; it provides that 'any dispute' between the parties is subject to arbitration."). While plaintiffs' claims clearly fall within the scope of their

---

and/or firmware Updates (defined below) to Epson printers that purposely disabled those printers with non-Epson printer cartridges installed."); 33 ("The Software License covers 'any related documentation, firmware, or Updates.'"); 35 ("The Software licenses do not alert owners that these software Updates might render their printer inoperable if they use or attempt to use third-party ink cartridges."). Finally, if accepted as true, plaintiffs' allegations give rise to an agency theory that would permit Epson America's enforcement of the arbitration agreements. *See, e.g., Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) ("If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams, then they are entitled to the benefit of the arbitration provisions."). Specifically, plaintiffs contend Epson America is responsible for the conduct alleged in the complaint (ECF No. 1 at ¶ 3) and allege the software licenses containing the applicable arbitration agreements explicitly govern this conduct (*id.* at ¶ 33). Without the agency relationship alleged by plaintiffs, Epson America would not "belong in this suit at all." *See Dryer*, 40 Cal. 3d at 418.

agreements, to the extent there is any question, all "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24-25.

## III. THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS

Because disputes regarding the interpretation of the arbitration agreements are reserved for the arbitrator, the Court need not determine whether class arbitration is permitted. *See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-85 (2010) (arbitrator made initial determination whether class arbitration was permitted under the parties' agreement).

But again, this is an issue the agreements unambiguously and enforceably resolve. Plaintiffs' agreements clearly prohibit class claims. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA). In *Stolt-Nielsen*, the Supreme Court held "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U.S. at 684 (emphasis in original). The Supreme Court has consistently enforced this precedent and has repeatedly upheld class waivers in arbitration agreements. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.").

The arbitration agreements here are clear and expressly state the parties' intentions that arbitration may not proceed on a class basis. *See* ECF No. 1 at ¶ 32 n. 8; Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA). "[C]ourts and arbitrators must give effect to the contractual rights

1  and expectations of the parties." *Stolt-Nielsen*, 559 U.S. at 682 (internal quotations
2  omitted). Thus, arbitration may not proceed on a class basis.

3  **IV.  PLAINTIFFS' CLAIMS SHOULD BE STAYED PENDING**
4  **RESOLUTION OF ANY ARBITRATION, AND THIS ACTION**
5  **SHOULD BE STAYED PENDING A RULING ON THIS MOTION**

6       Under the FAA, an action compelled to arbitration shall be stayed by the
7  district court pending resolution of the arbitration. 9 U.S.C. § 3. *See also Mendoza*
8  *v. Uber Techs. Inc.*, 2020 WL 2563047, at *2 (C.D. Cal. May 4, 2020) ("This action
9  is STAYED pending resolution of the arbitration proceedings. The Clerk is directed
10  to administratively close the case.").

11      Additionally, because this Court is not the proper forum for plaintiffs' claims,
12  Epson also seeks an order staying all proceedings pending resolution of its motion to
13  compel arbitration (including a stay of all discovery), which would be obviated by
14  an order sending this case to arbitration. Plaintiffs should not be permitted to ignore
15  their arbitration agreements, file a lawsuit in federal court, and force Epson to
16  participate in litigation in violation of the terms of the parties' agreements. For this
17  reason, courts routinely stay proceedings pending the resolution of a motion to
18  compel arbitration. *See, e.g., Mahamedi IP Law, LLP v. Paradice & Li, LLP*, 2017
19  WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (granting "motion to stay discovery
20  until the Court rules on [the] motion to compel arbitration."); *Hotel Greystone Corp.*
21  *v. New York Hotel & Motel Trades Council, AFL-CIO*, 897 F. Supp. 168, 170
22  (S.D.N.Y. 1995) ("[P]etitioner's motion for a preliminary stay pending resolution of
23  the petition for a stay of arbitration and respondent's cross-motion to compel is
24  granted."); *Hamoudeh v. Unitedhealth Grp. Inc.*, 2016 WL 2894870 at *1 (E.D.N.Y.
25  May 17, 2016) (granting "motion to stay this action pending resolution of
26  UnitedHealth's motion to compel arbitration of Plaintiffs' claims.").

27
28

## CONCLUSION

For the foregoing reasons, plaintiffs' claims should be compelled to arbitration and, to the extent plaintiffs raise any defenses to arbitration of their claims, those disputes must be resolved by the arbitrator. The action should be stayed pending resolution of the arbitration and, in the interim, stayed pending resolution of this motion.

DATED: July 20, 2020

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By /s/ Shon Morgan

Shon Morgan
Attorneys for Defendant Epson America, Inc.

1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Shon Morgan (Bar No. 187736)
2      (shonmorgan@quinnemanuel.com)
       John W. Baumann (Bar No. 288881)
3      jackbaumann@quinnemanuel.com
       865 South Figueroa Street, 10th Floor
4    Los Angeles, California 90017-2543
     Telephone:  (213) 443-3000
5    Facsimile:   (213) 443-3100

6    Attorneys for Defendant Epson America,
     Inc.

7

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11   WILLIAM MONDIGO, FELIX              CASE No. 2:20-cv-04400-CBM-GJS
     RABINOVICH, RICHARD
12   FAMIGLIETTI, JESSE GORDON,
     GREGORY SZOT, MARTIN               DECLARATION OF SIRANUSH
13   DIGNARD, and MICHAEL KOVACH,       ARABIAN IN SUPPORT OF
                                        DEFENDANT EPSON AMERICA
14   individually and on behalf of all others  INC.'S MOTION TO COMPEL
     similarly situated,                ARBITRATION AND STAY
15                                      PROCEEDINGS

16             Plaintiffs,

17                                      Date:        August 18, 2020
          vs.                           Time:        10:00 a.m.
18                                      Judge:       Hon. Consuelo B.
     EPSON AMERICA, INC.,                            Marshall
19                                      Courtroom:   8B
20             Defendant.

21

22

23

24

25

26

27

28

# <u>DECLARATION OF SIRANUSH ARABIAN</u>

I, SIRANUSH ARABIAN, declare as follows:

1.     I am the Director, Service and Support Operation for Epson America, Inc. (hereinafter, "Epson").    I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.     I have worked for Epson in various service and support positions since December 1993.   I have held the role of Director, Service and Support Operation since August 2017.   In this role, I have access to and have reviewed Epson's records and other documents that provide the basis for my statements herein.   Through this review and through the course of my regular duties as Director, Service Support Operation, I have personal knowledge of the facts stated herein.

3.     Attached hereto as Exhibit 1 is a true and correct copy of the Epson End User Software License Agreement ("software license"), which remained in effect from 2016 through today.  The terms of the arbitration agreement set forth in Paragraph 14 of the software license did not change during that period.  Exhibit 1 was kept in the ordinary course of Epson's business and retrieved from Epson's records system.

4.     Throughout this period, users setting up an Epson printer have been required to view the software license as part of the set-up process—the software license is automatically displayed for the users to see during this process.  The users are required to click a bubble that appears immediately after the displayed software license to signify their agreement to the terms of the software license.

5.     Attached hereto as Exhibit 2 is a true and correct copy of the Epson End User Software License Agreement ("Updater EULA") that accompanied the software updates in effect for, among others, the Epson Expression Premium XP-7100 All -in-One Printer; Epson XP-830 All-in-One; Epson WF-4740; Epson XP 440; Epson Workforce Pro WS3720 3-in-1; and Epson Workforce 3720.  Exhibit 2 was kept in the ordinary course of Epson's business and retrieved from Epson's records system.

6.     The Updater EULA remained in effect throughout 2019 and 2020 and the terms of the arbitration agreement set forth in Paragraph 22 of the Updater EULA did not change during that period.

7.     To install software updates on (among others) the printers listed in Paragraph 5 above, users were required to view the Updater EULA, which was automatically displayed for the users to see, and the users were required to click, immediately after the displayed Updater EULA, to signify their agreement to its terms.

3

8.      The software license and Updater EULA contain opt-out provisions for customers who wish to opt-out of the arbitration agreements in the software license and Updater EULA.  In the ordinary course of its business, Epson maintains records of any users who choose to opt-out of the arbitration agreements in the software license and Updater EULA.  I have reviewed these records and confirmed Epson did not receive any opt-out notices from plaintiffs William Mondigo, Felix Rabinovich, Richard Famiglietti, Jesse Gordon, Gregory Szot, Martin Dignard, or Michael Kovach.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed July __, 2020, at _____.


                                    By_____
                                         Siranush Arabian

# ARABIAN DECLARATION EXHIBIT 1

**NOTICE TO USER**: PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING OR USING THIS PRODUCT. IF YOU ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES. AN "OPT-OUT" IS AVAILABLE UNDER SECTION 14.7 FOR THOSE WHO WISH TO BE EXCLUDED FROM THE ARBITRATION AND CLASS WAIVER.

This is a legal agreement ("Agreement") between you (an individual or entity, referred to hereinafter as "you") and Seiko Epson Corporation ("Epson") for the enclosed software programs, including any related documentation, firmware, or updates (collectively referred to hereinafter as the "Software"). The Software is provided by Epson and its suppliers for use only with the corresponding Epson brand computer peripheral product (the "Epson Hardware"). BEFORE INSTALLING, COPYING OR OTHERWISE USING THE SOFTWARE, YOU NEED TO

Exhibit 1 - p. 5

REVIEW AND AGREE TO THE TERMS AND
CONDITIONS OF THIS AGREEMENT INCLUDING
THE EPSON PRIVACY POLICY (SEE SECTION 10). If
you agree, click on the Download button. If you do not
agree with the terms and conditions of this Agreement,
click on the browser's back button to return to the
previous page.

Exhibit 1 - p. 6

1.  **Grant of License.**  Epson grants you a limited, nonexclusive license to install and use the Software on hard disks or other computer storage devices, provided that the Software is used <u>only</u> in a single location (e.g., a home or office or place of business) and <u>only</u> in connection with Epson Hardware owned by you.  You may make backup copies of the Software, as necessary, provided the backup is only used to support your use of the Epson Hardware.

2.  **Upgrades and Updates.**  If you acquire an upgrade, updated version, modified version, or additions to or for the Software from Epson, the upgrade, updated version, modified version, or addition, shall be included in the defined term Software and governed by this Agreement. You acknowledge that Epson has no obligation to provide you with any Updates (as defined below in this Section 2) to the Software. Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third-party servers via the Internet to check for available updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug-ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates. If you do not wish to allow Epson to check for available updates to the Software, you may disable this feature by uninstalling EPSON Software Updater. By installing the Software and not disabling any automated check for Updates, if applicable, you hereby agree and consent to automatically request and receive Updates from Epson or third-party servers, and that the terms and conditions of this Agreement shall apply to all of these Updates.

3.  **Other Rights and Limitations.**  You agree not to modify, adapt or translate the Software and further agree not to attempt to reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software.  You may not rent, lease, distribute or lend the Software to third parties.  You may, however, transfer all of your rights to use the Software to another person or legal entity, provided that the recipient also agrees to the terms of this Agreement and you transfer the Software, including all copies, updates and prior versions, and the Epson Hardware, to such person or entity.  The Software is

Exhibit 1 - p. 7

licensed as a single unit, and its component programs may not be separated for some other use.  Further, you agree not to place the Software onto or into a shared environment accessible via a public network such as the Internet or otherwise accessible by others outside the single location referred to in Section 1 above.

4.     **Ownership.**  Title, ownership rights, and intellectual property rights in and to the Software shall remain with Epson or its suppliers. The Software is protected by United States Copyright Law, copyright laws of Japan and international copyright treaties, as well as other intellectual property laws and treaties.  There is no transfer to you of any title to or ownership of the Software and this License shall not be construed as a sale of any rights in the Software.  You agree not to remove or alter any copyright, trademark, registered mark and other proprietary notices on any copies of the Software. Epson and its suppliers reserve all rights not granted.

5.     **Multiple Versions of Software.**  You may receive or obtain the Software in more than one version (e.g. for different operating environments; two or more language translation versions; downloaded from an Epson server or on a CD-ROM), however, regardless of the type or number of copies you receive, you still may use only the media or version appropriate for the license granted in Section 1 above.

6.     **Disclaimer of Warranty and Remedy.**  If you obtained the Software by media from EPSON or a dealer, EPSON warrants that the media on which the Software is recorded will be free from defects in workmanship and materials under normal use for a period of 90 days from the date of delivery to you. If the media is returned to EPSON or the dealer from which the media was obtained within 90 days of the date of delivery to you, and if EPSON determines the media to be defective and provided the media was not subject to misuse, abuse, misapplication or use in defective equipment, EPSON will replace the media, upon your return to EPSON of the Software, including all copies of any portions thereof. You acknowledge and agree that the use of the Software is at your sole risk. THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND. EPSON AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE. Epson does not warrant that the operation of the Software

Exhibit 1 - p. 8

will be uninterrupted, error free, free from viruses or other harmful components or vulnerabilities, or that the functions of the Software will meet your needs or requirements. Epson's sole and exclusive liability and your exclusive remedy for breach of warranty shall be limited to either, at Epson's option, the replacement of the media for the Software or to refund your money upon returning the Software and Epson Hardware.  Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer.  If the above remedy fails for any reason, Epson's entire liability for a breach of warranty shall be limited to a refund of the price paid for the Epson Hardware. Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control. This Limited Warranty is void if failure of the Software resulted from accident, abuse, or misapplication.  THE STATED LIMITED WARRANTIES AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHERS. EPSON DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.  SOME STATES OR JURISDICTIONS, HOWEVER, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, AND IN SUCH STATES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

7.      **Limitation of Liability.**  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL EPSON OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES, WHATSOEVER, WHETHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, whether arising under contract, tort (including negligence), strict liability, breach of warranty, misrepresentation, or otherwise, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS, ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR ARISING OUT OF THIS AGREEMENT, EVEN IF EPSON OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TRANSACTIONS, AND IN SUCH STATES, THE ABOVE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY.

Exhibit 1 - p. 9

8.      **U.S. Government Acquisition of the Software.**  This Section applies to all acquisitions of the Software by or for the U.S. Government ("Government"), or by any prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement, "other transaction" ("OT"), or other activity with the Government.  By accepting delivery of the Software, the Government, any prime contractor, and any subcontractor agree that the Software qualifies as "commercial" computer software within the meaning of FAR Part 12, paragraph (b) of FAR Subpart 27.405, or DFARS Subpart 227.7202, as applicable, and that no other regulation, or FAR or DFARS data rights clause, applies to the delivery of this Software to the Government.  Accordingly, the terms and conditions of this Agreement govern the Government's (and the prime contractor and subcontractor's) use and disclosure of the Software, and supersede any conflicting terms and conditions of the contract, grant, cooperative agreement, OT, or other activity pursuant to which the Software is delivered to the Government.  If this Software fails to meet the Government's needs, if this Agreement is inconsistent in any respect with Federal law, or if the above cited FAR and DFARS provisions do not govern, the Government agrees to return the Software, unused, to Epson.

9.      **Export Restriction.**  You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

10.      **Privacy, Information Collection and Transfer of Data Overseas.**  The Software may have the ability to connect over the Internet to transmit data to and from your computer. For example, if you install the Software, the Software may cause your computer to send information about your Epson Hardware such as model and serial number, country identifier, language code, operating system information, and Epson Hardware usage information to an Epson Internet site which may return promotional or service information to your computer for display. For more information on how Epson collects and uses information provided through the Software, please review the Epson Privacy Policy located at www.epson.com/privacy (if you are located in the U.S.), www.epson.ca/privacy (if you are located in Canada), which is incorporated herein by reference. By agreeing to the

Exhibit 1 - p. 10

terms of this Agreement, you agree to the terms of the Epson Privacy Policy. The Epson Internet site may be located overseas. By installing the Software, you consent to this transfer, processing and storage of your information in and/or outside your country of residence.

11.     **Ink Purchases**. For certain Epson printer products sold in North America, the Software may also display an option to buy ink from Epson. If you click on the buy button, the Software will cause your computer to display Epson Hardware cartridge types and ink levels and provide other information about your cartridges, such as the colors, available cartridge sizes, and prices for replacement ink cartridges, which you may purchase online from Epson.

12.     **Downloadable Updates**. You may also be able to download from an Epson Internet site updates or upgrades to the Software if such updates or upgrades are made available. If you agree to install the Software, any transmissions to or from the Internet, and data collection and use, will be in accordance with Epson's then-current Privacy Policy, and by installing the Software you agree that such then-current Privacy Policy shall govern such activities.

13.     **Epson Accounts and Promotional Messages**. In addition, if you install the Software and register your Epson Hardware with Epson, and/or you create an account at the Epson Store, and provided your consent to such use, you agree that Epson may merge the data collected in connection with installation of the Software, registration of your Epson Hardware and/or creation of your Epson Store account, consisting of personal information and non-personally identifiable information, and use such merged data to send you Epson promotional or service information. If you do not wish to send information about your Epson Hardware or receive promotional or service information, you will be able to disable these features on a Windows system through the Monitoring Preferences section in the driver. On a Mac operating system, you can disable these features by uninstalling the Epson Customer Research Participation and Low Ink Reminder software.

14.     DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS

Exhibit 1 - p. 11

**14.1      Disputes.** The terms of this Section 14 shall apply to all Disputes between you and Epson. The term "Dispute" is meant to have the broadest meaning permissible under law and includes any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis. "DISPUTE" DOES NOT INCLUDE IP CLAIMS, or more specifically, a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation (an "IP Claim"). You and Epson also agree, notwithstanding Section 14.6, that a court, not an arbitrator, may decide if a claim or cause of action is for an IP Claim.

**14.2      Binding Arbitration.** You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.** Pursuant to this Agreement, binding arbitration shall be administered by JAMS, a nationally recognized arbitration authority, pursuant to its code of procedures then in effect for consumer related disputes, but excluding any rules that permit joinder or class actions in arbitration (for more detail on procedure, see Section 14.6 below). You and Epson understand and agree that (a) the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 14, (b) this Agreement memorializes a transaction in interstate commerce, and (c) this Section 14 shall survive termination of this Agreement.

**14.3      Pre-Arbitration Steps and Notice.** Before submitting a claim for arbitration, you and Epson agree to try, for sixty (60) days, to resolve any Dispute informally. If Epson and you do not reach an agreement to resolve the Dispute within the sixty (60) days), you or Epson may commence an arbitration. Notice to Epson must be addressed to: Epson America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach, CA 90806 (the

Exhibit 1 - p. 12

"Epson Address"). The Dispute Notice to you will be sent to the most recent address Epson has in its records for you. For this reason, it is important to notify us if your address changes by emailing us at EAILegal@ea.epson.com or writing us at the Epson Address above. Notice of the Dispute shall include the sender's name, address and contact information, the facts giving rise to the Dispute, and the relief requested (the "Dispute Notice"). Following receipt of the Dispute Notice, Epson and you agree to act in good faith to resolve the Dispute before commencing arbitration.

**14.4** **Small Claims Court**. Notwithstanding the foregoing, you may bring an individual action in the small claims court of your state or municipality if the action is within that court's jurisdiction and is pending only in that court.

**14.5** WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS. YOU AND EPSON AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING WITHOUT LIMITATION FEDERAL OR STATE CLASS ACTIONS, OR CLASS ARBITRATIONS. CLASS ACTION LAWSUITS, CLASS-WIDE ARBITRATIONS, PRIVATE ATTORNEY-GENERAL ACTIONS, AND ANY OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY ARE NOT ALLOWED. ACCORDINGLY, UNDER THE ARBITRATION PROCEDURES OUTLINED IN THIS SECTION, AN ARBITRATOR SHALL NOT COMBINE OR CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS WITHOUT THE WRITTEN CONSENT OF ALL AFFECTED PARTIES TO AN ARBITRATION PROCEEDING.

**14.6** **Arbitration Procedure.** If you or Epson commences arbitration, the arbitration shall be governed by the rules of JAMS that are in effect when the arbitration is filed, excluding any rules that permit arbitration on a class or representative basis (the "JAMS Rules"), available at http://www.jamsadr.com or by calling 1-800-352-5267, and under the rules set forth in this Agreement.

Exhibit 1 - p. 13

All Disputes shall be resolved by a single neutral arbitrator, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator. The arbitrator is bound by the terms of this Agreement. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable. Notwithstanding this broad delegation of authority to the arbitrator, a court may determine the limited question of whether a claim or cause of action is for an IP Claim, which is excluded from the definition of "Disputes" in Section 14.1 above. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator may award you the same damages as a court could, and may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. In some instances, the costs of arbitration can exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court. The arbitrator's award is binding and may be entered as a judgment in any court of competent jurisdiction.

You may choose to engage in arbitration hearings by telephone. Arbitration hearings not conducted by telephone shall take place in a location reasonably accessible from your primary residence, or in Orange County, California, at your option.

a)  Initiation of Arbitration Proceeding. If either you or Epson decides to arbitrate a Dispute, both parties agree to the following procedure:

(i)  Write a Demand for Arbitration. The demand must include a description of the Dispute and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at http://www.jamsadr.com ("Demand for Arbitration").

(ii)  Send three copies of the Demand for Arbitration, plus the appropriate filing fee, to: JAMS, 500 North State College Blvd., Suite 600 Orange, CA 92868, U.S.A.

(iii) Send one copy of the Demand for Arbitration to the other party (same address as the Dispute Notice), or as otherwise agreed by

Exhibit 1 - p. 14

the parties.

b) Hearing Format. During the arbitration, the amount of any settlement offer made shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or Epson is entitled. The discovery or exchange of non-privileged information relevant to the Dispute may be allowed during the arbitration.

c) Arbitration Fees. Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement.

d) Award in Your Favor. For Disputes in which you or Epson seeks $75,000 or less in damages exclusive of attorney's fees and costs, if the arbitrator's decision results in an award to you in an amount greater than Epson's last written offer, if any, to settle the Dispute, Epson will: (i) pay you $1,000 or the amount of the award, whichever is greater; (ii) pay you twice the amount of your reasonable attorney's fees, if any; and (iii) reimburse you for any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing the Dispute in arbitration. Except as agreed upon by you and Epson in writing, the arbitrator shall determine the amount of fees, costs, and expenses to be paid by Epson pursuant to this Section 14.6d).

e) Attorney's Fees. Epson will not seek its attorney's fees and expenses for any arbitration commenced involving a Dispute under this Agreement. Your right to attorney's fees and expenses under Section 14.6(d) above does not limit your rights to attorney's fees and expenses under applicable law; notwithstanding the foregoing, the arbitrator may not award duplicative awards of attorney's fees and expenses.

**14.7 Opt-out. You may elect to opt-out (exclude yourself) from the final, binding, individual arbitration procedure and waiver of class and representative proceedings specified in this Agreement by sending a written letter to the Epson Address within thirty (30) days of your assent to this Agreement (including without limitation the purchase, download, installation of the Software or other applicable use of Epson**

Exhibit 1 - p. 15

Hardware, products and services) that specifies (i) your name,
(ii) your mailing address, and (iii) your request to be excluded
from the final, binding individual arbitration procedure and
waiver of class and representative proceedings specified in this
Section 14. In the event that you opt-out consistent with the
procedure set forth above, all other terms shall continue to
apply, including the requirement to provide notice prior to
litigation.

**14.8     Amendments to Section 14.** Notwithstanding any
provision in this Agreement to the contrary, you and Epson agree
that if Epson makes any future amendments to the dispute
resolution procedure and class action waiver provisions (other
than a change to Epson's address) in this Agreement, Epson will
obtain your affirmative assent to the applicable amendment. If you
do not affirmatively assent to the applicable amendment, you are
agreeing that you will arbitrate any Dispute between the parties in
accordance with the language of this Section 14 (or resolve
disputes as provided for in Section 14.7, if you timely elected to
opt-out when you first assented to this Agreement).

**14.9     Severability.** If any provision in this Section 14 is found
to be unenforceable, that provision shall be severed with the
remainder of this Agreement remaining in full force and effect.
**The foregoing shall not apply to the prohibition against class or
representative actions as provided in Section 14.5. This means
that if Section 14.5 is found to be unenforceable, the entire
Section 14 (but only Section 14) shall be null and void.**

**15.     Jurisdiction.**  Except for Section 14, which is governed by the
Federal Arbitration Act, in the event of a Dispute in which the provisions
in Section 14 are inapplicable, severed from the remainder of this
Agreement, or you opt-out pursuant to the provisions of Section 14.7,
you and Epson both consent to the jurisdiction of your state of
residence.  Such Dispute must be filed no later than one year after the
date the Software is first acquired.  This Agreement will not be
governed by the United Nations Convention on Contracts for the
International Sale of Goods, the application of which is expressly
excluded.

Exhibit 1 - p. 16

Epson End User Software License Agreement | Epson US

16. **For New Jersey Residents.** Notwithstanding any terms set forth in this Agreement, if any of the provisions set forth in Sections 6, 7, or 16 are held unenforceable, void or inapplicable under New Jersey law, then ANY SUCH provision shall not apply TO YOU BUT THE REST OF THE AGREEMENT SHALL REMAIN BINDING ON YOU AND EPSON. NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT, Nothing in this AGREEMENT IS INTENDED TO, NOR shall IT be deemed OR CONSTRUED to, limit any rights available to you UNDER THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

17. **Entire Agreement.** This Agreement is the entire agreement between the parties related to the Software and supersedes any purchase order, communication, advertisement, or representation concerning the Software.

18. **Binding Agreement; Assignees.** This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, assigns and legal representatives.

19. **Severability; Modifications.** Subject to Section 14.8 and 14.9 if any provision herein is found void or unenforceable by a court of competent jurisdiction, it will not affect the validity of the balance of the Agreement, which shall remain valid and enforceable according to its terms. This Agreement may only be modified in writing signed by an authorized representative of Epson.

20. **Termination.** Without prejudice to any other rights Epson has, your license rights under Section 1 above and your warranty rights under Section 6 above, shall automatically terminate upon failure by you to comply with its terms. Upon termination of such rights, you agree that the Software, and all copies thereof, will be immediately destroyed.

21. **Capacity and Authority to Contract.** You represent that you are of the legal age of majority in your state or jurisdiction of residence and have all necessary authority to enter into this Agreement, including, if applicable, due authorization by your employer to enter into this Agreement.

# EPSON is a registered trademark of Seiko Epson

Exhibit 1 - p. 17

Corporation.

© 2019  Epson America, Inc.

Exhibit 1 - p. 18

# ARABIAN DECLARATION
# EXHIBIT 2

## EPSON END USER SOFTWARE LICENSE AGREEMENT

> **NOTICE TO USER: PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING OR USING THIS PRODUCT. IF YOU ARE LOCATED IN THE UNITED STATES, SECTIONS 19–23 OF THIS DOCUMENT APPLY TO YOU. SECTION 22 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES. AN "OPT–OUT" IS AVAILABLE UNDER SECTION 22.7 FOR THOSE WHO WISH TO BE EXCLUDED FROM THE ARBITRATION AND CLASS WAIVER.**
>
> This is a legal agreement ("Agreement") between you (an individual or entity, referred to hereinafter as "you") and Seiko Epson Corporation (including its affiliates, "Epson") for the enclosed software programs, including any related documentation, firmware, or updates (collectively referred to hereinafter as the "Software"). The Software is provided by Epson and its suppliers for use only with the corresponding Epson brand computer peripheral product (the "Epson Hardware"). BEFORE INSTALLING, COPYING OR OTHERWISE USING THE SOFTWARE, YOU NEED TO REVIEW AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING THE EPSON PRIVACY POLICY stated in Section 17. If you agree, click on the Agree ("ACCEPT", "OK" or any similar representation of agreement) button below. If you do not agree with the terms and conditions of this Agreement, click on the Disagree ("EXIT", "Cancel" or any similar representation of disagreement) button and return the Software, along with the packaging and related materials, to Epson or the place of purchase for a full refund.

1. **Grant of License.** Epson grants you a limited, nonexclusive license to (i) download, install and use the Software for your personal and internal business use on hard disks or other computer storage devices, or in the case of a software application (also referred to as "Software"), on the smartphone, tablet, or other mobile device (collectively, "Device"), provided that the Software is used (i) **only** in a single location (e.g., a home or office or place of business), or in the case of a mobile device, on a Device owned or otherwise controlled by you, and (ii) **only** in connection with Epson Hardware owned by you. You may allow other users of the Epson Hardware connected to your network to use the Software, provided that you shall ensure that such users use the Software only in accordance with this Agreement. You agree to be responsible for and indemnify Epson for liabilities incurred as a consequence of use by such users. You may make backup copies of the Software, as necessary, provided the backup is only used to support your use of the Epson Hardware.

2. **Upgrades and Updates.** If you acquire an upgrade, updated version, modified version, or additions to or for the Software from Epson, the upgrade, updated version, modified version, or addition, shall be included in the defined term Software and governed by this Agreement. You acknowledge that Epson has no obligation to provide you with any Updates (as defined below in this Section 2) to the Software. Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third–party servers via the Internet to check for available updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug–ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates. If you installed the EPSON Software Updater and do not wish to allow Epson to check for available updates to the Software, you may disable this feature by uninstalling EPSON Software Updater. By installing the Software and not disabling any automated check for Updates, if applicable, you hereby agree and consent to automatically request and receive Updates from Epson or third–party servers, and that the terms and conditions of this Agreement shall apply to all of these Updates.

3. **Other Rights and Limitations.** You agree not to modify, adapt or translate the Software and further agree not to attempt to reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software. You may not rent, lease, distribute, lend the Software to third parties or incorporate the Software into a revenue generating product or service. You may, however, transfer all of your rights to use the Software to another person or legal entity, provided that the recipient also agrees

Exhibit 2 - p. 19

to the terms of this Agreement and you transfer the Software, including all copies, updates and prior versions, and the Epson Hardware, to such person or entity. The Software is licensed as a single unit, and its component programs may not be separated for some other use. Further, you agree not to place the Software onto or into a shared environment accessible via a public network such as the Internet or otherwise accessible by others outside the single location referred to in Section 1 above.

4.      **Ownership.**  Title, ownership rights, and intellectual property rights in and to the Software shall remain with Epson or its licensors and suppliers. The Software is protected by United States Copyright Law, copyright laws of Japan and international copyright treaties, as well as other intellectual property laws and treaties. There is no transfer to you of any title to or ownership of the Software and this License shall not be construed as a sale of any rights in the Software. You agree not to remove or alter any copyright, trademark, registered mark and other proprietary notices on any copies of the Software. Epson and/or its licensors and suppliers reserve all rights not granted. The Software may also contain images, illustrations, designs and photos ("Materials"), and the copyright of such material belongs to Epson and/or its licensors and suppliers, protected by national and/or international intellectual property laws, conventions and treaties. For clarity, (1) the Materials shall be used for non–commercial purposes only, (2) the Materials shall be edited, adjusted and copied only in the manner designated by the Software, and (3) you may use the Materials only for lawful personal use, home use or as otherwise legally permitted.

5.      **Open Source and Other Third–Party Components.** Notwithstanding the foregoing license grant, you acknowledge that certain components of the Software may be covered by third–party licenses, including so–called "open source" software licenses, which means any software licenses approved as open source licenses by the Open Source Initiative or any substantially similar licenses, including without limitation any license that, as a condition of distribution of the software licensed under such license, requires that the distributor make the software available in source code format (such third–party components, "Third–Party Components"). A list of Third–Party Components, and associated license terms (as required), for particular versions of the Software is indicated at the end of this Agreement, relevant user manual/CD, or the license information displayed on your Device/in Software. To the extent required by the licenses covering Third–Party Components, the terms of such licenses will apply in lieu of the terms of this Agreement. To the extent the terms of the licenses applicable to Third–Party Components prohibit any of the restrictions in this Agreement with respect to such Third–Party Components, such restrictions will not apply to such Third–Party Component.

6.      **Multiple Versions of Software.**  You may receive or obtain the Software in more than one version (e.g. for different operating environments; two or more language translation versions; downloaded from an Epson server or on a CD–ROM), however, regardless of the type or number of copies you receive, you still may use only the media or version appropriate for the license granted in Section 1 above.

7.      **Disclaimer of Warranty and Remedy.**  If you obtained the Software by media from Epson or a dealer, Epson warrants that the media on which the Software is recorded will be free from defects in workmanship and materials under normal use for a period of 90 days from the date of delivery to you. If the media is returned to Epson or the dealer from which the media was obtained within 90 days of the date of delivery to you, and if Epson determines the media to be defective and provided the media was not subject to misuse, abuse, misapplication or use in defective equipment, Epson will replace the media, upon your return to Epson of the Software, including all copies of any portions thereof. You acknowledge and agree that the use of the Software is at your sole risk. THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND. EPSON AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE. Epson does not warrant that the operation of the Software will be uninterrupted, error free, free from viruses or other harmful components or vulnerabilities, or that the functions of the Software will meet your needs or requirements. Epson's sole and exclusive liability and your exclusive remedy for breach of warranty shall be limited to either, at Epson's option, the replacement of the media for the Software or to refund your money upon returning the Software and Epson Hardware. Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer. If the above remedy

Exhibit 2 - p. 20

fails for any reason, Epson's entire liability for a breach of warranty shall be limited to a refund of the price paid for the Epson Hardware.  Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control.  This Limited Warranty is void if failure of the Software resulted from accident, abuse, or misapplication.  THE STATED LIMITED WARRANTIES AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHERS. EPSON DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF NON–INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.  SOME STATES OR JURISDICTIONS, HOWEVER, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, AND IN SUCH STATES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

8.    **Limitation of Liability.**  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL EPSON OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES, WHATSOEVER, WHETHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHETHER ARISING UNDER CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, BREACH OF WARRANTY, MISREPRESENTATION, OR OTHERWISE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS, ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE, OR ARISING OUT OF THIS AGREEMENT, EVEN IF EPSON OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TRANSACTIONS, AND IN SUCH STATES, THE ABOVE LIMITATIONS AND EXCLUSIONS MAY NOT APPLY.

9.    **U.S. Government Acquisition of the Software.**  This Section applies to all acquisitions of the Software by or for the U.S. Government ("Government"), or by any prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement, "other transaction" ("OT"), or other activity with the Government.  By accepting delivery of the Software, the Government, any prime contractor, and any subcontractor agree that the Software qualifies as "commercial" computer software within the meaning of FAR Part 12, paragraph (b) of FAR Subpart 27.405, or DFARS Subpart 227.7202, as applicable, and that no other regulation, or FAR or DFARS data rights clause, applies to the delivery of this Software to the Government.  Accordingly, the terms and conditions of this Agreement govern the Government's (and the prime contractor and subcontractor's) use and disclosure of the Software, and supersede any conflicting terms and conditions of the contract, grant, cooperative agreement, OT, or other activity pursuant to which the Software is delivered to the Government.  If this Software fails to meet the Government's needs, if this Agreement is inconsistent in any respect with Federal law, or if the above cited FAR and DFARS provisions do not govern, the Government agrees to return the Software, unused, to Epson.

10.    **Export Restriction.**  You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

11.    **Entire Agreement.**  This Agreement is the entire agreement between the parties related to the Software and supersedes any purchase order, communication, advertisement, or representation concerning the Software.

12.    **Binding Agreement; Assignees**.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, assigns and legal representatives.

13.    **Severability**; **Modifications**.  If any provision herein is found void or unenforceable by a court of competent jurisdiction (subject to Section 22.8 and 22.9 if you are a located in the U.S.), it will not affect the validity of the balance of the Agreement, which shall remain valid and enforceable according to its terms.  This Agreement may only be modified in writing signed by an authorized representative of Epson.

14.    **Indemnification**.  You agree that you will indemnify and hold harmless, and upon Epson's request, defend Epson and its directors, officers, shareholders, employees and agents from and against any and all

Exhibit 2 - p. 21

losses, liabilities, damages, costs, expenses (including reasonable attorneys' fees), actions, suits, and claims arising from (i) any breach of any of your obligations in this Agreement or (ii) any use of the Software or the Epson Hardware. If Epson asks you to defend any such action, suit or claim, Epson will have the right, at its own expense, to participate in the defense thereof with counsel of its choice. You will not settle any third-party claims for which Epson is entitled to indemnification without the prior written approval of Epson.

15. **Termination**. Without prejudice to any other rights Epson has, your license rights under Section 1 above and your warranty rights under Section 7 above, shall automatically terminate upon failure by you to comply with this Agreement. Upon termination of such rights, you agree that the Software, and all copies thereof, will be immediately destroyed.

16. **Capacity and Authority to Contract.** You represent that you are of the legal age of majority in your state or jurisdiction of residence and have all necessary authority to enter into this Agreement, including, if applicable, due authorization by your employer to enter into this Agreement.

17. **Privacy, Information Processing.** The Software may have the ability to connect over the Internet to transmit data to and from your Device. For example, if you install the Software, the Software may cause your Device to send information about your Epson Hardware such as model and serial number, country identifier, language code, operating system information, and Epson Hardware usage information to an Epson Internet site which may return promotional or service information to your Device for display. Any processing of information provided through the Software, shall be according to applicable data protection laws and the Epson Privacy Policy located at https://global.epson.com/privacy/area_select_confirm_eula.html. To the extent permitted by applicable laws, by agreeing to the terms of this Agreement and by installing the Software, you consent to the processing and storage of your information in and/or outside your country of residence. If there is a specific privacy policy incorporated into the Software and/or displayed when you use the Software (for example, in the case of certain software application software), such specific privacy policy shall prevail over the Epson Privacy Policy stated above.

18. **Third Party Websites.** You may, through hypertext or other computer links from the Software, gain access to websites and use certain services that are not under the control of or operated by Epson, but rather are controlled by third parties. You acknowledge and agree that Epson is not responsible for such third party sites or services, including their accuracy, completeness, timeliness, validity, copyright compliance, legality, decency, quality, or any other aspect thereof. These third party websites/services are subject to different terms and conditions and when you access and use third party websites/services, you will be legally bound by the terms and conditions of those websites/services. If there is a conflict between this Agreement and terms and conditions of third party websites/services, the third party websites'/services' terms and conditions will govern with respect to your access and use of those websites/services. Although Epson may provide a link to a third party website/service from the Software, such a link is not an authorization, endorsement, sponsorship or affiliation by Epson with respect to such website/services, its content, its owners or its providers. Epson provides such links for your reference and convenience only. Accordingly, Epson makes no representations whatsoever concerning such websites/services and does not provide any support related to such third party sites or services. Epson has not tested any information, products or software found on such websites/services and therefore cannot make any representations whatsoever with respect thereto. You agree that Epson is not responsible for the content or operation of such websites/services, and it is up to you to take precautions to ensure that whatever you select is free of items such as viruses, worms, Trojan horses and other items of a destructive nature. You are solely responsible for determining the extent to which you may use any content at any other websites/services to which you link from this Software.

## (IF YOU ARE LOCATED IN THE UNITED STATES, THE FOLLOWING SECTIONS 19 – 23 APPLY TO YOU)

Exhibit 2 - p. 22

19.    **Ink Purchases.**  For certain Epson printer products sold in North America, the Software may also display an option to buy ink from Epson.  If you click on the buy button, the Software will cause your Device to display Epson Hardware cartridge types and ink levels and provide other information about your cartridges, such as the colors, available cartridge sizes, and prices for replacement ink cartridges, which you may purchase online from Epson.

20.    **Downloadable Updates.**  You may also be able to download from an Epson Internet site updates or upgrades to the Software if such updates or upgrades are made available.  If you agree to install the Software, any transmissions to or from the Internet, and data collection and use, will be in accordance with Epson's then–current Privacy Policy, and by installing the Software you agree that such then–current Privacy Policy shall govern such activities.

21.    **Epson Accounts and Promotional Messages.**  In addition, if you install the Software and register your Epson Hardware with Epson, and/or you create an account at the Epson Store, and provided your consent to such use, you agree that Epson may merge the data collected in connection with installation of the Software, registration of your Epson Hardware and/or creation of your Epson Store account, consisting of personal information and non–personally identifiable information, and use such merged data to send you Epson promotional or service information.  If you do not wish to send information about your Epson Hardware or receive promotional or service information, you will be able to disable these features on a Windows system through the Monitoring Preferences section in the driver.  On a Mac operating system, you can disable these features by uninstalling the Epson Customer Research Participation and Low Ink Reminder software.

22.    **DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**

22.1    **Disputes.**  The terms of this Section 22 shall apply to all Disputes between you and Epson.  The term "Dispute" is meant to have the broadest meaning permissible under law and includes any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis.  "DISPUTE" DOES NOT INCLUDE IP CLAIMS, or more specifically, a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation (an "IP Claim").  You and Epson also agree, notwithstanding Section 22.6, that a court, not an arbitrator, may decide if a claim or cause of action is for an IP Claim.

22.2    **Binding Arbitration.**  You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement.  **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED**.  Pursuant to this Agreement, binding arbitration shall be administered by JAMS, a nationally recognized arbitration authority, pursuant to its code of procedures then in effect for consumer related disputes, but excluding any rules that permit joinder or class actions in arbitration (for more detail on procedure, see Section 22.6 below).  You and Epson understand and agree that (a) the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 22, (b) this Agreement memorializes a transaction in interstate commerce, and (c) this Section 22 shall survive termination of this Agreement.

22.3    **Pre–Arbitration Steps and Notice.**  Before submitting a claim for arbitration, you and Epson agree to try, for sixty (60) days, to resolve any Dispute informally.  If Epson and you do not reach an agreement to resolve the Dispute within the sixty (60) days, you or Epson may commence an arbitration. Notice to Epson must be addressed to: Epson America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach, CA 90806 (the "Epson Address").  The Dispute Notice to you will be sent to the most recent address Epson has in its records for you.  For this reason, it is

Exhibit 2 - p. 23

important to notify us if your address changes by emailing us at EAILegal@ea.epson.com or writing us at the Epson Address above. Notice of the Dispute shall include the sender's name, address and contact information, the facts giving rise to the Dispute, and the relief requested (the "Dispute Notice"). Following receipt of the Dispute Notice, Epson and you agree to act in good faith to resolve the Dispute before commencing arbitration.

22.4  **Small Claims Court.**  Notwithstanding the foregoing, you may bring an individual action in the small claims court of your state or municipality if the action is within that court's jurisdiction and is pending only in that court.

22.5  **WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS.  YOU AND EPSON AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING WITHOUT LIMITATION FEDERAL OR STATE CLASS ACTIONS, OR CLASS ARBITRATIONS. CLASS ACTION LAWSUITS, CLASS–WIDE ARBITRATIONS, PRIVATE ATTORNEY–GENERAL ACTIONS, AND ANY OTHER PROCEEDING WHERE SOMEONE ACTS IN A REPRESENTATIVE CAPACITY ARE NOT ALLOWED.  ACCORDINGLY, UNDER THE ARBITRATION PROCEDURES OUTLINED IN THIS SECTION, AN ARBITRATOR SHALL NOT COMBINE OR CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS WITHOUT THE WRITTEN CONSENT OF ALL AFFECTED PARTIES TO AN ARBITRATION PROCEEDING.**

22.6  **Arbitration Procedure.**  If you or Epson commences arbitration, the arbitration shall be governed by the rules of JAMS that are in effect when the arbitration is filed, excluding any rules that permit arbitration on a class or representative basis (the "JAMS Rules"), available at http://www.jamsadr.com or by calling 1–800–352–5267, and under the rules set forth in this Agreement.  All Disputes shall be resolved by a single neutral arbitrator, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator.  The arbitrator is bound by the terms of this Agreement.  The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.  Notwithstanding this broad delegation of authority to the arbitrator, a court may determine the limited question of whether a claim or cause of action is for an IP Claim, which is excluded from the definition of "Disputes" in Section 22.1 above.  The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity.  The arbitrator may award you the same damages as a court could, and may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.  In some instances, the costs of arbitration can exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court.  The arbitrator's award is binding and may be entered as a judgment in any court of competent jurisdiction.

You may choose to engage in arbitration hearings by telephone.  Arbitration hearings not conducted by telephone shall take place in a location reasonably accessible from your primary residence, or in Orange County, California, at your option.

  a)  Initiation of Arbitration Proceeding.  If either you or Epson decides to arbitrate a Dispute, both parties agree to the following procedure:

  (i)  Write a Demand for Arbitration.  The demand must include a description of the Dispute and the amount of damages sought to be recovered.  You can find a copy of a Demand for Arbitration at http://www.jamsadr.com ("Demand for Arbitration").

  (ii)  Send three copies of the Demand for Arbitration, plus the appropriate filing fee, to: JAMS, 500 North State College Blvd., Suite 600 Orange, CA 92868, U.S.A.

Exhibit 2 - p. 24

(iii)    Send one copy of the Demand for Arbitration to the other party (same address as the Dispute Notice), or as otherwise agreed by the parties.

b)    **Hearing Format.**  During the arbitration, the amount of any settlement offer made shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or Epson is entitled.  The discovery or exchange of non-privileged information relevant to the Dispute may be allowed during the arbitration.

c)    **Arbitration Fees.**  Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement.

d)    **Award in Your Favor.**  For Disputes in which you or Epson seeks $75,000 or less in damages exclusive of attorney's fees and costs, if the arbitrator's decision results in an award to you in an amount greater than Epson's last written offer, if any, to settle the Dispute, Epson will: (i) pay you $1,000 or the amount of the award, whichever is greater; (ii) pay you twice the amount of your reasonable attorney's fees, if any; and (iii) reimburse you for any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing the Dispute in arbitration.  Except as agreed upon by you and Epson in writing, the arbitrator shall determine the amount of fees, costs, and expenses to be paid by Epson pursuant to this Section 22.6d).

e)    **Attorney's Fees.**  Epson will not seek its attorney's fees and expenses for any arbitration commenced involving a Dispute under this Agreement.  Your right to attorney's fees and expenses under Section 22.6(d) above does not limit your rights to attorney's fees and expenses under applicable law; notwithstanding the foregoing, the arbitrator may not award duplicative awards of attorney's fees and expenses.

22.7   **Opt–out.  You may elect to opt–out (exclude yourself) from the final, binding, individual arbitration procedure and waiver of class and representative proceedings specified in this Agreement by sending a written letter to the Epson Address within thirty (30) days of your assent to this Agreement (including without limitation the purchase, download, installation of the Software or other applicable use of Epson Hardware, products and services) that specifies (i) your name, (ii) your mailing address, and (iii) your request to be excluded from the final, binding individual arbitration procedure and waiver of class and representative proceedings specified in this Section 22.  In the event that you opt–out consistent with the procedure set forth above, all other terms shall continue to apply, including the requirement to provide notice prior to litigation.**

22.8   **Amendments to Section 22.**  Notwithstanding any provision in this Agreement to the contrary, you and Epson agree that if Epson makes any future amendments to the dispute resolution procedure and class action waiver provisions (other than a change to Epson's address) in this Agreement, Epson will obtain your affirmative assent to the applicable amendment.  If you do not affirmatively assent to the applicable amendment, you are agreeing that you will arbitrate any Dispute between the parties in accordance with the language of this Section 22 (or resolve disputes as provided for in Section 22.7, if you timely elected to opt–out when you first assented to this Agreement).

22.9   **Severability.**  If any provision in this Section 22 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect.  **The foregoing shall not apply to the prohibition against class or representative actions as provided in Section 22.5.  This means that if Section 22.5 is found to be unenforceable, the entire Section 22 (but only Section 22) shall be null and void.**

23.   **For New Jersey Residents.**  NOTWITHSTANDING ANY TERMS SET FORTH IN THIS AGREEMENT, IF ANY OF THE PROVISIONS SET FORTH IN SECTIONS 7 OR 8 ARE HELD UNENFORCEABLE, VOID OR INAPPLICABLE

Exhibit 2 - p. 25

UNDER NEW JERSEY LAW, THEN ANY SUCH PROVISION SHALL NOT APPLY TO YOU BUT THE REST OF THE AGREEMENT SHALL REMAIN BINDING ON YOU AND EPSON.  NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT, NOTHING IN THIS AGREEMENT IS INTENDED TO, NOR SHALL IT BE DEEMED OR CONSTRUED TO, LIMIT ANY RIGHTS AVAILABLE TO YOU UNDER THE TRUTH−IN−CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

Rev. December 2018

Exhibit 2 - p. 26

<table>
<tr><td>1</td><td></td></tr>
<tr><td>2</td><td></td></tr>
<tr><td>3</td><td></td></tr>
<tr><td>4</td><td></td></tr>
<tr><td>5</td><td></td></tr>
<tr><td>6</td><td></td></tr>
<tr><td>7</td><td></td></tr>
</table>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated, | CASE No. 2:20-cv-04400-CBM-GJS |
|---|---|
| Plaintiffs, | **[PROPOSED] ORDER GRANTING DEFENDANT EPSON AMERICA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| vs. | Date: August 18, 2020<br>Time: 10:00 a.m.<br>Judge: Hon. Consuelo B. Marshall<br>Courtroom: 8B |
| EPSON AMERICA, INC., | |
| Defendant. | |

**[PROPOSED] ORDER**

Before the Court is defendant Epson America, Inc.'s Motion to Compel Arbitration and Stay Proceedings. Having considered the briefing, evidence, and arguments raised by the parties in support of and in opposition to the Motion, the Court GRANTS in full the defendant's Motion.

For all the reasons stated in defendants' Motion, this action is compelled to arbitration, and to the extent plaintiffs have raised any disputes regarding the arbitrability of their claims, those disputes must be resolved by the arbitrator. This action is STAYED pending resolution of the arbitration proceedings. The Clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated: _____

Hon. Consuelo B. Marshall
United States District Judge

# EXHIBIT C

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendant Epson America,
Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>       vs.<br><br>EPSON AMERICA, INC.,<br><br>              Defendant. | CASE No. 2:20-cv-04400-CBM-GJS<br><br>**DEFENDANT EPSON AMERICA INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;**<br><br>Date:        September 29, 2020<br>Time:        10:00 a.m.<br>Judge:       Hon. Consuelo B. Marshall<br>Courtroom:  8B |

# I.   ANY *MCGILL* CONCERNS HAVE BEEN DELEGATED TO THE ARBITRATOR TO DECIDE

Plaintiffs' sole argument to avoid arbitration is the (misplaced) contention that the arbitration provision impermissibly waives the right to seek "public injunctive relief" under the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).  Their waiver concern is unfounded, but in any event the agreements delegate this threshold issue to the arbitrator.   ECF No. 21-2 at ¶ 14.6[1] ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").

Where, as here, the arbitration agreement delegates arbitrability issues, courts uniformly agree that challenges premised on *McGill* must be sent to arbitration. *See, e.g., Moffett v. Recording Radio Film Connection, Inc.*, 2019 WL 6898955, at *7 (C.D. Cal. Oct. 4, 2019) (Gutierrez, J.) ("Courts have found, post-*McGill*, that where there is a delegation provision the public injunctive relief question is reserved to the arbitrator.") (collecting cases).

Plaintiffs raise three arguments to avoid this result: (1) the delegation agreement is not "clear and unmistakable" (Opp. at 9-10); (2) the delegation clause itself somehow waives the ability to seek public injunctive relief (Opp. at 11); and (3) questions of "validity" have not been delegated to the arbitrator (Opp. at 11-12). Each of these contentions can be readily dispatched.

**The Delegation Agreement Is Clear And Unmistakable.**  As shown in Epson's opening memorandum, courts have repeatedly held the language in

---

[1]   Plaintiffs recognize the Software License and Updater EULA "contain the same Arbitration Clause."  Opp. at 1 n. 1.  Accordingly, in the interest of brevity, Epson cites only the arbitration agreement in the Software License throughout this brief.  *See* ECF No. 21-2,

1   plaintiffs' arbitration agreements evinces the "clear and unmistakable" intent

2   necessary to delegate issues of arbitrability.  Mot. at 7-8 (citing *Rent-A-Ctr., West,*

3   *Inc. v. Jackson*, 561 U.S. 63, 66 (2010); *Lakhan v. U.S. Sec. Assocs., Inc.*, 2019 WL

4   175043, at *6 (C.D. Cal. Jan. 11, 2019)).  Plaintiffs' contention to the contrary is

5   premised on a purported inconsistency—they argue a "Severability" clause outside

6   the arbitration agreement creates "ambiguity" by recognizing that "a court of

7   competent jurisdiction" could determine some provision in the Software License

8   agreement is "void or unenforceable."  Opp. at 9-10.

9       Courts have consistently rejected this *exact* argument following the Ninth

10   Circuit's decision in *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir.

11   2016).  *See, e.g., Taylor v. Shutterfly, Inc.*, 2018 WL 4334770, at *5 (N.D. Cal. Sept.

12   11, 2018) ("As the Ninth Circuit held, no matter how broad the arbitration clause,

13   the parties may need to invoke the jurisdiction of a court for adjudicating claims that

14   are not covered by their arbitration agreement or to seek other remedies. . . .

15   Accordingly, here the reference to a 'court of competent jurisdiction' in one

16   provision of the Terms of Use does not render the express delegation clause of the

17   Arbitration Agreement ambiguous. As the Ninth Circuit held in *Mohamed*, the

18   purported conflict is 'artificial.'"); *MegaCorp Logistics LLC v. Turvo, Inc.*, 2018

19   WL 3619656, at *6 (N.D. Cal. July 30, 2018) ("[R]eference to a court of competent

20   jurisdiction in one provision in the Consulting Services Agreement does not render

21   the delegation clause of the arbitration provision ambiguous."); *Miller v. Time*

22   *Warner Cable Inc.*, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("the mere

23   reference to a court making decisions based upon the Subscriber Agreement is

24   insufficient to undermine its explicit [delegation] provision"); *McLellan v. Fitbit,*

25   *Inc.*, 2017 WL 4551484, at *4 (N.D. Cal. Oct. 11, 2017) (holding the "severability

26   statement [did] not make ambiguous the parties' delegation of gateway issues").

27       Unsurprisingly, plaintiffs cannot cite a single case within the Ninth Circuit

28   that supports their argument, relying instead on a California state court case that pre-

dated the Ninth Circuit's decision in *Mohamed*.  Opp. at 9-10 (citing *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012)).  Plaintiffs' reliance on a state court case is entirely misplaced—instead, the substantive law of arbitrability established by the Ninth Circuit's decision in *Mohamed* controls.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (where, as here, the arbitration agreement is governed by the FAA, "the court is to make the arbitrability determination by applying the federal substantive law of arbitrability[.]"); *Rent-A-Ctr.*, 561 U.S. at 69 ("the FAA operates on this additional [delegation] agreement just as it does on any other.").

**The Delegation Clause Does Not (And Cannot) Waive The Right To Seek Public Injunctive Relief.**  Plaintiffs next contend the delegation agreement itself waives the right to seek public injunctive relief and thus runs afoul of *McGill*.  Opp. at 11.  This argument fundamentally misunderstands the nature of a delegation agreement.  As the Supreme Court has repeatedly recognized, the delegation clause merely constitutes agreement about *who* will decide questions of arbitrability: the court or the arbitrator.  *See, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("When a dispute arises, the parties sometimes may disagree not only about the merits of the dispute but also about the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute. Who decides that threshold arbitrability question? . . . The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.").

The delegation agreement does *not* waive the right to seek any particular relief in arbitration.  Indeed, the delegation clause here consists solely of the following sentence (none of which plaintiffs even attempt to characterize as a purported "waiver"):

> The arbitrator, and not any federal, state or local court or agency, shall
> have exclusive authority to resolve all disputes arising out of or relating

to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.

ECF No. 21-2 at ¶ 14.6.[2]  Plaintiffs instead try to interject language from outside the delegation agreement to argue it waives the right to seek public injunctive relief.  Opp. at 11.  As courts have consistently held, however, the delegation provision constitutes a *separate* agreement—covering the limited issue of *who* will decide arbitrability disputes—and it cannot be challenged based on terms outside that specific provision.  *Rent-A-Ctr.*, 561 U.S. at 70-72 ("Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. . . . Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid "); *Brennan*, 796 F.3d at 1133 ("The arbitration clause at issue, as in *Rent–A–Center*, is the Delegation Provision . . . the only issue before this Court is *who*—an arbitrator or a judge—should decide the forum . . . and that question is resolved by determining the validity of the Delegation Provision alone.") (quotations, citations omitted, and emphasis in original).

Indeed, if plaintiffs were allowed to rely on purported waiver language outside the delegation agreement to avoid arbitrating issues of arbitrability, this would render meaningless the wall of authority holding that, "post-*McGill*, . . . where there is a delegation provision the public injunctive relief question is reserved to the arbitrator."  *See Moffett*, 2019 WL 6898955, at *7 (collecting cases).  Had the courts in those cases simply imputed the purported waiver language into the delegation agreements, as plaintiffs attempt here, the courts could have bypassed the delegation issue to address the *McGill* challenges.  Of course, that is not what happened, nor would it be consistent with Supreme Court authority requiring

---

[2]  This conclusion is further confirmed by the very next sentence, which refers to the provision as the "broad delegation of authority to the arbitrator[.]"  *Id.*

challenges *specific* to the delegation provision. *E.g., Schein*, 139 S. Ct. at 530 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."); *Rent-A-Ctr.*, 561 U.S. at 70-72.

**<u>Validity Question Have Been Delegated To The Arbitrator.</u>**  Plaintiffs' last-ditch effort to avoid the express delegation agreements depends on a nonsensically over-narrow interpretation of the language: plaintiffs contend these provisions do not apply because this is purportedly a dispute about the "validity" of the arbitration agreement, and the delegation agreements apply only to issues of "enforceability," not "validity."  Opp. at 11-12.  But the question whether the agreements will be enforced necessitates a determination whether the agreements are valid. *Dornaus v. Best Buy Co.*, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019) ("Given that the Agreement contains invalid terms under *McGill*, the court turns to their effect on the enforceability of the Agreement.").

In any event, plaintiffs conveniently ignore that the agreements also expressly state an arbitrator will resolve "any claim that all or any part of this Agreement is void or voidable." ECF No. 21-2 at ¶ 14.6.  As plaintiffs concede, their *McGill* argument raises the question whether a provision in the agreement (or, in plaintiffs' view, the whole agreement) is "void."  Opp. at 12 ("the invalidation of the clause prohibiting a claim for public injunctive relief renders the entire arbitration clause void.").  This issue is expressly reserved for the arbitrator.

Moreover, even beyond the delegation language quoted above—which covers the dispute—the agreements also incorporate the JAMS rules, which courts have found separately constitutes the necessary "clear and unmistakable" intent to delegate issues of arbitrability. *E.g. Amtax Holdings 463, LLC v. KDF Communities-Hallmark, LLC*, 2018 WL 4743386, at *5 (C.D. Cal. Jan. 9, 2018) ("[T]he incorporation of the JAMS rules constitutes 'clear and unmistakable' evidence of the parties' intent to delegate arbitrability to the arbitrator.").  The

REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

JAMS rules provide the arbitrator, and not a court, shall resolve "disputes over the formation, existence, *validity*, interpretation or scope of the agreement under which Arbitration is sought[.]" JAMS Rule 11(b) (emphasis added). Thus, there can be no doubt the validity of the arbitration agreements is an issue reserved for the arbitrator.

## II. SHOULD THE COURT REACH THE ISSUE, PLAINTIFFS' ARBITRATION AGREEMENTS DO NOT RUN AFOUL OF *MCGILL*

Because arbitrability disputes must be resolved by the arbitrator, the Court need not reach plaintiffs' underlying challenge to the arbitration provisions. *Schein*, 139 S. Ct. at 530; *Rent-A-Ctr.*, 561 U.S. at 70-72. In any event, the agreements do not effect any waiver of plaintiffs' right to seek public injunctive relief.

*First*, plaintiffs make the perplexing argument that the class-action waiver somehow amounts to a waiver of the right to public injunctive relief. Opp. at 2. But nothing in this waiver of *group* claims prohibits any individual plaintiff from seeking public injunctive relief. Indeed, courts have repeatedly recognized— including the *McGill* court itself—that an action for public injunctive relief is an *individual* (not a representative) action. *McGill*, 2 Cal. 5th at 959 ("[W]e also conclude that a request for such [public injunctive] relief does not constitute the pursuit of 'representative claims or relief on behalf of others'") (alterations omitted). *See also Lee v. Postmates Inc.*, 2018 WL 4961802, at *9 (N.D. Cal. Oct. 15, 2018) ("The court [in *McGill*] noted that a request for public injunctive relief does not require a claim to be brought as a class or representative action, but is instead a remedy available to an individual private plaintiff[.]"); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018) ("Magana argues that the Arbitration Agreement has a Class Action Waiver provision which states that 'an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action[.]' . . . But a claim for public injunctive relief is not a class, collective, or representative action."). Thus, the class and representative action

1    waiver in plaintiffs' agreements cannot be characterized as a waiver of the right to

2    seek public injunctive relief.

3        ***Second***, plaintiffs have not advanced any argument that the right to public

4    injunctive relief is waived as a result of the language in the arbitration agreements

5    that states the arbitrator may award "injunctive relief only in favor of the individual

6    party seeking relief and only to the extent necessary to provide relief warranted by

7    that party's individual claim." *See, e.g., Abram v. C.R. England, Inc.*, 2020 WL

8    5077373, at *3 (C.D. Cal. June 23, 2020) ("Plaintiff has waived this argument

9    because she failed to raise it in her Arbitration Opposition. In her Arbitration

10   Opposition, Plaintiff exclusively focused on a ***different*** provision of the Arbitration

11   Agreement (on a ***different*** page of the agreement)") (emphasis in original); *Brown v.*

12   *DIRECTV, LLC*, 2019 WL 6604879, at *10 (C.D. Cal. Aug. 5, 2019) ("Plaintiff

13   waived any defense to arbitration predicated on the *McGill* Rule by omitting it from

14   her opposition to DIRECTV's motion.").

15       Although plaintiffs never frame their challenge to the arbitration agreements

16   in these terms, to the extent plaintiffs pivot to contend this language effects a waiver

17   of public injunctive relief, this argument fails on the law. The California Supreme

18   Court in *McGill* recognized a claim for public injunctive relief is an ***individual***

19   claim. *McGill*, 2 Cal. 5th at 959. Thus, under these agreements, an arbitrator's

20   award of injunctive relief "in favor of the individual party seeking relief" could

21   include public injunctive relief to the extent warranted by that individual's

22   claim.[3] This interpretation is further bolstered by the express statement in the

---

[3]    This language stands in contrast, for example, to the provision in *Blair v.*
*Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), on which plaintiffs rely, which
prohibited the arbitrator from awarding "relief that would ***affect RAC account***
***holders other than you***." *Id.* at 831 (emphasis added). Here, the agreements'
statement the arbitrator may award injunctive relief "only in favor of the individual
party seeking relief" and to the "extent necessary to provide relief warranted by that
individual party's claim" would not prohibit relief that *affects* others, as in *Blair*,
because, as explained, "public injunctive relief" is a remedy available to an
individual for an individual claim. *Compare also McGill*, 2 Cal. 5th at 952, 956
    (footnote continued)

agreements that the "arbitrator shall be empowered to grant ***whatever relief would be available in a court under law or in equity***." ECF No. 21-2 at ¶ 14.6 (emphasis added). To the extent there is any ambiguity or doubt as to whether the arbitrator has authority to grant such relief (there is not), these must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

***Third,*** even if the agreements did prohibit public injunctive relief (they do not), plaintiffs here do not seek such relief, and *McGill* is thus inapplicable. *See, e.g., Sponheim v. Citibank, N.A.*, 2019 WL 2498938 at *5 (C.D. Cal. June 10, 2019) ("[T]he Court finds that Sponheim does not seek public injunctive relief . . . Accordingly, *McGill* does not invalidate the Arbitration Provision[.]"); *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042 at *6-8 (C.D. Cal. Sept. 18, 2018) (same); *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580 at *9-10 (C.D. Cal. June 1, 2017) (same). Rather, plaintiffs' claims are asserted on behalf of a class of persons "who ***purchased*** a printer from Epson," and plaintiffs rely on purported misrepresentations in their individual software license agreements and firmware updates—not broad advertising geared toward the general public. ECF No. 1 at ¶¶ 1, 5, 38, 40 122 (emphasis added). Where, as here, plaintiffs "[m]erely request[]

---

("The arbitrator will not award relief for or against anyone who is not a party," and the parties also had the "shared view" the language precluded plaintiff "from seeking public injunctive relief . . . in any forum."); *McArdle v. AT&T Mobility LLC*, 2017 WL 4354998, at *4 (N.D. Cal. Oct. 2, 2017), *aff'd*, 772 F. App'x 575 (9th Cir. 2019) (unlike here, in *McCardle* there was no dispute whether the agreement purported to waive the right to public injunctive relief, and instead "[t]he parties agree[d] that the [challenged language] purports to waive the arbitrator's ability to award public injunctive relief."); *Lotsoff v. Wells Fargo Bank, N.A.*, 2019 WL 4747667, at *2 (S.D. Cal. Sept. 30, 2019) (agreement stated "[N]either Wells Fargo nor you will be entitled . . . to act in any arbitration ***in the interests of the general public***") (emphasis added); *Cottrell v. AT&T Inc.*, 2020 WL 2747774, at *5 (N.D. Cal. May 27, 2020) (unlike here, the parties did not dispute whether the agreement waived the right to public injunctive relief, and instead "agree[d] in their arguments . . . the agreement is intended to prevent the award of such [public injunctive] relief altogether.").

relief which would generally enjoin a defendant from wrongdoing [this] does not elevate requests for injunctive relief to requests for <u>public</u> injunctive relief." *Johnson*, 2018 WL 4726042 at \*6 ("[T]he relief sought is actually intended to redress and prevent further injury to a group of plaintiffs who have already been injured . . . the individuals who stand to benefit are still an inherently circumscribed group. Because Plaintiffs' claims center on breaches of contract, only individuals who enter into contractual relationships with JPMorgan can benefit from this ruling.").[4]

## III.   ANY ARGUABLE *MCGILL* ISSUE COULD BE APPROPRIATELY ADDRESSED BY SEVERING AND STAYING THE PUBLIC INJUNCTIVE RELIEF CLAIM

The arbitration agreements here expressly provide that "[i]f any provision in this Section 14 is found to be unenforceable, that provision shall be severed with the remainder of this Agreement remaining in full force and effect." ECF No. 21-2 at ¶ 14.9.   Courts addressing such language have severed and stayed claims for public injunctive relief even where an impermissible *McGill* waiver was found. *See, e.g., Dornaus*, 2019 WL 632957 at \*6 ("While the remainder of plaintiff's action must be compelled to arbitration under the terms of the Agreement—including all questions of liability—the court shall retain jurisdiction over the adjudication of plaintiff's request for public injunctive relief . . . this action is STAYED in its entirety until such arbitration has been had in accordance with the terms of the agreement.").

---

[4]   Plaintiffs argue whether they seek public injunctive relief is irrelevant to whether *McGill* will allow them to avoid their agreements to arbitrate. Opp. at 6-7. As demonstrated by *Sponheim*, *Johnson* and *Wright*, *supra*, this is wrong. Plaintiffs' argument instead hinges on a misreading of *McGovern v. U.S. Bank N.A.*, 2020 WL 4582687, at \*2 n. 1 (S.D. Cal. Aug. 10, 2020) (contrary to plaintiff's assertion, this is not a Ninth Circuit case).   In *McGovern*, the arbitration agreement had a particular contractual provision that "render[ed] the entire arbitration provision null and void" in the event any part was determined to be unenforceable.  *Id.*  It was for that reason the court held the relief sought was not relevant, not because that inquiry is never relevant under *McGill*.   As explained further below, plaintiffs' arbitration agreements here have no such "poison pill" as it relates to the purported waiver of
(footnote continued)

Plaintiffs contend the agreements include a "poison pill" that renders the entire arbitration agreement invalid if the class action waiver in the agreements is determined to be invalid. *See* ECF No. 21-2 at ¶ 14.9 ("The foregoing shall not apply to the prohibition against class or representative actions as provided in Section 14.5. This means that if Section 14.5 is found to be unenforceable, the entire Section 14 (but only Section 14) shall be null and void."). However, as explained above, it is well established that nothing in Section 14.5—the class and representative action waiver—could constitute a waiver of "public injunctive" relief under *McGill*, as such actions for "public injunctive" relief are *individual* actions. Accordingly, a determination the agreement somehow waives the right to "public injunctive" relief would *not* be a determination that Section 14.5 is unenforceable. Thus, the "poison pill" is inapplicable and instead, as in *Dornaus*, the express severability provision mandates enforcement of the remainder of the agreement. *See also Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) ("In the event that the arbitrator concludes that Corinthian has violated the UCL, FAL, or CLRA, and that entry of an injunction might be appropriate, but further determines that it lacks the authority under the agreements at issue to grant the requested injunction, Plaintiffs may seek the requested injunction in court.").

DATED:  September 15, 2020  QUINN EMANUEL URQUHART &
              SULLIVAN. LLP


By   */s/ Shon Morgan*
   Shon Morgan
   Attorneys for Defendant Epson America,
   Inc.

---

public injunctive relief, and *McGovern* is thus inapplicable.

# EXHIBIT D

QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Shon Morgan (Bar No. 187736)
    (shonmorgan@quinnemanuel.com)
    John W. Baumann (Bar No. 288881)
    (jackbaumann@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendant Epson America,
Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>EPSON AMERICA, INC.,<br><br>        Defendant. | CASE No. 2:20-cv-04400-CBM-GJS<br><br>**JOINT STATUS REPORT** |

# JOINT STATUS REPORT

The parties, Defendant Epson America, Inc. ("Epson") and Plaintiff William Mondigo, file this joint status report pursuant to the Court's September 6, 2022 Order (ECF No. 47).

Plaintiffs Rabinovich, Famiglietti, Gordon, Szot, Dignard and Kovach submitted demands for arbitration against Epson, and the parties agreed to first raise in arbitration the threshold issue of whether Plaintiffs' claims for public injunctive relief should be returned to this Court prior to any proceedings on the merits.  This issue has been fully briefed in each of the arbitrations.

The arbitrators in the Szot and Famiglietti arbitrations issued tentative rulings determining the merits of those plaintiff's claims must be resolved in arbitration.  In the interim, the parties have agreed to a stay of each of the arbitrations to allow the parties to discuss potential resolutions of these matters.  The parties' discussions are ongoing.

DATED:  November 1, 2022    QUINN EMANUEL URQUHART & SULLIVAN. LLP


By _____ */s/ John W. Baumann* _____
John W. Baumann
Attorneys for Defendant Epson America, Inc.


DATED:  November 1, 2022    CARLSON LYNCH LLP


By _____ */s/ Edwin J. Kilpela (with permission)* _____
Edwin J. Kilpela (*pro hac vice*)
Attorneys for Plaintiffs

# EXHIBIT E

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Shon Morgan (Bar No. 187736)
2     (shonmorgan@quinnemanuel.com)
     John W. Baumann (Bar No. 288881)
3     (jackbaumann@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
5  Facsimile:   (213) 443-3100

6  Attorneys for Defendant Epson America,
   Inc.

7

8

9                    UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11 | JOHN GALGON, individually and on      | CASE No. 2:21-cv-01794-CBM-MRW
     behalf of all others similarly situated, |
12 |                                          |
   |                                          | **DEFENDANT EPSON AMERICA**
13 |               Plaintiff,                  | **INC.'S MOTION TO COMPEL**
   |                                          | **ARBITRATION AND STAY**
14 |     vs.                                   | **PROCEEDINGS;**
   |                                          |
15 |                                          | **DECLARATION OF SIRANUSH**
   | EPSON AMERICA, INC.,                      | **ARABIAN;**
16 |                                          |
   |               Defendant.                  | **[PROPOSED] ORDER**
17 |                                          |
   |                                          | Date:      April 20, 2021
18 |                                          | Time:      10:00 a.m.
   |                                          | Judge:     Hon. Consuelo B.
19 |                                          |            Marshall
   |                                          | Courtroom:  8B
20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 20, 2021 at 10:00 a.m., or as soon thereafter as counsel may be heard, defendant Epson America, Inc. ("Epson"), by and through its attorneys and pursuant to 9 U.S.C. § 4, hereby moves to compel arbitration of plaintiff's claims, stay proceedings pending resolution of any arbitration, and stay proceedings pending a decision on this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 15, 2021.

This motion is made on the grounds that plaintiff agreed to arbitrate his claims against Epson on a non-class basis and further agreed any disputes concerning the arbitrability of his claims must be submitted to the arbitrator for resolution. This motion is based upon this Notice, the following memorandum of points and authorities, the Declaration of Siranush Arabian ("Arabian Decl.") and exhibits thereto, the pleadings and records on file herein, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

DATED: March 22, 2021      QUINN EMANUEL URQUHART & SULLIVAN. LLP


By    */s/ Shon Morgan*
        Shon Morgan
        Attorneys for Defendant Epson America, Inc.

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................... 1

BACKGROUND .............................................................................................. 1

I.      THE COURT'S ORDER COMPELLING ARBITRATION IN
*MONDIGO* ............................................................................................ 1

II.     PLAINTIFF'S ARBITRATION AGREEMENTS ............................ 2

LEGAL STANDARD ...................................................................................... 6

ARGUMENT .................................................................................................... 7

III.   ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY
AN ARBITRATOR ................................................................................ 7

IV.   THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFF
ENTERED INTO VALID ARBITRATION AGREEMENTS THAT
CLEARLY COVER THE CLAIMS AT ISSUE .................................... 9

V.    THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION
MAY NOT PROCEED ON A CLASS BASIS .................................... 11

VI.   PLAINTIFF'S CLAIMS SHOULD BE STAYED PENDING
RESOLUTION OF ANY ARBITRATION, AND THIS ACTION
SHOULD BE STAYED PENDING A RULING ON THIS MOTION ......... 12

CONCLUSION ............................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
  2014 WL 12610227 (N.D. Cal. Oct. 31, 2014)............................................. 10

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ............................................................................................ 6

*Bitstamp Ltd. v. Ripple Labs Inc.*,
  2015 WL 4692418 (N.D. Cal. Aug. 6, 2015)................................................ 8

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ........................................................................ 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ........................................................................ 9

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ..................................................................................... 11

*Hamoudeh v. Unitedhealth Grp. Inc.*,
  2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016)............................... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ......................................................................................... 7

*Hotel Greystone Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*,
  897 F. Supp. 168 (S.D.N.Y. 1995)............................................................... 12

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ............................................................................................... 7

*In re Holl*,
  925 F.3d 1076 (9th Cir. 2019) ........................................................................ 9

*Jialu Wu v. iTalk Glob. Commc'ns, Inc.*,
  2020 WL 8461696 (C.D. Cal. Oct. 21, 2020) .......................................... 10

*Kim v. Tinder, Inc.*,
  2018 WL 6694923 (C.D. Cal. July 12, 2018) ............................................ 6

*Lakhan v. U.S. Sec. Assocs., Inc.*,
  2019 WL 175043 (C.D. Cal. Jan. 11, 2019) ............................................... 8

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ..................................................................................... 11

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
  2017 WL 2727874 (N.D. Cal. Feb. 14, 2017)......................................... 12

*Mendoza v. Uber Techs. Inc.*,
    2020 WL 2563047 (C.D. Cal. May 4, 2020) ................................................. 12

*Mondigo v. Epson America, Inc.*,
    Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.) at ECF No. 32 ..... 1, 2, 7, 8, 9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ...................................................................................... 6, 10

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
    388 U.S. 395 (1967) .......................................................................................... 7

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................ 7, 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ........................................................................................ 11

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) ................................................................. 10

### **<u>Statutory Authorities</u>**

9 U.S.C. § 1 ................................................................................................................ 6

9 U.S.C. §§ 1-16 ......................................................................................................... 6

9 U.S.C. § 2 ................................................................................................................ 6

9 U.S.C. § 3 ............................................................................................................ 7, 12

Cal. Bus. & Prof. Code § 17200 ................................................................................. 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

This dispute does not belong in court. Indeed, this Court recently compelled to arbitration a nearly identical putative class action based on the exact same arbitration agreement to which plaintiff here agreed. *Mondigo v. Epson America, Inc.*, Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.) at ECF No. 32. There is no reason the result should differ in this copycat case.

Here, as in *Mondigo*, plaintiff expressly agreed to arbitrate any grievances related to the printer he purchased from Epson and the software used in that printer. The terms of his arbitration agreement are conspicuous, fair, and reached through a process and on substantive terms that courts have consistently held must be enforced to effectuate the purposes of the Federal Arbitration Act. Plaintiff's arbitration agreement also expresses a clear and unmistakable intent to commit issues of arbitrability to the arbitrator. Thus, as in *Mondigo*, to the extent plaintiff contends his claims are not subject to the arbitration agreements for any reason, this issue must be decided in arbitration. Accordingly, the Court should compel arbitration of plaintiff's claims and stay proceedings pending resolution of any arbitration.

Additionally, because this Court is not the proper forum for plaintiff's claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration.

## BACKGROUND

## I. THE COURT'S ORDER COMPELLING ARBITRATION IN *MONDIGO*

On May 15, 2020, plaintiffs William Mondigo, Martin Dignard, Richard Famiglietti, Michael Kovach, Felix Rabinovich, Jesse Gordon, and Gregory Szot filed a putative class action complaint against Epson, which was assigned to this Court. *Mondigo v. Epson America, Inc.*, Case No. 2:20-cv-04400-CBM-GJS (C.D.

Cal.).  There, as here, plaintiffs alleged third-party ink stopped functioning in their printers as a result of Epson's software updates and, based on these allegations, asserted class claims under the Computer Fraud and Abuse Act ("CFAA"); California Business & Professions Code § 17200 ("UCL"); and a common law theory of unjust enrichment.  *Id.* at ECF No. 1.

Epson promptly moved to compel arbitration.  *Id.* at ECF No. 21.  Like plaintiff here, each plaintiff in *Mondigo* had agreed—both at the time they originally set up their printers and again upon updating their software—to arbitrate "all disputes" with Epson on an individual basis.  *Id.*

On October 13, 2020, this Court granted Epson's motion and stayed the proceedings pending the completion of any arbitration.  *Id.* at ECF No. 32.  This Court determined plaintiffs had "each agreed to the software license agreement" at the time they first set up their Epson printers and "entered into another arbitration agreement when they installed the software updates which are the subject of the Complaint."  *Id.* at 3.  This Court further found "the delegation clause in the software license agreement and Updater EULA 'clearly and unmistakably' indicates the parties' intent for the arbitrator to decide the issue of arbitrability."  *Id.* at 5.  Accordingly, this Court rejected plaintiffs' attempts to upend the arbitration agreements and instead determined it "must enforce the agreements according to their terms and compel the issue of arbitrability of Plaintiffs' claims to arbitration."  *Id.* at 6-7.

## II.    PLAINTIFF'S ARBITRATION AGREEMENTS

Plaintiff here followed the exact same steps to agree to the exact same arbitration agreements that were the subject of this Court's order compelling arbitration in *Mondigo*.

Plaintiff alleges he purchased an Epson XP-640 printer on January 25, 2018 and subsequently began using this printer.  ECF No. 1 at ¶¶ 37, 40.  To set up and begin using his printer, plaintiff was required to view Epson's software license—this

license was automatically displayed for the user to see as part of the setup process. Declaration of Siranush Arabian at ¶ 4.  Plaintiff was then required to click a bubble that appeared immediately below the displayed software license (just beneath the text of the license) to signify his agreement to the terms of the software license.  *Id.*

Among the terms in the software license to which plaintiff agreed is an arbitration agreement—indeed, the very first paragraph of the license agreement calls attention to this in capitalized, oversized font that notifies the user "IF YOU ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES."  Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14.

Additionally, plaintiff reaffirmed his agreement to arbitrate disputes with Epson at the time he installed the software updates that are the subject of his complaint.  Arabian Decl. at ¶¶ 4-5, Ex. 2; ECF No. 1 at ¶ 31 (conceding plaintiff "authorized" the update).  To install the update, plaintiff was required to view the Epson End User Software License Agreement ("Updater EULA"), which was automatically displayed for plaintiff to see, and plaintiff was once again required to click to signify his agreement.  Arabian Decl. at ¶ 7.  The arbitration agreement in the Updater EULA is substantively identical to the arbitration agreement in plaintiff's software license.  *Compare* Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14 (software license), *with* ¶ 5, Ex. 2 at ¶ 22 (Updater EULA).

**Prominent Headings and Clear Terms.**  Plaintiff's arbitration agreements begin with a prominent heading in capitalized, bolded font identifying the separate agreement to arbitrate and explain in simple terms the arbitration process and how it differs from a trial in court:

**DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**
…
You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.**

Arabian Decl. at ¶¶ 3, 5, Exs. 1-2 at ¶ 14.2 (software license) & 2 at ¶ 22.2 (Updater EULA) (emphasis in original).

**<u>Class Action Waiver.</u>** Plaintiff's arbitration agreements also explicitly set forth the rights plaintiff waived by agreeing to arbitrate, and contain a separate section in bold, capitalized font notifying plaintiff of his agreements to waive the right to serve "**AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING**[.]" Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA) (emphasis in original).

**<u>Broad Scope.</u>** Plaintiff's arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).[1]

**<u>Delegation of Arbitrability Disputes.</u>** Plaintiff's arbitration agreements also contain a clear expression of intent to delegate issues of arbitrability to the